# EXHIBIT 2

---

## Remainder of State Court and
## Federal Court Files

File in Case No. 2016-CV10644

in the Circuit Court of Jackson County, Missouri

 

Search for Cases by: Select Search Method... ▾

Judicial Links | eFiling | Help | Contact Us | Print          GrantedPublicAccess  Logoff S_J_MOORE_

**2016-CV10644 - RHONDA CHEATEM V LANDMARK REALTY OF MISSOURI LLC (E-CASE)**

| FV | Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

**Click here to eFile on Case**           Sort Date Entries:  ○ Descending ● Ascending     Display Options: All Entries ▾
**Click here to Respond to Selected Documents**

| 04/13/2020 | ☐ | **Pet Filed in Circuit Ct** |
|---|---|---|

Petition.
    **On Behalf Of:** RHONDA CHEATEM

☐ **Filing Info Sheet eFiling**
    **Filed By:** ALAN J. STECKLEIN

☐ **Judge Assigned**

☐ **Request for Jury Trial Filed**
    **Filed By:** ALAN J. STECKLEIN

☐ **Case Mgmt Conf Scheduled**
    **Associated Entries: 05/13/2020 - Hearing/Trial Cancelled**
    **Scheduled For:** 08/05/2020;  1:30 PM ;  ADAM CAINE;  Jackson - Kansas City

☐ **Correspondence Sent**
    Letter to Attorney for Service Instructions

☐ **Correspondence Sent**
    Mailed Notice and Copy of Petition to Attorney General by First Class Mail on April 13, 2020

☐ **Motion Special Process Server**
    Motion and Order for Private Process Server.
    **Filed By:** ALAN J. STECKLEIN
    **On Behalf Of:** RHONDA CHEATEM

☐ **Order - Special Process Server**

☐ **Summons Issued-Circuit**
    Document ID: 20-SMCC-3257, for LANDMARK REALTY OF MISSOURI LLC.

| 04/22/2020 | ☐ | **Corporation Served** |
|---|---|---|

Document ID - 20-SMCC-3257; Served To - LANDMARK REALTY OF MISSOURI LLC; Server - ; Served Date - 15-APR-20; Served Time - 11:12:00; Service Type - Special Process Server; Reason Description - Served; Service Text - Edie Ferrara, Lefal Assistant/Authorized to accept

☐ **Notice of Service**
    Return of Service.
    **Filed By:** ALAN J. STECKLEIN
    **On Behalf Of:** RHONDA CHEATEM

| 05/05/2020 | ☐ | **Entry of Appearance Filed** |
|---|---|---|

Entry of Appearances; Electronic Filing Certificate of Service.
    **Filed By:** AMY SWEENY DAVIS

| 05/07/2020 | ☐ | **Judge Assigned** |
|---|---|---|

| 05/13/2020 | ☐ | **Notice** |
|---|---|---|

Notice of Removal to Federal Court with attached exhibits; Electronic Filing Certificate of Service.
**Filed By:** NICHOLAS JOSEPH PORTO
**On Behalf Of:** LANDMARK REALTY OF MISSOURI LLC

☐ **Order**

☐ **Hearing/Trial Cancelled**
**Scheduled For:** 08/05/2020; 1:30 PM ; ADAM CAINE; Jackson - Kansas City

| 11/18/2020 | ☐ | Received of: |
|---|---|---|
| | | REMANDED BACK TO JACKSON COUNTY CIRCUIT COURT |

Electronically Filed - Jackson - Kansas City - April 13, 2020 - 09:41 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

| | |
|---|---|
| Rhonda K. Cheatem, individually and on behalf of all others similarly situated, | Case Number: |
| Plaintiff, | Division: |
| vs. | CLASS ACTION PETITION |
| Landmark Realty of Missouri, LLC<br>D/B/A Willow Creek<br>D/B/A Willow Creek Apartments<br>D/B/A Landmark Realty | JURY TRIAL DEMAND |
| Serve:<br>Registered Agent, Nicholas Porto<br>1600 Baltimore Suite<br>Kansas City, Missouri 64108, | |
| Defendant. | |

## CLASS ACTION PETITION

COMES NOW Plaintiff Rhonda K. Cheatem ("Plaintiff"), through counsel, and for Plaintiff's causes of action against Defendant KC Willow Creek LLC d/b/a Willow Creek Apartments ("Defendant") states:

### JURISDICTION AND VENUE

1. This is a class action under the Missouri Merchandising Practices Act, RSMo § 407.025.

2. This Court has jurisdiction over the subject matter of this lawsuit under Article V, §14 of the Missouri Constitution and § 407.025.1 RSMo.

3. Venue in this district is proper because Defendant conducts business in this district and the events upon which this action is based transpired in this district.

### PARTIES

1

4.      Plaintiff is a resident of the State of Missouri.

5.      Defendant KC Willow Creek LLC d/b/a Willow Creek Apartments is a Missouri Limited Liability Company.

6.      At all times, Defendant rented and managed residential real estate to consumers in the State of Missouri.

7.      As of November 2019, Defendant owned and operated an apartment complex at 201 W. 99th Terrace, Kansas City, Missouri 64114("leased premises").

### FACTS COMMON TO ALL COUNTS

8.      In November 2019, Plaintiff applied for an apartment with Defendant.

9.      The application Plaintiff signed with Defendant read, in part: <u>Administration Fee, Application Fee, and Security Deposit</u> This portion of the Application concerns certain fee(s) and/or deposits that may be ***non-refundable***. As such, it is important that you very carefully read and understand each of the following paragraphs. By initialing under each paragraph, you acknowledge that you have read each paragraph and understand that certain fee(s) and/or deposits may be ***non-refundable.***

10.      Under this provision, Plaintiff paid an Administration free of $40.00.

11.      The application Plaintiff signed with Defendant read, in part: <u>Nonrefundable Fees:</u> As part of this Application, I understand that I am required to submit a *<u>nonrefundable</u>* administration fee of ONE HUNDRED AND FIFTY DOLLARS AND NO CENTS ($150.00) (hereinafter the "Administration Fee"). As further part of this Application, I understand that I am also required to submit a *<u>nonrefundable</u>* application fee of either FORTY DOLLARS AND NO CENTS ($40.00) or FIFTY DOLLARS AND NO CENTS ($50.00) per applicant (hereinafter the "Application Fee"), the precise amount which shall

2

solely be determined by Landmark. I understand that both the Administration Fee and Application Fee are *nonrefundable*.

12.     Under this provision, Plaintiff paid an Administrative Fee of $150.00.

13.     The application Plaintiff signed with Defendant read, in part: "<u>Security Deposit that May Be Refundable</u> As part of this Application, I understand that I will be required to submit a Security Deposit equal to (the "Security Deposit").[1] I also understand that Landmark, in Landmark's sole discretion, may require an additional Security Deposit if the information submitted in this Application does not satisfy Landmark's rental criteria. I understand that the Security Deposit (and any additional Security Deposit) is *refundable* if I cancel, in writing, the Application within 48 hours of the submission of the Application and any fees/deposits required by Landmark. I further understand that the Security Deposit *may be refundable* if Landmark denies my Application because the information I have submitted does not satisfy Landmark's application criteria. If I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable*. Finally, I understand that I will be required to submit both a completed Application and any supporting information required by Landmark, including, but not limited to, a verification of identity, a verification of employment, a verification of income, and an authorization to obtain my rental history. If I fail to submit the aforementioned items within 48 hours of submitting my Application and any fees/deposits required by Landmark, or if any of the information I have submitted is false, inaccurate, or misleading in any way, the Security Deposit is *nonrefundable*.

14.     Under this provision, Plaintiff paid a Security Deposit of $450.00.

15.     On November 26, 2019, Defendant declined to application the property to Plaintiff

and issued a "Move Out Statement", which withheld the Application Fee of $40.00, the Administrative Fee of $150.00, and the Security Deposit $450.00.

16.     The November 26, 2019 Move Out Statement stated that the "security deposit is non-refundable due to falsification on application.  Your security deposit of $450.00 has been retained and liquidated damages for our time and expense".

**COUNT I**
**VIOLATION OF RSMo. § 535.300**
**Non-Refundable Security Deposits**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count I against Defendant, states and alleges:

17.     Plaintiff  incorporates by reference the preceding allegations in this petition.

18.     RSMo. § 535.300, entitled security deposits, places restrictions and requirements on landlords regarding security deposits.

19.     RSMo. § 535.300(3) lists what a landlord may legally withhold from a tenant's security deposit.

20.     RSMo. § 535.300(3) states that the landlord may withhold from the security deposit only such amounts as are reasonably necessary because :

(1) To remedy a tenant's default in the payment of rent due to the landlord, pursuant to the rental agreement;

(2) To restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted; or

(3) To compensate the landlord for actual damages sustained as a result of the tenant's failure to give adequate notice to terminate the tenancy pursuant to law or the rental agreement; provided that the landlord makes reasonable efforts to mitigate damages.

4

21.     RSMo. §535.300(3) does not allow a landlord to designate part of the security deposit as non-refundable before the end of the application term.

22.     RSMo. §535.300(3) does not allow a landlord to designate part of the security deposit as non-refundable because the tenant "fail[ed] to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable"*.

23.     RSMo. §535.300(3) does not allow a landlord to designate part of the security deposit as non-refundable because the landlord alleges the tenant misrepresented anything on her security deposit.

24.     The language of the application states that $450.00 of the security deposit may be non-refundable if the tenant fail[ed] to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable"*.

25.     Under the application, the security deposit paid by the Plaintiff was $450.00.

26.     RSMo. § 535.300.5 states that if the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages not more than twice the amount wrongfully withheld.

27.     Under RSMo. § 535.300.5, Defendant is liable to Plaintiff for $900.00.

WHEREFORE, Plaintiff  prays for judgment against Defendant and the putative class for such damages as are fair and reasonable for violations of the RSMo. § 535.300; for other statutory relief as provided for in RSMo. § 535.300 of twice the non-refundable security deposits withheld for the past five years; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

5

**COUNT II**
**MERCHANDISING PRACTICES ACT, § 407.020 RSMo.**
**Collecting Non-refundable Security Deposits**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count II against Defendant, states and alleges:

28.     Plaintiff incorporates by reference the preceding allegations in this petition.

29.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

30.     Defendant is deceptively assessing, collecting, and retaining non-refundable security deposits in violation of RSMo. § 535.300.

31.     RSMo § 407.020.1 states that the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

32.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

6

33.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

34.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss in that Plaintiff lost the amount of her security deposit.

35.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

36.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

37.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

38.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff prays for judgment against Defendant and the putative class for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

**COUNT III**
**MERCHANDISING PRACTICES ACT, § 407.020 RSMo.**
**Misrepresenting the status of the contract**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count III against Defendant, states and alleges:

39.     Plaintiff incorporates by reference the preceding allegations in this petition.

7

40. Upon determining that Defendant wrongfully withheld Plaintiff's security deposit, Plaintiff telephoned Defendant and spoke to Johnathan L/N/U, who advised Plaintiff:

    a. Defendant was "going by the book" by withholding the security deposit and was confident in their representation that "their I's are dotted and their T's are crossed";

    b. There is no exposure to Defendant and that Plaintiff's sole remedy was with a past landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

    c. That Defendant has given Plaintiff all the information that Defendant is required to and that it is not Defendant's fault, but solely the responsibility of the prior landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

41. Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

42. After her security deposit was unlawfully withheld, Plaintiff inquired with Defendant as to the reasons for withholding the security deposit.

43. Defendant misrepresented to Plaintiff that the non-refundable deposit was legal.

44. Defendant misrepresented the status of the non-refundable deposit to Plaintiff.

45. The Missouri Attorney General has declared all unconscionable practices to be unfair practices in violation of the Missouri Merchandising Practices Act. 15 C.S.R. § 60-8.080(1).

46. It is unconscionable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged." 15 C.S.R. § 60-8.080(2).

47.     These non-refundable security deposits are unconscionable.

48.     These fees are unconscionable in that high in relation to the value of the application.

49.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

50.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

51.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss in that Plaintiff lost the amount of her security deposit.

52.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

53.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

54.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

55.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

**COUNT IV**
**MERCHANDISING PRACTICES ACT, § 407.020 RSMo.**

9

**Collecting Unconscionable Application Fees Generally**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count IV against Defendant, states and alleges:

56.     Plaintiff incorporates by reference the preceding allegations in this petition.

57.     In addition to charging the Plaintiff an nonrefundable deposit fee, Defendant additionally charged a $40 application fee and, on top of that, a $150 Administrative Fee.

58.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

59.     The Missouri Attorney General has declared all unconscionable practices to be unfair practices in violation of the Missouri Merchandising Practices Act.   15 C.S.R. § 60-8.080(1).

60.     It is unconscionable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged."  15 C.S.R. § 60-8.080(2).

61.     A $150 Administrative Fee, especially when combined with the application fee and nonrefundable deposit, is unconscionably high in relation to the value of the application.

62.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

63.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

64.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss in that Plaintiff lost $150.

10

65.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

66.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

67.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

68.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff restates each allegation in the preceding paragraphs as if set forth at length herein.

70.     Under Missouri Supreme Court Rule 52.08, Plaintiff sues for herself and on behalf of a class (the "Class A") for Counts I, II, initially defined:

> All Missouri tenants from whom Defendant collected a security
> deposit deemed nonrefundable under the application in the past five
> years and the security deposit was retained by Defendant.

71.     Under Missouri Supreme Court Rule 52.08, Plaintiff sues for herself and on

11

behalf of a class (the "Class B") for Counts I, II, initially defined:  All Missouri tenants from whom Defendant collected a security deposit wherein a portion of that deposit was deemed nonrefundable under the application in the past five years and the security deposit was retained by Defendant and, upon inquiry by the class member, Defendant informed the class member that retaining the non-refundable deposit was legal or legally appropriate.

72.     Class actions in Missouri are governed by Rule 52.08, which sets out four requirements for class certification:  One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

73.     Numerosity. Defendant owns and operates multi-unit apartment complexes using form applications and standardized procedures.  The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Numerosity can be inferred by Defendant' size, that it manages hundreds of apartment units using standardized contracts and procedures, and the fact that its omissions are part of its routine business practice.

74.     Existence and Predominance of Common Questions of Law and Fact. Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. Defendant uses standardized application provisions and procedures in managing hundreds of residential units. These common legal and

12

factual questions include and without limitation:

    a.    Did Defendant collect and retain a non-refundable security deposit?

    b.    Did Defendant retain a security deposit for any reason other than those enumerated in § 535.300.5.

75.    Typicality. Plaintiff's claims are typical of the claims of each Class member. Their contract was a standardized application and the provision wrongfully withholding a portion of the security deposit as "non-refundable" would apply to each member of the putative Class. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

76.    Adequacy. Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class.

77.    Superiority. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action

device will cause substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

78.     Injunctive Relief Appropriate for the Class. Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief regarding Plaintiff and the Class members.

WHEREFORE, Plaintiff and the Class members pray for relief:

1.     An order certifying the proposed classes herein under Missouri Supreme Court Rule 52.08 and appointing Plaintiff and his undersigned counsel of record to represent same;

2.     The creation of a common fund available to provide notice of and remedy Defendant's violations;

3.     Punitive damages as authorized by the MMPA;

4.     Equitable and/or declaratory relief; including that Defendant be restrained from engaging in future conduct in violation of the MMPA;

5.     Attorney's fees, expenses and costs;

6.     An Order that Defendant, its agents, and anyone acting on Defendant's behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could identify Class members;

7.     Pre-judgment and post-judgment interest as provided by law; and

8.     Such other relief the Court does deem just, equitable and proper.

14

**JURY DEMAND**

Plaintiff demands trial by jury.

Respectfully submitted,


By: /s/ A.J. Stecklein
A.J. Stecklein          #46663
Michael Rapp           #66688
Matthew Robertson    #70442
Stecklein & Rapp Chartered
748 Ann Avenue
Kansas City, KS 66101
Telephone:     (913) 371-0727
Facsimile:     (913) 371-0727
Email:  aj@kcconsumerlawyer.com
              mr@kcconsumerlawyer.com
              msr@kcconsumerlawyer.com
Attorneys for Plaintiff



By: /s/ Gina Chiala
GINA CHIALA          # 59112
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
Attorneys for Plaintiff

15

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT KANSAS CITY**

RHONDA CHEATEM

                **PLAINTIFF(S),**            **CASE NO.**  2016-CV10644
**VS.**                                              **DIVISION 11**

LANDMARK REALTY OF MISSOURI LLC

                **DEFENDANT(S),**

**NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE**
**AND ORDER FOR MEDIATION**

_____

       NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable GEORGE EDGAR WOLF on 05-AUG-2020 in DIVISION 11 at 01:30 PM. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

       A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

       At the Case Management Conference, counsel should be prepared to address at least the following:

        a.      A trial setting;

        b.      Expert Witness Disclosure Cutoff Date;

        c.      A schedule for the orderly preparation of the case for trial;

        d.      Any issues which require input or action by the Court;

        e.      The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

_/S/ GEORGE EDGAR WOLF_
GEORGE EDGAR WOLF, **Circuit Judge**

### Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
ALAN J. STECKLEIN, 748 ANN AVENUE, KANSAS CITY, KS 66101

Defendant(s):
LANDMARK REALTY OF MISSOURI LLC

Dated: 13-APR-2020

MARY A. MARQUEZ
Court Administrator

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 21 of 502

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

☒ **AT KANSAS CITY** ☐ AT INDEPENDENCE

**RE**: RHONDA CHEATEM V LANDMARK REALTY OF MISSOURI LLC
**CASE NO:** 2016-CV10644

**TO:** ALAN J. STECKLEIN
748 ANN AVENUE
KANSAS CITY, KS 66101

We have received pleadings, which you submitted for filing in the case and they have been file-stamped on <u>April 13, 2020</u>. However, your pleading cannot be processed further until the following action is taken:

**RULE 3.2 - STYLE**
☒ **Additional service instructions are needed.**
☐ Incorrect case number/filed in wrong county.
☐ Document is unreadable.

**RULE 4.2 (2)**
☐ Need Circuit Court Form 4

**RULE 5.6 – COLLECTIONS OF DEPOSIT**
☐ No fee, or incorrect fee, received; fee required is $_____.
☐ Insufficient Filing Fee; Please Remit $_____
☐ No signature on check/form 1695.
☐ No request to proceed in forma pauperis.
☐ No personal checks accepted.

**RULE 68.1**
☐ Need Circuit Court Form 17

**RULE 68.7 – VITAL STATISTICS REPORT**
☐ Need Certificate of dissolution of marriage form.

**RULE 74.14 SUPREME CT – FOREIGN JUDGMENT**
☐ Authentication of foreign judgment required.
☐ Affidavit pursuant to Supreme Court Rule 74.14

**RULE 54.12  SERVICE IN REM OR QUASI IN REM ACTIONS**
☐ Affidavit for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Order for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Notice for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Affidavit for Service by Certified/Registered Mail pursuant to Supreme Court Rule 54.12b.

☒ **OTHER:** **Before your case can be processed further you will need to eFile service instructions for the defendant.  If service will be done by the Jackson County Sheriff you will need to eFile the required service fee of $36.00.  If service will be done by a private process server you will need to eFile a Motion and Order for Appointment of Private Process Server with the required PPS20 number(s) on it.**
☒ **Please take the actions necessary to comply with the Circuit Court Rules and your request will be processed.**
☐ The private process server listed is not on our approved list.
☐ Execution in effect. Return date _____. Request may be resubmitted within one week prior to return date.
☐ Supreme Court Rule 90.13 requires interrogatories be served with summons of garnishment.

<u>**If the filing was a new case, please be advised that unless the additional information marked is received within 30 days of the date of this notice this case will be dismissed pursuant to Rule 37.4 for failure to prosecute without prejudice, at the Plaintiff's cost.  Collection efforts will be pursued for these costs.**</u>

**Please refer to the Court's website at www.16thcircuit.org for Court Rules or Forms.**

Copies electronic noticed, faxed, emailed and/or mailed APRIL 13, 2020 to:

**COURT ADMINISTRATOR'S OFFICE**
**DEPARTMENT OF CIVIL RECORDS**
**CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

_____     By _____
**APRIL 13, 2020**
**Date**

**Peggy Holley, 816-881-6491**
**Deputy Court Administrator**
☒ **415 East 12th St., Kansas City, Missouri 64106**
☐ **308 W. Kansas, Independence, Missouri 64050**



# CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
415 E 12TH
KANSAS CITY, MISSOURI 64106

**MARY A. MARQUEZ**
Court Administrator

**ANGELA E. WERKOWITCH**
Director of Civil Records

APRIL 13, 2020

Eric Schmitt, Attorney General
Supreme Court Building
PO Box 899
Jefferson City, Missouri  65102

RE :   RHONDA CHEATEM V LANDMARK REALTY OF MISSOURI LLC

Case No:  2016-CV10644

Enclosed is a copy of the petition filed in the above case.  You are being notified of this action in accordance with Section 407.25 R.S.Mo.

**COURT ADMINISTRATOR'S OFFICE
DEPARTMENT OF CIVIL RECORDS
CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

_____
**DEPUTY COURT ADMINISTRATOR**

Enclosure
Mc:  Case File Folder

**IN THE ASSOCIATE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

RHONDA K. CHEATEM, individually and on
behalf of all others similarly situated,

Plaintiff,

vs.

Case Number: 2016-CV10644

LANDMARK REALTY OF MISSOURI, LLC d/b/a
WILLOW CREEK
d/b/a WILLOW CREEK APARTMENTS
d/b/a LANDMARK REALTY,

Defendant.

Division: 11

<u>MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER</u>

COMES NOW Plaintiff, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby moves for the appointment of HPS Process Service & Investigations, Inc.:

| Name | Number | Name | Number |
|---|---|---|---|
| Will Acree | PPS20-0275 | Randy Burrow | PPS20-0021 |
| Jan Adams | PPS20-0276 | Gory Burt | PPS20-0022 |
| Roger Adams | PPS20-0277 | Maurice Burton | PPS20-0298 |
| Randy Adkins | PPS20-0225 | Steve Butcher | PPS20-0581 |
| Bobby Ali | PPS20-0278 | William Caputo | PPS20-0299 |
| Gregory Allen | PPS20-0279 | Kyle Carter | PPS20-0023 |
| Victor Aponte | PPS20-0280 | Charles Casey | PPS20-0300 |
| Brandon Aschenbrenner | PPS20-0281 | George Castillo | PPS20-0301 |
| Julia Ascorra | PPS20-0282 | Fidel A Cervantes | PPS20-0302 |
| Teresa Bailly | PPS20-0283 | Trenia Cherry | PPS20-0303 |
| Joseph Baska | PPS20-0284 | Joyce Clemmons | PPS20-0304 |
| Robert Bassler | PPS20-0578 | John Clor | PPS20-0305 |
| Carrington Bell | PPS20-0012 | Kathleen Clor | PPS20-0306 |
| George Bell | PPS20-0286 | Chad Compton | PPS20-0307 |
| Carlos Bialet | PPS20-0579 | Kenneth V Condrey | PPS20-0308 |
| Dianna Blea | PPS20-0287 | Sharon R Condrey | PPS20-0309 |
| Richard J Blea | PPS20-0288 | Theodore Cordasco | PPS20-0310 |
| Robert Blixt | PPS20-0289 | Cesar Corral | PPS20-0311 |
| Brent Bohnhoff | PPS20-0014 | George H Covert | PPS20-0312 |
| Ann Bollino | PPS20-0291 | Dennis Dahlberg | PPS20-0026 |
| Donnie C Briley | PPS20-0292 | Mary Dahlberg | PPS20-0027 |
| Kathy Broom | PPS20-0293 | Patricia Dambach-Cirko | PPS20-0313 |
| Kenneth Brown | PPS20-0294 | Bert Daniels, Jr. | PPS20-0028 |
| Douglas K Brower | PPS20-0580 | Alterck Davenport | PPS20-0314 |
| Hester Bryant | PPS20-0019 | Richard Davis | PPS20-0029 |
| Nicholas Bull | PPS20-0020 | Duane D Day | PPS20-0315 |
| James F Burke | PPS20-0296 | Gerald R Deadwyles | PPS20-0316 |

| | | | | |
|---|---|---|---|---|
| Bryce Dearborn | PPS20-0317 | | Douglas Hays | PPS20-0051 |
| Robert DeLacy, Jr. | PPS20-0318 | | Grace Hazell | PPS20-0353 |
| Robert E DeLacy, III | PPS20-0319 | | Richard Heimerich, Jr. | PPS20-0354 |
| Kathleen Dnunno | PPS20-0320 | | Stephen Heitz | PPS20-0052 |
| Marrissa Doan | PPS20-0034 | | Charles Helms | PPS20-0356 |
| Claudia Dohn | PPS20-0321 | | Austen Hendrickson | PPS20-0357 |
| Dale Dorning | PPS20-0322 | | Jonathan Hennings | PPS20-0358 |
| Valentina Dorning | PPS20-0323 | | Jesse J Hernandez | PPS20-0359 |
| Catherine Drake | PPS20-0324 | | Michael Hibler | PPS20-0360 |
| Alex Duaine | PPS20-0325 | | Anthonio Hightower | PPS20-0361 |
| Roland Duff | PPS20-0326 | | Cherrod T Hindsman | PPS20-0362 |
| Rochelle D Earthrise | PPS20-0327 | | James Hise | PPS20-0054 |
| Daniel Eberle | PPS20-0328 | | Gary F Hodges | PPS20-0363 |
| Shawn Edwards | PPS20-0035 | | Alex Holland | PPS20-0057 |
| Jessica Ellison | PPS20-0330 | | Leonard Horseman | PPS20-0364 |
| Abel Emiru | PPS20-0331 | | Ulonda Howard | PPS20-0365 |
| Donald C Eskra, Jr. | PPS20-0332 | | Martin Hueckel | PPS20-0366 |
| Leticia Estrada | PPS20-0333 | | Damion Hugher | PPS20-0367 |
| David S Felter | PPS20-0334 | | William Humble | PPS20-0590 |
| William Ferrell | PPS20-0037 | | Mary Hurley | PPS20-0058 |
| Robert Finley | PPS20-0335 | | George Illidge | PPS20-0368 |
| Stephen Folcher | PPS20-0336 | | Frank James | PPS20-0369 |
| Ryan D Fortune | PPS20-0337 | | Matthew Jankowski | PPS20-0370 |
| Chris Fowler | PPS20-0338 | | Betty Johnson | PPS20-0059 |
| James Frago | PPS20-0038 | | Edward Johnson | PPS20-0060 |
| John Frago | PPS20-0039 | | James Johnson | PPS20-0061 |
| Kelsey Garrett | PPS20-0582 | | Jordan Johnson | PPS20-0372 |
| Thomas Garrett | PPS20-0339 | | Justin L Johnson | PPS20-0373 |
| Andrew Garza | PPS20-0041 | | Randy Johnson | PPS20-0374 |
| Charles Gay | PPS20-0340 | | Samuel Johnson | PPS20-0375 |
| Richard Gerber | PPS20-0341 | | Haile Kahssu | PPS20-0376 |
| Louis Gerrick | PPS20-0342 | | Kenneth Kearney | PPS20-0377 |
| Paul Gizel | PPS20-0343 | | Michael Keating | PPS20-0378 |
| Ronda Godard | PPS20-0344 | | Christopher Keilbart | PPS20-0591 |
| Adam Golden | PPS20-0345 | | Elizabeth A Kidd | PPS20-0379 |
| Bradley Gordon | PPS20-0042 | | Donna Jo King | PPS20-0371 |
| Tom Gorgone | PPS20-0044 | | Kenneth Klewicki | PPS20-0380 |
| Paul O Grimes | PPS20-0348 | | George Kotsiras | PPS20-0592 |
| Charles Gunning | PPS20-0046 | | Wyman Kroft | PPS20-0381 |
| Aloysivs Guy, Sr. | PPS20-0583 | | Jo Ann Lane | PPS20-0382 |
| David Hahn | PPS20-0584 | | Linda Langville | PPS20-0593 |
| Eric Hahn | PPS20-0585 | | Eric B Layton | PPS20-0383 |
| Stefanie Hahn | PPS20-0586 | | Kristie Lewis | PPS20-0384 |
| Darnell Hamilton | PPS20-0143 | | John D Lichtenegger | PPS20-0385 |
| Kimberly Hamilton | PPS20-0351 | | Bert Lott | PPS20-0386 |
| Natalie Hawks | PPS20-0050 | | Robert Lutren | PPS20-0387 |
| Larry Haynes | PPS20-0352 | | Daniel Maglothin | PPS20-0069 |

| | | | |
|---|---|---|---|
| Matthews J Manlich | PPS20-0388 | Timothy Pinney | PPS20-0424 |
| Robert Manning | PPS20-0389 | Joshua Pitts | PPS20-0425 |
| Deborah Martin | PPS20-0072 | Craig Podgurski | PPS20-0598 |
| Michael Martin | PPS20-0073 | Rocellious Pope | PPS20-0426 |
| Ryan Martin | PPS20-0193 | Nancy A Porter | PPS20-0427 |
| Susie Martin | PPS20-0390 | Andre Powell | PPS20-0428 |
| Thomas Matthews | PPS20-0391 | Benjamin Purses | PPS20-0429 |
| Casey McKee | PPS20-0076 | Richard Ramirez | PPS20-0430 |
| Michael McMahon | PPS20-0392 | Charles Reardon | PPS20-0431 |
| Michael Meade | PPS20-0393 | Derek L Reddick | PPS20-0432 |
| Michael Meador | PPS20-0077 | Angela Reed | PPS20-0433 |
| Kenny Medlin | PPS20-0078 | Christopher Reed | PPS20-0434 |
| Arsalan Memon | PPS20-0396 | Edward Reed | PPS20-0435 |
| Eric Mendenhall | PPS20-0397 | Betty G Rice | PPS20-0436 |
| Jenna Mendoza | PPS20-0398 | Karen L Rice | PPS20-0437 |
| Matthew Millhollin | PPS20-0081 | Cheryl Richey | PPS20-0439 |
| Carla M Monehain | PPS20-0400 | Terri Richards | PPS20-0106 |
| Carlos Moreno | PPS20-0401 | Debra Rios | PPS20-0440 |
| Michael S Morrison | PPS20-0402 | David M Roberts | PPS20-0206 |
| Zachary P. Mueller | PPS20-0596 | Patricia Roberts | PPS20-0207 |
| Kelly Murski | PPS20-0403 | Jeroy Robinson | PPS20-0441 |
| Andrew Myers | PPS20-0087 | Sammie Robinson | PPS20-0108 |
| Frederick Myers | PPS20-0088 | Adrienne Rodriguez | PPS20-0442 |
| James Myers | PPS20-0089 | Gabriel Rodriguez | PPS20-0443 |
| Stephanie Myers | PPS20-0090 | Mateo F Rodriguez | PPS20-0444 |
| Paul Nardizzi | PPS20-0404 | Richard C Ross | PPS20-0445 |
| Wendy Neff | PPS20-0405 | Melissa Ruiz | PPS20-0446 |
| Christopher New | PPS20-0091 | Antonio Ruque | PPS20-0447 |
| Jillian Newkirk | PPS20-0406 | Geena Christine Rupp | PPS20-0599 |
| Jeremy Nicholas | PPS20-0092 | Edna Russell | PPS20-0110 |
| Michael Noble | PPS20-0093 | Lee H Russell | PPS20-0448 |
| Michael C Nolon | PPS20-0409 | Mark A Russell | PPS20-0449 |
| Colter Norris | PPS20-0410 | John Sadler | PPS20-0450 |
| Dennis Norris | PPS20-0411 | Ligno Sanchez | PPS20-0451 |
| Kody Norris | PPS20-0412 | Virginia Saxon-Ford | PPS20-0452 |
| Trinity Olson | PPS20-0413 | Greg Schermerhorn | PPS20-0453 |
| Craig Palmer | PPS20-0414 | Brenda Schiwitz | PPS20-0111 |
| Cynthia Paris | PPS20-0415 | Michael Schuller | PPS20-0454 |
| Douglas W Patterson | PPS20-0416 | Nathaniel Scott | PPS20-0455 |
| Antonio Perez | PPS20-0417 | Grant Selvey | PPS20-0600 |
| Jaron Perkins | PPS20-0418 | Quratulain Shoukat | PPS20-0456 |
| Anha Pham | PPS20-0419 | Jeremy Small | PPS20-0457 |
| Thai Pham | PPS20-0420 | Monica Smith | PPS20-0458 |
| Bonnie Phillippi | PPS20-0597 | Anthony Spada | PPS20-0459 |
| Gregory Piazza | PPS20-0421 | Melissa Spencer | PPS20-0460 |
| Vincent A Piazza | PPS20-0422 | Jamie Stallo | PPS20-0461 |
| Brian T Pierce | PPS20-0423 | Marc A Starks | PPS20-0462 |

| | | | | |
|---|---|---|---|---|
| Barbara Steil | PPS20-0463 | | Clinton Turpen | PPS20-0473 |
| Kelvin Stinyard | PPS20-0464 | | Henry J Valladares Cruz | PPS20-0474 |
| Randy Stone | PPS20-0117 | | Margarita Vasquez | PPS20-0475 |
| Sonja Stone | PPS20-0118 | | Robert E Vick, II | PPS20-0476 |
| Steven Stosur | PPS20-0465 | | Bradley Votaw | PPS20-0477 |
| Robert T Stover | PPS20-0006 | | Joseph T Wachowski | PPS20-0478 |
| Jeanie Straessler | PPS20-0466 | | Ambiko Wallace | PPS20-0479 |
| Chance Strawser | PPS20-0467 | | Vance M Warren, Sr. | PPS20-0480 |
| David Taliaferro | PPS20-0119 | | Barbara West | PPS20-0481 |
| Ramona Rose Talvacchio | PPS20-0468 | | Pamela K Wheetley | PPS20-0007 |
| Katherina M Tan | PPS20-0469 | | Jennifer White | PPS20-0482 |
| Berhane Tassaw | PPS20-0470 | | Gregory Willing | PPS20-0130 |
| Michael Taylor | PPS20-0120 | | Conni Wilson | PPS20-0131 |
| Courtney S. Thiemann | PPS20-0601 | | Deborah A Wilson | PPS20-0484 |
| Robert Hayes Thomas | PPS20-0602 | | Jerry Wilson | PPS20-0132 |
| Walter Thomas | PPS20-0603 | | Mitchell Wirth | PPS20-0485 |
| William Wyatt Thomas | PPS20-0604 | | Debra Woodhouse | PPS20-0133 |
| Christina Tiffany | PPS20-0471 | | Jerry Wooten | PPS20-0487 |
| Stephen M Troutz | PPS20-0472 | | Kimary Ann Zappia | PPS20-0606 |

as private process servers in the above-captioned matter. In support of said motion, Plaintiff/Petitioner states that the above-named individuals are on the Court's list of approved process servers and the information contained in their applications and affidavits on file is current and still correct.

Respectfully Submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0727
Email: aj@kcconsumerlawyer.com
mr@kcconsumerlawyer.com
msr@kcconsumerlawyer.com
Attorneys for Plaintiff

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Petitioner/Plaintiff's Motion for Appointment of Private Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

DATE: _____          _____
                                           Judge or Circuit Clerk

**IN THE ASSOCIATE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

RHONDA K. CHEATEM, individually and on
behalf of all others similarly situated,

Plaintiff,

vs.

Case Number: 2016-CV10644

LANDMARK REALTY OF MISSOURI, LLC d/b/a
WILLOW CREEK
d/b/a WILLOW CREEK APARTMENTS
d/b/a LANDMARK REALTY,

Division: 11

Defendant.

## MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER

COMES NOW Plaintiff, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby moves for the appointment of HPS Process Service & Investigations, Inc.:

| | | | |
|---|---|---|---|
| Will Acree | PPS20-0275 | Randy Burrow | PPS20-0021 |
| Jan Adams | PPS20-0276 | Gory Burt | PPS20-0022 |
| Roger Adams | PPS20-0277 | Maurice Burton | PPS20-0298 |
| Randy Adkins | PPS20-0225 | Steve Butcher | PPS20-0581 |
| Bobby Ali | PPS20-0278 | William Caputo | PPS20-0299 |
| Gregory Allen | PPS20-0279 | Kyle Carter | PPS20-0023 |
| Victor Aponte | PPS20-0280 | Charles Casey | PPS20-0300 |
| Brandon Aschenbrenner | PPS20-0281 | George Castillo | PPS20-0301 |
| Julia Ascorra | PPS20-0282 | Fidel A Cervantes | PPS20-0302 |
| Teresa Bailly | PPS20-0283 | Trenia Cherry | PPS20-0303 |
| Joseph Baska | PPS20-0284 | Joyce Clemmons | PPS20-0304 |
| Robert Bassler | PPS20-0578 | John Clor | PPS20-0305 |
| Carrington Bell | PPS20-0012 | Kathleen Clor | PPS20-0306 |
| George Bell | PPS20-0286 | Chad Compton | PPS20-0307 |
| Carlos Bialet | PPS20-0579 | Kenneth V Condrey | PPS20-0308 |
| Dianna Blea | PPS20-0287 | Sharon R Condrey | PPS20-0309 |
| Richard J Blea | PPS20-0288 | Theodore Cordasco | PPS20-0310 |
| Robert Blixt | PPS20-0289 | Cesar Corral | PPS20-0311 |
| Brent Bohnhoff | PPS20-0014 | George H Covert | PPS20-0312 |
| Ann Bollino | PPS20-0291 | Dennis Dahlberg | PPS20-0026 |
| Donnie C Briley | PPS20-0292 | Mary Dahlberg | PPS20-0027 |
| Kathy Broom | PPS20-0293 | Patricia Dambach-Cirko | PPS20-0313 |
| Kenneth Brown | PPS20-0294 | Bert Daniels, Jr. | PPS20-0028 |
| Douglas K Brower | PPS20-0580 | Alterck Davenport | PPS20-0314 |
| Hester Bryant | PPS20-0019 | Richard Davis | PPS20-0029 |
| Nicholas Bull | PPS20-0020 | Duane D Day | PPS20-0315 |
| James F Burke | PPS20-0296 | Gerald R Deadwyles | PPS20-0316 |

| | |
|---|---|
| Bryce Dearborn | PPS20-0317 |
| Robert DeLacy, Jr. | PPS20-0318 |
| Robert E DeLacy, III | PPS20-0319 |
| Kathleen Dnunno | PPS20-0320 |
| Marrissa Doan | PPS20-0034 |
| Claudia Dohn | PPS20-0321 |
| Dale Dorning | PPS20-0322 |
| Valentina Dorning | PPS20-0323 |
| Catherine Drake | PPS20-0324 |
| Alex Duaine | PPS20-0325 |
| Roland Duff | PPS20-0326 |
| Rochelle D Earthrise | PPS20-0327 |
| Daniel Eberle | PPS20-0328 |
| Shawn Edwards | PPS20-0035 |
| Jessica Ellison | PPS20-0330 |
| Abel Emiru | PPS20-0331 |
| Donald C Eskra, Jr. | PPS20-0332 |
| Leticia Estrada | PPS20-0333 |
| David S Felter | PPS20-0334 |
| William Ferrell | PPS20-0037 |
| Robert Finley | PPS20-0335 |
| Stephen Folcher | PPS20-0336 |
| Ryan D Fortune | PPS20-0337 |
| Chris Fowler | PPS20-0338 |
| James Frago | PPS20-0038 |
| John Frago | PPS20-0039 |
| Kelsey Garrett | PPS20-0582 |
| Thomas Garrett | PPS20-0339 |
| Andrew Garza | PPS20-0041 |
| Charles Gay | PPS20-0340 |
| Richard Gerber | PPS20-0341 |
| Louis Gerrick | PPS20-0342 |
| Paul Gizel | PPS20-0343 |
| Ronda Godard | PPS20-0344 |
| Adam Golden | PPS20-0345 |
| Bradley Gordon | PPS20-0042 |
| Tom Gorgone | PPS20-0044 |
| Paul O Grimes | PPS20-0348 |
| Charles Gunning | PPS20-0046 |
| Aloysivs Guy, Sr. | PPS20-0583 |
| David Hahn | PPS20-0584 |
| Eric Hahn | PPS20-0585 |
| Stefanie Hahn | PPS20-0586 |
| Darnell Hamilton | PPS20-0143 |
| Kimberly Hamilton | PPS20-0351 |
| Natalie Hawks | PPS20-0050 |
| Larry Haynes | PPS20-0352 |
| Douglas Hays | PPS20-0051 |
| Grace Hazell | PPS20-0353 |
| Richard Heimerich, Jr. | PPS20-0354 |
| Stephen Heitz | PPS20-0052 |
| Charles Helms | PPS20-0356 |
| Austen Hendrickson | PPS20-0357 |
| Jonathan Hennings | PPS20-0358 |
| Jesse J Hernandez | PPS20-0359 |
| Michael Hibler | PPS20-0360 |
| Anthonio Hightower | PPS20-0361 |
| Cherrod T Hindsman | PPS20-0362 |
| James Hise | PPS20-0054 |
| Gary F Hodges | PPS20-0363 |
| Alex Holland | PPS20-0057 |
| Leonard Horseman | PPS20-0364 |
| Ulonda Howard | PPS20-0365 |
| Martin Hueckel | PPS20-0366 |
| Damion Hugher | PPS20-0367 |
| William Humble | PPS20-0590 |
| Mary Hurley | PPS20-0058 |
| George Illidge | PPS20-0368 |
| Frank James | PPS20-0369 |
| Matthew Jankowski | PPS20-0370 |
| Betty Johnson | PPS20-0059 |
| Edward Johnson | PPS20-0060 |
| James Johnson | PPS20-0061 |
| Jordan Johnson | PPS20-0372 |
| Justin L Johnson | PPS20-0373 |
| Randy Johnson | PPS20-0374 |
| Samuel Johnson | PPS20-0375 |
| Haile Kahssu | PPS20-0376 |
| Kenneth Kearney | PPS20-0377 |
| Michael Keating | PPS20-0378 |
| Christopher Keilbart | PPS20-0591 |
| Elizabeth A Kidd | PPS20-0379 |
| Donna Jo King | PPS20-0371 |
| Kenneth Klewicki | PPS20-0380 |
| George Kotsiras | PPS20-0592 |
| Wyman Kroft | PPS20-0381 |
| Jo Ann Lane | PPS20-0382 |
| Linda Langville | PPS20-0593 |
| Eric B Layton | PPS20-0383 |
| Kristie Lewis | PPS20-0384 |
| John D Lichtenegger | PPS20-0385 |
| Bert Lott | PPS20-0386 |
| Robert Lutren | PPS20-0387 |
| Daniel Maglothin | PPS20-0069 |

| | |
|---|---|
| Matthews J Manlich | PPS20-0388 |
| Robert Manning | PPS20-0389 |
| Deborah Martin | PPS20-0072 |
| Michael Martin | PPS20-0073 |
| Ryan Martin | PPS20-0193 |
| Susie Martin | PPS20-0390 |
| Thomas Matthews | PPS20-0391 |
| Casey McKee | PPS20-0076 |
| Michael McMahon | PPS20-0392 |
| Michael Meade | PPS20-0393 |
| Michael Meador | PPS20-0077 |
| Kenny Medlin | PPS20-0078 |
| Arsalan Memon | PPS20-0396 |
| Eric Mendenhall | PPS20-0397 |
| Jenna Mendoza | PPS20-0398 |
| Matthew Millhollin | PPS20-0081 |
| Carla M Monehain | PPS20-0400 |
| Carlos Moreno | PPS20-0401 |
| Michael S Morrison | PPS20-0402 |
| Zachary P. Mueller | PPS20-0596 |
| Kelly Murski | PPS20-0403 |
| Andrew Myers | PPS20-0087 |
| Frederick Myers | PPS20-0088 |
| James Myers | PPS20-0089 |
| Stephanie Myers | PPS20-0090 |
| Paul Nardizzi | PPS20-0404 |
| Wendy Neff | PPS20-0405 |
| Christopher New | PPS20-0091 |
| Jillian Newkirk | PPS20-0406 |
| Jeremy Nicholas | PPS20-0092 |
| Michael Noble | PPS20-0093 |
| Michael C Nolon | PPS20-0409 |
| Colter Norris | PPS20-0410 |
| Dennis Norris | PPS20-0411 |
| Kody Norris | PPS20-0412 |
| Trinity Olson | PPS20-0413 |
| Craig Palmer | PPS20-0414 |
| Cynthia Paris | PPS20-0415 |
| Douglas W Patterson | PPS20-0416 |
| Antonio Perez | PPS20-0417 |
| Jaron Perkins | PPS20-0418 |
| Anha Pham | PPS20-0419 |
| Thai Pham | PPS20-0420 |
| Bonnie Phillippi | PPS20-0597 |
| Gregory Piazza | PPS20-0421 |
| Vincent A Piazza | PPS20-0422 |
| Brian T Pierce | PPS20-0423 |

| | |
|---|---|
| Timothy Pinney | PPS20-0424 |
| Joshua Pitts | PPS20-0425 |
| Craig Podgurski | PPS20-0598 |
| Rocellious Pope | PPS20-0426 |
| Nancy A Porter | PPS20-0427 |
| Andre Powell | PPS20-0428 |
| Benjamin Purses | PPS20-0429 |
| Richard Ramirez | PPS20-0430 |
| Charles Reardon | PPS20-0431 |
| Derek L Reddick | PPS20-0432 |
| Angela Reed | PPS20-0433 |
| Christopher Reed | PPS20-0434 |
| Edward Reed | PPS20-0435 |
| Betty G Rice | PPS20-0436 |
| Karen L Rice | PPS20-0437 |
| Cheryl Richey | PPS20-0439 |
| Terri Richards | PPS20-0106 |
| Debra Rios | PPS20-0440 |
| David M Roberts | PPS20-0206 |
| Patricia Roberts | PPS20-0207 |
| Jeroy Robinson | PPS20-0441 |
| Sammie Robinson | PPS20-0108 |
| Adrienne Rodriguez | PPS20-0442 |
| Gabriel Rodriguez | PPS20-0443 |
| Mateo F Rodriguez | PPS20-0444 |
| Richard C Ross | PPS20-0445 |
| Melissa Ruiz | PPS20-0446 |
| Antonio Ruque | PPS20-0447 |
| Geena Christine Rupp | PPS20-0599 |
| Edna Russell | PPS20-0110 |
| Lee H Russell | PPS20-0448 |
| Mark A Russell | PPS20-0449 |
| John Sadler | PPS20-0450 |
| Ligno Sanchez | PPS20-0451 |
| Virginia Saxon-Ford | PPS20-0452 |
| Greg Schermerhorn | PPS20-0453 |
| Brenda Schiwitz | PPS20-0111 |
| Michael Schuller | PPS20-0454 |
| Nathaniel Scott | PPS20-0455 |
| Grant Selvey | PPS20-0600 |
| Quratulain Shoukat | PPS20-0456 |
| Jeremy Small | PPS20-0457 |
| Monica Smith | PPS20-0458 |
| Anthony Spada | PPS20-0459 |
| Melissa Spencer | PPS20-0460 |
| Jamie Stallo | PPS20-0461 |
| Marc A Starks | PPS20-0462 |

| | | | | |
|---|---|---|---|---|
| Barbara Steil | PPS20-0463 | | Clinton Turpen | PPS20-0473 |
| Kelvin Stinyard | PPS20-0464 | | Henry J Valladares Cruz | PPS20-0474 |
| Randy Stone | PPS20-0117 | | Margarita Vasquez | PPS20-0475 |
| Sonja Stone | PPS20-0118 | | Robert E Vick, II | PPS20-0476 |
| Steven Stosur | PPS20-0465 | | Bradley Votaw | PPS20-0477 |
| Robert T Stover | PPS20-0006 | | Joseph T Wachowski | PPS20-0478 |
| Jeanie Straessler | PPS20-0466 | | Ambiko Wallace | PPS20-0479 |
| Chance Strawser | PPS20-0467 | | Vance M Warren, Sr. | PPS20-0480 |
| David Taliaferro | PPS20-0119 | | Barbara West | PPS20-0481 |
| Ramona Rose Talvacchio | PPS20-0468 | | Pamela K Wheetley | PPS20-0007 |
| Katherina M Tan | PPS20-0469 | | Jennifer White | PPS20-0482 |
| Berhane Tassaw | PPS20-0470 | | Gregory Willing | PPS20-0130 |
| Michael Taylor | PPS20-0120 | | Conni Wilson | PPS20-0131 |
| Courtney S. Thiemann | PPS20-0601 | | Deborah A Wilson | PPS20-0484 |
| Robert Hayes Thomas | PPS20-0602 | | Jerry Wilson | PPS20-0132 |
| Walter Thomas | PPS20-0603 | | Mitchell Wirth | PPS20-0485 |
| William Wyatt Thomas | PPS20-0604 | | Debra Woodhouse | PPS20-0133 |
| Christina Tiffany | PPS20-0471 | | Jerry Wooten | PPS20-0487 |
| Stephen M Troutz | PPS20-0472 | | Kimary Ann Zappia | PPS20-0606 |

as private process servers in the above-captioned matter.  In support of said motion, Plaintiff/Petitioner states that the above-named individuals are on the Court's list of approved process servers and the information contained in their applications and affidavits on file is current and still correct.

Respectfully Submitted,

By:  /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile:  913-371-0727
Email:    aj@kcconsumerlawyer.com
             mr@kcconsumerlawyer.com
             msr@kcconsumerlawyer.com
Attorneys for Plaintiff

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Petitioner/Plaintiff's Motion for Appointment of Private Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

DATE: _____13-Apr-2020_____

DEPUTY COURT ADMINISTRATOR



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>GEORGE EDGAR WOLF | Case Number: 2016-CV10644 |
|---|---|
| Plaintiff/Petitioner:<br>RHONDA CHEATEM<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>ALAN J. STECKLEIN<br>748 ANN AVENUE<br>KANSAS CITY, KS 66101 |
| Defendant/Respondent:<br>LANDMARK REALTY OF MISSOURI LLC<br>DBA: WILLOW CREEK<br>DBA: WILLOW CREEK APARTMENTS<br>DBA: LANDMARK REALTY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** LANDMARK REALTY OF MISSOURI LLC
DBA: WILLOW CREEK
DBA: WILLOW CREEK APARTMENTS
DBA: LANDMARK REALTY

**PRIVATE PROCESS SERVER**

R/A NICHOLAS J PORTO
1600 BALTIMORE, SUITE 200A
KANSAS CITY, MO 64101

*COURT SEAL OF*

*CIRCUIT COURT OF MISSOURI*

*JACKSON COUNTY*

   You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

13-APR-2020
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
   Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*          Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
                                              Date                                      Notary Public

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 20-SMCC-3257** 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 32 of 502

**Sheriff's Fees**

| | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $_____10.00_____ | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | **$_____** | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 20-SMCC-3257** 1 of 1Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**SUMMONS/GARNISHMENT SERVICE PACKETS**
**ATTORNEY INFORMATION**

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## KANSAS CITY

RHONDA K. CHEATEM, individually and
on behalf of all others similarly situated,

Plaintiffs,

vs.

LANDMARK REALTY OF MISSOURI,
LLC, d/b/a WILLOW CREEK, d/b/a
WILLOW CREEK APARTMENTS, and
d/b/a LANDMARK REALTY,

Defendant.

Case Number: 2016-CV10644

### RETURN OF SERVICE

I hereby certify that service of a Summons and Petition in a Class Action were served upon Defendant Landmark Realty of Missouri, LLC d/b/a Willow Creek, d/b/a Willow Creek Apartments and d/b/a Landmark Realty by delivering a copy of the pleadings to Edie Ferrara, legal assistant/authorized to accept process, on the 15th day of April 2020; (2) the address of the registered agent, where service was perfected is Nicholas J. Porto, 1600 Baltimore, Suite 200A, Kansas City, Missouri 64101. The Server's Return and Affidavit of Service are attached hereto.

Respectfully submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0727
Email: AJ@KCconsumerlawyer.com
MR@KCconsumerlawyer.com
MSR@KCconsumerlawyer.com
Attorneys for Plaintiff

## AFFIDAVIT OF SERVICE

State of Missouri       County of Jackson       Circuit Court

Case Number: 2016-CV10644

Plaintiff/Petitioner:
**RHONDA CHEATEM**

vs.

Defendant/Respondent:
**LANDMARK REALTY OF MISSOURI, LLC**

Received by HPS Process Service & Investigations to be served on **Landmark Realty of Missouri, LLC, d/b/a Willow Creek, d/b/a Willow Creek Apartments, d/b/a Landmark Realty, c/o Registered Agent: Nicholas J. Porto, 1600 Baltimore, Suite 200A, Kansas City, MO 64101.**

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **15th day of April, 2020 at 11:12 am, I:**

Served the within named establishment by delivering a true copy of **Summons in Civil Case; and Class Action Petition** to **Edie Ferrara, Legal Assistant/Authorized to Accept** at the address of **1600 Baltimore, Suite 200A, Kansas City, MO 64101.**

I am over the age of eighteen, and have no interest in the above action.

P.P.S.

**NATHANIEL SCOTT**
Process Server

Subscribed and Sworn to before me on the _____ day of _____ by the affiant who is personally known to me.

**HPS Process Service & Investigations**
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559

NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2021
Clay County
Commission #13452190

Our Job Serial Number: HAT-2020007176

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

Electronically Filed - Jackson - Kansas City - April 22, 2020 - 10:42 AM



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>GEORGE EDGAR WOLF | Case Number: 2016-CV10644 |
|---|---|
| Plaintiff's/Petitioner:<br>RHONDA CHEATEM | Plaintiff's/Petitioner's Attorney/Address<br>ALAN J. STECKLEIN<br>748 ANN AVENUE<br>KANSAS CITY, KS 66101 |
| **vs.** | |
| Defendant/Respondent:<br>LANDMARK REALTY OF MISSOURI LLC<br>DBA: WILLOW CREEK<br>DBA: WILLOW CREEK APARTMENTS<br>DBA: LANDMARK REALTY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

| The State of Missouri to: | LANDMARK REALTY OF MISSOURI LLC<br>DBA: WILLOW CREEK<br>DBA: WILLOW CREEK APARTMENTS<br>DBA: LANDMARK REALTY | **PRIVATE PROCESS SERVER** |
|---|---|---|

R/A NICHOLAS J PORTO
1600 BALTIMORE, SUITE 200A
KANSAS CITY, MO 64101

COURT SEAL OF

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

JACKSON COUNTY

13-APR-2020
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.
☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_Edie Ferrara_ (name) _Legal Assistant/Authorized to_ (title).
_Accept_
☐ other _____

Served at _1600 Baltimore Ste 200A Kansas City, MO 64101_ (address)
in _Jackson_ (County/City of St. Louis), MO, on _4-15-2020_ (date) at _11:12 A.M._ (time).
_Nathaniel Scott_ _____ PPS.
Printed Name of Sheriff or Server        Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

(Seal)        Subscribed and sworn to before me on _4-16-2020_ (date).
A. MOON
My Commission Expires        My commission expires: _____ _____
February 24, 2021        Date        Notary Public
Clay County
Commission #13452192

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
KANSAS CITY

RHONDA K. CHEATEM, individually and
on behalf of all others similarly situated,

                             Plaintiffs,    Case Number: 2016-CV10644

vs.

LANDMARK REALTY OF MISSOURI,
LLC, d/b/a WILLOW CREEK, d/b/a
WILLOW CREEK APARTMENTS, and
d/b/a LANDMARK REALTY,

                             Defendant.

## RETURN OF SERVICE

       I hereby certify that service of a Summons and Petition in a Class Action were served upon Defendant Landmark Realty of Missouri, LLC d/b/a Willow Creek, d/b/a Willow Creek Apartments and d/b/a Landmark Realty by delivering a copy of the pleadings to Edie Ferrara, legal assistant/authorized to accept process, on the 15th day of April 2020; (2) the address of the registered agent, where service was perfected is Nicholas J. Porto, 1600 Baltimore, Suite 200A, Kansas City, Missouri 64101. The Server's Return and Affidavit of Service are attached hereto.

                       Respectfully submitted,

                       By: /s/ A.J. Stecklein
                       A.J. Stecklein #46663
                       Michael H. Rapp #66688
                       Matthew S. Robertson #70442
                       Stecklein & Rapp Chartered
                       748 Ann Avenue, Suite 101
                       Kansas City, Kansas 66101
                       Telephone: 913-371-0727
                       Facsimile: 913-371-0727
                       Email: AJ@KCconsumerlawyer.com
                                   MR@KCconsumerlawyer.com
                                   MSR@KCconsumerlawyer.com
                       Attorneys for Plaintiff

## AFFIDAVIT OF SERVICE

State of Missouri        County of Jackson        Circuit Court

Case Number: 2016-CV10644

Plaintiff/Petitioner:
**RHONDA CHEATEM**

vs.

Defendant/Respondent:
**LANDMARK REALTY OF MISSOURI, LLC**

Received by HPS Process Service & Investigations to be served on **Landmark Realty of Missouri, LLC, d/b/a Willow Creek, d/b/a Willow Creek Apartments, d/b/a Landmark Realty, c/o Registered Agent: Nicholas J. Porto, 1600 Baltimore, Suite 200A, Kansas City, MO 64101.**

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **15th day of April, 2020 at 11:12 am, I:**

Served the within named establishment by delivering a true copy of **Summons in Civil Case; and Class Action Petition** to **Edie Ferrara, Legal Assistant/Authorized to Accept** at the address of **1600 Baltimore, Suite 200A, Kansas City, MO 64101.**

I am over the age of eighteen, and have no interest in the above action.

NATHANIEL SCOTT
Process Server

**HPS Process Service & Investigations**
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559

Subscribed and Sworn to before me on the _____ day of _____ by the affiant who is personally known to me.

NOTARY PUBLIC

My Commission Expires
February 24, 2021
Clay County
Commission #13452193

Our Job Serial Number: HAT-2020007176

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

Electronically Filed - Jackson - Kansas City - April 22, 2020 - 10:42 AM



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>GEORGE EDGAR WOLF | Case Number: 2016-CV10644 |
|---|---|
| Plaintiff's/Petitioner:<br>RHONDA CHEATEM | Plaintiff's/Petitioner's Attorney/Address<br>ALAN J. STECKLEIN<br>748 ANN AVENUE<br>KANSAS CITY, KS 66101 |
| **vs.** | |
| Defendant/Respondent:<br>LANDMARK REALTY OF MISSOURI LLC<br>DBA:  WILLOW CREEK<br>DBA:  WILLOW CREEK APARTMENTS<br>DBA:  LANDMARK REALTY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO  64106 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

| The State of Missouri to: | LANDMARK REALTY OF MISSOURI LLC<br>DBA:  WILLOW CREEK<br>DBA:  WILLOW CREEK APARTMENTS<br>DBA:  LANDMARK REALTY | **PRIVATE PROCESS SERVER** |
|---|---|---|

R/A NICHOLAS J PORTO
1600 BALTIMORE, SUITE 200A
KANSAS CITY, MO 64101

COURT SEAL OF

JACKSON COUNTY

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

13-APR-2020
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_Edie Ferrara_ (name) _Legal Assistant/ Authorized to_ (title).
_Accept_

☐ other _____

Served at _1600 Baltimore Ste. 200A Kansas City, MO 64101_ (address)

in _Jackson_ (County/City of St. Louis), MO, on _4·15·2020_ (date) at _11:12 A.M._ (time).

_Nathaniel Scott_ _____ PPS.
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

(Seal)  A. MOON
My Commission Expires
February 24, 2021
Clay County
Commission #13452192

Subscribed and sworn to before me on _4·10·2020_ (date).

My commission expires: _____ _____
Date                          Notary Public

Electronically Filed - Jackson - Kansas City - May 05, 2020 - 05:00 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT KANSAS CITY**

Rhonda K. Cheatem, individually and on behalf of
all others similarly situated,

                                         Plaintiff,

vs.

Landmark Realty of Missouri, LLC

                                         Defendant.

Case Number: 2016-CV10644

Division: 11

## ENTRY OF APPEARANCES

        COMES NOW Gina Chiala and Amy Sweeny Davis and hereby enter their appearances in

the above-captioned matter on behalf of the Plaintiff, Rhonda Cheatem.


                                    By:  /s/ Amy Sweeny Davis
                                    GINA CHIALA        # 59112
                                    AMY SWEENY DAVIS  # 45766
                                    HEARTLAND CENTER
                                    FOR JOBS AND FREEDOM, INC.
                                    4047 Central Street
                                    Kansas City, MO 64111
                                    Telephone: (816) 278-1092
                                    Facsimile: (816) 278-5785
                                    Email:  amysweenydavis@jobsandfreedom.org
                                    Attorneys for Plaintiff

1

Electronically Filed - Jackson - Kansas City - May 13, 2020 - 11:49 AM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

RHONDA CHEATEM,

                Plaintiff,

v.

LANDMARK REALTY OF MISSOURI,
LLC

                Defendant.

Case No. 2016-CV10644

<u>NOTICE OF REMOVAL TO FEDERAL COURT</u>

TO:    CLERK OF THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

PLEASE TAKE NOTICE that on May 13, 2020, Defendant Landmark Realty of Missouri, LLC filed its Notice of Removal to remove this matter to the United States District Court for the Western District of Missouri. A copy of this Notice of Removal (without exhibits) filed in federal court is attached hereto as Exhibit A.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_
        Nicholas J. Porto      MO #56938
        1600 Baltimore, Suite 200A
        Kansas City, Missouri 64108
        Telephone:  816.463.2311
        Facsimile:   816.463.9567
        nporto@portloaw.com
        *Attorneys for Defendant*
        *Landmark Realty of Missouri, LLC*

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_
        Stephen J. Moore      MO #59080
        1968 Shawnee Mission Pkwy, Suite 100
        Mission Woods, Kansas 66205
        Telephone:  816.471.0909
        Facsimile:   816.471.3888
        sjm@shankmoore.com
        *Attorneys for Defendant*
        *Landmark Realty of Missouri, LLC*

Electronically Filed - Jackson - Kansas City - May 13, 2020 - 11:49 AM

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was served this 13th of May, 2020 via United States mail and electronic mail to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

**Counsel for Plaintiff**
Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

*Nicholas J. Porto*
Attorney for Defendant

Electronically Filed - Jackson - Kansas City - May 13, 2020 - 11:49 AM

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | Case No. _____ |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Landmark Realty of Missouri, LLC (hereinafter "Defendant"), pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, hereby removes the above-captioned action to this Court from the Circuit Court of Jackson County, Missouri. As grounds for removal, Defendant states as follows:

1.      On April 13, 2020, Plaintiff commenced a civil action in the Circuit Court of Jackson County, Missouri, styled: *Rhonda Cheatem v. Landmark Realty of Missouri, LLC, d/b/a Willow Creek, d/b/a Willow Creek Apartments d/b/a Landmark Realty,* Case No. 2016-CV10644. A copy of the petition filed in state court is attached hereto as **Exhibit 1**. Copies of all other process, pleadings, and orders on file in the state court are attached hereto as **Exhibit 2**.

2.      Defendant was served with a copy of the Summons and Petition on April 15, 2020. This matter is timely removed under 28 U.S.C. § 1446(b), which requires the removing party to file the notice of removal within thirty (30) days of service of the summons and petition.

3.      28 U.S.C. § 1441(a) provides for removal of "any civil action in a State court of which the district courts of the United States have original jurisdiction." Pursuant to the federal

Electronically Filed - Jackson - Kansas City - May 13, 2020 - 11:49 AM

diversity statute, 28 U.S.C. § 1332(a), the federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Here, both elements of federal diversity jurisdiction are satisfied.

4.     This action involves an amount in controversy that exceeds $75,000, exclusive of interest and costs. This matter stems from an incident in November 2019 in which Plaintiff alleges Defendant wrongfully withheld an administration fee of $40.00, an application fee of $150.00, and a non-refundable security deposit of $450.00. Plaintiff asserts four (4) claims: (1) violation of Section 535.300 of the Missouri Revised Statutes for allegedly collecting non-refundable security deposits (Count I); violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020 for allegedly collecting non-refundable security deposits (Count II); violation of the MMPA for allegedly misrepresenting the status of a contract (Count III); and violation of the MMPA for allegedly collecting unconscionable application fees (Count IV). For her claims under the MMPA, Plaintiff seeks to recover actual damages, punitive damages and attorneys' fees.

5.     Although Defendant denies all liability in this case, the claims alleged by Plaintiff put more than $75,000 in controversy. If she prevails, the MMPA authorizes Plaintiff to recover attorneys' fees based on the amount of time reasonably expended by counsel. *See* Mo. Rev. Stat. § 407.025.1. Attorneys' fee awards in MMPA cases are not required to be proportional to the amount of actual damages, and even small-value cases can result in fee awards well beyond the $75,000 jurisdictional threshold. *See, e.g.*, *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802, 808 (Mo. Ct. App. 2014) (noting attorneys' fee award of $388,059 in case with actual damages of just $27,696.96); *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 213 (Mo. Ct. App. 2013) (noting attorneys' fee award of $165,350 in case with actual damages of just $11,007.81). Plaintiff also is

2

authorized to recover punitive damages on her MMPA claims. *See* Mo. Rev. Stat. § 407.025.1. Awards of such damages in MMPA cases can also far exceed the required amount in controversy. *See, e.g.*, *Kerr*, 439 S.W.3d at 815-17 (affirming punitive damages award of $2,078,679.80); *Peel*, 408 S.W.3d at 213-14 (affirming punitive damages award of $881,789.05). Together, the potential awards of attorneys' fees and punitive damages are more than sufficient to satisfy the jurisdictional threshold of Section 1332(a).

6.     The parties in this case are also completely diverse:

a.     As alleged in the Petition, Plaintiff is a resident and citizen of the State of Missouri.

b.     Defendant is a limited liability company and its citizenship for diversity purposes is determined by the citizenship of its members. *Little Otters of Love, LLC v. Rosenberg*, 724 Fed. App'x 498, 501 (8th Cir. 2018) ("For purposes of establishing diversity, a limited liability company's citizenship is the citizenship of each of its members." (citing *OnePoint Solutions, LLC. v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007))). The sole member of Defendant is Robert Imhoff, who is a citizen of the State of California.

c.     Because Plaintiff is a citizen of Missouri and Defendant is a citizen of California, complete diversity exists in this case.

7.     In light of the amount in controversy and the complete diversity of citizenship, the Court has original jurisdiction over this case under Section 1332(a) and the matter is removable under Sections 1441 and 1446. Removal to this Court is not prohibited under Section 1441(b)(2) because Defendant is not a citizen of the State of Missouri. The requirements of Section 1446 are

satisfied because this Notice of Removal is timely filed, and Defendant is the lone defendant in the case and the consent of any other parties to removal is therefore unnecessary.

8.     In accordance with Section 1446(a), copies of the record and proceedings in the state court action —including all process, pleadings and orders—are attached to this Notice of Removal.

9.     In accordance with Section 1446(d), Defendant will promptly serve written notice of removal to Plaintiff's attorneys of record in the state court action and file with the state court a copy of this Notice of Removal.

10.     In accordance with Section 1441(a), Defendant has removed this case to the Western Division of this Court and designates Kansas City as the place of trial. Defendant requests a trial by jury on all issues so triable.

11.     By this Notice of Removal, Defendant does not waive any affirmative defense that it may possess. Defendant does not concede that Plaintiff has stated any viable claim for relief against it, and Defendant denies any and all liability in this action.

WHEREFORE, Defendant Landmark Realty of Missouri, LLC files this Notice of Removal and requests that the Court assume full jurisdiction over the claims asserted in this action under 28 U.S.C. §§ 1332, 1441 and 1446.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_
      Nicholas J. Porto      MO #56938
      1600 Baltimore, Suite 200A
      Kansas City, Missouri 64108
      Telephone: 816.463.2311
      Facsimile: 816.463.9567
      nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_
      Stephen J. Moore      MO #59080
      1968 Shawnee Mission Pkwy, Suite 100
      Mission Woods, Kansas 66205
      Telephone: 816.471.0909
      Facsimile: 816.471.3888
      sjm@shankmoore.com

*Attorneys for Defendant Landmark Realty of*
*Missouri, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was served this 13th day of May, 2020 via United States mail and electronic mail to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

                                      _Nicholas J. Porto_
                                      Attorney for Defendant

5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**Office of the Clerk**

**Paige Wymore-Wynn**
**Clerk of Court**

**REPLY TO:**
**400 E. 9ᵗʰ Street**
**Kansas City, MO 64106**

November 13, 2020

16th Circuit Court of Jackson County Missouri
415 E 12th Street, Attn: Intake Clerk
Kansas City, MO 64106

Re:    Remand of our Civil Case No. 20-381-CV-W-BP
       Cheatem v. Landmark Realty of Missouri, LLC
       (Circuit Court No. 2016-CV10644)

Dear Clerk:

The above case has been remanded to your court by the Western District of Missouri.   Pursuant
to the Federal Rules of Civil Procedure and 28 U.S.C. § 1447, we are enclosing a certified copy of
the *Order of Remand*, as well as a copy of our Court's latest docket sheet.

The Western District of Missouri uses an electronic case management and filing system
(CM/ECF).   As a result, we do not maintain paper files and our "official" court file is the
electronic version maintained in CM/ECF.   You can access our electronic case file using CM/ECF
(http://ecf.mowd.uscourts.gov).   In order to access the electronic case file, you will need a
PACER viewing account.   If your court does not have access to a PACER account, or if you
experience any PACER-related login issues, please contact PACER directly (1-800-676-6856 or
https://www.pacer.gov/).   Additionally, you will need Adobe Acrobat Reader installed on your
computer to view the electronic documents.

Sincerely,

Paige Wymore-Wynn, Clerk of Court

By:    Greg Melvin, Deputy Clerk

Enclosures: Docket sheet, certified order remanding case

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

RHONDA CHEATEM,                          )
                                         )
                      Plaintiff,         )
                                         )        No. 20-00381-CV-W-BP
        v.                               )
                                         )        *ECF Doc.*
LANDMARK REALTY OF MISSOURI,             )        I hereby attest and certify this is a printed copy of a
LLC,                                     )        document which was electronically filed with the United States
                                         )        District Court for the Western District of Missouri.
                      Defendant.         )
                                         )        Date Filed: 11/12/2020   Paige A. Wymore-Wynn, Clerk
                                                  By: _____, Deputy Clerk

## ORDER REMANDING CASE TO STATE COURT

Plaintiff filed this suit in state court in April 2020, asserting various claims arising from

Defendant's alleged failure to return a $450 security deposit that Defendant believed she was owed.

(Doc. 1-1.) Defendant removed the case to federal court in May 2020, asserting that federal

jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states

and more than $75,000 is in controversy. (Doc. 1, ¶¶ 4-7.)[1] In July, however, Defendant changed its

position with respect to the Court's jurisdiction and asked that the case be dismissed because

Plaintiff does not have standing. (Doc. 14, pp. 4-6.) The motion alternatively asked the Court to

dismiss the case because Plaintiff failed to state a claim. Plaintiff filed an Amended Complaint,

(Doc. 31), and the Court denied Defendant's motion as moot. (Doc. 32.) Defendant then filed

another motion directed to the Amended Complaint, again contending that Plaintiff lacks standing.

(Doc. 34, pp. 4-6.)

The party bringing a case to federal court bears the burden of establishing jurisdiction. *E.g.,*

*Moore v. Kansas City Public School*, 828 F.3d 687, 691 (8th Cir. 2016). Defendant sought this

Court's jurisdiction, so Defendant must demonstrate that it exists. *E.g., id.; see also* 28 U.S.C. §

---

[1] The Court has doubts as to whether it is legally possible for attorney fees and punitive damages to be awarded in a
sufficient amount to make the amount in controversy exceed $75,000. The Court's holding makes it unnecessary to

1446(a) (requiring removing defendant or defendants to state "the grounds for removal" in the Notice of Removal). If the Court lacks jurisdiction the case must be remanded. 28 U.S.C. § 1447(c). This includes circumstances where jurisdiction is lacking due to an absence of standing. *E.g., Hughes v. City of Cedar Rapids*, 840 F.3d 987, 993 (8th Cir. 2016).[2]

Thus, Defendant removed this case to federal court and thereby took the responsibility of establishing that jurisdiction exists. After removing the case, Defendant has reversed its position and now contends that jurisdiction is lacking. Given Defendant's change in position, the Court believes the appropriate course is to remand the case to state court.

IT IS SO ORDERED.

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATE: November 12, 2020

---

consider this issue.

[2] Remand when standing is absent is the appropriate course because the standing doctrine is derived from Article III's "case or controversy" requirement, *e.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), but Article III does not apply to the states. Moreover, it is not the federal courts' role to dictate whether state courts have jurisdiction.

2

CLOSED,MAPN

# U.S. District Court
## Western District of Missouri (Kansas City)
## CIVIL DOCKET FOR CASE #: 4:20-cv-00381-BP

Cheatem v. Landmark Realty of Missouri, LLC      Date Filed: 05/13/2020
Assigned to: Chief District Judge Beth Phillips      Date Terminated: 11/12/2020
Demand: $75,000      Jury Demand: Both
Case in other court: Circuit Court for Jackson County,      Nature of Suit: 360 P.I.: Other
                 Missouri, 2016-cv10644      Jurisdiction: Diversity
Cause: 28:1441 Petition for Removal- Tort/Non-Motor Vehic

## Plaintiff

**Rhonda Cheatem**      represented by   **Alan J. Stecklein**
     Stecklein & Rapp Chartered
     748 Ann Avenue
     Suite 101
     Kansas City, KS 66101
     913-371-0727
     Fax: 913-371-0727
     Email: aj@kcconsumerlawyer.com
     *LEAD ATTORNEY*
     *ATTORNEY TO BE NOTICED*
     *Bar Status: Active*

     **Amy Sweeny Davis**
     28 E. 56th St.
     Kansas City, MO 64113
     (816) 309-0665
     Email:
     amysweenydavis@jobsandfreedom.org
     *ATTORNEY TO BE NOTICED*
     *Bar Status: Active*

     **Gina Chiala**
     Heartland Center for Jobs and Freedom
     4047 Central St
     Kansas City, MO 64111
     816-278-1092
     Email: ginachiala@jobsandfreedom.org
     *ATTORNEY TO BE NOTICED*
     *Bar Status: Active*

     **Matthew S. Robertson**
     Stecklein & Rapp Chartered
     748 Ann Avenue

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 53 of 502

Kansas City, KS 66101
913-371-0727
Fax: 913-371-0727
Email: msr@kcconsumerlawyer.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

**Michael H Rapp**
Stecklein & Rapp Chartered
748 Ann Avenue
Suite 101
Kansas City, KS 66101
913-371-0727
Fax: 913-371-0727
Email: mr@kcconsumerlawyer.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

V.

**Defendant**

| | | |
|---|---|---|
| **Landmark Realty of Missouri, LLC** | represented by | **Stephen J. Moore** |

*doing business as*
Willow Creek
*doing business as*
Willow Creek Apartments
*doing business as*
Landmark Realty

Shank & Moore, LLC
1968 Shawnee Mission Parkway
Suite 100
Mission Woods, KS 66205
(816) 471-0909
Fax: (816) 471-3888
Email: sjm@shankmoore.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

**Nicholas Porto**
The Porto Law Firm
1600 Baltimore
Suite 200A
Kansas City, MO 64108
816-463-2311
Fax: 816-463-9567
Email: nporto@portolaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| | | |

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 54 of 502

| 05/13/2020 | 1 | NOTICE OF REMOVAL from Jackson County, Missouri County, case number 2016-cv10644, Landmark Realty of Missouri, LLC. Filing fee $ 400, receipt number AMOWDC-6856710. (Attachments: # 1 State Court Petition State Court Petition, # 2 Supplement State Court File)(Porto, Nicholas) (Additional attachment(s) added on 5/13/2020: # 3 Civil Cover Sheet) (Kern, Kendra). (Entered: 05/13/2020) |
|---|---|---|
| 05/13/2020 | 2 | DISCLOSURE OF CORPORATE INTERESTS filed by Nicholas Porto on behalf of Defendant Landmark Realty of Missouri, LLC.(Porto, Nicholas) (Entered: 05/13/2020) |
| 05/13/2020 | 3 | **NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR DEADLINES AND REQUIREMENTS.** **Notice of MAP assignment to United States Magistrate Judge John T. Maughmer. (Attachments: # 1 MAP General Order)(Woods, Gloria)** (Entered: 05/13/2020) |
| 05/14/2020 | 4 | ORDER. RULE 16 NOTICE. Proposed scheduling order due by 6/30/2020. Rule 26 conference due by 6/16/2020. Signed on 5/14/20 by Chief District Judge Beth Phillips. (Cordell, Annette) (Main Document 4 replaced on 5/14/2020) (Cordell, Annette). (Entered: 05/14/2020) |
| 05/20/2020 | 5 | ORDER setting Settlement Conference set for 8/18/2020 at 10:30 AM in Courtroom 7E, Kansas City (JTM) before Magistrate Judge John T. Maughmer. Signed on 5/20/2020 by Magistrate Judge John T. Maughmer. (Stepp, Jane) (Entered: 05/20/2020) |
| 05/20/2020 | 6 | ANSWER to Complaint on behalf of Landmark Realty of Missouri, LLC.(Moore, Stephen) (Entered: 05/20/2020) |
| 06/04/2020 | 7 | DEMAND for Trial by Jury by Rhonda Cheatem. (Stecklein, Alan) (Entered: 06/04/2020) |
| 06/30/2020 | 8 | Joint PROPOSED SCHEDULING ORDER by Rhonda Cheatem. (Stecklein, Alan) (Entered: 06/30/2020) |
| 07/02/2020 | 9 | SCHEDULING ORDER: Discovery due by 5/28/2021. Dispositive Motions due by 7/2/2021. Teleconference set for 12/27/2021 10:30 AM. Pretrial Conference set for 1/14/2022, 1:30 PM Courtroom 7A, Kansas City (BP) before Chief District Judge Beth Phillips. Jury Trial set for 1/24/2022, 8:30 AM in Courtroom 7A, Kansas City (BP) before Chief District Judge Beth Phillips. Signed on 7/2/20 by Chief District Judge Beth Phillips. (Cordell, Annette) (Entered: 07/02/2020) |
| 07/14/2020 | 10 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Alan J. Stecklein on behalf of Plaintiff Rhonda Cheatem.(Stecklein, Alan) (Entered: 07/14/2020) |
| 07/14/2020 | 11 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Nicholas Porto on behalf of Defendant Landmark Realty of Missouri, LLC.(Porto, Nicholas) (Entered: 07/14/2020) |

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 55 of 502

| | | |
|---|---|---|
| 07/15/2020 | | NOTICE OF HEARING CANCELLATION - The Settlement Conference scheduled for 8/18/2020 at 10:30 a.m. has been cancelled. This is a TEXT ONLY ENTRY. No document is attached. (Stepp, Jane) (Entered: 07/15/2020) |
| 07/16/2020 | 12 | **AMENDED NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR IMPORTANT CHANGES, DEADLINES AND REQUIREMENTS.** <br><br> **Notice of MAP re-assignment to an outside mediator.** (Attachments: # 1 MAP General Order)(Woods, Gloria) (Entered: 07/16/2020) |
| 07/20/2020 | 13 | MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Stephen J. Moore on behalf of Landmark Realty of Missouri, LLC. Suggestions in opposition/response due by 8/3/2020 unless otherwise directed by the court. (Moore, Stephen) (Entered: 07/20/2020) |
| 07/20/2020 | 14 | SUGGESTIONS in support re 13 MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. (Attachments: # 1 Exhibit 1 - Marcus Declaration (with Exs. 1-A, 1-B and 1-C), # 2 Exhibit 2 - Cheatem Account Statement)(Related document(s) 13 ) (Moore, Stephen) (Entered: 07/20/2020) |
| 07/24/2020 | 15 | CERTIFICATE OF SERVICE by Rhonda Cheatem *of Plaintiff's first set of discovery to Defendant* filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem.(Robertson, Matthew) (Entered: 07/24/2020) |
| 08/03/2020 | 16 | DESIGNATION OF MEDIATOR naming John Phillips(Stecklein, Alan) (Entered: 08/03/2020) |
| 08/03/2020 | 17 | AMENDED COMPLAINT -- *Class Action* against Landmark Realty of Missouri, LLC filed by Alan J. Stecklein on behalf of Rhonda Cheatem. (Stecklein, Alan) (Entered: 08/03/2020) |
| 08/03/2020 | 18 | MOTION to withdraw document 17 Amended Complaint filed by Alan J. Stecklein on behalf of Rhonda Cheatem. Suggestions in opposition/response due by 8/17/2020 unless otherwise directed by the court. (Related document(s) 17 ) (Stecklein, Alan) (Entered: 08/03/2020) |
| 08/03/2020 | 19 | Consent MOTION for extension of time to file response/reply as to 13 MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Matthew S. Robertson on behalf of Rhonda Cheatem. Suggestions in opposition/response due by 8/17/2020 unless otherwise directed by the court. (Related document(s) 13 ) (Robertson, Matthew) (Entered: 08/03/2020) |
| 08/04/2020 | 20 | ORDER granting 18 motion to withdraw document and 19 motion for extension of time to file response/reply re 13 MOTION to dismiss case *and/or for Judgment on the Pleadings*. The Amended Complaint filed on 8/3/2020 (Doc. 17) is withdrawn, and the Petition filed in state court (Doc. 1-1) will become Plaintiff's operative pleading. Suggestions in opposition/response to the Motion to Dismiss are due by 8/17/2020 unless |

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 56 of 502

| | | |
|---|---|---|
| | | otherwise directed by the court. Signed on 8/4/20 by Chief District Judge Beth Phillips. This is a TEXT ONLY ENTRY. No document is attached. (Wolfe, Steve) (Entered: 08/04/2020) |
| 08/05/2020 | | NOTICE of filing: Mediation and Assessment Program Reminder: Your post-mediation status report is due within 10 calendar days after the mediation. See MAP FAQs on Court's website for specifics and submit report(s) to: map@mow.uscourts.gov. (ADI, MAP) (Entered: 08/05/2020) |
| 08/17/2020 | 21 | SUGGESTIONS in opposition re 13 MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem. Reply suggestions due by 8/31/20 unless otherwise directed by the court. (Attachments: # 1 Exhibit A - Appellants Brief)(Related document(s) 13 ) (Robertson, Matthew) (Entered: 08/17/2020) |
| 08/27/2020 | 22 | MOTION to amend/correct 1 Notice of Removal, - *Class Action Petition* filed by Matthew S. Robertson on behalf of Rhonda Cheatem. Suggestions in opposition/response due by 9/10/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit A - Proposed Amended Complaint)(Related document(s) 1 ) (Robertson, Matthew) (Entered: 08/27/2020) |
| 08/27/2020 | 23 | SUGGESTIONS in support re 22 MOTION to amend/correct 1 Notice of Removal, - *Class Action Petition* filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem. (Related document(s) 22 ) (Robertson, Matthew) (Entered: 08/27/2020) |
| 08/31/2020 | 24 | REPLY SUGGESTIONS to motion re 13 MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. (Related document(s) 13 ) (Moore, Stephen) (Entered: 08/31/2020) |
| 09/03/2020 | 25 | NOTICE of appearance by Amy Sweeny Davis on behalf of All Plaintiffs (Attorney Amy Sweeny Davis added to party Rhonda Cheatem(pty:pla)) (Davis, Amy) (Entered: 09/03/2020) |
| 09/04/2020 | 26 | SUGGESTIONS in opposition re 22 MOTION to amend/correct 1 Notice of Removal, - *Class Action Petition* filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. Reply suggestions due by 9/18/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit A - Credit Card Account Statement (redacted))(Related document(s) 22 ) (Moore, Stephen) (Entered: 09/04/2020) |
| 09/15/2020 | 27 | CERTIFICATE OF SERVICE by Landmark Realty of Missouri, LLC filed by Nicholas Porto on behalf of Defendant Landmark Realty of Missouri, LLC.(Porto, Nicholas) (Entered: 09/15/2020) |
| 09/18/2020 | 28 | REPLY SUGGESTIONS to motion re 22 MOTION to amend/correct 1 Notice of Removal, - *Class Action Petition* filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem. (Attachments: # 1 Exhibit A - Redacted) (Related document(s) 22 ) (Robertson, Matthew) (Entered: 09/18/2020) |
| 09/23/2020 | 29 | Consent MOTION for leave to file *sur-reply suggestions in opposition to Plaintiff's motion for leave to file amended complaint* filed by Stephen J. Moore on behalf of Landmark Realty of Missouri, LLC. Suggestions in |

| | | opposition/response due by 10/7/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1 - Proposed Sur-Reply Suggestions)(Moore, Stephen) (Entered: 09/23/2020) |
|---|---|---|
| 10/05/2020 | 30 | ORDER granting 22 motion to file Amended Complaint; denying 29 motion for leave to file surreply. Plaintiff shall have three business days to file her Amended Complaint. Signed on 10/5/20 by Chief District Judge Beth Phillips. (Wolfe, Steve) (Entered: 10/05/2020) |
| 10/05/2020 | 31 | AMENDED COMPLAINT - *Class Action* against Landmark Realty of Missouri, LLC filed by Alan J. Stecklein on behalf of Rhonda Cheatem. (Stecklein, Alan) (Entered: 10/05/2020) |
| 10/06/2020 | 32 | ORDER finding as moot 13 motion to dismiss case, in light of Plaintiff's filing of an Amended Complaint. Signed on 10/6/20 by Chief District Judge Beth Phillips. This is a TEXT ONLY ENTRY. No document is attached. (Wolfe, Steve) (Entered: 10/06/2020) |
| 10/07/2020 | 33 | MOTION to dismiss for lack of jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Stephen J. Moore on behalf of Landmark Realty of Missouri, LLC. Suggestions in opposition/response due by 10/21/2020 unless otherwise directed by the court. (Moore, Stephen) (Entered: 10/07/2020) |
| 10/07/2020 | 34 | SUGGESTIONS in support re 33 MOTION to dismiss for lack of jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. (Attachments: # 1 Exhibit 1 - Marcus Declaration (with Exs. 1-A, 1-B and 1-C), # 2 Exhibit 2 - Cheatem Account Statement)(Related document(s) 33 ) (Moore, Stephen) (Entered: 10/07/2020) |
| 10/21/2020 | 35 | SUGGESTIONS in opposition re 33 MOTION to dismiss for lack of jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem. Reply suggestions due by 11/4/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Related document(s) 33 ) (Robertson, Matthew) (Entered: 10/21/2020) |
| 11/04/2020 | 36 | REPLY SUGGESTIONS to motion re 33 MOTION to dismiss for lack of jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. (Related document(s) 33 ) (Moore, Stephen) (Entered: 11/04/2020) |
| 11/12/2020 | 37 | ORDER REMANDING CASE TO STATE COURT Signed on 11/12/2020 by Chief District Judge Beth Phillips. (McIlvain, Kelly) (Entered: 11/12/2020) |
| 11/12/2020 | 38 | CLERK'S JUDGMENT (McIlvain, Kelly) (Entered: 11/12/2020) |

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 58 of 502

| 11/13/2020 | ⌐ | 39 | MOTION for reconsideration re 37 Order *Remanding Case to State Court* filed by Stephen J. Moore on behalf of Landmark Realty of Missouri, LLC. Suggestions in opposition/response due by 11/27/2020 unless otherwise directed by the court. (Related document(s) 37 ) (Moore, Stephen) (Entered: 11/13/2020) |
|---|---|---|---|
| 11/13/2020 | | 40 | NOTICE of filing *of Exhibit 1 to Motion for Reconsidertaion (Doc. #39)* by Landmark Realty of Missouri, LLC re 39 MOTION for reconsideration re 37 Order *Remanding Case to State Court* (Moore, Stephen) (Entered: 11/13/2020) |

File in Case No. 4:20-cv-00381-BP
in the United States District Court for the
Western District of Missouri

**U.S. District Court**
**Western District of Missouri (Kansas City)**
**CIVIL DOCKET FOR CASE #: 4:20−cv−00381−BP**

Cheatem v. Landmark Realty of Missouri, LLC
Assigned to: Chief District Judge Beth Phillips
Demand: $75,000
Case in other court:  Circuit Court for Jackson County,
                              Missouri, 2016−cv10644
Cause: 28:1441 Petition for Removal− Tort/Non−Motor Vehic

Date Filed: 05/13/2020
Date Terminated: 11/12/2020
Jury Demand: Both
Nature of Suit: 360 P.I.: Other
Jurisdiction: Diversity

**Plaintiff**

**Rhonda Cheatem**                                represented by   **Alan J. Stecklein**
                                                                Stecklein & Rapp Chartered
                                                                748 Ann Avenue
                                                                Suite 101
                                                                Kansas City, KS 66101
                                                                913−371−0727
                                                                Fax: 913−371−0727
                                                                Email: aj@kcconsumerlawyer.com
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Amy Sweeny Davis**
                                                                28 E. 56th St.
                                                                Kansas City, MO 64113
                                                                (816) 309−0665
                                                                Email: amysweenydavis@jobsandfreedom.org
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Gina Chiala**
                                                                Heartland Center for Jobs and Freedom
                                                                4047 Central St
                                                                Kansas City, MO 64111
                                                                816−278−1092
                                                                Email: ginachiala@jobsandfreedom.org
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Matthew S. Robertson**
                                                                Stecklein & Rapp Chartered
                                                                748 Ann Avenue
                                                                Kansas City, KS 66101
                                                                913−371−0727
                                                                Fax: 913−371−0727
                                                                Email: msr@kcconsumerlawyer.com
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Michael H Rapp**
                                                                Stecklein & Rapp Chartered
                                                                748 Ann Avenue
                                                                Suite 101
                                                                Kansas City, KS 66101
                                                                913−371−0727
                                                                Fax: 913−371−0727
                                                                Email: mr@kcconsumerlawyer.com
                                                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**

                                                                represented by

**Landmark Realty of Missouri, LLC**
*doing business as*
Willow Creek
*doing business as*
Willow Creek Apartments
*doing business as*
Landmark Realty

**Stephen J. Moore**
Shank & Moore, LLC
1968 Shawnee Mission Parkway
Suite 100
Mission Woods, KS 66205
(816) 471−0909
Fax: (816) 471−3888
Email: sjm@shankmoore.com
*ATTORNEY TO BE NOTICED*

**Nicholas Porto**
The Porto Law Firm
1600 Baltimore
Suite 200A
Kansas City, MO 64108
816−463−2311
Fax: 816−463−9567
Email: nporto@portolaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/13/2020 | 1 | NOTICE OF REMOVAL from Jackson County, Missouri County, case number 2016−cv10644, Landmark Realty of Missouri, LLC. Filing fee $ 400, receipt number AMOWDC−6856710. (Attachments: # 1 State Court Petition State Court Petition, # 2 Supplement State Court File)(Porto, Nicholas) (Additional attachment(s) added on 5/13/2020: # 3 Civil Cover Sheet) (Kern, Kendra). (Entered: 05/13/2020) |
| 05/13/2020 | 2 | DISCLOSURE OF CORPORATE INTERESTS filed by Nicholas Porto on behalf of Defendant Landmark Realty of Missouri, LLC.(Porto, Nicholas) (Entered: 05/13/2020) |
| 05/13/2020 | 3 | **NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR DEADLINES AND REQUIREMENTS.**<br><br>**Notice of MAP assignment to United States Magistrate Judge John T. Maughmer.** (Attachments: # 1 MAP General Order)(Woods, Gloria) (Entered: 05/13/2020) |
| 05/14/2020 | 4 | ORDER. RULE 16 NOTICE. Proposed scheduling order due by 6/30/2020. Rule 26 conference due by 6/16/2020. Signed on 5/14/20 by Chief District Judge Beth Phillips. (Cordell, Annette) (Main Document 4 replaced on 5/14/2020) (Cordell, Annette). (Entered: 05/14/2020) |
| 05/20/2020 | 5 | ORDER setting Settlement Conference set for 8/18/2020 at 10:30 AM in Courtroom 7E, Kansas City (JTM) before Magistrate Judge John T. Maughmer. Signed on 5/20/2020 by Magistrate Judge John T. Maughmer. (Stepp, Jane) (Entered: 05/20/2020) |
| 05/20/2020 | 6 | ANSWER to Complaint on behalf of Landmark Realty of Missouri, LLC.(Moore, Stephen) (Entered: 05/20/2020) |
| 06/04/2020 | 7 | DEMAND for Trial by Jury by Rhonda Cheatem. (Stecklein, Alan) (Entered: 06/04/2020) |
| 06/30/2020 | 8 | Joint PROPOSED SCHEDULING ORDER by Rhonda Cheatem. (Stecklein, Alan) (Entered: 06/30/2020) |
| 07/02/2020 | 9 | SCHEDULING ORDER: Discovery due by 5/28/2021. Dispositive Motions due by 7/2/2021. Teleconference set for 12/27/2021 10:30 AM. Pretrial Conference set for 1/14/2022, 1:30 PM Courtroom 7A, Kansas City (BP) before Chief District Judge Beth Phillips. Jury Trial set for 1/24/2022, 8:30 AM in Courtroom 7A, Kansas City (BP) before Chief District Judge Beth Phillips. Signed on 7/2/20 by Chief District Judge Beth Phillips. (Cordell, Annette) (Entered: 07/02/2020) |
| 07/14/2020 | 10 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Alan J. Stecklein on behalf of Plaintiff Rhonda Cheatem.(Stecklein, Alan) (Entered: |

| | | 07/14/2020) |
|---|---|---|
| 07/14/2020 | 11 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Nicholas Porto on behalf of Defendant Landmark Realty of Missouri, LLC.(Porto, Nicholas) (Entered: 07/14/2020) |
| 07/15/2020 | | NOTICE OF HEARING CANCELLATION − The Settlement Conference scheduled for 8/18/2020 at 10:30 a.m. has been cancelled. This is a TEXT ONLY ENTRY. No document is attached. (Stepp, Jane) (Entered: 07/15/2020) |
| 07/16/2020 | 12 | **AMENDED NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR IMPORTANT CHANGES, DEADLINES AND REQUIREMENTS.**<br><br>**Notice of MAP re−assignment to an outside mediator.** (Attachments: # 1 MAP General Order)(Woods, Gloria) (Entered: 07/16/2020) |
| 07/20/2020 | 13 | MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Stephen J. Moore on behalf of Landmark Realty of Missouri, LLC. Suggestions in opposition/response due by 8/3/2020 unless otherwise directed by the court. (Moore, Stephen) (Entered: 07/20/2020) |
| 07/20/2020 | 14 | SUGGESTIONS in support re 13 MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. (Attachments: # 1 Exhibit 1 − Marcus Declaration (with Exs. 1−A, 1−B and 1−C), # 2 Exhibit 2 − Cheatem Account Statement)(Related document(s) 13 ) (Moore, Stephen) (Entered: 07/20/2020) |
| 07/24/2020 | 15 | CERTIFICATE OF SERVICE by Rhonda Cheatem *of Plaintiff's first set of discovery to Defendant* filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem.(Robertson, Matthew) (Entered: 07/24/2020) |
| 08/03/2020 | 16 | DESIGNATION OF MEDIATOR naming John Phillips(Stecklein, Alan) (Entered: 08/03/2020) |
| 08/03/2020 | 17 | AMENDED COMPLAINT −− *Class Action* against Landmark Realty of Missouri, LLC filed by Alan J. Stecklein on behalf of Rhonda Cheatem.(Stecklein, Alan) (Entered: 08/03/2020) |
| 08/03/2020 | 18 | MOTION to withdraw document 17 Amended Complaint filed by Alan J. Stecklein on behalf of Rhonda Cheatem. Suggestions in opposition/response due by 8/17/2020 unless otherwise directed by the court. (Related document(s) 17 ) (Stecklein, Alan) (Entered: 08/03/2020) |
| 08/03/2020 | 19 | Consent MOTION for extension of time to file response/reply as to 13 MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Matthew S. Robertson on behalf of Rhonda Cheatem. Suggestions in opposition/response due by 8/17/2020 unless otherwise directed by the court. (Related document(s) 13 ) (Robertson, Matthew) (Entered: 08/03/2020) |
| 08/04/2020 | 20 | ORDER granting 18 motion to withdraw document and 19 motion for extension of time to file response/reply re 13 MOTION to dismiss case *and/or for Judgment on the Pleadings*. The Amended Complaint filed on 8/3/2020 (Doc. 17) is withdrawn, and the Petition filed in state court (Doc. 1−1) will become Plaintiff's operative pleading. Suggestions in opposition/response to the Motion to Dismiss are due by 8/17/2020 unless otherwise directed by the court. Signed on 8/4/20 by Chief District Judge Beth Phillips. This is a TEXT ONLY ENTRY. No document is attached. (Wolfe, Steve) (Entered: 08/04/2020) |
| 08/05/2020 | | NOTICE of filing: Mediation and Assessment Program Reminder: Your post−mediation status report is due within 10 calendar days after the mediation. See MAP FAQs on Court's website for specifics and submit report(s) to: map@mow.uscourts.gov. (ADI, MAP) (Entered: 08/05/2020) |
| 08/17/2020 | 21 | SUGGESTIONS in opposition re 13 MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem. Reply suggestions due by 8/31/2020 unless otherwise directed by the court. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Exhibit A − Appellants Brief)(Related document(s) 13 ) (Robertson, Matthew) (Entered: 08/17/2020) |
| 08/27/2020 | 22 | MOTION to amend/correct 1 Notice of Removal, − *Class Action Petition* filed by Matthew S. Robertson on behalf of Rhonda Cheatem. Suggestions in opposition/response due by 9/10/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit A − Proposed Amended Complaint)(Related document(s) 1 ) (Robertson, Matthew) (Entered: 08/27/2020) |
| 08/27/2020 | 23 | SUGGESTIONS in support re 22 MOTION to amend/correct 1 Notice of Removal, − *Class Action Petition* filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem. (Related document(s) 22 ) (Robertson, Matthew) (Entered: 08/27/2020) |
| 08/31/2020 | 24 | REPLY SUGGESTIONS to motion re 13 MOTION to dismiss case *and/or for Judgment on the Pleadings* filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. (Related document(s) 13 ) (Moore, Stephen) (Entered: 08/31/2020) |
| 09/03/2020 | 25 | NOTICE of appearance by Amy Sweeny Davis on behalf of All Plaintiffs (Attorney Amy Sweeny Davis added to party Rhonda Cheatem(pty:pla))(Davis, Amy) (Entered: 09/03/2020) |
| 09/04/2020 | 26 | SUGGESTIONS in opposition re 22 MOTION to amend/correct 1 Notice of Removal, − *Class Action Petition* filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. Reply suggestions due by 9/18/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit A − Credit Card Account Statement (redacted))(Related document(s) 22 ) (Moore, Stephen) (Entered: 09/04/2020) |
| 09/15/2020 | 27 | CERTIFICATE OF SERVICE by Landmark Realty of Missouri, LLC filed by Nicholas Porto on behalf of Defendant Landmark Realty of Missouri, LLC.(Porto, Nicholas) (Entered: 09/15/2020) |
| 09/18/2020 | 28 | REPLY SUGGESTIONS to motion re 22 MOTION to amend/correct 1 Notice of Removal, − *Class Action Petition* filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem. (Attachments: # 1 Exhibit A − Redacted)(Related document(s) 22 ) (Robertson, Matthew) (Entered: 09/18/2020) |
| 09/23/2020 | 29 | Consent MOTION for leave to file *sur−reply suggestions in opposition to Plaintiff's motion for leave to file amended complaint* filed by Stephen J. Moore on behalf of Landmark Realty of Missouri, LLC. Suggestions in opposition/response due by 10/7/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit 1 − Proposed Sur−Reply Suggestions)(Moore, Stephen) (Entered: 09/23/2020) |
| 10/05/2020 | 30 | ORDER granting 22 motion to file Amended Complaint; denying 29 motion for leave to file surreply. Plaintiff shall have three business days to file her Amended Complaint. Signed on 10/5/20 by Chief District Judge Beth Phillips. (Wolfe, Steve) (Entered: 10/05/2020) |
| 10/05/2020 | 31 | AMENDED COMPLAINT − *Class Action* against Landmark Realty of Missouri, LLC filed by Alan J. Stecklein on behalf of Rhonda Cheatem.(Stecklein, Alan) (Entered: 10/05/2020) |
| 10/06/2020 | 32 | ORDER finding as moot 13 motion to dismiss case, in light of Plaintiff's filing of an Amended Complaint. Signed on 10/6/20 by Chief District Judge Beth Phillips. This is a TEXT ONLY ENTRY. No document is attached. (Wolfe, Steve) (Entered: 10/06/2020) |
| 10/07/2020 | 33 | MOTION to dismiss for lack of jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Stephen J. Moore on behalf of Landmark Realty of Missouri, LLC. Suggestions in opposition/response due by 10/21/2020 unless otherwise directed by the court. (Moore, Stephen) (Entered: 10/07/2020) |
| 10/07/2020 | 34 | SUGGESTIONS in support re 33 MOTION to dismiss for lack of jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. (Attachments: # 1 Exhibit 1 − Marcus Declaration (with Exs. 1−A, 1−B and 1−C), # 2 Exhibit 2 − Cheatem Account Statement)(Related document(s) 33 ) (Moore, Stephen) (Entered: 10/07/2020) |

| 10/21/2020 | 35 | SUGGESTIONS in opposition re 33 MOTION to dismiss for lack of jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem. Reply suggestions due by 11/4/2020 unless otherwise directed by the court. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Related document(s) 33 ) (Robertson, Matthew) (Entered: 10/21/2020) |
|---|---|---|
| 11/04/2020 | 36 | REPLY SUGGESTIONS to motion re 33 MOTION to dismiss for lack of jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Stephen J. Moore on behalf of Defendant Landmark Realty of Missouri, LLC. (Related document(s) 33 ) (Moore, Stephen) (Entered: 11/04/2020) |
| 11/12/2020 | 37 | ORDER REMANDING CASE TO STATE COURT Signed on 11/12/2020 by Chief District Judge Beth Phillips. (McIlvain, Kelly) (Entered: 11/12/2020) |
| 11/12/2020 | 38 | CLERK'S JUDGMENT (McIlvain, Kelly) (Entered: 11/12/2020) |
| 11/13/2020 | 39 | MOTION for reconsideration re 37 Order *Remanding Case to State Court* filed by Stephen J. Moore on behalf of Landmark Realty of Missouri, LLC. Suggestions in opposition/response due by 11/27/2020 unless otherwise directed by the court. (Related document(s) 37 ) (Moore, Stephen) (Entered: 11/13/2020) |
| 11/13/2020 | 40 | NOTICE of filing *of Exhibit 1 to Motion for Reconsidertaion (Doc. #39)* by Landmark Realty of Missouri, LLC re 39 MOTION for reconsideration re 37 Order *Remanding Case to State Court* (Moore, Stephen) (Entered: 11/13/2020) |
| 11/13/2020 | | Remand letter and instructions sent to Circuit Court of Jackson County, Missouri, by certified mail, article No. 7012 3460 0001 7395 5025. **This is a text entry only − no document is attached** (Melvin, Greg) (Entered: 11/13/2020) |
| 11/27/2020 | 41 | SUGGESTIONS in opposition re 39 MOTION for reconsideration re 37 Order *Remanding Case to State Court* filed by Matthew S. Robertson on behalf of Plaintiff Rhonda Cheatem. Reply suggestions due by 12/11/2020 unless otherwise directed by the court. (Related document(s) 39 ) (Robertson, Matthew) (Entered: 11/27/2020) |
| 11/30/2020 | 42 | GREEN CARD showing return of service re 37 Order. 16th Circuit Court of Jackson County Mo served on 11/17/2020. (Related document(s) 37 ) (Melvin, Greg) (Entered: 11/30/2020) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| RHONDA CHEATEM, | |
| Plaintiff, | |
| v. | Case No. _____ |
| LANDMARK REALTY OF MISSOURI, LLC | |
| Defendant. | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Landmark Realty of Missouri, LLC (hereinafter "Defendant"), pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, hereby removes the above-captioned action to this Court from the Circuit Court of Jackson County, Missouri. As grounds for removal, Defendant states as follows:

1.      On April 13, 2020, Plaintiff commenced a civil action in the Circuit Court of Jackson County, Missouri, styled: *Rhonda Cheatem v. Landmark Realty of Missouri, LLC, d/b/a Willow Creek, d/b/a Willow Creek Apartments d/b/a Landmark Realty,* Case No. 2016-CV10644. A copy of the petition filed in state court is attached hereto as **Exhibit 1**. Copies of all other process, pleadings, and orders on file in the state court are attached hereto as **Exhibit 2**.

2.      Defendant was served with a copy of the Summons and Petition on April 15, 2020. This matter is timely removed under 28 U.S.C. § 1446(b), which requires the removing party to file the notice of removal within thirty (30) days of service of the summons and petition.

3.      28 U.S.C. § 1441(a) provides for removal of "any civil action in a State court of which the district courts of the United States have original jurisdiction." Pursuant to the federal

diversity statute, 28 U.S.C. § 1332(a), the federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Here, both elements of federal diversity jurisdiction are satisfied.

4.     This action involves an amount in controversy that exceeds $75,000, exclusive of interest and costs. This matter stems from an incident in November 2019 in which Plaintiff alleges Defendant wrongfully withheld an administration fee of $40.00, an application fee of $150.00, and a non-refundable security deposit of $450.00. Plaintiff asserts four (4) claims: (1) violation of Section 535.300 of the Missouri Revised Statutes for allegedly collecting non-refundable security deposits (Count I); violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020 for allegedly collecting non-refundable security deposits (Count II); violation of the MMPA for allegedly misrepresenting the status of a contract (Count III); and violation of the MMPA for allegedly collecting unconscionable application fees (Count IV). For her claims under the MMPA, Plaintiff seeks to recover actual damages, punitive damages and attorneys' fees.

5.     Although Defendant denies all liability in this case, the claims alleged by Plaintiff put more than $75,000 in controversy. If she prevails, the MMPA authorizes Plaintiff to recover attorneys' fees based on the amount of time reasonably expended by counsel. *See* Mo. Rev. Stat. § 407.025.1. Attorneys' fee awards in MMPA cases are not required to be proportional to the amount of actual damages, and even small-value cases can result in fee awards well beyond the $75,000 jurisdictional threshold. *See, e.g.*, *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802, 808 (Mo. Ct. App. 2014) (noting attorneys' fee award of $388,059 in case with actual damages of just $27,696.96); *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 213 (Mo. Ct. App. 2013) (noting attorneys' fee award of $165,350 in case with actual damages of just $11,007.81). Plaintiff also is

authorized to recover punitive damages on her MMPA claims. *See* Mo. Rev. Stat. § 407.025.1. Awards of such damages in MMPA cases can also far exceed the required amount in controversy. *See, e.g.*, *Kerr*, 439 S.W.3d at 815-17 (affirming punitive damages award of $2,078,679.80); *Peel*, 408 S.W.3d at 213-14 (affirming punitive damages award of $881,789.05). Together, the potential awards of attorneys' fees and punitive damages are more than sufficient to satisfy the jurisdictional threshold of Section 1332(a).

6. The parties in this case are also completely diverse:

    a. As alleged in the Petition, Plaintiff is a resident and citizen of the State of Missouri.

    b. Defendant is a limited liability company and its citizenship for diversity purposes is determined by the citizenship of its members. *Little Otters of Love, LLC v. Rosenberg*, 724 Fed. App'x 498, 501 (8th Cir. 2018) ("For purposes of establishing diversity, a limited liability company's citizenship is the citizenship of each of its members." (citing *OnePoint Solutions, LLC. v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007))). The sole member of Defendant is Robert Imhoff, who is a citizen of the State of California.

    c. Because Plaintiff is a citizen of Missouri and Defendant is a citizen of California, complete diversity exists in this case.

7. In light of the amount in controversy and the complete diversity of citizenship, the Court has original jurisdiction over this case under Section 1332(a) and the matter is removable under Sections 1441 and 1446. Removal to this Court is not prohibited under Section 1441(b)(2) because Defendant is not a citizen of the State of Missouri. The requirements of Section 1446 are

satisfied because this Notice of Removal is timely filed, and Defendant is the lone defendant in the case and the consent of any other parties to removal is therefore unnecessary.

8.      In accordance with Section 1446(a), copies of the record and proceedings in the state court action —including all process, pleadings and orders—are attached to this Notice of Removal.

9.      In accordance with Section 1446(d), Defendant will promptly serve written notice of removal to Plaintiff's attorneys of record in the state court action and file with the state court a copy of this Notice of Removal.

10.     In accordance with Section 1441(a), Defendant has removed this case to the Western Division of this Court and designates Kansas City as the place of trial. Defendant requests a trial by jury on all issues so triable.

11.     By this Notice of Removal, Defendant does not waive any affirmative defense that it may possess. Defendant does not concede that Plaintiff has stated any viable claim for relief against it, and Defendant denies any and all liability in this action.

WHEREFORE, Defendant Landmark Realty of Missouri, LLC files this Notice of Removal and requests that the Court assume full jurisdiction over the claims asserted in this action under 28 U.S.C. §§ 1332, 1441 and 1446.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_
        Nicholas J. Porto     MO #56938
        1600 Baltimore, Suite 200A
        Kansas City, Missouri 64108
        Telephone:  816.463.2311
        Facsimile:  816.463.9567
        nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_
        Stephen J. Moore     MO #59080
        1968 Shawnee Mission Pkwy, Suite 100
        Mission Woods, Kansas 66205
        Telephone:  816.471.0909
        Facsimile:  816.471.3888
        sjm@shankmoore.com

*Attorneys for Defendant Landmark Realty of Missouri, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that the foregoing document was served this 13th day of May, 2020 via United States mail and electronic mail to the following counsel of record:

<u>**Counsel for Plaintiff**</u>
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

_Nicholas J. Porto_
Attorney for Defendant

5

Electronically Filed - Jackson - Kansas City - April 13, 2020 - 09:41 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

| | |
|---|---|
| Rhonda K. Cheatem, individually and on behalf of all others similarly situated, | |
| | Case Number: |
| Plaintiff, | Division: |
| vs. | CLASS ACTION PETITION |
| Landmark Realty of Missouri, LLC D/B/A Willow Creek D/B/A Willow Creek Apartments D/B/A Landmark Realty | JURY TRIAL DEMAND |
| Serve: Registered Agent, Nicholas Porto 1600 Baltimore Suite Kansas City, Missouri 64108, | |
| Defendant. | |

<u>**CLASS ACTION PETITION**</u>

COMES NOW Plaintiff Rhonda K. Cheatem ("Plaintiff"), through counsel, and for Plaintiff's causes of action against Defendant KC Willow Creek LLC d/b/a Willow Creek Apartments ("Defendant") states:

<u>**JURISDICTION AND VENUE**</u>

1. This is a class action under the Missouri Merchandising Practices Act, RSMo § 407.025.

2. This Court has jurisdiction over the subject matter of this lawsuit under Article V, §14 of the Missouri Constitution and § 407.025.1 RSMo.

3. Venue in this district is proper because Defendant conducts business in this district and the events upon which this action is based transpired in this district.

<u>**PARTIES**</u>

4. Plaintiff is a resident of the State of Missouri.

5. Defendant KC Willow Creek LLC d/b/a Willow Creek Apartments is a Missouri Limited Liability Company.

6. At all times, Defendant rented and managed residential real estate to consumers in the State of Missouri.

7. As of November 2019, Defendant owned and operated an apartment complex at 201 W. 99th Terrace, Kansas City, Missouri 64114("leased premises").

**FACTS COMMON TO ALL COUNTS**

8. In November 2019, Plaintiff applied for an apartment with Defendant.

9. The application Plaintiff signed with Defendant read, in part: <u>Administration Fee, Application Fee, and Security Deposit</u> This portion of the Application concerns certain fee(s) and/or deposits that may be **_non-refundable_**. As such, it is important that you very carefully read and understand each of the following paragraphs. By initialing under each paragraph, you acknowledge that you have read each paragraph and understand that certain fee(s) and/or deposits may be **_non-refundable._**

10. Under this provision, Plaintiff paid an Administration free of $40.00.

11. The application Plaintiff signed with Defendant read, in part: <u>Nonrefundable Fees:</u> As part of this Application, I understand that I am required to submit a _nonrefundable_ administration fee of ONE HUNDRED AND FIFTY DOLLARS AND NO CENTS ($150.00) (hereinafter the "Administration Fee"). As further part of this Application, I understand that I am also required to submit a _nonrefundable_ application fee of either FORTY DOLLARS AND NO CENTS ($40.00) or FIFTY DOLLARS AND NO CENTS ($50.00) per applicant (hereinafter the "Application Fee"), the precise amount which shall

solely be determined by Landmark. I understand that both the Administration Fee and Application Fee are _nonrefundable_.

12.     Under this provision, Plaintiff paid an Administrative Fee of $150.00.

13.     The application Plaintiff signed with Defendant read, in part:  "Security Deposit that May Be Refundable  As part of this Application, I understand that I will be required to submit a Security Deposit equal to (the "Security Deposit").[1]  I also understand that Landmark, in Landmark's sole discretion, may require an additional Security Deposit if the information submitted in this Application does not satisfy Landmark's rental criteria. I understand that the Security Deposit (and any additional Security Deposit) is _refundable_ if I cancel, in writing, the Application within 48 hours of the submission of the Application and any fees/deposits required by Landmark. I further understand that the Security Deposit _may be refundable_ if Landmark denies my Application because the information I have submitted does not satisfy Landmark's application criteria.  If I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is _nonrefundable_. Finally, I understand that I will be required to submit both a completed Application and any supporting information required by Landmark, including, but not limited to, a verification of identity, a verification of employment, a verification of income, and an authorization to obtain my rental history. If I fail to submit the aforementioned items within 48 hours of submitting my Application and any fees/deposits required by Landmark, or if any of the information I have submitted is false, inaccurate, or misleading in any way, the Security Deposit is _nonrefundable_.

14.     Under this provision, Plaintiff paid a Security Deposit of $450.00.

15.     On November 26, 2019, Defendant declined to application the property to Plaintiff

and issued a "Move Out Statement", which withheld the Application Fee of $40.00, the Administrative Fee of $150.00, and the Security Deposit $450.00.

16.     The November 26, 2019 Move Out Statement stated that the "security deposit is non-refundable due to falsification on application.  Your security deposit of $450.00 has been retained and liquidated damages for our time and expense".

**COUNT I**
**VIOLATION OF RSMo. § 535.300**
**Non-Refundable Security Deposits**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count I against Defendant, states and alleges:

17.     Plaintiff  incorporates by reference the preceding allegations in this petition.

18.     RSMo. § 535.300, entitled security deposits, places restrictions and requirements on landlords regarding security deposits.

19.     RSMo. § 535.300(3) lists what a landlord may legally withhold from a tenant's security deposit.

20.     RSMo. § 535.300(3) states that the landlord may withhold from the security deposit only such amounts as are reasonably necessary because :

(1) To remedy a tenant's default in the payment of rent due to the landlord, pursuant to the rental agreement;

(2) To restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted; or

(3) To compensate the landlord for actual damages sustained as a result of the tenant's failure to give adequate notice to terminate the tenancy pursuant to law or the rental agreement; provided that the landlord makes reasonable efforts to mitigate damages.

21.     RSMo. §535.300(3) does not allow a landlord to designate part of the security deposit as non-refundable before the end of the application term.

22.     RSMo. §535.300(3) does not allow a landlord to designate part of the security deposit as non-refundable because the tenant "fail[ed] to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable"*.

23.     RSMo. §535.300(3) does not allow a landlord to designate part of the security deposit as non-refundable because the landlord alleges the tenant misrepresented anything on her security deposit.

24.     The language of the application states that $450.00 of the security deposit may be non-refundable if the tenant fail[ed] to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable"*.

25.     Under the application, the security deposit paid by the Plaintiff was $450.00.

26.     RSMo. § 535.300.5 states that if the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages not more than twice the amount wrongfully withheld.

27.     Under RSMo. § 535.300.5, Defendant is liable to Plaintiff for $900.00.

WHEREFORE, Plaintiff  prays for judgment against Defendant and the putative class for such damages as are fair and reasonable for violations of the RSMo. § 535.300; for other statutory relief as provided for in RSMo. § 535.300 of twice the non-refundable security deposits withheld for the past five years; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

**COUNT II**
**MERCHANDISING PRACTICES ACT, § 407.020 RSMo.**
**Collecting Non-refundable Security Deposits**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count II against Defendant, states and alleges:

28. Plaintiff incorporates by reference the preceding allegations in this petition.

29. Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

30. Defendant is deceptively assessing, collecting, and retaining non-refundable security deposits in violation of RSMo. § 535.300.

31. RSMo § 407.020.1 states that the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

32. Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

33.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

34.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss in that Plaintiff lost the amount of her security deposit.

35.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

36.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

37.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

38.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff prays for judgment against Defendant and the putative class for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

### COUNT III
### MERCHANDISING PRACTICES ACT, § 407.020 RSMo.
### Misrepresenting the status of the contract

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count III against Defendant, states and alleges:

39.     Plaintiff incorporates by reference the preceding allegations in this petition.

40.     Upon determining that Defendant wrongfully withheld Plaintiff's security deposit, Plaintiff telephoned Defendant and spoke to Johnathan L/N/U, who advised Plaintiff:

a.   Defendant was "going by the book" by withholding the security deposit and was confident in their representation that "their I's are dotted and their T's are crossed";

b.   There is no exposure to Defendant and that Plaintiff's sole remedy was with a past landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

c.   That Defendant has given Plaintiff all the information that Defendant is required to and that it is not Defendant's fault, but solely the responsibility of the prior landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

41.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

42.     After her security deposit was unlawfully withheld, Plaintiff inquired with Defendant as to the reasons for withholding the security deposit.

43.     Defendant misrepresented to Plaintiff that the non-refundable deposit was legal.

44.     Defendant misrepresented the status of the non-refundable deposit to Plaintiff.

45.     The Missouri Attorney General has declared all unconscionable practices to be unfair practices in violation of the Missouri Merchandising Practices Act.   15 C.S.R. § 60-8.080(1).

46.     It is unconscionable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged."   15 C.S.R. § 60-8.080(2).

47.    These non-refundable security deposits are unconscionable.

48.    These fees are unconscionable in that high in relation to the value of the application.

49.    Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

50.    Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

51.    The unlawful practices caused the Plaintiff to suffer an ascertainable loss in that Plaintiff lost the amount of her security deposit.

52.    The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

53.    Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

54.    Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

55.    Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

## COUNT IV
## MERCHANDISING PRACTICES ACT, § 407.020 RSMo.

## Collecting Unconscionable Application Fees Generally

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count IV against Defendant, states and alleges:

56.     Plaintiff incorporates by reference the preceding allegations in this petition.

57.     In addition to charging the Plaintiff an nonrefundable deposit fee, Defendant additionally charged a $40 application fee and, on top of that, a $150 Administrative Fee.

58.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

59.     The Missouri Attorney General has declared all unconscionable practices to be unfair practices in violation of the Missouri Merchandising Practices Act.  15 C.S.R. § 60-8.080(1).

60.     It is unconscionable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged."  15 C.S.R. § 60-8.080(2).

61.     A $150 Administrative Fee, especially when combined with the application fee and nonrefundable deposit, is unconscionably high in relation to the value of the application.

62.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

63.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

64.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss in that Plaintiff lost $150.

65.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

66.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

67.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

68.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff restates each allegation in the preceding paragraphs as if set forth at length herein.

70.     Under Missouri Supreme Court Rule 52.08, Plaintiff sues for herself and on behalf of a class (the "Class A") for Counts I, II, initially defined:

> All Missouri tenants from whom Defendant collected a security
> deposit deemed nonrefundable under the application in the past five
> years and the security deposit was retained by Defendant.

71.     Under Missouri Supreme Court Rule 52.08, Plaintiff sues for herself and on

behalf of a class (the "Class B") for Counts I, II, initially defined: All Missouri tenants from whom Defendant collected a security deposit wherein a portion of that deposit was deemed nonrefundable under the application in the past five years and the security deposit was retained by Defendant and, upon inquiry by the class member, Defendant informed the class member that retaining the non-refundable deposit was legal or legally appropriate.

72.     Class actions in Missouri are governed by Rule 52.08, which sets out four requirements for class certification: One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

73.     Numerosity. Defendant owns and operates multi-unit apartment complexes using form applications and standardized procedures. The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Numerosity can be inferred by Defendant' size, that it manages hundreds of apartment units using standardized contracts and procedures, and the fact that its omissions are part of its routine business practice.

74.     Existence and Predominance of Common Questions of Law and Fact. Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. Defendant uses standardized application provisions and procedures in managing hundreds of residential units. These common legal and

factual questions include and without limitation:

    a.      Did Defendant collect and retain a non-refundable security deposit?

    b.      Did Defendant retain a security deposit for any reason other than those enumerated in § 535.300.5.

75.     Typicality. Plaintiff's claims are typical of the claims of each Class member. Their contract was a standardized application and the provision wrongfully withholding a portion of the security deposit as "non-refundable" would apply to each member of the putative Class. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

76.     Adequacy. Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of the members of the Class.

77.     Superiority. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action

device will cause substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

78.    Injunctive Relief Appropriate for the Class. Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief regarding Plaintiff and the Class members.

WHEREFORE, Plaintiff and the Class members pray for relief:

1.    An order certifying the proposed classes herein under Missouri Supreme Court Rule 52.08 and appointing Plaintiff and his undersigned counsel of record to represent same;

2.    The creation of a common fund available to provide notice of and remedy Defendant's violations;

3.    Punitive damages as authorized by the MMPA;

4.    Equitable and/or declaratory relief; including that Defendant be restrained from engaging in future conduct in violation of the MMPA;

5.    Attorney's fees, expenses and costs;

6.    An Order that Defendant, its agents, and anyone acting on Defendant's behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could identify Class members;

7.    Pre-judgment and post-judgment interest as provided by law; and

8.    Such other relief the Court does deem just, equitable and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,


By: /s/ A.J. Stecklein
A.J. Stecklein      #46663
Michael Rapp      #66688
Matthew Robertson    #70442
Stecklein & Rapp Chartered
748 Ann Avenue
Kansas City, KS 66101
Telephone:    (913) 371-0727
Facsimile:    (913) 371-0727
Email:  aj@kcconsumerlawyer.com
        mr@kcconsumerlawyer.com
        msr@kcconsumerlawyer.com
Attorneys for Plaintiff



By:  /s/ Gina Chiala
GINA CHIALA      # 59112
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
Attorneys for Plaintiff



Search for Cases by: Select Search Method... ▼

| Judicial Links | eFiling | Help | Contact Us | Print | GrantedPublicAccess   Logoff NICKPORTOLAW |

**2016-CV10644 - RHONDA CHEATEM V LANDMARK REALTY OF MISSOURI LLC (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ⦿ Descending  ◯ Ascending

Display Options: All Entries ▼

---

**05/07/2020** ☐ Judge Assigned

**05/05/2020** ☐ **Entry of Appearance Filed**
Entry of Appearances; Electronic Filing Certificate of Service.
    **Filed By:** AMY SWEENY DAVIS

**04/22/2020** ☐ **Notice of Service**
Return of Service.
    **Filed By:** ALAN J. STECKLEIN
    **On Behalf Of:** RHONDA CHEATEM

☐ **Corporation Served**
Document ID - 20-SMCC-3257; Served To - LANDMARK REALTY OF MISSOURI LLC; Server - ;
Served Date - 15-APR-20; Served Time - 11:12:00; Service Type - Special Process Server; Reason
Description - Served; Service Text - Edie Ferrara, Lefal Assistant/Authorized to accept

**04/13/2020** ☐ **Summons Issued-Circuit**
Document ID: 20-SMCC-3257, for LANDMARK REALTY OF MISSOURI LLC.

☐ **Order - Special Process Server**

☐ **Motion Special Process Server**
Motion and Order for Private Process Server.
    **Filed By:** ALAN J. STECKLEIN
    **On Behalf Of:** RHONDA CHEATEM

☐ **Correspondence Sent**
Mailed Notice and Copy of Petition to Attorney General by First Class Mail on April 13, 2020

☐ **Correspondence Sent**
Letter to Attorney for Service Instructions

☐ **Case Mgmt Conf Scheduled**
    **Scheduled For:** 08/05/2020;  1:30 PM ;  ADAM LYLE CAINE;  Jackson - Kansas City

☐ **Request for Jury Trial Filed**
    **Filed By:** ALAN J. STECKLEIN

☐ Judge Assigned

☐ **Filing Info Sheet eFiling**
    **Filed By:** ALAN J. STECKLEIN

☐ **Pet Filed in Circuit Ct**

Petition.
**On Behalf Of:** RHONDA CHEATEM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

RHONDA CHEATEM

                     **PLAINTIFF(S),**            **CASE NO.** 2016-CV10644

**VS.**                                          **DIVISION 11**

LANDMARK REALTY OF MISSOURI LLC

                     **DEFENDANT(S),**

**NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
AND ORDER FOR MEDIATION**

---

      NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable GEORGE EDGAR WOLF on 05-AUG-2020 in DIVISION 11 at 01:30 PM. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

      A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

      At the Case Management Conference, counsel should be prepared to address at least the following:

      a.      A trial setting;

      b.      Expert Witness Disclosure Cutoff Date;

      c.      A schedule for the orderly preparation of the case for trial;

      d.      Any issues which require input or action by the Court;

      e.      The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

_/S/ GEORGE EDGAR WOLF_
GEORGE EDGAR WOLF, **Circuit Judge**

### Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
ALAN J. STECKLEIN, 748 ANN AVENUE, KANSAS CITY, KS 66101

Defendant(s):
LANDMARK REALTY OF MISSOURI LLC

Dated: 13-APR-2020

MARY A. MARQUEZ
Court Administrator

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
☒ **AT KANSAS CITY**   ☐ AT INDEPENDENCE

**RE**:   **RHONDA CHEATEM V LANDMARK REALTY OF MISSOURI LLC**
**CASE NO:**   **2016-CV10644**

**TO:**   **ALAN J. STECKLEIN**
**748 ANN AVENUE**
**KANSAS CITY, KS 66101**

We have received pleadings, which you submitted for filing in the case and they have been file-stamped on <u>April 13, 2020</u>. However, your pleading cannot be processed further until the following action is taken:

**RULE 3.2 - STYLE**
☒ **Additional service instructions are needed.**
☐ Incorrect case number/filed in wrong county.
☐ Document is unreadable.

**RULE 4.2 (2)**
☐ Need Circuit Court Form 4

**RULE 5.6 – COLLECTIONS OF DEPOSIT**
☐ No fee, or incorrect fee, received; fee required is $_____.
☐ Insufficient Filing Fee; Please Remit $_____
☐ No signature on check/form 1695.
☐ No request to proceed in forma pauperis.
☐ No personal checks accepted.

**RULE 68.1**
☐ Need Circuit Court Form 17

**RULE 68.7 – VITAL STATISTICS REPORT**
☐ Need Certificate of dissolution of marriage form.

**RULE 74.14 SUPREME CT – FOREIGN JUDGMENT**
☐ Authentication of foreign judgment required.
☐ Affidavit pursuant to Supreme Court Rule 74.14

**RULE 54.12 SERVICE IN REM OR QUASI IN REM ACTIONS**
☐ Affidavit for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Order for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Notice for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Affidavit for Service by Certified/Registered Mail pursuant to Supreme Court Rule 54.12b.

☒ **OTHER:**   **Before your case can be processed further you will need to eFile service instructions for the defendant. If service will be done by the Jackson County Sheriff you will need to eFile the required service fee of $36.00. If service will be done by a private process server you will need to eFile a Motion and Order for Appointment of Private Process Server with the required PPS20 number(s) on it.**
☒ **Please take the actions necessary to comply with the Circuit Court Rules and your request will be processed.**
☐ The private process server listed is not on our approved list.
☐ Execution in effect. Return date _____. Request may be resubmitted within one week prior to return date.
☐ Supreme Court Rule 90.13 requires interrogatories be served with summons of garnishment.

<u>**If the filing was a new case, please be advised that unless the additional information marked is received within 30 days of the date of this notice this case will be dismissed pursuant to Rule 37.4 for failure to prosecute without prejudice, at the Plaintiff's cost. Collection efforts will be pursued for these costs.**</u>

**Please refer to the Court's website at www.16thcircuit.org for Court Rules or Forms.**

Copies electronic noticed, faxed, emailed and/or mailed APRIL 13, 2020 to:

**COURT ADMINISTRATOR'S OFFICE**
**DEPARTMENT OF CIVIL RECORDS**
**CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | |
|---|---|
| _____ | By _____ |
| **APRIL 13, 2020** | |
| **Date** | **Peggy Holley, 816-881-6491** |
| | **Deputy Court Administrator** |
| | ☒ **415 East 12th St., Kansas City, Missouri 64106** |
| | ☐ **308 W. Kansas, Independence, Missouri 64050** |



# CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

415 E 12TH
KANSAS CITY, MISSOURI 64106

**MARY A. MARQUEZ**
Court Administrator

**ANGELA E. WERKOWITCH**
Director of Civil Records

APRIL 13, 2020

Eric Schmitt, Attorney General
Supreme Court Building
PO Box 899
Jefferson City, Missouri 65102

RE : RHONDA CHEATEM V LANDMARK REALTY OF MISSOURI LLC

Case No: 2016-CV10644

Enclosed is a copy of the petition filed in the above case. You are being notified of this action in accordance with Section 407.25 R.S.Mo.

**COURT ADMINISTRATOR'S OFFICE**
**DEPARTMENT OF CIVIL RECORDS**
**CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

_____
**DEPUTY COURT ADMINISTRATOR**

Enclosure
Mc: Case File Folder

Electronically Filed - Jackson - Kansas City - April 13, 2020 - 02:01 PM

**IN THE ASSOCIATE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY**

RHONDA K. CHEATEM, individually and on
behalf of all others similarly situated,

Plaintiff,

vs.

Case Number: 2016-CV10644

LANDMARK REALTY OF MISSOURI, LLC d/b/a
WILLOW CREEK
d/b/a WILLOW CREEK APARTMENTS
d/b/a LANDMARK REALTY,

Division: 11

Defendant.

<u>MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER</u>

COMES NOW Plaintiff, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby moves for the appointment of HPS Process Service & Investigations, Inc.:

| | | | |
|---|---|---|---|
| Will Acree | PPS20-0275 | Randy Burrow | PPS20-0021 |
| Jan Adams | PPS20-0276 | Gory Burt | PPS20-0022 |
| Roger Adams | PPS20-0277 | Maurice Burton | PPS20-0298 |
| Randy Adkins | PPS20-0225 | Steve Butcher | PPS20-0581 |
| Bobby Ali | PPS20-0278 | William Caputo | PPS20-0299 |
| Gregory Allen | PPS20-0279 | Kyle Carter | PPS20-0023 |
| Victor Aponte | PPS20-0280 | Charles Casey | PPS20-0300 |
| Brandon Aschenbrenner | PPS20-0281 | George Castillo | PPS20-0301 |
| Julia Ascorra | PPS20-0282 | Fidel A Cervantes | PPS20-0302 |
| Teresa Bailly | PPS20-0283 | Trenia Cherry | PPS20-0303 |
| Joseph Baska | PPS20-0284 | Joyce Clemmons | PPS20-0304 |
| Robert Bassler | PPS20-0578 | John Clor | PPS20-0305 |
| Carrington Bell | PPS20-0012 | Kathleen Clor | PPS20-0306 |
| George Bell | PPS20-0286 | Chad Compton | PPS20-0307 |
| Carlos Bialet | PPS20-0579 | Kenneth V Condrey | PPS20-0308 |
| Dianna Blea | PPS20-0287 | Sharon R Condrey | PPS20-0309 |
| Richard J Blea | PPS20-0288 | Theodore Cordasco | PPS20-0310 |
| Robert Blixt | PPS20-0289 | Cesar Corral | PPS20-0311 |
| Brent Bohnhoff | PPS20-0014 | George H Covert | PPS20-0312 |
| Ann Bollino | PPS20-0291 | Dennis Dahlberg | PPS20-0026 |
| Donnie C Briley | PPS20-0292 | Mary Dahlberg | PPS20-0027 |
| Kathy Broom | PPS20-0293 | Patricia Dambach-Cirko | PPS20-0313 |
| Kenneth Brown | PPS20-0294 | Bert Daniels, Jr. | PPS20-0028 |
| Douglas S Brower | PPS20-0580 | Alterck Davenport | PPS20-0314 |
| Hester Bryant | PPS20-0019 | Richard Davis | PPS20-0029 |
| Nicholas Bull | PPS20-0020 | Duane D Day | PPS20-0315 |
| James F Burke | PPS20-0296 | Gerald R Deadwyles | PPS20-0316 |

| | | | |
|---|---|---|---|
| Bryce Dearborn | PPS20-0317 | Douglas Hays | PPS20-0051 |
| Robert DeLacy, Jr. | PPS20-0318 | Grace Hazell | PPS20-0353 |
| Robert E DeLacy, III | PPS20-0319 | Richard Heimerich, Jr. | PPS20-0354 |
| Kathleen Dnunno | PPS20-0320 | Stephen Heitz | PPS20-0052 |
| Marrissa Doan | PPS20-0034 | Charles Helms | PPS20-0356 |
| Claudia Dohn | PPS20-0321 | Austen Hendrickson | PPS20-0357 |
| Dale Dorning | PPS20-0322 | Jonathan Hennings | PPS20-0358 |
| Valentina Dorning | PPS20-0323 | Jesse J Hernandez | PPS20-0359 |
| Catherine Drake | PPS20-0324 | Michael Hibler | PPS20-0360 |
| Alex Duaine | PPS20-0325 | Anthonio Hightower | PPS20-0361 |
| Roland Duff | PPS20-0326 | Cherrod T Hindsman | PPS20-0362 |
| Rochelle D Earthrise | PPS20-0327 | James Hise | PPS20-0054 |
| Daniel Eberle | PPS20-0328 | Gary F Hodges | PPS20-0363 |
| Shawn Edwards | PPS20-0035 | Alex Holland | PPS20-0057 |
| Jessica Ellison | PPS20-0330 | Leonard Horseman | PPS20-0364 |
| Abel Emiru | PPS20-0331 | Ulonda Howard | PPS20-0365 |
| Donald C Eskra, Jr. | PPS20-0332 | Martin Hueckel | PPS20-0366 |
| Leticia Estrada | PPS20-0333 | Damion Hugher | PPS20-0367 |
| David S Felter | PPS20-0334 | William Humble | PPS20-0590 |
| William Ferrell | PPS20-0037 | Mary Hurley | PPS20-0058 |
| Robert Finley | PPS20-0335 | George Illidge | PPS20-0368 |
| Stephen Folcher | PPS20-0336 | Frank James | PPS20-0369 |
| Ryan D Fortune | PPS20-0337 | Matthew Jankowski | PPS20-0370 |
| Chris Fowler | PPS20-0338 | Betty Johnson | PPS20-0059 |
| James Frago | PPS20-0038 | Edward Johnson | PPS20-0060 |
| John Frago | PPS20-0039 | James Johnson | PPS20-0061 |
| Kelsey Garrett | PPS20-0582 | Jordan Johnson | PPS20-0372 |
| Thomas Garrett | PPS20-0339 | Justin L Johnson | PPS20-0373 |
| Andrew Garza | PPS20-0041 | Randy Johnson | PPS20-0374 |
| Charles Gay | PPS20-0340 | Samuel Johnson | PPS20-0375 |
| Richard Gerber | PPS20-0341 | Haile Kahssu | PPS20-0376 |
| Louis Gerrick | PPS20-0342 | Kenneth Kearney | PPS20-0377 |
| Paul Gizel | PPS20-0343 | Michael Keating | PPS20-0378 |
| Ronda Godard | PPS20-0344 | Christopher Keilbart | PPS20-0591 |
| Adam Golden | PPS20-0345 | Elizabeth A Kidd | PPS20-0379 |
| Bradley Gordon | PPS20-0042 | Donna Jo King | PPS20-0371 |
| Tom Gorgone | PPS20-0044 | Kenneth Klewicki | PPS20-0380 |
| Paul O Grimes | PPS20-0348 | George Kotsiras | PPS20-0592 |
| Charles Gunning | PPS20-0046 | Wyman Kroft | PPS20-0381 |
| Aloysivs Guy, Sr. | PPS20-0583 | Jo Ann Lane | PPS20-0382 |
| David Hahn | PPS20-0584 | Linda Langville | PPS20-0593 |
| Eric Hahn | PPS20-0585 | Eric B Layton | PPS20-0383 |
| Stefanie Hahn | PPS20-0586 | Kristie Lewis | PPS20-0384 |
| Darnell Hamilton | PPS20-0143 | John D Lichtenegger | PPS20-0385 |
| Kimberly Hamilton | PPS20-0351 | Bert Lott | PPS20-0386 |
| Natalie Hawks | PPS20-0050 | Robert Lutren | PPS20-0387 |
| Larry Haynes | PPS20-0352 | Daniel Maglothin | PPS20-0069 |

| | | | |
|---|---|---|---|
| Matthews J Manlich | PPS20-0388 | Timothy Pinney | PPS20-0424 |
| Robert Manning | PPS20-0389 | Joshua Pitts | PPS20-0425 |
| Deborah Martin | PPS20-0072 | Craig Podgurski | PPS20-0598 |
| Michael Martin | PPS20-0073 | Rocellious Pope | PPS20-0426 |
| Ryan Martin | PPS20-0193 | Nancy A Porter | PPS20-0427 |
| Susie Martin | PPS20-0390 | Andre Powell | PPS20-0428 |
| Thomas Matthews | PPS20-0391 | Benjamin Purses | PPS20-0429 |
| Casey McKee | PPS20-0076 | Richard Ramirez | PPS20-0430 |
| Michael McMahon | PPS20-0392 | Charles Reardon | PPS20-0431 |
| Michael Meade | PPS20-0393 | Derek L Reddick | PPS20-0432 |
| Michael Meador | PPS20-0077 | Angela Reed | PPS20-0433 |
| Kenny Medlin | PPS20-0078 | Christopher Reed | PPS20-0434 |
| Arsalan Memon | PPS20-0396 | Edward Reed | PPS20-0435 |
| Eric Mendenhall | PPS20-0397 | Betty G Rice | PPS20-0436 |
| Jenna Mendoza | PPS20-0398 | Karen L Rice | PPS20-0437 |
| Matthew Millhollin | PPS20-0081 | Cheryl Richey | PPS20-0439 |
| Carla M Monehain | PPS20-0400 | Terri Richards | PPS20-0106 |
| Carlos Moreno | PPS20-0401 | Debra Rios | PPS20-0440 |
| Michael S Morrison | PPS20-0402 | David M Roberts | PPS20-0206 |
| Zachary P. Mueller | PPS20-0596 | Patricia Roberts | PPS20-0207 |
| Kelly Murski | PPS20-0403 | Jeroy Robinson | PPS20-0441 |
| Andrew Myers | PPS20-0087 | Sammie Robinson | PPS20-0108 |
| Frederick Myers | PPS20-0088 | Adrienne Rodriguez | PPS20-0442 |
| James Myers | PPS20-0089 | Gabriel Rodriguez | PPS20-0443 |
| Stephanie Myers | PPS20-0090 | Mateo F Rodriguez | PPS20-0444 |
| Paul Nardizzi | PPS20-0404 | Richard C Ross | PPS20-0445 |
| Wendy Neff | PPS20-0405 | Melissa Ruiz | PPS20-0446 |
| Christopher New | PPS20-0091 | Antonio Ruque | PPS20-0447 |
| Jillian Newkirk | PPS20-0406 | Geena Christine Rupp | PPS20-0599 |
| Jeremy Nicholas | PPS20-0092 | Edna Russell | PPS20-0110 |
| Michael Noble | PPS20-0093 | Lee H Russell | PPS20-0448 |
| Michael C Nolon | PPS20-0409 | Mark A Russell | PPS20-0449 |
| Colter Norris | PPS20-0410 | John Sadler | PPS20-0450 |
| Dennis Norris | PPS20-0411 | Ligno Sanchez | PPS20-0451 |
| Kody Norris | PPS20-0412 | Virginia Saxon-Ford | PPS20-0452 |
| Trinity Olson | PPS20-0413 | Greg Schermerhorn | PPS20-0453 |
| Craig Palmer | PPS20-0414 | Brenda Schiwitz | PPS20-0111 |
| Cynthia Paris | PPS20-0415 | Michael Schuller | PPS20-0454 |
| Douglas W Patterson | PPS20-0416 | Nathaniel Scott | PPS20-0455 |
| Antonio Perez | PPS20-0417 | Grant Selvey | PPS20-0600 |
| Jaron Perkins | PPS20-0418 | Quratulain Shoukat | PPS20-0456 |
| Anha Pham | PPS20-0419 | Jeremy Small | PPS20-0457 |
| Thai Pham | PPS20-0420 | Monica Smith | PPS20-0458 |
| Bonnie Phillippi | PPS20-0597 | Anthony Spada | PPS20-0459 |
| Gregory Piazza | PPS20-0421 | Melissa Spencer | PPS20-0460 |
| Vincent A Piazza | PPS20-0422 | Jamie Stallo | PPS20-0461 |
| Brian T Pierce | PPS20-0423 | Marc A Starks | PPS20-0462 |

| | | | | |
|---|---|---|---|---|
| Barbara Steil | PPS20-0463 | | Clinton Turpen | PPS20-0473 |
| Kelvin Stinyard | PPS20-0464 | | Henry J Valladares Cruz | PPS20-0474 |
| Randy Stone | PPS20-0117 | | Margarita Vasquez | PPS20-0475 |
| Sonja Stone | PPS20-0118 | | Robert E Vick, II | PPS20-0476 |
| Steven Stosur | PPS20-0465 | | Bradley Votaw | PPS20-0477 |
| Robert T Stover | PPS20-0006 | | Joseph T Wachowski | PPS20-0478 |
| Jeanie Straessler | PPS20-0466 | | Ambiko Wallace | PPS20-0479 |
| Chance Strawser | PPS20-0467 | | Vance M Warren, Sr. | PPS20-0480 |
| David Taliaferro | PPS20-0119 | | Barbara West | PPS20-0481 |
| Ramona Rose Talvacchio | PPS20-0468 | | Pamela K Wheetley | PPS20-0007 |
| Katherina M Tan | PPS20-0469 | | Jennifer White | PPS20-0482 |
| Berhane Tassaw | PPS20-0470 | | Gregory Willing | PPS20-0130 |
| Michael Taylor | PPS20-0120 | | Conni Wilson | PPS20-0131 |
| Courtney S. Thiemann | PPS20-0601 | | Deborah A Wilson | PPS20-0484 |
| Robert Hayes Thomas | PPS20-0602 | | Jerry Wilson | PPS20-0132 |
| Walter Thomas | PPS20-0603 | | Mitchell Wirth | PPS20-0485 |
| William Wyatt Thomas | PPS20-0604 | | Debra Woodhouse | PPS20-0133 |
| Christina Tiffany | PPS20-0471 | | Jerry Wooten | PPS20-0487 |
| Stephen M Troutz | PPS20-0472 | | Kimary Ann Zappia | PPS20-0606 |

as private process servers in the above-captioned matter. In support of said motion, Plaintiff/Petitioner states that the above-named individuals are on the Court's list of approved process servers and the information contained in their applications and affidavits on file is current and still correct.

Respectfully Submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0727
Email: aj@kcconsumerlawyer.com
mr@kcconsumerlawyer.com
msr@kcconsumerlawyer.com
Attorneys for Plaintiff

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Petitioner/Plaintiff's Motion for Appointment of Private Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

DATE: _____        _____
                                    Judge or Circuit Clerk

**IN THE ASSOCIATE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT KANSAS CITY**

RHONDA K. CHEATEM, individually and on
behalf of all others similarly situated,

Plaintiff,

vs.

Case Number: 2016-CV10644

LANDMARK REALTY OF MISSOURI, LLC d/b/a
WILLOW CREEK
d/b/a WILLOW CREEK APARTMENTS
d/b/a LANDMARK REALTY,

Division: 11

Defendant.

<u>MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER</u>

COMES NOW Plaintiff, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby
moves for the appointment of HPS Process Service & Investigations, Inc.:

| | | | | |
|---|---|---|---|---|
| Will Acree | PPS20-0275 | | Randy Burrow | PPS20-0021 |
| Jan Adams | PPS20-0276 | | Gory Burt | PPS20-0022 |
| Roger Adams | PPS20-0277 | | Maurice Burton | PPS20-0298 |
| Randy Adkins | PPS20-0225 | | Steve Butcher | PPS20-0581 |
| Bobby Ali | PPS20-0278 | | William Caputo | PPS20-0299 |
| Gregory Allen | PPS20-0279 | | Kyle Carter | PPS20-0023 |
| Victor Aponte | PPS20-0280 | | Charles Casey | PPS20-0300 |
| Brandon Aschenbrenner | PPS20-0281 | | George Castillo | PPS20-0301 |
| Julia Ascorra | PPS20-0282 | | Fidel A Cervantes | PPS20-0302 |
| Teresa Bailly | PPS20-0283 | | Trenia Cherry | PPS20-0303 |
| Joseph Baska | PPS20-0284 | | Joyce Clemmons | PPS20-0304 |
| Robert Bassler | PPS20-0578 | | John Clor | PPS20-0305 |
| Carrington Bell | PPS20-0012 | | Kathleen Clor | PPS20-0306 |
| George Bell | PPS20-0286 | | Chad Compton | PPS20-0307 |
| Carlos Bialet | PPS20-0579 | | Kenneth V Condrey | PPS20-0308 |
| Dianna Blea | PPS20-0287 | | Sharon R Condrey | PPS20-0309 |
| Richard J Blea | PPS20-0288 | | Theodore Cordasco | PPS20-0310 |
| Robert Blixt | PPS20-0289 | | Cesar Corral | PPS20-0311 |
| Brent Bohnhoff | PPS20-0014 | | George H Covert | PPS20-0312 |
| Ann Bollino | PPS20-0291 | | Dennis Dahlberg | PPS20-0026 |
| Donnie C Briley | PPS20-0292 | | Mary Dahlberg | PPS20-0027 |
| Kathy Broom | PPS20-0293 | | Patricia Dambach-Cirko | PPS20-0313 |
| Kenneth Brown | PPS20-0294 | | Bert Daniels, Jr. | PPS20-0028 |
| Douglas S Brower | PPS20-0580 | | Alterck Davenport | PPS20-0314 |
| Hester Bryant | PPS20-0019 | | Richard Davis | PPS20-0029 |
| Nicholas Bull | PPS20-0020 | | Duane D Day | PPS20-0315 |
| James F Burke | PPS20-0296 | | Gerald R Deadwyles | PPS20-0316 |

| | | | |
|---|---|---|---|
| Bryce Dearborn | PPS20-0317 | Douglas Hays | PPS20-0051 |
| Robert DeLacy, Jr. | PPS20-0318 | Grace Hazell | PPS20-0353 |
| Robert E DeLacy, III | PPS20-0319 | Richard Heimerich, Jr. | PPS20-0354 |
| Kathleen Dnunno | PPS20-0320 | Stephen Heitz | PPS20-0052 |
| Marrissa Doan | PPS20-0034 | Charles Helms | PPS20-0356 |
| Claudia Dohn | PPS20-0321 | Austen Hendrickson | PPS20-0357 |
| Dale Dorning | PPS20-0322 | Jonathan Hennings | PPS20-0358 |
| Valentina Dorning | PPS20-0323 | Jesse J Hernandez | PPS20-0359 |
| Catherine Drake | PPS20-0324 | Michael Hibler | PPS20-0360 |
| Alex Duaine | PPS20-0325 | Anthonio Hightower | PPS20-0361 |
| Roland Duff | PPS20-0326 | Cherrod T Hindsman | PPS20-0362 |
| Rochelle D Earthrise | PPS20-0327 | James Hise | PPS20-0054 |
| Daniel Eberle | PPS20-0328 | Gary F Hodges | PPS20-0363 |
| Shawn Edwards | PPS20-0035 | Alex Holland | PPS20-0057 |
| Jessica Ellison | PPS20-0330 | Leonard Horseman | PPS20-0364 |
| Abel Emiru | PPS20-0331 | Ulonda Howard | PPS20-0365 |
| Donald C Eskra, Jr. | PPS20-0332 | Martin Hueckel | PPS20-0366 |
| Leticia Estrada | PPS20-0333 | Damion Hugher | PPS20-0367 |
| David S Felter | PPS20-0334 | William Humble | PPS20-0590 |
| William Ferrell | PPS20-0037 | Mary Hurley | PPS20-0058 |
| Robert Finley | PPS20-0335 | George Illidge | PPS20-0368 |
| Stephen Folcher | PPS20-0336 | Frank James | PPS20-0369 |
| Ryan D Fortune | PPS20-0337 | Matthew Jankowski | PPS20-0370 |
| Chris Fowler | PPS20-0338 | Betty Johnson | PPS20-0059 |
| James Frago | PPS20-0038 | Edward Johnson | PPS20-0060 |
| John Frago | PPS20-0039 | James Johnson | PPS20-0061 |
| Kelsey Garrett | PPS20-0582 | Jordan Johnson | PPS20-0372 |
| Thomas Garrett | PPS20-0339 | Justin L Johnson | PPS20-0373 |
| Andrew Garza | PPS20-0041 | Randy Johnson | PPS20-0374 |
| Charles Gay | PPS20-0340 | Samuel Johnson | PPS20-0375 |
| Richard Gerber | PPS20-0341 | Haile Kahssu | PPS20-0376 |
| Louis Gerrick | PPS20-0342 | Kenneth Kearney | PPS20-0377 |
| Paul Gizel | PPS20-0343 | Michael Keating | PPS20-0378 |
| Ronda Godard | PPS20-0344 | Christopher Keilbart | PPS20-0591 |
| Adam Golden | PPS20-0345 | Elizabeth A Kidd | PPS20-0379 |
| Bradley Gordon | PPS20-0042 | Donna Jo King | PPS20-0371 |
| Tom Gorgone | PPS20-0044 | Kenneth Klewicki | PPS20-0380 |
| Paul O Grimes | PPS20-0348 | George Kotsiras | PPS20-0592 |
| Charles Gunning | PPS20-0046 | Wyman Kroft | PPS20-0381 |
| Aloysivs Guy, Sr. | PPS20-0583 | Jo Ann Lane | PPS20-0382 |
| David Hahn | PPS20-0584 | Linda Langville | PPS20-0593 |
| Eric Hahn | PPS20-0585 | Eric B Layton | PPS20-0383 |
| Stefanie Hahn | PPS20-0586 | Kristie Lewis | PPS20-0384 |
| Darnell Hamilton | PPS20-0143 | John D Lichtenegger | PPS20-0385 |
| Kimberly Hamilton | PPS20-0351 | Bert Lott | PPS20-0386 |
| Natalie Hawks | PPS20-0050 | Robert Lutren | PPS20-0387 |
| Larry Haynes | PPS20-0352 | Daniel Maglothin | PPS20-0069 |

| | | | |
|---|---|---|---|
| Matthews J Manlich | PPS20-0388 | Timothy Pinney | PPS20-0424 |
| Robert Manning | PPS20-0389 | Joshua Pitts | PPS20-0425 |
| Deborah Martin | PPS20-0072 | Craig Podgurski | PPS20-0598 |
| Michael Martin | PPS20-0073 | Rocellious Pope | PPS20-0426 |
| Ryan Martin | PPS20-0193 | Nancy A Porter | PPS20-0427 |
| Susie Martin | PPS20-0390 | Andre Powell | PPS20-0428 |
| Thomas Matthews | PPS20-0391 | Benjamin Purses | PPS20-0429 |
| Casey McKee | PPS20-0076 | Richard Ramirez | PPS20-0430 |
| Michael McMahon | PPS20-0392 | Charles Reardon | PPS20-0431 |
| Michael Meade | PPS20-0393 | Derek L Reddick | PPS20-0432 |
| Michael Meador | PPS20-0077 | Angela Reed | PPS20-0433 |
| Kenny Medlin | PPS20-0078 | Christopher Reed | PPS20-0434 |
| Arsalan Memon | PPS20-0396 | Edward Reed | PPS20-0435 |
| Eric Mendenhall | PPS20-0397 | Betty G Rice | PPS20-0436 |
| Jenna Mendoza | PPS20-0398 | Karen L Rice | PPS20-0437 |
| Matthew Millhollin | PPS20-0081 | Cheryl Richey | PPS20-0439 |
| Carla M Monehain | PPS20-0400 | Terri Richards | PPS20-0106 |
| Carlos Moreno | PPS20-0401 | Debra Rios | PPS20-0440 |
| Michael S Morrison | PPS20-0402 | David M Roberts | PPS20-0206 |
| Zachary P. Mueller | PPS20-0596 | Patricia Roberts | PPS20-0207 |
| Kelly Murski | PPS20-0403 | Jeroy Robinson | PPS20-0441 |
| Andrew Myers | PPS20-0087 | Sammie Robinson | PPS20-0108 |
| Frederick Myers | PPS20-0088 | Adrienne Rodriquez | PPS20-0442 |
| James Myers | PPS20-0089 | Gabriel Rodriguez | PPS20-0443 |
| Stephanie Myers | PPS20-0090 | Mateo F Rodriguez | PPS20-0444 |
| Paul Nardizzi | PPS20-0404 | Richard C Ross | PPS20-0445 |
| Wendy Neff | PPS20-0405 | Melissa Ruiz | PPS20-0446 |
| Christopher New | PPS20-0091 | Antonio Ruque | PPS20-0447 |
| Jillian Newkirk | PPS20-0406 | Geena Christine Rupp | PPS20-0599 |
| Jeremy Nicholas | PPS20-0092 | Edna Russell | PPS20-0110 |
| Michael Noble | PPS20-0093 | Lee H Russell | PPS20-0448 |
| Michael C Nolan | PPS20-0409 | Mark A Russell | PPS20-0449 |
| Colter Norris | PPS20-0410 | John Sadler | PPS20-0450 |
| Dennis Norris | PPS20-0411 | Ligno Sanchez | PPS20-0451 |
| Kody Norris | PPS20-0412 | Virginia Saxon-Ford | PPS20-0452 |
| Trinity Olson | PPS20-0413 | Greg Schermerhorn | PPS20-0453 |
| Craig Palmer | PPS20-0414 | Brenda Schiwitz | PPS20-0111 |
| Cynthia Paris | PPS20-0415 | Michael Schuller | PPS20-0454 |
| Douglas W Patterson | PPS20-0416 | Nathaniel Scott | PPS20-0455 |
| Antonio Perez | PPS20-0417 | Grant Selvey | PPS20-0600 |
| Jaron Perkins | PPS20-0418 | Quratulain Shoukat | PPS20-0456 |
| Anha Pham | PPS20-0419 | Jeremy Small | PPS20-0457 |
| Thai Pham | PPS20-0420 | Monica Smith | PPS20-0458 |
| Bonnie Phillippi | PPS20-0597 | Anthony Spada | PPS20-0459 |
| Gregory Piazza | PPS20-0421 | Melissa Spencer | PPS20-0460 |
| Vincent A Piazza | PPS20-0422 | Jamie Stallo | PPS20-0461 |
| Brian T Pierce | PPS20-0423 | Marc A Starks | PPS20-0462 |

| | | | | |
|---|---|---|---|---|
| Barbara Steil | PPS20-0463 | | Clinton Turpen | PPS20-0473 |
| Kelvin Stinyard | PPS20-0464 | | Henry J Valladares Cruz | PPS20-0474 |
| Randy Stone | PPS20-0117 | | Margarita Vasquez | PPS20-0475 |
| Sonja Stone | PPS20-0118 | | Robert E Vick, II | PPS20-0476 |
| Steven Stosur | PPS20-0465 | | Bradley Votaw | PPS20-0477 |
| Robert T Stover | PPS20-0006 | | Joseph T Wachowski | PPS20-0478 |
| Jeanie Straessler | PPS20-0466 | | Ambiko Wallace | PPS20-0479 |
| Chance Strawser | PPS20-0467 | | Vance M Warren, Sr. | PPS20-0480 |
| David Taliaferro | PPS20-0119 | | Barbara West | PPS20-0481 |
| Ramona Rose Talvacchio | PPS20-0468 | | Pamela K Wheetley | PPS20-0007 |
| Katherina M Tan | PPS20-0469 | | Jennifer White | PPS20-0482 |
| Berhane Tassaw | PPS20-0470 | | Gregory Willing | PPS20-0130 |
| Michael Taylor | PPS20-0120 | | Conni Wilson | PPS20-0131 |
| Courtney S. Thiemann | PPS20-0601 | | Deborah A Wilson | PPS20-0484 |
| Robert Hayes Thomas | PPS20-0602 | | Jerry Wilson | PPS20-0132 |
| Walter Thomas | PPS20-0603 | | Mitchell Wirth | PPS20-0485 |
| William Wyatt Thomas | PPS20-0604 | | Debra Woodhouse | PPS20-0133 |
| Christina Tiffany | PPS20-0471 | | Jerry Wooten | PPS20-0487 |
| Stephen M Troutz | PPS20-0472 | | Kimary Ann Zappia | PPS20-0606 |

as private process servers in the above-captioned matter.  In support of said motion, Plaintiff/Petitioner states that the above-named individuals are on the Court's list of approved process servers and the information contained in their applications and affidavits on file is current and still correct.

Respectfully Submitted,

By:  /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile:  913-371-0727
Email:    aj@kcconsumerlawyer.com
           mr@kcconsumerlawyer.com
           msr@kcconsumerlawyer.com
Attorneys for Plaintiff

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Petitioner/Plaintiff's Motion for Appointment of Private Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

DATE: _____13-Apr-2020_____

DEPUTY COURT ADMINISTRATOR

 IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>GEORGE EDGAR WOLF | Case Number: 2016-CV10644 |
|---|---|
| Plaintiff/Petitioner:<br>RHONDA CHEATEM | Plaintiff's/Petitioner's Attorney/Address<br>ALAN J. STECKLEIN<br>748 ANN AVENUE<br>KANSAS CITY, KS 66101 |
| **vs.** | |
| Defendant/Respondent:<br>LANDMARK REALTY OF MISSOURI LLC<br>DBA: WILLOW CREEK<br>DBA: WILLOW CREEK APARTMENTS<br>DBA: LANDMARK REALTY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** LANDMARK REALTY OF MISSOURI LLC
DBA: WILLOW CREEK
DBA: WILLOW CREEK APARTMENTS
DBA: LANDMARK REALTY

## PRIVATE PROCESS SERVER

R/A NICHOLAS J PORTO
1600 BALTIMORE, SUITE 200A
KANSAS CITY, MO 64101

*COURT SEAL OF*

*CIRCUIT COURT OF MISSOURI*

*JACKSON COUNTY*

    You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

13-APR-2020
Date

_____
Clerk

Further Information:

---

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*          Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
                                             Date                                      Notary Public

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 20-SMCC-3257 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo
Case 4:20-cv-00381-BP Document 1-2 Filed 05/13/20 Page 100 of 274

Case 4:20-cv-00958-DGK Document 1-2 Filed 12/04/20 Page 100 of 502

**Sheriff's Fees**

| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only*: **Document Id # 20-SMCC-3257** 1   of   1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:20-cv-00381-BP   Document 1-2   Filed 05/13/20   Page 16 of 24

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 101 of 502

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.

Circuit Court of Jackson County

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## KANSAS CITY

RHONDA K. CHEATEM, individually and
on behalf of all others similarly situated,

Plaintiffs,

vs.

LANDMARK REALTY OF MISSOURI,
LLC, d/b/a WILLOW CREEK, d/b/a
WILLOW CREEK APARTMENTS, and
d/b/a LANDMARK REALTY,

Defendant.

Case Number: 2016-CV10644

### RETURN OF SERVICE

I hereby certify that service of a Summons and Petition in a Class Action were served upon Defendant Landmark Realty of Missouri, LLC d/b/a Willow Creek, d/b/a Willow Creek Apartments and d/b/a Landmark Realty by delivering a copy of the pleadings to Edie Ferrara, legal assistant/authorized to accept process, on the 15th day of April 2020; (2) the address of the registered agent, where service was perfected is Nicholas J. Porto, 1600 Baltimore, Suite 200A, Kansas City, Missouri 64101. The Server's Return and Affidavit of Service are attached hereto.

Respectfully submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0727
Email: AJ@KCconsumerlawyer.com
            MR@KCconsumerlawyer.com
            MSR@KCconsumerlawyer.com
Attorneys for Plaintiff

## AFFIDAVIT OF SERVICE

State of Missouri              County of Jackson              Circuit Court

Case Number: 2016-CV10644

Plaintiff/Petitioner:
**RHONDA CHEATEM**

vs.

Defendant/Respondent:
**LANDMARK REALTY OF MISSOURI, LLC**

Received by HPS Process Service & Investigations to be served on Landmark Realty of Missouri, LLC, d/b/a Willow Creek, d/b/a Willow Creek Apartments, d/b/a Landmark Realty, c/o Registered Agent: Nicholas J. Porto, 1600 Baltimore, Suite 200A, Kansas City, MO 64101.

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **15th day of April, 2020 at 11:12 am, I:**

Served the within named establishment by delivering a true copy of **Summons in Civil Case; and Class Action Petition** to Edie Ferrara, **Legal Assistant/Authorized to Accept** at the address of 1600 Baltimore, Suite 200A, Kansas City, MO 64101.

I am over the age of eighteen, and have no interest in the above action.

_P.P.S._

**NATHANIEL SCOTT**
Process Server

Subscribed and Sworn to before me on the _____ day of _____ by the affiant who is personally known to me.

**HPS Process Service & Investigations**
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559

NOTARY PUBLIC

Our Job Serial Number: HAT-2020007176

A. MOON
My Commission Expires
February 24, 2021
Clay County
Commission #13452193

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

Electronically Filed - Jackson - Kansas City - April 22, 2020 - 10:42 AM



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>GEORGE EDGAR WOLF | Case Number: 2016-CV10644 |
|---|---|
| Plaintiff's/Petitioner:<br>RHONDA CHEATEM | Plaintiff's/Petitioner's Attorney/Address<br>ALAN J. STECKLEIN<br>748 ANN AVENUE<br>KANSAS CITY, KS 66101 |
| vs. | |
| Defendant/Respondent:<br>LANDMARK REALTY OF MISSOURI LLC<br>DBA: WILLOW CREEK<br>DBA: WILLOW CREEK APARTMENTS<br>DBA: LANDMARK REALTY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

| The State of Missouri to: | LANDMARK REALTY OF MISSOURI LLC<br>DBA: WILLOW CREEK<br>DBA: WILLOW CREEK APARTMENTS<br>DBA: LANDMARK REALTY | **PRIVATE PROCESS SERVER** |
|---|---|---|

R/A NICHOLAS J PORTO
1600 BALTIMORE, SUITE 200A
KANSAS CITY, MO 64101



*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

13-APR-2020
Date _____ Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

*Edie Ferrara* _____ (name) *Legal Assistant/Authorized to Accept* (title).

☐ other _____

Served at *1600 Baltimore Ste.200A Kansas City, MO 64101* (address)

in *Jackson* (County/City of St. Louis), MO, on *4-15-2020* (date) at *11:12 A.M.* (time).

*Nathaniel Scott* _____ *PPS.*
Printed Name of Sheriff or Server _____ Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on *4-16-2020* (date).

A. MOON
My Commission Expires
February 24, 2021
Clay County
Commission #13452192

My commission expires: _____ *amoon*
Date _____ Notary Public

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* Document Id # **20-SMCC-3257** 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:20-cv-00381-BP   Document 1-2   Filed 05/13/20   Page 20 of 24

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 105 of 502

Electronically Filed - Jackson - Kansas City - April 22, 2020 - 10:42 AM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## KANSAS CITY

RHONDA K. CHEATEM, individually and
on behalf of all others similarly situated,

Plaintiffs,

vs.

LANDMARK REALTY OF MISSOURI,
LLC, d/b/a WILLOW CREEK, d/b/a
WILLOW CREEK APARTMENTS, and
d/b/a LANDMARK REALTY,

Defendant.

Case Number: 2016-CV10644

## RETURN OF SERVICE

I hereby certify that service of a Summons and Petition in a Class Action were served upon Defendant Landmark Realty of Missouri, LLC d/b/a Willow Creek, d/b/a Willow Creek Apartments and d/b/a Landmark Realty by delivering a copy of the pleadings to Edie Ferrara, legal assistant/authorized to accept process, on the 15th day of April 2020; (2) the address of the registered agent, where service was perfected is Nicholas J. Porto, 1600 Baltimore, Suite 200A, Kansas City, Missouri 64101. The Server's Return and Affidavit of Service are attached hereto.

Respectfully submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0727
Email: AJ@KCconsumerlawyer.com
MR@KCconsumerlawyer.com
MSR@KCconsumerlawyer.com
Attorneys for Plaintiff

## AFFIDAVIT OF SERVICE

State of Missouri                    County of Jackson                    Circuit Court

Case Number: 2016-CV10644

Plaintiff/Petitioner:
**RHONDA CHEATEM**

vs.

Defendant/Respondent:
**LANDMARK REALTY OF MISSOURI, LLC**

Received by HPS Process Service & Investigations to be served on Landmark Realty of Missouri, LLC, d/b/a Willow Creek, d/b/a Willow Creek Apartments, d/b/a Landmark Realty, c/o Registered Agent: Nicholas J. Porto, 1600 Baltimore, Suite 200A, Kansas City, MO 64101.

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **15th day of April, 2020 at 11:12 am**, I:

Served the within named establishment by delivering a true copy of **Summons in Civil Case; and Class Action Petition** to Edie Ferrara, Legal Assistant/Authorized to Accept at the address of 1600 Baltimore, Suite 200A, Kansas City, MO 64101.

I am over the age of eighteen, and have no interest in the above action.

**NATHANIEL SCOTT**
Process Server

**HPS Process Service & Investigations**
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559

Our Job Serial Number: HAT-2020007176

Subscribed and Sworn to before me on the _____ day of _____ by the affiant who is personally known to me.

NOTARY PUBLIC

My Commission Expires
February 24, 2021
Clay County
Commission #13452193

Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

Electronically Filed - Jackson - Kansas City - April 22, 2020 - 10:42 AM



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>GEORGE EDGAR WOLF | Case Number: 2016-CV10644 |
|---|---|
| Plaintiff's/Petitioner:<br>RHONDA CHEATEM | Plaintiff's/Petitioner's Attorney/Address<br>ALAN J. STECKLEIN<br>748 ANN AVENUE<br>KANSAS CITY, KS 66101 |
| vs. | |
| Defendant/Respondent:<br>LANDMARK REALTY OF MISSOURI LLC<br>DBA: WILLOW CREEK<br>DBA: WILLOW CREEK APARTMENTS<br>DBA: LANDMARK REALTY | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: LANDMARK REALTY OF MISSOURI LLC
DBA: WILLOW CREEK
DBA: WILLOW CREEK APARTMENTS
DBA: LANDMARK REALTY

**PRIVATE PROCESS SERVER**

R/A NICHOLAS J PORTO
1600 BALTIMORE, SUITE 200A
KANSAS CITY, MO 64101

COURT SEAL OF

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

13-APR-2020
Date

JACKSON COUNTY

Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_Edie Ferrara_ (name) _Legal Assistant/Authorized to_ (title). _Accept_

☐ other _____

Served at _1600 Baltimore Ste 200A Kansas City, MO 64101_ (address)

in _Jackson_ (County/City of St. Louis), MO, on _4-15-2020_ (date) at _11:12 A.M._ (time).

_Nathaniel Scott_ _PPS._
Printed Name of Sheriff or Server        Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _4-16-2020_ (date).

A. MOON
My Commission Expires
February 24, 2021
Clay County
Commission #13452192

My commission expires: _2/24/2021_ _____
Date                    Notary Public

(Seal)

NOTARY PUBLIC
NOTARY
SEAL
STATE OF MISSOURI

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 20-SMCC-3257 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:20-cv-00381-BP Document 1-2 Filed 05/13/20 Page 23 of 24

Case 4:20-cv-00958-DGK Document 1-2 Filed 12/04/20 Page 108 of 502

Electronically Filed - Jackson - Kansas City - May 05, 2020 - 05:00 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT KANSAS CITY**

Rhonda K. Cheatem, individually and on behalf of
all others similarly situated,

                                     Plaintiff,

vs.

Landmark Realty of Missouri, LLC

                                     Defendant.

Case Number: 2016-CV10644

Division: 11

**ENTRY OF APPEARANCES**

         COMES NOW Gina Chiala and Amy Sweeny Davis and hereby enter their appearances in

the above-captioned matter on behalf of the Plaintiff, Rhonda Cheatem.

                           By: /s/ Amy Sweeny Davis
                           GINA CHIALA        # 59112
                           AMY SWEENY DAVIS  # 45766
                           HEARTLAND CENTER
                           FOR JOBS AND FREEDOM, INC.
                           4047 Central Street
                           Kansas City, MO 64111
                           Telephone: (816) 278-1092
                           Facsimile: (816) 278-5785
                           Email: amysweenydavis@jobsandfreedom.org
                           Attorneys for Plaintiff

1

JS 44 (Rev 09/10)

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

| **Plaintiff(s):** | **Defendant(s):** |
|---|---|
| First Listed Plaintiff: | First Listed Defendant: |
| Rhonda Cheatem ; | Landmark Realty of Missouri, LLC ; |
| 1 Citizen of This State; | 2 Citizen of Another State; California |
| **County of Residence:** Jackson County | **County of Residence:** Outside This District |

**County Where Claim For Relief Arose:** Jackson County

| **Plaintiff's Attorney(s):** | **Defendant's Attorney(s):** |
|---|---|
| A.J. Stecklein (Rhonda Cheatem) | Nicholas Porto ( Landmark Realty of Missouri, LLC) |
| Stecklein & Rapp | The Porto Law Firm |
| 748 Ann Avenue | 1600 Baltimore, Suite 200A |
| Kansas City, Kansas 66101 | Kansas City, Missouri 64108 |
| **Phone:** 9133710727 | **Phone:** 8164632311 |
| **Fax:** | **Fax:** |
| **Email:** aj@kcconsumerlawyer.com | **Email:** nporto@portolaw.com |
| | |
| Gina Chiala (Rhonda Cheatem) | Stephen Moore ( Landmark Realty of Missouri, LLC) |
| Heartland Center | Shank and Moore |
| 4047 Central Avenue | 1968 Shawnee Mission Parkway |
| Kansas City, Missouri 64111 | Mission Woods, Kansas 66205 |
| **Phone:** 8162781092 | **Phone:** 8164710909 |
| **Fax:** 8162785785 | **Fax:** |
| **Email:** ginachiala@jobsandfreedom.org | **Email:** sjm@shankmoore.com |

**Basis of Jurisdiction:** 4. Diversity of Citizenship

**Citizenship of Principal Parties** (Diversity Cases Only)

    **Plaintiff:** 1 Citizen of This State

    **Defendant:** 2 Citizen of Another State

**Origin:** 2. Removed From State Court

    **State Removal County:** Jackson County

    **State Removal Case Number:** 2016-cv10644

**Nature of Suit:** 890 Other Statutory Actions

**Cause of Action:** 28 USC 1332, 1441 and 1446

Case 4:20-cv-00381-BP   Document 1-3   Filed 05/13/20   Page 1 of 2

**Requested in Complaint**

    **Class Action:**  Class Action under State Statute or Rule

    **Monetary Demand (in Thousands):**  75001.00

    **Jury Demand:**  Yes

    **Related Cases:**  Is NOT a refiling of a previously dismissed action

---

**Signature:** Nicholas Porto

**Date:** May 13, 2020

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

**DEFENDANT LANDMARK REALTY OF MISSOURI, LLC'S
CORPORATE DISCLOSURE STATEMENT**

Defendant Landmark Realty of Missouri, LLC, pursuant to Fed. R. Civ. P. 7.1 and Local

Rule 7.1, states that it is a limited liability company that does not issue stock and that it has no

parent companies, subsidiaries or affiliates that have issued stock to the public.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_

Nicholas J. Porto  MO #56938
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
Telephone: 816.463.2311
Facsimile: 816.463.9567
nporto@portloaw.com
*Attorneys for Defendant*
*Landmark Realty of Missouri, LLC*

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_

Stephen J. Moore  MO #59080
1968 Shawnee Mission Pkwy, Suite 100
Mission Woods, Kansas 66205
Telephone: 816.471.0909
Facsimile: 816.471.3888
sjm@shankmoore.com
*Attorneys for Defendant*
*Landmark Realty of Missouri, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was served this 13th of May, 2020 via United States mail and electronic mail to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

**Counsel for Plaintiff**
Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org


*Nicholas J. Porto*
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

Case Number: 4:20-cv-00381-BP

**NOTICE OF INCLUSION IN THE MEDIATION AND ASSESSMENT PROGRAM**

This is notice that your case is included in the Western District of Missouri's Mediation and Assessment Program or "MAP." For MAP requirements, including required in-person attendance, carefully review the Court's General Order attached.

Your case has been randomly assigned to the following category in MAP:

_____ Outside Mediator

__X__ United States District Judge John T. Maughmer

_____ Director of the Mediation and Assessment Program

OUTSIDE MEDIATOR ASSIGNMENT

If your case has been assigned to the Outside Mediator category, **the parties have 14 calendar days after the Rule 26 meeting to select an Outside Mediator, schedule the mediation and file a Designation of Mediator** (ADR event in ECF). The Designation of Mediator should contain the name of the Outside Mediator, the date, time and place of the in-person mediation; and it must be signed by or on behalf of each party. The mediation shall occur no later than 75 calendar days after the Rule 26 meeting.

**The Mediator and parties (pro se or by counsel) shall submit a post-mediation status report** to the Director within 10 calendar days after the mediation (separately or jointly, and preferably by email to map@mow.uscourts.gov). The report should state: how long the mediation lasted; whether all required parties were present in person; the outcome of the mediation; and if the case did not settle, whether additional settlement discussions would be productive and at what point in time or after what specific events.

JUDGE ASSIGNMENT

If your case has been assigned to a Judge for mediation, you will be notified by the Judge's office of the date, time and place of a settlement conference. The mediation shall occur no later than 75 calendar days after the Rule 26 meeting, unless otherwise scheduled by the Judge.

DIRECTOR ASSIGNMENT

If your case has been assigned to the Director of MAP for mediation, you will be notified by the Director's office of the date, time and place of either a teleconference or the mediation. The mediation shall occur no later than 75 calendar days after the Rule 26 meeting, unless otherwise scheduled by the Director.

MEDIATION

Mediation is a process in which a neutral third party assists the parties in developing and exploring their underlying interests, legal positions, and options toward resolving the case through negotiations. As a party to a lawsuit in this Court, you are entitled to pursue all claims or defenses to claims that you have asserted until a disposition of the claims or defenses is made by the Court or a jury. However, most of the lawsuits filed in this and other courts are resolved by voluntary settlement of the parties before trial. With a settlement, the expense and inconvenience of litigation is reduced and the uncertainty of the outcome is eliminated. Good faith participation in MAP is required, but you are not required to settle the case. It is important that you carefully review and evaluate your case prior to the mediation or other ADR option session, and that you come prepared to discuss and negotiate the settlement of your case.

ATTENDANCE AT MEDIATION

Please note that lead trial counsel and all named parties are required to attend mediation in person. In-person attendance of additional individuals is also required when applicable (e.g. insurance company representatives). See Section V.E. of the General Order. The failure to attend mediation or other ADR option session, or the refusal to cooperate or timely cooperate in MAP, may result in the imposition of sanctions by the assigned Judge.

CONTINUING OBLIGATIONS

Inclusion in MAP does not relieve you of any obligations or deadlines that you have in this lawsuit. If you have been served, you must file a timely response in order to avoid the risk of a default judgment.

QUESTIONS

For questions concerning MAP requirements, please review the MAP General Order and the MAP FAQs:

http://www.mow.uscourts.gov/district/map
http://www.mow.uscourts.gov/sites/mow/files/MAP_FAQs.pdf.

You may also contact the MAP office.

Mediation and Assessment Program
Jill A. Morris, Director
Charles Evans Whittaker Courthouse
400 E. 9th Street, Room 3238
Kansas City, Missouri 64106
map@mow.uscourts.gov (E-mail)
816-512-5080 (Telephone)
816-512-5089 (Facsimile)

2

**General Order**
**Western District of Missouri**
**Mediation and Assessment Program**
**(Restatement Effective August 1, 2013,**
**Amendment Effective September 1, 2015**
**Amendment Effective November 14, 2019)**

I. **PURPOSE**

The Court's Mediation and Assessment Program ("MAP" or the "Program") is designed to encourage parties to: 1) confront the facts and issues in their case before engaging in unnecessarily expensive and time-consuming discovery procedures, 2) engage in early and meaningful discussions of the issues, 3) consider the views of the opposing side, 4) consider the projected costs of future proceedings in an effort to settle the case before costs and lawyers' fees have made settlement more difficult, and 5) consider other methods of resolving their disputes. It recognizes that full formal litigation of civil claims can impose large economic and other burdens on parties and can delay the resolution of disputes. It will be administrated by a "Director," and all references herein to "Director" shall be deemed to be referring to the Director of the Program.

II. **PROGRAM OVERVIEW**

    A.    **Mediation.** Mediation is the primary method of Alternative Dispute Resolution ("ADR") offered by the Court under this Program.

        1.    Mediation is a process in which a neutral third party assists the parties in developing and exploring their underlying interests (in addition to their legal positions), promotes the development of options and assists the parties toward settling the case through negotiations. The mediation process does not normally contemplate presentations by witnesses.

        2.    The Director, Mediating Judge or Outside Mediator (collectively "Mediator") may give to any or all parties:

            a)    an estimate, where feasible, of the likelihood of liability and the dollar range of damages;

            b)    an opinion of the verdict if he or she were the trier of fact;

            c)    an assessment of key evidentiary and tactical issues; and

            d)    a nonbinding, reasoned evaluation of the case on its merits.

        3.    The Mediator does not review or rule upon questions of fact or law, or render any final decision in the case.

1

4. The Mediator does not have power to impose a settlement or to dictate any agreement regarding the pretrial management of the case. This provision shall not preclude the parties from reaching an agreement with assistance from the Mediator as to what information should be exchanged prior to mediation, so long as it does not contradict or conflict with the Scheduling Order or any other order as to the management of the case.

B. **Other Options.** If any participant in the Program is interested in an ADR option other than mediation, such as early neutral evaluation, mini-trials, summary jury trials, arbitration or some other hybrid form of ADR ("other ADR option sessions"), that participant should contact the Director to discuss sufficiently in advance of the mediation or pre-mediation conference, if applicable. If the parties are unable to agree, the Director in his or her discretion, after consultation with one or all the parties, may select some other form of ADR. The Director may not select binding arbitration unless all parties agree in writing.

## III. ROLE OF DIRECTOR

A. **Selection.** The Program Director shall be selected by the Court.

B. **Director Responsibilities.** In addition to any responsibilities or duties noted elsewhere in this General Order or as assigned by the Chief Judge, the Director shall have the following responsibilities:

1. Direct and administer the Program, including developing guidelines and rules consistent with this General Order and coordination of all activities with the office of the Western District Clerk.

2. Set and conduct mediation sessions or other ADR option sessions as time permits. Serve as a mediator at any subsequent mediation or other ADR option sessions in his or her discretion.

3. Oversee the assignment, and where necessary reassignment, of cases in the Mediation and Assessment Program. To the extent not otherwise handled automatically by CM/ECF, assign cases for mediation or for other appropriate ADR option sessions to: United States Magistrate Judges, United States Bankruptcy Judges, Outside Mediators, the Director, and if a United States District Court Judge consents to the assignment, cases may be assigned to a United States District Court Judge.

4. Assist in monitoring the evaluation of the Program, including participation in the development, compilation and analysis of surveys, questionnaires and focus groups for counsel and clients.

2

5. Require mediators on the List of Mediators to take selected cases pro bono if needed. Such assignment shall be made using a fair process in the sole discretion of the Director. The Director shall develop guidelines for determining whether a case qualifies for pro bono assignment.

6. Report to the Court on the status of the Program and make appropriate recommendations for modifications of the Program.

7. Decide, in his or her discretion, at any time in the process, to exempt, temporarily suspend, extend the deadlines or withdraw a case from the Program, if for any reason, the case is not suitable for the Program.

8. Permit, in his or her discretion, parties to submit written mediation or other ADR statements, no longer than three pages three business days prior to the session.

9. Organize and conduct, in his or her discretion, training or other sessions for Mediators and participants as needed and as time permits.

10. Select, organize and lead, in his or her discretion, a group or advisory board to provide input and suggestions for the Program as needed and as time permits.

11. Develop a policy which will address the collection of files, written statements, and other confidential materials for storage and destruction.

## IV. INCLUDED CASES

**A.** **Case Selection.** All non-excluded civil cases filed in the Western District shall be included in the Mediation and Assessment Program.

**B.** **Excluded Cases.** The following cases are excluded from the Program:

1. Multi-district cases

2. Social Security appeals

3. Bankruptcy appeals

4. Habeas Corpus actions

5. Prisoner pro se cases

6. Other pro se cases where motion for appointment of counsel is pending

3

7.      Prisoner cases

8.      Student Loan cases

9.      Citizenship or Immigration cases.

**C.**    **Class and Collective Actions.** The Director may determine in his or her discretion when and how to involve class and collective action cases in the Program.

**D.**    **Additions.** The Director or any Western District Judge may in his or her discretion add additional cases to the Program which are not automatically assigned to the Program.

## V.    GENERAL PROCEDURES

**A.**    **Notice to Parties.** Notice to parties of case selection for the Program shall be provided as follows:

1.      When a non-excluded case is filed, the parties will receive electronic Notice of Inclusion in the Program and assignment of their case to the Program Director, a Western District Judge or the Outside Mediator category for purposes of mediation.

2.      The Clerk shall mail a copy of the Notice of Inclusion to any pro se litigant who does not utilize CM/ECF.

3.      In pro se matters or other matters in which the Clerk is required to issue service, the Notice of Inclusion shall be attached by the Clerk to each summons issued in such action.

4.      Plaintiff's counsel shall serve a copy of the Notice of Inclusion on defense counsel in conjunction with service of the Complaint or, if applicable, Defendant's counsel shall serve a copy of the Notice of Inclusion on Plaintiff's counsel in conjunction with service of the Notice of Removal.

**B.**    **Timing.** The initial mediation or other ADR option session conducted pursuant to this Program shall occur no later than 75 calendar days after the Rule 26 meeting unless an extension of time is granted pursuant to Section V.C. below.

**C.**    **Extensions.**

1.      Extensions of Deadlines and Events in Outside Mediator Cases and Director Cases. Requests for extensions of Program deadlines and events shall be made in writing (email and facsimile are acceptable) to the Director within five business days of receiving notice of the deadline or event, unless another timeframe is set by

4

the Director. The request shall include the detailed good cause reason for the requested extension and the opposing party's position on the requested extension. The Director may grant or deny the request in his or her discretion. Appeals from the Director's decision, while discouraged, may be made by written motion to the Judge to whom the case is assigned.

2.  Extensions or Changes to a Mediation Date with a Mediating Judge. If good cause exists to request a change in the mediation date set by the Mediating Judge, such request shall be made in writing to the Mediating Judge within five business days of notice of the mediation or other ADR option session or within the timeframe otherwise required by the Mediating Judge.

3.  Mediation Dates Set by Director or Mediating Judges. If the Director or a Mediating Judge schedules a mediation or other ADR option session outside the 75 calendar day period following the Rule 26 meeting, such scheduling will operate as an automatic and acceptable extension under this Section without any additional action on the part of counsel or the parties.

**D.     Opting Out.** Cases will not normally be allowed to opt out of the Program. However, there may be cases where good cause can be demonstrated for opting out. All requests to opt out shall be in writing and shall set forth in detail the reasons for the request. A written request (email and facsimile are acceptable) asking to opt out shall be sent to the Director within ten calendar days of receiving the initial Notice of Inclusion that the case is assigned to the Program. Subject to the considerations stated herein, the Director may grant or deny the request in his or her discretion. Appeals from the Director's decision, while discouraged, may be made by written motion to the Judge to whom the case is assigned.

**E.     Attendance at Program Sessions and Location.**

1.  Parties and Representatives

    a)  Parties. It is the intent of the Court that the parties attend all mediation or other ADR option sessions in person where there will be significant discussion about resolving the case.

    b)  Party Alternate. A party other than a natural person satisfies the attendance requirement if represented by a person or persons (other than outside or local counsel) with authority to enter into stipulations, with reasonable settlement authority, and with sufficient stature in the

5

organization to have direct access to those who make the ultimate decision about settlement.

    c)     Insurer.  If an insurance company's approval is required by any party to settle a case, a representative of the insurance company with significant settlement authority shall attend the mediation or other ADR option sessions in person.

2.     Proper Representative.  If it appears to the Mediator that a case is not being reasonably evaluated by the representative present, the Mediator may meet privately with one or both sides to determine the analysis that has gone into the evaluation of the case, including the names and the authority of the individual involved in the analysis.  The Mediator may request identified individuals or designate a level of authority to be present if subsequent Program sessions are scheduled.

3.     Counsel.  Each party shall be accompanied in person by the lawyer expected to be primarily responsible for handling the trial of the matter ("lead trial counsel").  Local counsel is not typically required to attend the mediation or other ADR option session but may be required to attend the mediation or other ADR session in the Director's discretion.  If an individual is not represented by counsel, that party may appear on his or her own behalf.

4.     Attendance.  The parties, party alternate (when applicable), insurer (when applicable) and lead trial counsel shall attend all mediations or other ADR option sessions in person unless their attendance has been excused in advance by the Director or Mediating Judge.  This attendance requirement reflects the Court's view that a couple of the principle purposes of the Program sessions are to afford litigants an opportunity to articulate their positions and to learn about opposing parties' positions and to be properly positioned to make effective progress toward resolving the case.  See Section VI.B.2. for limitations on excusal and modification of these requirements by Outside Mediators.

5.     Location.   Mediation shall be held in the city of the divisional office in which the case is pending, unless otherwise agreed to in advance by the parties and approved by the Mediator, or unless otherwise selected by the Mediating Judge or Director.

**F.**     **Additional Sessions.**  Additional mediation sessions or other ADR option sessions may be required at the discretion of the Director, Mediating Judge or the Judge to whom the case is assigned.

6

**G. Mediation Statements.** If required, mediation statements shall not be filed with the Court, and the Judge assigned to hear the case shall not have access to them.

**H. Mediation-Related Activities.** The Mediator may in his or her discretion conduct pre- and post-mediation activities including but not limited to a pre-mediation conference to discuss, with the parties separately or jointly, what discovery or additional discovery is needed and may devise a plan for sharing the important information and/or conducting the key discovery that will equip them, as expeditiously as possible, to enter meaningful settlement discussions.

**I. Status Reports.** The Director may request a status report from the parties, counsel or the Mediator at any time. Failure of the parties, counsel or Outside Mediator to timely provide requested information may be grounds for sanctions under Section X.

**J. Notice of Settlement.** If the parties settle the case prior to the mediation or other ADR option session, the Mediator, the Director and the Court shall be advised promptly.

**K. Reports of Violations.** Mediators, parties and counsel shall promptly report in writing violations of this General Order to the Director and the Court.

**VI. PROCEDURES APPLICABLE TO CASES MEDIATED BY AN OUTSIDE MEDIATOR**

**A. Selection of Outside Mediator.**

1. Mediator Designation. When a case is assigned for mediation with an Outside Mediator, the parties or their counsel shall within fourteen calendar days after the Rule 26 meeting electronically file a Designation of Mediator notice (as an ADR event in CM/ECF) identifying their selected Outside Mediator and the date, time and specific location of the mediation. If the Director approves, in writing and in advance, the parties may select as a mediator a person not on the List of Mediators.

2. No Agreement. If the parties do not agree on, or choose not to select, an Outside Mediator, the Director will give the parties a list of potential mediators selected by the Director. The number of potential mediators on the list will be twice the number of "sides" in the litigation plus one. (For example, in litigation having two "sides," the list will contain five names.) The parties shall have seven calendar days from the date on the list of potential mediators to:

7

a)   agree as to a mediator on the list and to report the selection of the agreed mediator to the Director in writing, or

b)   designate a "strike" of the names of two potential mediators on the list of potential mediators. The strikes shall be in writing and shall be delivered to the Director, preferably by email or facsimile.

Unless the parties have agreed on a mediator as set out above, the Director shall designate one of the persons remaining on the list of potential mediators and shall promptly notify the parties and the mediator of the designation.

Upon failure of counsel to file the Designation of Mediator with all required information or to secure a mutually agreeable date, the Director may fix the date, time and place for the mediation or other ADR option session.

**B.      Mediation with Outside Mediators.**

1.   Date of Mediation.  Section V.B. governs the timeframe within which the mediation or other ADR option session shall occur.  The Outside Mediator may, with the consent of all parties and counsel, reschedule the mediation to a date certain not later than ten calendar days after the scheduled date.  Any continuance beyond that time or any continuance of the mediation deadline itself must be approved by the Director in accordance with Section V.C.

2.   Limits on Excusing Attendance Requirements.  Outside Mediators may not excuse the participation or appearance or allow an alternate mode of appearance of a party, party alternate, insurer or lead trial counsel from mediation without written approval from the Director sufficiently in advance of the mediation or other ADR option session.

3.   Post-Mediation Status Report.  Within ten calendar days following the conclusion of the mediation or other ADR option session, the Mediator and parties (pro se or by counsel) shall submit a status report to the Director stating whether all required parties were present, the outcome of the session, whether additional settlement discussions would be  productive and at what point in time or after what specific events, in addition to other information the Director may require for evaluation or follow-up purposes. The Director may request a  status report from the counsel or the Mediator at any time.

8

### VII. LIST OF OUTSIDE MEDIATORS

A. **List of Mediators.** The Director shall prepare a list of persons who appear to have the minimum requirements to serve as a Mediator, as described below. The Director may add or delete persons from the List of Mediators. A copy of the List of Mediators will be available on the Court's internet site. Being on the List of Mediators is not an indication that a person is a qualified mediator. The Court is not certifying or representing that persons on the List of Mediators are qualified.

B. **Minimum Requirements to be on the List of Mediators.**

1. All applicants for the List of Mediators must complete the required application form.

2. A person may be placed on the List of Mediators if:

a) the person has been a United States District Judge, a United States Appellate Judge, a United States Magistrate Judge, a United States Bankruptcy Judge, a Missouri Circuit Court Judge, or a Missouri Appellate Judge, has had arbitration or mediation experience, and has not demonstrated any trait or behavior that is reasonably believed by the Director to be contrary to the effective and efficient management of this Program;

b) the person is currently admitted to the Bar of this Court, has been a member of a state bar for at least eight consecutive years, has completed 16 hours of Continuing Legal Education training, certified under Missouri Supreme Court Rule 17 or by this Court, or the reasonable equivalent thereof, and has not demonstrated any trait or behavior that is reasonably believed by the Director to be contrary to the effective and efficient management of this Program; or

c) the person is not an attorney but has obtained a degree or extensive specialized training in alternative dispute resolution, conflict management or another discipline, has had mediation experience, is knowledgeable about civil litigation in federal court, and has not demonstrated any trait or behavior that is reasonably believed by the Director to be contrary to the effective and efficient management of this Program.

**C.** **Removal from List of Mediators.** The Director may remove any person from the List of Mediators for any reason consistent with the effective management of the Program, including but not limited to, the Outside Mediator's failure to: provide required reports, attend any required training sessions, contribute pro bono mediation time if requested, timely mediate cases or enforce applicable requirements for mediation in Outside Mediator cases.

**D.** **Oath.** Each Mediator shall take and sign the oath or affirmation prescribed by 28 U.S.C. § 453 before acting as a Mediator.

**E.** **Disqualification.**

1. Title 28 U.S.C. § 144 may be utilized to seek the disqualification of a Mediator.

2. No person shall serve as a Mediator in any action in which any of the circumstances specified in 28 U.S.C. § 455 exist and would apply if the mediator were a "judge."

3. Any party who believes that a Mediator has a conflict of interest or should be disqualified shall immediately bring the matter to the attention of the Director.

**F.** **Compensation.**

1. Normally Outside Mediators shall be compensated at no more than the hourly rate listed by them in their application filed with the Director and shown on the List of Mediators, which may be updated on the List of Mediators at the request of the Outside Mediator. However, if agreed in writing and in advance between the Outside Mediator and the parties, the Outside Mediator may be compensated at a different hourly rate or by an alternative arrangement as stated in such agreement.

2. The Director may promulgate additional guidelines for Outside Mediators for allowable charges (e.g., for research, preparation, opinion writing, etc.) and expenses.

3. Absent agreement to the contrary, or unless the Director determines otherwise, the cost of the Outside Mediator's services shall be borne equally by the parties.

4. Except as provided in this section, a Mediator shall not charge or accept anything of value from any source whatsoever for or relating to acting as a Mediator.

10

5. As a condition to inclusion on the List of Mediators maintained by the Director, a Mediator shall agree to serve pro bono periodically as assigned by the Director.

**G.** **Mediators as Counsel in Other Cases.** Any person who is designated as an Outside Mediator pursuant to this General Order shall not for that reason be disqualified from appearing as counsel in any other unrelated case pending before the Court.

## VIII. CONFIDENTIALITY

**A.** **General Provision.** This Court, the parties, their counsel, the Mediator and any other participant in the Program shall treat as confidential the contents of any written mediation statement and anything said in mediation, including any position taken and any views of the case as expressed by any participant or Mediator. Confidential information shall not be disclosed to: 1) anyone not involved in the litigation; 2) the assigned Judge; or 3) for any impeachment in any pending or future proceeding in this Court or any other forum, unless otherwise excepted in Section VIII.B. below. The Mediator shall not be inquired of or called as a witness or deponent in any proceeding related to the dispute in which the Mediator served or be compelled to produce documents that the Mediator received or prepared for mediation or other ADR session.

**B.** **Exceptions.** The confidentiality provisions do not prohibit:

1. Disclosure as stipulated to by all parties, counsel and the Mediator.

2. Disclosure of a fully executed term sheet, settlement agreement, or resolution placed on the record, to enforce a settlement.

3. Disclosure as required by law or court order.

4. Disclosure of a threat or plan to inflict bodily harm or commit a violent crime.

5. Disclosure made in a subsequent confidential mediation or other ADR session in that same case.

6. Disclosure, discoverability or admissibility of information or documents otherwise discoverable under the Federal Rules of Civil Procedure simply because of its introduction or use in mediation or other ADR session.

11

7. The parties and counsel providing ADR status reports or otherwise providing information to the Director regarding a possible violation of this General Order.

8. The Mediator from providing ADR status reports or otherwise providing information to the Director, the assigned Judge or Court en banc regarding noncompliance by the parties, counsel or the Mediator with this General Order.

9. The Director from attending any Program session and discussing with any Mediator, party or counsel any communication, comment, assessment, evaluation or recommendation.

10. The parties, counsel, Mediator or Director from responding to inquiries by persons duly authorized by the Court to analyze and evaluate the Program. The names of the people responding and any information that could be used to identify specific cases or parties shall be confidential.

**C. No Recording.** No recording shall be made of any of the mediation or other ADR option sessions held under the Program, nor shall parties utilize private court reporters or any other type of recording technology during the Program sessions, unless all parties agree, or unless the recording is made under non-binding arbitration, or unless the parties have agreed to binding arbitration.

**D. Confidentiality Agreement.** The Mediator may ask counsel, the parties and all persons attending the mediation or other ADR option session to sign a confidentiality agreement.

## IX. EVALUATION

The Court may require evaluation of the Program to: (a) determine the success of the Program in expediting the processing of cases and reducing costs; (b) measure the satisfaction of the parties with the Program; (c) explore enhancements or changes to the Program; and (d) compare components or elements of the Program.

## X. SANCTIONS

If a party or counsel fails to make a good faith effort to participate in the Program in accordance with the provisions and spirit of this Order, the assigned Judge or Court may impose appropriate sanctions.

12

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| RHONDA CHEATEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 20-00381-CV-W-BP |
| | ) | |
| LANDMARK REALTY OF MISSOURI, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER SETTING DEADLINES FOR FILING OF JOINT PROPOSED SCHEDULING ORDER AND FOR RULE 26(f) CONFERENCE

Pursuant to Rule 26(f) and Local Rule 26.1(a) the parties shall meet to discuss settlement, make or arrange for Rule 26(a)(1) disclosures, and develop a proposed discovery plan as required by Rule 26(f). This meeting shall take place no later than June 16, 2020. Discovery shall commence immediately after this conference is held.

The parties shall file a joint proposed scheduling order/discovery plan by June 30, 2020. Plaintiff's counsel shall take the lead in preparing the proposed plan. The proposed plan shall comply with Local Rules 16.1 (d), 16.1(f), 26.1(c) and 26.1(d). The proposed plan shall state whether the case will be tried to the Court or to a jury and the anticipated length of the trial. The proposed trial date shall not be sooner than 150 days after the deadline proposed for filing of dispositive motions. Please refer to the document entitled "Procedures as to Proposed Scheduling Orders and Pretrial Conferences" located on the Court's website (www.mow.uscourts.gov). In the District Court section, select the "Judges" tab, and choose Judge Beth Phillips. You can also follow this link: http://www.mow.uscourts.gov/judges/phillips.

The parties are expected to review the Principles for the Discovery of Electronically Stored Information prior to the Rule 26(f) conference and to discuss the corresponding Checklist

for Rule 26(f) Meet and Confer during the conference. Both documents are available on the Court's website under "Local Rules, ESI Principles, Procedures & Fees.

Pursuant to Rule 26(f)(3)(C) the proposed plan should address any concerns or issues relating to electronically stored information (ESI). If applicable, the plan should address (1) what ESI is available and where it resides; (2) preservation of information; (3) the ease/difficulty and cost of producing such information; (4) the schedule and format of production; and (5) agreements about privilege or work-product protection.

Within fifteen (15) days from the date of this Order, each non-governmental corporate party (including LLC's and other entities) must file a statement identifying all parent companies, subsidiaries (except wholly owned subsidiaries) and affiliates that have issued shares to the public. If a non-governmental corporate party has no parent companies, subsidiaries, or affiliates, counsel shall file a statement to that effect. See Local Rule 7.1.

If this case has been removed from state court, and if a jury trial has not already been specifically requested on the face of the Complaint or in a separate filing, pursuant to FRCP Rule 81(c) the parties shall have twenty (20) days from the date of this Order to file a jury demand. Failure to file a jury demand shall constitute a waiver of the right to a trial by jury. *See Bruns v. Amana*, 131 F.3d 761 (8th Cir. 1997).

In cases assigned to the Court's Mediation and Assessment Program (MAP), the MAP General Order requires that parties assigned to the outside mediator category electronically file the Designation of Mediator within fourteen (14) calendar days after the Rule 26 meeting and mediate the case within seventy-five (75) calendar days after the Rule 26 meeting.

These deadlines will not be stayed absent leave of court.  Counsel are directed that the filing of motions, including motions to dismiss or remand, does not automatically stay any of the preceding deadlines.

Counsel are advised that the Court does not wish to receive courtesy copies of motions and other filings unless requested.

With respect to discovery, counsel are reminded that:

1.      The number and form of interrogatories and depositions are governed by Rules 30, 31, and 33.

2      The procedure for resolving discovery disputes is governed by Local Rule 37.1.

3.      The form of answers to certain discovery requests and the disclosures required by Rule 26 are provided in Local Rule 26.2.

4.      The filing of motions does not postpone discovery.  See Local Rule 26.1(b).

The Court will consider any requests for oral argument on motions made in accordance with Local Rule 7.0(e).  In addition, the Court will automatically grant a request for oral argument on a contested motion if the requesting party certifies that the argument will be presented by a lawyer who graduated from law school within six years prior to the motion being filed.  This policy is intended to promote opportunities for new lawyers who practice before this Court to develop their oral advocacy skills.  Any request under this provision must specifically invoke this provision and must be made (1) by the filing party, on the first page of either the motion or the suggestions in support, or (2) by the responding party, on the first page of the first

filing addressing the motion (the suggestions in opposition, a request for more time to respond, etc.).

**IT IS SO ORDERED.**

                                         /s/ Beth Phillips
                                           BETH PHILLIPS, CHIEF JUDGE
Date: May 14, 2020                  UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RHONDA CHEATEM,                              )
                                             )
                                             )
                    Plaintiff,               )
                                             )        Civil Action No.
            v.                               )        20-00381-CV-W-BP
                                             )
LANDMARK REALTY OF MISSOURI, LLC,            )
                                             )
                    Defendant.               )

**ORDER**

It is

ORDERED that a settlement conference in this case is scheduled before the undersigned

on August 18, 2020, at 10:30 a.m. in Courtroom 7E (7th Floor), Charles Evans Whittaker United

States Courthouse, 400 E. 9th Street, Kansas City, Missouri, (816) 512-5745.   This settlement

conference will be held in person, with social distancing requirements.   Counsel and parties are

allowed to wear face masks if they choose.   It is further

ORDERED that the parties with settlement authority, as well as counsel, attend the

settlement conference.   A party other than a natural person satisfies the attendance requirement

if it is represented by a person or persons, other than outside or local counsel, who has

reasonable settlement authority and has sufficient stature in the organization to have direct access

to those who make the ultimate decision about settlement.   Additionally, if insurance company

or worker's compensation carrier approval or authority to settle is required by any party, a

representative of that insurance company or worker's compensation carrier shall attend the

settlement conference.   Availability by telephone does not satisfy the attendance requirement.

**Failure to comply with the attendance requirement will subject a party and/or counsel to**

**the imposition of appropriate sanctions, including the payment of attendance costs and fees incurred by opposing parties.**

Counsel shall advise the Court no later than **48 hours** before the settlement conference date if the parties or their representatives wish to bring electronics into the courthouse. Please call my chambers at 816-512-5745 or email jane_stepp@mow.uscourts.gov with the names of those persons wishing to bring in electronics. **Counsel are allowed to bring electronics into the courthouse provided they have their Bar cards with them for identification.**

The purpose of the settlement conference is to precipitate settlement of this case, if that is appropriate. It will be conducted in such a manner as not to prejudice any party in the event settlement is not reached. To that end, all matters communicated to the undersigned in confidence will be kept confidential by him, and will not be disclosed to any other party, or to the trial judge. Additionally, it is expected and required that the parties and their counsel will keep matters discussed at the settlement conference confidential. Counsel are allowed, but not required, to submit a confidential mediation statement to the Court. They may do by emailing the statement to jane_stepp@mow.uscourts.gov.

At the settlement conference, the parties, by counsel, will be given the opportunity to make a brief presentation outlining the factual and legal highlights of their case. Then separate, confidential caucuses will be held with each party and the party's representative(s). Below are the Settlement Conference Issues for counsel to review with their clients prior to the settlement conference to make the best use of the time allotted.

If no settlement discussions have taken place, the Court encourages an exchange of demands and offers prior to the settlement conference.

2

<u>SETTLEMENT CONFERENCE ISSUES</u>

Experience shows that in negotiations the party who is best prepared usually obtains the most satisfactory result.   Settlement conferences can be held more efficiently if all parties and counsel are prepared.   The following are some areas to consider in order to aid in the effectiveness of this settlement conference.

A.   <u>FORMAT</u>

1.   Parties with settlement authority, as described in the order setting the settlement conference, must be personally present.

2.   The Court will use a mediation format, including private caucusing with each side; the judge may address your client directly.

B.   <u>ISSUES</u>

1.   What issues (in and outside of this lawsuit) need to be resolved?

2.   What are the strengths and weaknesses of each issue?   What is your most persuasive argument?   What is your opponent's most persuasive argument?

3.   What remedies are available?

4.   Is there any ancillary litigation pending/planned which affects case value?

5.   Do you have enough information to value the case?   If not, how are you going to get more information before the conference?

6.   Do attorneys fees, other expenses, or liens affect settlement?   Have you communicated this to the other side?   Why not?

C.   <u>AUTHORITY</u>

1.   Are there outstanding liens?   Have you verified amounts and whether they are negotiable?   Is it necessary to include a representative of the lien holder in settlement negotiations?   If so, contact the court immediately.

2.   Is there valid insurance coverage?   In what amount?   If coverage is at issue, or the amount/type affects settlement value, have you notified the other side?   Is it necessary to include the representative from more than one company/carrier in settlement negotiations?   If so, notify the court immediately.

D.   <u>NEGOTIATIONS</u>

3

1. Where did your last discussions end?   Are you sure?

2. Should you have any discussions before the settlement conference to make it proceed more efficiently?

3. What value do you want to start with?   Why?   Have you discussed this with your client?

4. What value do you want to end with?   Why?   Have you discussed this with your client?   Is it significantly different from values you have placed on this case at other times?   How do you explain to the other party the change in value?

5. Is there confidential information which affects case value?   Why can't/won't/shouldn't it be disclosed?   How can the other side be persuaded to change value if it doesn't have this information?

6. What happens if you don't settle the case at the conference?   What is your best alternative to a negotiated settlement?   Why?

7. What are the transactional costs to continue this litigation?

    E.    <u>CLOSING</u>

1. If settlement is reached, do you want it on the record?

2. Have you discussed settlement formats with your client?   Does the client understand structured settlements, annuities, Rule 68 offers to compromise?

3. How soon could checks/closing documents be received?

4. If settlement is not reached, and further discovery is needed, what is your plan for continued settlement discussions?   Do you want court involvement in these talks?


*/s/ JOHN T. MAUGHMER*
JOHN T. MAUGHMER
United States Magistrate Judge

Kansas City, Missouri


4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

## ANSWER

Defendant, Landmark Realty of Missouri, LLC ("Landmark") answers Plaintiff's Class Action Petition as follows:

## JURISDICTION AND VENUE

1.      Paragraph No. 1 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 1.

2.      Denied.

3.      Denied.

## PARTIES

4.      Landmark is without sufficient information to admit or deny the allegations contained in Paragraph No. 4 and therefore denies the same.

5.      Defendant Landmark admits that KC Willow Creek, LLC is a Missouri limited liability company.

6.      Defendant Landmark admits that it rents residential real estate to individuals in the State of Missouri.  Defendant Landmark denies that these individuals are consumers.

7.     Defendant Landmark admits that it operates an apartment complex at 201 W. 99th Terrace, Kansas City, Missouri 64114.  Landmark denies that it owns this apartment complex.

**FACTS COMMON TO ALL COUNTS**

8.     Admitted.

9.     Admitted.

10.     Landmark admits that Plaintiff made a payment of $40.00.

11.     Admitted.

12.     Landmark admits that Plaintiff made a payment of $150.00.

13.     Denied.  The cited portion omits the following operative language: "Until such time as a Lease Agreement is entered into by the parties, any Security Deposit deposited does not constitute a security deposit as that term is defined by Missouri or Kansas law."

14.     Landmark admits that Plaintiff originally paid $450.00.  However, Landmark denies that this sum constitutes a "security deposit" as that term is defined by Missouri or Kansas law.  Landmark further states that this sum was refunded to Plaintiff.

15.     Landmark admits it declined to rent the subject property to Plaintiff and issued a "move out" statement to Plaintiff and withheld charges of $40.00, $150.00, and $450.00.  However, Landmark denies that it withheld a "security deposit" as that term is defined by Missouri or Kansas law."  Landmark further states that $450.00 was refunded to Plaintiff.

16.     Landmark admits that the Move Out Statement states that "The security deposit is non-refundable due to falsification on the application.  Your security deposit of $450.00 has been retained and liquidated damages for our time and expense."  However, Landmark denies that it withheld a security deposit as that term is defined by Missouri law.  Landmark further states that $450.00 was refunded to Plaintiff.

2

**COUNT I**
**VIOLATION OF RSMo. § 535.300**
**Non-Refundable Security Deposits**

17.     Landmark incorporates each of the above paragraphs as if fully restated herein.

18.     Paragraph No. 18 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 18.

19.     Paragraph No. 19 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 19.

20.     Paragraph No. 20 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 20.

21.     Paragraph No. 21 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 21.

22.     Paragraph No. 22 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 22.

23.     Paragraph No. 23 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 23.

24.     Denied.

25.     Denied.

26.     Paragraph No. 26 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 26.

27.     Denied.

WHEREFORE, Landmark requests judgment in its favor, along with its costs and reasonable attorneys' fees expended, and for such other relief as the Court deems just and proper.

3

**COUNT II**
**MERCHANDISING PRACTICES ACT § 407.020 RSMo.**
**Collecting Non-Refundable Security Deposits**

28.    Landmark incorporates each of the above paragraphs as if fully restated herein.

29.    Denied.

30.    Denied.

31.    Paragraph No. 31 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 31.

32.    Denied.

33.    Denied.

34.    Denied.

35.    Denied.

36.    Paragraph No. 36 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 36.

37.    Denied.

38.    Denied.

WHEREFORE, Landmark requests judgment in its favor, along with its costs and reasonable attorneys' fees expended, and for such other relief as the Court deems just and proper.

**COUNT III**
**MERCHANDISING PRACTICES ACT § 407.020 RSMo.**
**Misrepresenting the status of the contract**

39.    Landmark incorporates each of the above paragraphs as if fully restated herein.

40.    Denied.

41.    Denied.

42.    Denied.

4

43.     Denied.

44.     Denied.

45.     Paragraph No. 45 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 45.

46.     Paragraph No. 46 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 46.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

WHEREFORE, Landmark requests judgment in its favor, along with its costs and reasonable attorneys' fees expended, and for such other relief as the Court deems just and proper.

**COUNT IV**
**MERCHANDISING PRACTICES ACT § 407.020 RSMo.**
**Collecting Unconscionable Application Fees Generally**

56.     Landmark incorporates each of the above paragraphs as if fully restated herein.

57.     Denied.

58.     Denied.

59.     Denied.

5

60.     Denied.

61.     Denied.

62.     Denied.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

WHEREFORE, Landmark requests judgment in its favor, along with its costs and reasonable attorneys' fees expended, and for such other relief as the Court deems just and proper.

**CLASS ACTION ALLEGATIONS**

69.     Landmark incorporates each of the above paragraphs as if fully restated herein.

70.     Paragraph No. 70 recites the scope of the class Plaintiff seeks to represent and the legal authority upon which Plaintiff brings this lawsuit.  As such no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 70.

71.     Paragraph No. 71 recites the scope of the class Plaintiff seeks to represent and the legal authority upon which Plaintiff brings this lawsuit.  As such no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 71.

72.     Paragraph No. 72 states a legal conclusion to which no response is required.  To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 72.

73.     Paragraph No. 73 asserts the numerosity of the proposed class. As such no response is required. To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 73.

74.     Paragraph No. 74 asserts that common questions of law and fact exist as to all members of the proposed class. As such no response is required. To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 74.

75.     Paragraph No. 75 asserts that Plaintiff's claims are typical of the claims of each member of the proposed class. As such no response is required. To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 75.

76.     Paragraph No. 76 asserts that Plaintiff is an adequate representative of the proposed class. As such no response is required. To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 76.

77.     Paragraph No. 77 asserts that questions of law and fact common to the Class members predominate questions affecting only individual members. As such no response is required. To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 77.

78.     Paragraph No. 78 states a legal conclusion to which no response is required. To the extent a response is required, Landmark denies the allegations contained in Paragraph No. 78.

WHEREFORE, Landmark requests judgment in its favor, along with its costs and reasonable attorneys' fees expended, and for such other relief as the Court deems just and proper.

7

**Affirmative Defenses**

1.      Having answered the allegations of the Petition and having denied any liability whatsoever, Landmark further denies any allegations that have not been expressly admitted and asserts the following affirmative defenses.

2.      Plaintiff's claims must fail as a matter of law because Plaintiff did not deposit a "security deposit" as that term is defined by § 535.300(7) RSMo.

3.      The Petition fails to state a claim upon which relief can be granted.

4.      Plaintiff's and/or putative class members' claims are barred, in whole or in part, because they lack standing to sue for their alleged damages.

5.      Landmark's business practices alleged in the Petition are not unfair, unlawful, or fraudulent in that the practices, if any, were justified because they were made in a good faith effort to protect this Landmark's legitimate business interests.

6.      Insofar as Plaintiff and/or putative class members suffered any losses or damages, all which are vehemently denied, those losses or damages were not proximately caused by any act or omission of Landmark.

7.      Plaintiff and/or putative class members' damages, if any, were proximately caused by unforeseeable, independent, intervening and/or superseding acts beyond the control and related to any actions or conduct of Landmark.

8.      Plaintiff cannot meet the requirements to maintain a class action because the alleged classes do not have sufficient numerosity and common issues of law and fact do not sufficiently predominate, do not have sufficient commonality of injuries and damages, the Plaintiff does not adequately represent the putative class, there is no benefit to litigants or the Court in maintaining

this action as a class action, and/or class action status is not superior to maintaining this action as an individual action in the normal course of the judicial system.

9. Plaintiff's and/or putative class members' claims are barred, in whole or in part, because they have not suffered any "injury in fact" or "ascertainable loss."

10. Plaintiff's and/or putative class members' claims are barred in whole or in part to the extent such claims have been compromised, released or settled or that Plaintiff and/or putative class members have entered into accords and satisfaction.

11. Plaintiff's and/or putative class members' damages, all of which are denied, have been mitigated, in whole or in part, by reimbursement from collateral sources.

12. To the extent that Plaintiff's and/or putative class members' claims are based upon alleged fraud or fraudulent misrepresentation, they must be dismissed because Plaintiff has failed to plead those claims with the requisite particularity.

13. To the extent Plaintiff's and/or putative class members claims are based on fraud or fraudulent misrepresentation, such claims are barred because Plaintiff has not pointed to any alleged representations and actions that were material or otherwise likely to mislead consumers acting reasonably under the circumstances. Further, Plaintiff has not pointed to any alleged representations or actions that did nor were likely to either affect Plaintiff's and/or putative class members decisions and/or proximately and/or actually cause consumers, or Plaintiff and/or putative class members, to act differently.

14. The claim for punitive damages is grossly out of proportion to the severity of the alleged conduct, bears no rational relationship to claimed compensatory damages and is thus and otherwise unconstitutional in that it denies due process of law and equal protection of the laws in

violation of the Fifth, Eight, and Fourteenth Amendments to the United States Constitution and similar applicable provisions of the Missouri Constitution.

15. The claim for punitive damages violates the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sec. 10 of the Constitution of Missouri because the procedures for assessing punitive damages, facially and as applied to the facts of this case, violate constitutional due process requirements.

16. Plaintiff's and/or putative class members' claims are barred to the extent that such claims and their alleged damages are too speculative to be recoverable at law.

17. Landmark did not act with scienter and thus did not engage in any unfair or unlawful business practices that have scienter as an essential element.

18. Plaintiff's and/or putative class members' damages, all of which are denied, must be reduced to the extent that they failed to mitigate their damages.

19. Plaintiff's putative class definition is overly broad.

20. Landmark presently has insufficient knowledge and/or information with which to form a belief as to whether they may have additional as yet unstated affirmative defenses. Landmark, therefore, reserves its right to amend its Answer to add additional affirmative defenses.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_
        Nicholas J. Porto     MO #56938
        1600 Baltimore, Suite 200A
        Kansas City, Missouri 64108
        Telephone:  816.463.2311
        Facsimile:   816.463.9567
        nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_
        Stephen J. Moore     MO #59080
        1968 Shawnee Mission Pkwy, Suite 100
        Mission Woods, Kansas 66205
        Telephone:  816.471.0909
        Facsimile:   816.471.3888
        sjm@shankmoore.com

*Attorneys for Defendant Landmark Realty of Missouri, LLC*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was filed this 20th day of May, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

*Stephen J. Moore*
Attorney for Defendant

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

RHONDA CHEATEM,

Plaintiff,

v.                                                          Case Number: 20-CV-00381 BP

LANDMARK REALTY OF MISSOURI, LLC,

Defendant.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff Rhonda Cheatem asserts her right under the Seventh Amendment to the U.S.

Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury

on all issues so triable.

Respectfully submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0727
Email: AJ@KCconsumerlawyer.com
        MR@KCconsumerlawyer.com
        MSR@KCconsumerlawyer.com
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

/s/ A.J. Stecklein
A.J. Stecklein #46663

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

RHONDA CHEATEM, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

LANDMARK REALTY OF MISSOURI, LLC,

Defendant.

Case Number: 20-CV-00381 BP

## PROPOSED SCHEDULING AND TRIAL ORDER

Pursuant to Order Setting Deadlines for Filing of Joint Proposed Scheduling Order and for Rule 26(f) Conference (Doc. 4), and Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure, parties submit the following Proposed Scheduling and Trial Order:

1.      TRIAL SETTING. Parties suggest that jury trial commence on or about **December 6, 2021**, at the United States District Courthouse in Kansas City, Missouri. The trial is expected to last three days.

2.      INITIAL DISCLOSURES. The parties have agreed to exchange their initial disclosures pursuant to Rule 26(a)(1) on or before **July 14, 2020**.

3.      MOTION TO AMEND PLEADINGS. Motions to amend the pleadings shall be filed on or before **September 30, 2020**.

4.      MOTION TO JOIN ADDITIONAL PARTIES. Motions to join additional parties shall be filed on or before **September 30, 2020**.

5.      DISCOVERY DEADLINE. All pretrial discovery authorized by the Federal Rules of Civil Procedure shall be completed on or before **May 28, 2021**. This means that

all discovery shall be completed, not simply submitted, on the date specified by this paragraph.

The Court will not entertain any discovery motion absent full compliance with Local Rule 37.1. In the event that a teleconference is needed, parties shall email their request to Judge Phillips' judicial assistant at annette_cordell@mow.uscourts.gov. A memorandum of the discovery dispute, not to exceed one page in length, should be electronically submitted by each party no later than forty-eight hours prior to the teleconference.

6. ELECTRONICALLY STORED INFORMATION. Plaintiff and Defendant have agreed to and anticipate producing and receiving requested documents in hard copy and/or searchable PDF format. Once the parties have had the opportunity to review such documents, the parties agree, if necessary, to confer amongst themselves regarding any additional exchange or production any party believes is necessary. The parties do not anticipate any specific difficulties with regard to ESI at this time.

7. PRIVILEGE OR WORK-PRODUCT PROTECTION. With regard to claims of privilege or of protection as trial-preparation material asserted after production, the parties have agreed to an order as follows: Inadvertent disclosure of information or any documents (including electronic data) that contain information protected by the attorney-client privilege and/or the work product doctrine shall not waive any attorney-client privilege or work product privilege applicable to that information, document, or subject matter. As soon as practicable, the producing party shall inform the receiving party, in writing, that the information or document is subject to a legitimate claim of privilege and the return of the information or document is promptly requested. As soon as practicable

upon determining that privileged or work product information or documents have been produced, the receiving party shall inform the producing party in writing of its receipt of privileged or work product information.

Upon receiving written notice of the producing party's claim of privilege, or when the receiving party receives information produced by the other party which the receiving party recognizes as containing privileged or work product information, the receiving party shall treat the information as privileged and either: (1) promptly return the information or document to the producing party, (2) destroy all copies of the information or document, or (3) if the receiving party has a good faith basis to believe the information is not privileged, may challenge the producing party's claim. Until an agreement is reached or a determination is made by this Court, such information shall be treated as privileged and may not be used or disclosed in any manner. In the event the receiving party destroys the information, the receiving party shall so inform the producing party in writing within ten (10) days that the information has been destroyed.

8.    EXPERT DESIGNATION DEADLINES. The Plaintiff shall designate any expert witnesses she intends to call at trial on or before **November 18, 2020**, and the Defendant shall designate any expert witnesses it intends to call at trial on or before **January 21, 2021**. This paragraph applies to all witnesses retained or non-retained from whom expert opinions will be elicited at trial.

Along with each party's designation of expert witnesses, each party shall provide the other parties with a report, pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P., from each expert witness designated. Expert witnesses may testify only as to matters contained in the

report described above unless leave of Court is granted upon good cause shown.

With respect to treating physicians, coroners and like professionals not retained to testify for a party, the report requirements of this Order may be satisfied by providing a copy of all the treating physician's files, records and notes relating to the treating physician's patient to the opposing party. For the purpose of this paragraph, a "treating physician" is a doctor (including psychiatrist, dentist or other practitioner of the healing arts) retained by a party prior to retaining counsel in this matter. A treating physician will not be allowed to give expert testimony beyond the treatment provided by said physician unless designated as an expert. A treating physician who will provide expert testimony beyond the treatment provided by said physician must further comply with the requirements of this Order.

9.      PROTECTIVE ORDER. The parties will submit a joint proposed Protective Order on or before **July 15, 2020**.

10.     CLASS CERTIFICATION. Any motion for class certification shall be filed on or before **December 31, 2020**. In the event any party wishes to submit expert testimony with respect to the motion for class certification, such testimony shall be disclosed and supported by a report (if applicable) in the same manner as regular expert designations addressed above.

11.     DISPOSITIVE MOTION DEADLINE. All dispositive motions, except those under Rule 12(h)(2) or (3), shall be filed on or before **July 2, 2021**. All dispositive motions shall have a separate section wherein each statement of fact is individually numbered so that any party opposing such motion may refer specifically to a genuine issue

of material fact. Suggestions in opposition to a dispositive motion shall begin with a concise listing of material facts as to which the party contends a genuine dispute exists. All motions for summary judgment shall comply with Local Rules 7.0 and 56.1.

12. PRETRIAL CONFERENCE DOCUMENT DEADLINES. The documents listed below shall be filed prior to the pretrial conference.

a. <u>Motions in Limine</u>. Motions in limine shall be filed at least ten (10) days prior to the pretrial conference. Responses to motions in limine shall be filed at least three (3) days prior to the pretrial conference.

b. <u>Stipulation of Uncontroverted Facts</u>. At least three (3) days prior to the date the pretrial conference is to be held, the parties shall file a stipulation of any uncontroverted facts. If no stipulated facts can be agreed upon, including facts related to the Court's subject matter jurisdiction, the parties shall file a joint statement to that effect. Notwithstanding the fact that the time for discovery will have closed, a request to stipulate, if preserved in the record, will constitute a request for admission under Rule 26 and failure to stipulate may be subject to sanctions under Rule 37(c).

c. <u>Witness List</u>. At least five (5) days prior to the date the pretrial conference is to be held, each party shall file and serve a list of all witnesses who may be called to testify at trial. If a witness is not listed by a party, that witness will not be permitted to testify absent leave of Court and then only for the purpose of unanticipated rebuttal or impeachment. After the time for filing lists of witnesses has expired, no supplemental or amended list will be filed without leave of Court and for good cause.

d. <u>Exhibit List</u>. At least five (5) days prior to the date the pretrial conference is to be held, each party will file and serve a list of all exhibits which may be offered at trial. The parties shall additionally prepare and provide to the courtroom deputy an exhibit index, with said index being prepared on a form provided by the clerk's office. Each exhibit will be designated as either "Plaintiff's" or "Defendant's", numbered with an Arabic numeral and described following the enumeration. If an exhibit consists of more than one page or part, the number of pages or parts shall be included in the description on the exhibit index. The exhibit number must be marked

on each exhibit at the time of listing. It is not necessary to list exhibits to be used only for rebuttal purposes. Except by leave of Court for good cause, no exhibit will be received in evidence which is not listed by the counsel offering the exhibit. After the time for filing lists of exhibits has expired, no supplemental or amended lists of exhibits will be file without leaver of Court for good cause.

e.    Stipulation as to the Admissibility of Evidence. At least three (3) days before the pretrial conference, the parties shall file a stipulation as to the admissibility of evidence, when the identification and foundation of the exhibit is not to be contested. Notwithstanding the fact that the time for discovery will have closed, a request to stipulate, if preserved in the record, will constitute a request for admission under Rule 26 and failure to stipulate may be subject to sanctions under Rule 37(c).

f.    Designation of Deposition Testimony. Ten (10) days before pretrial conference, each party asserting an affirmative claim or claims for relief (plaintiff, third-party plaintiff, counterclaiming defendant, etc.) shall file and serve a designation, by page and line number, of any deposition testimony to be offered in evidence as a part of that party's case.

g.    Objections to Designated Deposition Testimony and Counter Designation. At least ten (10) days prior to the pretrial conference, each party defending against an affirmative claim for relief shall file and serve:

    1.    Any objections to proposed deposition testimony designated by any other party;

    2.    A designation, by page and line number, of any deposition testimony to be offered as cross-examination to deposition testimony designated by other parties; and

    3.    A designation, by page and line number, of any deposition testimony to be offered in evidence as part of that party's case-in-chief in connection with such defense.

h.    Submission of Deposition Designations. Five (5) days prior to the pretrial conference, each party shall file, serve and deliver to all other parties and the Court, its objections to any deposition testimony designated pursuant to subparagraphs g 1, 2 and 3 above.

The Court should receive deposition designations in the following manner:

1.   The parties are to jointly submit one copy of each designated deposition.

2.   Each party is to highlight the portion of the deposition they want to designate, including counter-designations.

3.   Each party should use a different highlight color to indicate their designations (for example, plaintiff uses yellow; defendant uses blue).

4.   Each party should also indicate their objections on the actual deposition by bracketing those portions in the margin of the deposition, again using a different color to indicate the portion to which each party objects.

5.   Each party should submit to the Court a Word version document of the Objections to Deposition Designations that you filed in CM/ECF. Send that via email to judicial assistant at annette_cordell@mow.uscourts.gov.

i.   Jury Instructions. Three (3) days prior to the pretrial conference, the parties shall jointly file an original (without sources) and an annotated (with sources) set of proposed jury instructions. Proposed annotated instructions shall reflect the authorities upon which the instruction is based and should be taken from or drawn in the manner of *Model Civil Jury Instructions for the District of Courts of the Eighth Circuit* and/or *Missouri Approved Instructions* (MAI) where available and appropriate. All instructions shall be designated as Instruction No. ____ without indicating which party proposed the instruction.

Parties also shall submit instructions electronically to the courtroom deputy. The instructions should be typed in Word format.

The Court prefers to receive joint instructions from the parties. Separate instructions are appropriate only when the parties cannot agree upon a specific instruction. In that instance, counsel shall state in writing the reason for the objection with authority cited as well as an alternative instruction. The deadline for submitting objections and alternative proposed instructions in one week before the date of trial.

j.   Trial Brief. At least five (5) days prior to the pretrial conference, counsel for each party may file a trial brief stating the factual and legal contentions for the party for whom the trial brief is filed.

k.   Voir Dire Questions. At least five (5) days prior to the pretrial conference, counsel for each party is requested to file a list of questions or topics for voir dire. Objections to opposing party's voir dire questions shall be filed at least five days prior to trial.

10.   SETTLEMENT DEADLINE. Unless otherwise ordered, the Court imposes a settlement deadline of 12:00 Noon on the business day before trial. If the case is settled after that date, the court may enter an order to show cause why certain costs should not be imposed on the party or parties causing the delay in settlement.

Respectfully submitted,

By:  /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone:   913-371-0727
Facsimile:    913-371-0727
Email: AJ@KCconsumerlawyer.com
       MR@KCconsumerlawyer.com
       MSR@KCconsumerlawyer.com

and

By:  /s/ Gina Chiala
Gina Chiala #59112
Heartland Center for Jobs and Freedom, Inc.
4047 Central Street
Kansas City, Missouri 64111
Telephone: 816-278-1092
Facsimile: 816-278-5785
Email: ginachiala@jobsandfreedom.org
Attorneys for Plaintiffs

**THE PORTO LAW FIRM**

By:   */s/ Nicholas J. Porto*
      Nicholas J. Porto        MO #56938
      1600 Baltimore, Suite 200A
      Kansas City, Missouri 64108
      Telephone:  816.463.2311
      Facsimile:  816.463.9567
      nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By:   */s/ Stephen J. Moore*
      Stephen J. Moore        MO #59080
      1968 Shawnee Mission Pkwy, Suite 100
      Mission Woods, Kansas 66205
      Telephone: 816.471.0909
      Facsimile:  816.471.3888
      sjm@shankmoore.com

*Attorneys for Defendant Landmark Realty of Missouri, LLC*

## CERTIFICATE OF FILING

I hereby certify that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri on June 30, 2020, which will automatically generate notice of filing to all counsel of record.

 /s/ A.J. Stecklein
A.J. Stecklein #46663

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

RHONDA CHEATEM,         )
         )
         Plaintiff,      )
v.         )      No. 20-00381-CV-W-BP
         )
LANDMARK REALTY OF MISSOURI,  )
LLC,         )
         )
         Defendant.   )

## SCHEDULING AND TRIAL ORDER

Pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure, and upon consideration of the parties' views in the matter, the following schedule is hereby established:

1.     TRIAL SETTING.  This case is scheduled for a jury trial, commencing at 8:30 a.m., on January 24, 2022, at the United States District Courthouse in Kansas City, Missouri.

2.     TELECONFERENCE.  A teleconference is set at 10:30 a.m., on December 27, 2021 to discuss the progress of the case and possible court ordered mediation.

3.     PRETRIAL CONFERENCE.  A final pretrial conference in this case will be held at 1:30 p.m., on January 14, 2022, at the United States District Courthouse in Kansas City, Missouri.

4.     MOTION TO AMEND PLEADINGS.  Any motion to amend the pleadings shall be filed on or before September 30, 2020.

5.     MOTION TO JOIN ADDITIONAL PARTIES.  Any motion to join additional parties shall be filed on or before September 30, 2020.

6.      DISCOVERY DEADLINE.  All pretrial discovery authorized by the Federal

Rules of Civil Procedure shall be completed on or before May 28, 2021. This means that all

discovery shall be completed, not simply submitted, on the date specified by this paragraph.

The Court will not entertain any discovery motion absent full compliance with Local

Rule 37.1.   In the event that a teleconference is needed, email your request to my judicial

assistant at annette_cordell@mow.uscourts.gov.   A memorandum of the discovery dispute, not

to exceed one page in length, should be electronically submitted by each party no later than

forty-eight hours prior to the teleconference.

Prior to bringing any discovery dispute before the Court, the parties are reminded to

consult the Principles for the Discovery of Electronically Stored Information available on the

Court's website under "Local Rules, ESI Principles, Procedures & Fees."

7.      EXPERT DESIGNATION DEADLINES.  The plaintiff shall designate any

expert witnesses it intends to call at trial on or before November 18, 2020, and the defendant

shall designate any expert witnesses it intends to call at trial on or before January 21, 2021.  This

paragraph applies to all witnesses retained or non-retained from whom expert opinions will be

elicited at trial.

Along with each party's designation of expert witnesses, each party shall provide the

other parties with a report, pursuant to Rule 26(a)(2)(B), Fed. R. Civ. P., from each expert

witness designated.  Expert witnesses may testify only as to matters contained in the report

described above unless leave of Court is granted upon good cause shown.

With respect to treating physicians, coroners and like professionals not retained to testify

for a party, the report requirements of this Order may be satisfied by providing a copy of all the

treating physician's files, records and notes relating to the treating physician's patient to the

2

opposing party. For the purpose of this paragraph, a "treating physician" is a doctor (including psychiatrist, dentist or other practitioner of the healing arts) retained by a party prior to retaining counsel in this matter. A treating physician will not be allowed to give expert testimony beyond the treatment provided by said physician unless designated as an expert. A treating physician who will provide expert testimony beyond the treatment provided by said physician must further comply with the requirements of this Order.

8.      CLASS CERTIFICATION MOTION. Any motion for class certification shall be filed on or before December 31, 2020. In the event any party wishes to submit expert testimony with respect to the motion for class certification, such testimony shall be disclosed and supported by a report (if applicable) in the same manner as regular expert designations addressed above.

9.      DISPOSITIVE MOTION DEADLINE. All dispositive motions, except those under Rule 12(h)(2) or (3), shall be filed on or before July 2, 2021. All dispositive motions shall have a separate section wherein each statement of fact is individually numbered so that any party opposing such motion may refer specifically to a genuine issue of material fact. Suggestions in opposition to a dispositive motion shall begin with a concise listing of material facts as to which the party contends a genuine dispute exists. All motions for summary judgment shall comply with Local Rules 7.0 and 56.1.

10.      PRETRIAL CONFERENCE DOCUMENT DEADLINES. The documents listed below shall be filed prior to the pretrial conference. All deadlines listed are business days.

      a.    <u>Motions in Limine</u>. Motions in limine shall be filed at least ten (10) days prior to the pretrial conference. Responses to motions in limine shall be filed at least three (3) days prior to the pretrial conference.

      b.    <u>Stipulation of Uncontroverted Facts</u>. At least three (3) days prior to the date the pretrial conference is to be held, the parties shall file a stipulation

3

of any uncontroverted facts.  If no stipulated facts can be agreed upon, including facts related to the Court's subject matter jurisdiction, the parties shall file a joint statement to that effect.

c.    Witness List.  At least five (5) days prior to the date the pretrial conference is to be held, each party shall file and serve a list of all witnesses who may be called to testify at trial.  If a witness is not listed by a party, that witness will not be permitted to testify absent leave of Court and then only for the purpose of unanticipated rebuttal or impeachment.

d.    Exhibit List. At least five (5) days prior to the date the pretrial conference is to be held, each party will file and serve a list of all exhibits which may be offered at trial.  If an exhibit is not listed by a party, that exhibit will not be admitted absent leave of Court.  Please use the form Exhibit Index listed on the Court's website.

e.    Stipulation as to the Admissibility of Evidence. At least three (3) days before the pretrial conference, the parties shall file a stipulation as to the admissibility of evidence, when the identification and foundation of the exhibit is not to be contested.

f.    Designation of Deposition Testimony. Fifteen (15) days before pretrial conference, each party shall file and serve a designation, by page and line number, of any deposition testimony to be offered in evidence by that party.[1]

g.    Objections to Designated Deposition Testimony and Counter Designation. At least ten (10) days prior to the pretrial conference, each party shall file and serve:

    1.    Any objections to proposed deposition testimony designated by any other party; and

    2.    A designation, by page and line number, of any deposition testimony to be offered as counter-designation to deposition testimony designated by other parties.

h.    Submission of Deposition Designations. Seven (7) days prior to the pretrial conference, each party shall file, serve, and deliver to all other parties and the Court, its objections to any deposition testimony designated pursuant to subparagraphs g. 1. and 2. above.

The Court should receive deposition designations in the following manner:

---

[1] The parties are advised that the Court does not permit the use of a deposition in place of testimony from a witness who is available to testify at trial. *See Dhyne v. Meiners Thriftway, Inc.,* 184 F.3d 983, 989-90 (8th Cir. 1999); *Maddox v. Patterson,* 905 F.2d 1178, 1180-81 (8th Cir. 1990); *Crimm v. Missouri Pac. R. Co.,* 750 F.3d 703, 709 (8th Cir. 1984).

4

1. The parties are to jointly submit one copy of each designated deposition.

2. Each party is to highlight the portion of the deposition they want to designate, including counter-designations.

3. Each party should also indicate their objections on the actual deposition by bracketing those portions in the margin of the deposition.

4. Each party should submit to the Court a Word version document of the Objections to Deposition Designations that you filed in CM/ECF. Send that via email to my judicial assistant at annette_cordell@mow.uscourts.gov.

i. <u>Jury Instructions</u>. Three (3) days prior to the pretrial conference, the parties shall jointly file an annotated (with sources) set of proposed jury instructions. Proposed instructions shall reflect the authorities upon which the instruction is based and should be taken from or drawn in the manner of *Model Civil Jury Instructions for the District of Courts of the Eighth Circuit* and/or *Missouri Approved Instructions* (MAI) where available and appropriate. All instructions shall be designated as Instruction No. ____.

The Court prefers to receive joint instructions from the parties. Separate instructions are appropriate only when the parties cannot agree upon a specific instruction. In that instance, the parties shall jointly submit the instructions upon which they agree. Each party shall submit its proposed version of the instructions upon which the parties do not agree, along with a written objection to the other party's version.

The instructions should also be submitted to the Court electronically, in a Word document. Send the instructions via email to my judicial assistant at annette_cordell@mow.uscourts.gov.

j. <u>Trial Brief</u>. At least five (5) days prior to the pretrial conference, counsel for each party may file a trial brief stating the factual and legal contentions in the case.

k. <u>Voir Dire Questions</u>. At least five (5) days prior to the pretrial conference, counsel for each party shall file a list of questions or topics for voir dire. Objections to opposing party's voir dire questions shall be filed at least three (3) days prior to the pretrial conference.

At the pretrial conference, the Court will discuss the manner in which voir dire will be conducted. In appropriate cases, the court will permit counsel

for the parties to conduct questioning of the panel members. However, questions will be limited to those filed with the court, and the court will limit the amount of time each party will be permitted to conduct questioning.

11.     SETTLEMENT DEADLINE.  Unless otherwise ordered, the court hereby imposes a settlement deadline of 12:00 Noon on the business day before trial.  If the case is settled after that date, the court may enter an order to show cause why certain costs should not be imposed on the party or parties causing the delay in settlement.

12.     COURTROOM EQUIPMENT.  If any party wants to use the audio/visual courtroom equipment it is important that they contact the Court's IT department (816-512-5740) for training, and provide notice to Kelly McIlvain, Courtroom Deputy by email to kelly_mcilvain@mow.uscourts.gov.

Parties must notify the Court two days prior to the Pretrial Conference and one week prior to the Trial for any audio/visual use.

IT IS SO ORDERED.

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATE:  July 2, 2020

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

RHONDA CHEATEM,

Plaintiff,

v.                                                        Case Number: 20-CV-00381 BP

LANDMARK REALTY OF MISSOURI,
LLC,

Defendant.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Plaintiff's initial Rule 26(a)(1) disclosure, along with

the referenced documents and media, were sent via email on July 14, 2020 to:

Nicholas J. Porto
The Porto Law Firm
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
Email: nporto@portolaw.com

and

Stephen J. Moore
Shank & Moore, LLC
1968 Shawnee Mission Parkway, Suite 100
Mission Woods, Kansas 66205
Email: sem@shankmoore.com
Attorneys for Defendant

Respectfully submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein #46663
Michael H. Rapp #66688
Matthew S. Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0727
Email: AJ@KCconsumerlawyer.com
MR@KCconsumerlawyer.com
MSR@KCconsumerlawyer.com

and

Gina Chiala #59112
Heartland Center for Jobs and Freedom, Inc.
4047 Central Street
Kansas City, Missouri 64111
Telephone: 816-278-1092
Facsimile: 816-278-5785
Email: ginachiala@jobsandfreedom.org
Attorneys for Plaintiff

## CERTIFICATE OF FILING

I hereby certify that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri on July 14, 2020, which will automatically generate notice of filing to all counsel of record.

/s/ A.J. Stecklein
A.J. Stecklein #46663

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM** )<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**LANDMARK REALTY OF MISSOURI,** )<br>**LLC** )<br>)<br>**Defendant.** | **Case No. 4:20-cv-00381-BP** |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2020, I mailed via electronic mail and United States Postal

Service, Defendant's Initial Disclosures, Pursuant to Rule 26(a)(1) of the Federal Rules of Civil

Procedure, to the following:

> Counsel for Plaintiff
> A.J. Stecklein
> Stecklein & Rapp, Chartered
> 748 Ann Avenue
> Kansas City, Kansas 66101
> aj@kcconsumerlawyer.com
>
> Counsel for Plaintiff
> Gina Chiala
> Heartland Center for Jobs and Freedom
> 4047 Central Street
> Kansas City, Missouri 64111
> ginachiala@jobsandfreedom.org

Respectfully submitted:

*/s/ Nicholas J. Porto*
Nicholas J. Porto, MO #56938
1600 Baltimore, Suite 200A
Kansas City, MO 64108
Telephone: (816)463-2311
Fax Number:(816)463-9567
nporto@portolaw.com
**ATTORNEYS FOR DEFENDANT**

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

Case Number: 4:20-cv-00381-BP

## AMENDED NOTICE OF INCLUSION IN THE MEDIATION AND ASSESSMENT PROGRAM

This is notice that your case is included in the Western District of Missouri's Mediation and Assessment Program or "MAP." For MAP requirements, including required in-person attendance, carefully review the Court's General Order attached.

Your case has been re-assigned to the following category in MAP:

__X__ Outside Mediator

_____ United States District or United States Bankruptcy Judge

_____ Director of the Mediation and Assessment Program

## OUTSIDE MEDIATOR ASSIGNMENT

If your case has been assigned to the Outside Mediator category, **the parties have 14 calendar days after the Rule 26 meeting to select an Outside Mediator, schedule the mediation and file a Designation of Mediator** (ADR event in ECF). The Designation of Mediator should contain the name of the Outside Mediator, the date, time and place of the in-person mediation; and it must be signed by or on behalf of each party. The mediation shall occur no later than 75 calendar days after the Rule 26 meeting.

**The Mediator and parties (pro se or by counsel) shall submit a post-mediation status report** to the Director within 10 calendar days after the mediation (separately or jointly, and preferably by email to map@mow.uscourts.gov). The report should state: how long the mediation lasted; whether all required parties were present in person; the outcome of the mediation; and if the case did not settle, whether additional settlement discussions would be productive and at what point in time or after what specific events.

JUDGE ASSIGNMENT

If your case has been assigned to a Judge for mediation, you will be notified by the Judge's office of the date, time and place of a settlement conference. The mediation shall occur no later than 75 calendar days after the Rule 26 meeting, unless otherwise scheduled by the Judge.

DIRECTOR ASSIGNMENT

If your case has been assigned to the Director of MAP for mediation, you will be notified by the Director's office of the date, time and place of either a teleconference or the mediation. The mediation shall occur no later than 75 calendar days after the Rule 26 meeting, unless otherwise scheduled by the Director.

MEDIATION

Mediation is a process in which a neutral third party assists the parties in developing and exploring their underlying interests, legal positions, and options toward resolving the case through negotiations. As a party to a lawsuit in this Court, you are entitled to pursue all claims or defenses to claims that you have asserted until a disposition of the claims or defenses is made by the Court or a jury. However, most of the lawsuits filed in this and other courts are resolved by voluntary settlement of the parties before trial. With a settlement, the expense and inconvenience of litigation is reduced and the uncertainty of the outcome is eliminated. Good faith participation in MAP is required, but you are not required to settle the case. It is important that you carefully review and evaluate your case prior to the mediation or other ADR option session, and that you come prepared to discuss and negotiate the settlement of your case.

ATTENDANCE AT MEDIATION

Please note that lead trial counsel and all named parties are required to attend mediation in person. In-person attendance of additional individuals is also required when applicable (e.g. insurance company representatives). See Section V.E. of the General Order. The failure to attend mediation or other ADR option session, or the refusal to cooperate or timely cooperate in MAP, may result in the imposition of sanctions by the assigned Judge.

CONTINUING OBLIGATIONS

Inclusion in MAP does not relieve you of any obligations or deadlines that you have in this lawsuit. If you have been served, you must file a timely response in order to avoid the risk of a default judgment.

QUESTIONS

For questions concerning MAP requirements, please review the MAP General Order and the MAP FAQs:

http://www.mow.uscourts.gov/district/map
http://www.mow.uscourts.gov/sites/mow/files/MAP_FAQs.pdf.

You may also contact the MAP office.

Mediation and Assessment Program
Jill A. Morris, Director
Charles Evans Whittaker Courthouse
400 E. 9th Street, Room 3238
Kansas City, Missouri 64106
map@mow.uscourts.gov (E-mail)
816-512-5080 (Telephone)
816-512-5089 (Facsimile)

2

**General Order**
**Western District of Missouri**
**Mediation and Assessment Program**
**(Restatement Effective August 1, 2013,**
**Amendment Effective September 1, 2015**
**Amendment Effective November 14, 2019)**


I.      **PURPOSE**

The Court's Mediation and Assessment Program ("MAP" or the "Program") is
designed to encourage parties to:  1) confront the facts and issues in their case
before engaging in unnecessarily expensive and time-consuming discovery
procedures, 2) engage in early and meaningful discussions of the issues, 3)
consider the views of the opposing side, 4) consider the projected costs of future
proceedings in an effort to settle the case before costs and lawyers' fees have
made settlement more difficult, and 5) consider other  methods of resolving their
disputes.  It recognizes that full formal litigation of civil claims can impose large
economic and other burdens on parties and can delay the resolution of disputes.  It
will be administrated by a "Director," and all references herein to "Director" shall
be deemed to be referring to the Director of the Program.

II.     **PROGRAM OVERVIEW**

A.      **Mediation.** Mediation is the primary method of Alternative Dispute
        Resolution ("ADR") offered by the Court under this Program.

        1.      Mediation is a process in which a neutral third party assists the
                parties in developing and exploring their underlying interests (in
                addition to their legal positions), promotes the development of
                options and assists the parties toward settling the case through
                negotiations.  The mediation process does not normally
                contemplate presentations by witnesses.

        2.      The Director, Mediating Judge or Outside Mediator (collectively
                "Mediator") may give to any or all parties:

                a)      an estimate, where feasible, of the likelihood of liability
                        and the dollar range of damages;

                b)      an opinion of the verdict if he or she were the trier of fact;

                c)      an assessment of key evidentiary and tactical issues; and

                d)      a nonbinding, reasoned evaluation of the case on its merits.

        3.      The Mediator does not review or rule upon questions of fact or
                law, or render any final decision in the case.

1

4. The Mediator does not have power to impose a settlement or to dictate any agreement regarding the pretrial management of the case. This provision shall not preclude the parties from reaching an agreement with assistance from the Mediator as to what information should be exchanged prior to mediation, so long as it does not contradict or conflict with the Scheduling Order or any other order as to the management of the case.

B. **Other Options.** If any participant in the Program is interested in an ADR option other than mediation, such as early neutral evaluation, mini-trials, summary jury trials, arbitration or some other hybrid form of ADR ("other ADR option sessions"), that participant should contact the Director to discuss sufficiently in advance of the mediation or pre-mediation conference, if applicable. If the parties are unable to agree, the Director in his or her discretion, after consultation with one or all the parties, may select some other form of ADR. The Director may not select binding arbitration unless all parties agree in writing.

## III. ROLE OF DIRECTOR

A. **Selection.** The Program Director shall be selected by the Court.

B. **Director Responsibilities.** In addition to any responsibilities or duties noted elsewhere in this General Order or as assigned by the Chief Judge, the Director shall have the following responsibilities:

1. Direct and administer the Program, including developing guidelines and rules consistent with this General Order and coordination of all activities with the office of the Western District Clerk.

2. Set and conduct mediation sessions or other ADR option sessions as time permits. Serve as a mediator at any subsequent mediation or other ADR option sessions in his or her discretion.

3. Oversee the assignment, and where necessary reassignment, of cases in the Mediation and Assessment Program. To the extent not otherwise handled automatically by CM/ECF, assign cases for mediation or for other appropriate ADR option sessions to: United States Magistrate Judges, United States Bankruptcy Judges, Outside Mediators, the Director, and if a United States District Court Judge consents to the assignment, cases may be assigned to a United States District Court Judge.

4. Assist in monitoring the evaluation of the Program, including participation in the development, compilation and analysis of surveys, questionnaires and focus groups for counsel and clients.

2

5. Require mediators on the List of Mediators to take selected cases pro bono if needed. Such assignment shall be made using a fair process in the sole discretion of the Director. The Director shall develop guidelines for determining whether a case qualifies for pro bono assignment.

6. Report to the Court on the status of the Program and make appropriate recommendations for modifications of the Program.

7. Decide, in his or her discretion, at any time in the process, to exempt, temporarily suspend, extend the deadlines or withdraw a case from the Program, if for any reason, the case is not suitable for the Program.

8. Permit, in his or her discretion, parties to submit written mediation or other ADR statements, no longer than three pages three business days prior to the session.

9. Organize and conduct, in his or her discretion, training or other sessions for Mediators and participants as needed and as time permits.

10. Select, organize and lead, in his or her discretion, a group or advisory board to provide input and suggestions for the Program as needed and as time permits.

11. Develop a policy which will address the collection of files, written statements, and other confidential materials for storage and destruction.

## IV. INCLUDED CASES

**A.** **Case Selection.** All non-excluded civil cases filed in the Western District shall be included in the Mediation and Assessment Program.

**B.** **Excluded Cases.** The following cases are excluded from the Program:

1. Multi-district cases

2. Social Security appeals

3. Bankruptcy appeals

4. Habeas Corpus actions

5. Prisoner pro se cases

6. Other pro se cases where motion for appointment of counsel is pending

3

7.   Prisoner cases

8.   Student Loan cases

9.   Citizenship or Immigration cases.

**C.**   **Class and Collective Actions.** The Director may determine in his or her discretion when and how to involve class and collective action cases in the Program.

**D.**   **Additions.** The Director or any Western District Judge may in his or her discretion add additional cases to the Program which are not automatically assigned to the Program.

**V.**   **GENERAL PROCEDURES**

**A.**   **Notice to Parties.** Notice to parties of case selection for the Program shall be provided as follows:

1.   When a non-excluded case is filed, the parties will receive electronic Notice of Inclusion in the Program and assignment of their case to the Program Director, a Western District Judge or the Outside Mediator category for purposes of mediation.

2.   The Clerk shall mail a copy of the Notice of Inclusion to any pro se litigant who does not utilize CM/ECF.

3.   In pro se matters or other matters in which the Clerk is required to issue service, the Notice of Inclusion shall be attached by the Clerk to each summons issued in such action.

4.   Plaintiff's counsel shall serve a copy of the Notice of Inclusion on defense counsel in conjunction with service of the Complaint or, if applicable, Defendant's counsel shall serve a copy of the Notice of Inclusion on Plaintiff's counsel in conjunction with service of the Notice of Removal.

**B.**   **Timing.** The initial mediation or other ADR option session conducted pursuant to this Program shall occur no later than 75 calendar days after the Rule 26 meeting unless an extension of time is granted pursuant to Section V.C. below.

**C.**   **Extensions.**

1.   Extensions of Deadlines and Events in Outside Mediator Cases and Director Cases. Requests for extensions of Program deadlines and events shall be made in writing (email and facsimile are acceptable) to the Director within five business days of receiving notice of the deadline or event, unless another timeframe is set by

4

the Director. The request shall include the detailed good cause reason for the requested extension and the opposing party's position on the requested extension. The Director may grant or deny the request in his or her discretion. Appeals from the Director's decision, while discouraged, may be made by written motion to the Judge to whom the case is assigned.

2.     Extensions or Changes to a Mediation Date with a Mediating Judge. If good cause exists to request a change in the mediation date set by the Mediating Judge, such request shall be made in writing to the Mediating Judge within five business days of notice of the mediation or other ADR option session or within the timeframe otherwise required by the Mediating Judge.

3.     Mediation Dates Set by Director or Mediating Judges. If the Director or a Mediating Judge schedules a mediation or other ADR option session outside the 75 calendar day period following the Rule 26 meeting, such scheduling will operate as an automatic and acceptable extension under this Section without any additional action on the part of counsel or the parties.

**D.**     **Opting Out.** Cases will not normally be allowed to opt out of the Program. However, there may be cases where good cause can be demonstrated for opting out. All requests to opt out shall be in writing and shall set forth in detail the reasons for the request. A written request (email and facsimile are acceptable) asking to opt out shall be sent to the Director within ten calendar days of receiving the initial Notice of Inclusion that the case is assigned to the Program. Subject to the considerations stated herein, the Director may grant or deny the request in his or her discretion. Appeals from the Director's decision, while discouraged, may be made by written motion to the Judge to whom the case is assigned.

**E.**     **Attendance at Program Sessions and Location.**

1.     Parties and Representatives

    a)     Parties. It is the intent of the Court that the parties attend all mediation or other ADR option sessions in person where there will be significant discussion about resolving the case.

    b)     Party Alternate. A party other than a natural person satisfies the attendance requirement if represented by a person or persons (other than outside or local counsel) with authority to enter into stipulations, with reasonable settlement authority, and with sufficient stature in the

5

organization to have direct access to those who make the ultimate decision about settlement.

    c)    Insurer.  If an insurance company's approval is required by any party to settle a case, a representative of the insurance company with significant settlement authority shall attend the mediation or other ADR option sessions in person.

2.    Proper Representative.  If it appears to the Mediator that a case is not being reasonably evaluated by the representative present, the Mediator may meet privately with one or both sides to determine the analysis that has gone into the evaluation of the case, including the names and the authority of the individual involved in the analysis.  The Mediator may request identified individuals or designate a level of authority to be present if subsequent Program sessions are scheduled.

3.    Counsel.  Each party shall be accompanied in person by the lawyer expected to be primarily responsible for handling the trial of the matter ("lead trial counsel").  Local counsel is not typically required to attend the mediation or other ADR option session but may be required to attend the mediation or other ADR session in the Director's discretion.  If an individual is not represented by counsel, that party may appear on his or her own behalf.

4.    Attendance.  The parties, party alternate (when applicable), insurer (when applicable) and lead trial counsel shall attend all mediations or other ADR option sessions in person unless their attendance has been excused in advance by the Director or Mediating Judge.  This attendance requirement reflects the Court's view that a couple of the principle purposes of the Program sessions are to afford litigants an opportunity to articulate their positions and to learn about opposing parties' positions and to be properly positioned to make effective progress toward resolving the case.  See Section VI.B.2. for limitations on excusal and modification of these requirements by Outside Mediators.

5.    Location.   Mediation shall be held in the city of the divisional office in which the case is pending, unless otherwise agreed to in advance by the parties and approved by the Mediator, or unless otherwise selected by the Mediating Judge or Director.

**F.**    **Additional Sessions.**  Additional mediation sessions or other ADR option sessions may be required at the discretion of the Director, Mediating Judge or the Judge to whom the case is assigned.

**G.** **Mediation Statements.** If required, mediation statements shall not be filed with the Court, and the Judge assigned to hear the case shall not have access to them.

**H.** **Mediation-Related Activities.** The Mediator may in his or her discretion conduct pre- and post-mediation activities including but not limited to a pre-mediation conference to discuss, with the parties separately or jointly, what discovery or additional discovery is needed and may devise a plan for sharing the important information and/or conducting the key discovery that will equip them, as expeditiously as possible, to enter meaningful settlement discussions.

**I.** **Status Reports.** The Director may request a status report from the parties, counsel or the Mediator at any time. Failure of the parties, counsel or Outside Mediator to timely provide requested information may be grounds for sanctions under Section X.

**J.** **Notice of Settlement.** If the parties settle the case prior to the mediation or other ADR option session, the Mediator, the Director and the Court shall be advised promptly.

**K.** **Reports of Violations.** Mediators, parties and counsel shall promptly report in writing violations of this General Order to the Director and the Court.

**VI.** **PROCEDURES APPLICABLE TO CASES MEDIATED BY AN OUTSIDE MEDIATOR**

    **A.** **Selection of Outside Mediator.**

        1. Mediator Designation. When a case is assigned for mediation with an Outside Mediator, the parties or their counsel shall within fourteen calendar days after the Rule 26 meeting electronically file a Designation of Mediator notice (as an ADR event in CM/ECF) identifying their selected Outside Mediator and the date, time and specific location of the mediation. If the Director approves, in writing and in advance, the parties may select as a mediator a person not on the List of Mediators.

        2. No Agreement. If the parties do not agree on, or choose not to select, an Outside Mediator, the Director will give the parties a list of potential mediators selected by the Director. The number of potential mediators on the list will be twice the number of "sides" in the litigation plus one. (For example, in litigation having two "sides," the list will contain five names.) The parties shall have seven calendar days from the date on the list of potential mediators to:

7

a) agree as to a mediator on the list and to report the selection of the agreed mediator to the Director in writing, or

b) designate a "strike" of the names of two potential mediators on the list of potential mediators. The strikes shall be in writing and shall be delivered to the Director, preferably by email or facsimile.

Unless the parties have agreed on a mediator as set out above, the Director shall designate one of the persons remaining on the list of potential mediators and shall promptly notify the parties and the mediator of the designation.

Upon failure of counsel to file the Designation of Mediator with all required information or to secure a mutually agreeable date, the Director may fix the date, time and place for the mediation or other ADR option session.

**B.    Mediation with Outside Mediators.**

1.    Date of Mediation.  Section V.B. governs the timeframe within which the mediation or other ADR option session shall occur.  The Outside Mediator may, with the consent of all parties and counsel, reschedule the mediation to a date certain not later than ten calendar days after the scheduled date.  Any continuance beyond that time or any continuance of the mediation deadline itself must be approved by the Director in accordance with Section V.C.

2.    Limits on Excusing Attendance Requirements.  Outside Mediators may not excuse the participation or appearance or allow an alternate mode of appearance of a party, party alternate, insurer or lead trial counsel from mediation without written approval from the Director sufficiently in advance of the mediation or other ADR option session.

3.    Post-Mediation Status Report.  Within ten calendar days following the conclusion of the mediation or other ADR option session, the Mediator and parties (pro se or by counsel) shall submit a status report to the Director stating whether all required parties were present, the outcome of the session, whether additional settlement discussions would be  productive and at what point in time or after what specific events, in addition to other information the Director may require for evaluation or follow-up purposes. The Director may request a  status report from the counsel or the Mediator at any time.

8

**VII.    LIST OF OUTSIDE MEDIATORS**

 A. **List of Mediators.** The Director shall prepare a list of persons who appear to have the minimum requirements to serve as a Mediator, as described below. The Director may add or delete persons from the List of Mediators. A copy of the List of Mediators will be available on the Court's internet site.  Being on the List of Mediators is not an indication that a person is a qualified mediator.  The Court is not certifying or representing that persons on the List of Mediators are qualified.

 B. **Minimum Requirements to be on the List of Mediators.**

  1. All applicants for the List of Mediators must complete the required application form.

  2. A person may be placed on the List of Mediators if:

   a) the person has been a United States District Judge, a United States Appellate Judge, a United States Magistrate Judge, a United States Bankruptcy Judge, a Missouri Circuit Court Judge, or a Missouri Appellate Judge, has had arbitration or mediation experience, and has not demonstrated any trait or behavior that is reasonably believed by the Director to be contrary to the effective and efficient management of this Program;

   b) the person is currently admitted to the Bar of this Court, has been a member of a state bar for at least eight consecutive years, has completed 16 hours of Continuing Legal Education training, certified under Missouri Supreme Court Rule 17 or by this Court, or the reasonable equivalent thereof, and has not demonstrated any trait or behavior that is reasonably believed by the Director to be contrary to the effective and efficient management of this Program; or

   c) the person is not an attorney but has obtained a degree or extensive specialized training in alternative dispute resolution, conflict management or another discipline, has had mediation experience, is knowledgeable about civil litigation in federal court, and has not demonstrated any trait or behavior that is reasonably believed by the Director to be contrary to the effective and efficient management of this Program.

9

C.     **Removal from List of Mediators.** The Director may remove any person from the List of Mediators for any reason consistent with the effective management of the Program, including but not limited to, the Outside Mediator's failure to:  provide required reports, attend any required training sessions, contribute pro bono mediation time if requested, timely mediate cases or enforce applicable requirements for mediation in Outside Mediator cases.

D.     **Oath.** Each Mediator shall take and sign the oath or affirmation prescribed by 28 U.S.C. § 453 before acting as a Mediator.

E.     **Disqualification.**

1.     Title 28 U.S.C. § 144 may be utilized to seek the disqualification of a Mediator.

2.     No person shall serve as a Mediator in any action in which any of the circumstances specified in 28 U.S.C. § 455 exist and would apply if the mediator were a "judge."

3.     Any party who believes that a Mediator has a conflict of interest or should be disqualified shall immediately bring the matter to the attention of the Director.

F.     **Compensation.**

1.     Normally Outside Mediators shall be compensated at no more than the hourly rate listed by them in their application filed with the Director and shown on the List of Mediators, which may be updated on the List of Mediators at the request of the Outside Mediator.  However, if agreed in writing and in advance between the Outside Mediator and the parties, the Outside Mediator may be compensated at a different hourly rate or by an alternative arrangement as stated in such agreement.

2.     The Director may promulgate additional guidelines for Outside Mediators for allowable charges (e.g., for research, preparation, opinion writing, etc.) and expenses.

3.     Absent agreement to the contrary, or unless the Director determines otherwise, the cost of the Outside Mediator's services shall be borne equally by the parties.

4.     Except as provided in this section, a Mediator shall not charge or accept anything of value from any source whatsoever for or relating to acting as a Mediator.

10

5. As a condition to inclusion on the List of Mediators maintained by the Director, a Mediator shall agree to serve pro bono periodically as assigned by the Director.

**G.** **Mediators as Counsel in Other Cases.**  Any person who is designated as an Outside Mediator pursuant to this General Order shall not for that reason be disqualified from appearing as counsel in any other unrelated case pending before the Court.

## VIII.  CONFIDENTIALITY

**A.** **General Provision.**  This Court, the parties, their counsel, the Mediator and any other participant in the Program shall treat as confidential the contents of any written mediation statement and anything said in mediation, including any position taken and any views of the case as expressed by any participant or Mediator.  Confidential information shall not be disclosed to: 1) anyone not involved in the litigation; 2) the assigned Judge; or 3) for any impeachment in any pending or future proceeding in this Court or any other forum, unless otherwise excepted in Section VIII.B. below.  The Mediator shall not be inquired of or called as a witness or deponent in any proceeding related to the dispute in which the Mediator served or be compelled to produce documents that the Mediator received or prepared for mediation or other ADR session.

**B.** **Exceptions.**  The confidentiality provisions do not prohibit:

1. Disclosure as stipulated to by all parties, counsel and the Mediator.

2. Disclosure of a fully executed term sheet, settlement agreement, or resolution placed on the record, to enforce a settlement.

3. Disclosure as required by law or court order.

4. Disclosure of a threat or plan to inflict bodily harm or commit a violent crime.

5. Disclosure made in a subsequent confidential mediation or other ADR session in that same case.

6. Disclosure, discoverability or admissibility of information or documents otherwise discoverable under the Federal Rules of Civil Procedure simply because of its introduction or use in mediation or other ADR session.

11

7. The parties and counsel providing ADR status reports or otherwise providing information to the Director regarding a possible violation of this General Order.

8. The Mediator from providing ADR status reports or otherwise providing information to the Director, the assigned Judge or Court en banc regarding noncompliance by the parties, counsel or the Mediator with this General Order.

9. The Director from attending any Program session and discussing with any Mediator, party or counsel any communication, comment, assessment, evaluation or recommendation.

10. The parties, counsel, Mediator or Director from responding to inquiries by persons duly authorized by the Court to analyze and evaluate the Program. The names of the people responding and any information that could be used to identify specific cases or parties shall be confidential.

**C.** **No Recording.** No recording shall be made of any of the mediation or other ADR option sessions held under the Program, nor shall parties utilize private court reporters or any other type of recording technology during the Program sessions, unless all parties agree, or unless the recording is made under non-binding arbitration, or unless the parties have agreed to binding arbitration.

**D.** **Confidentiality Agreement.** The Mediator may ask counsel, the parties and all persons attending the mediation or other ADR option session to sign a confidentiality agreement.

## IX. EVALUATION

The Court may require evaluation of the Program to: (a) determine the success of the Program in expediting the processing of cases and reducing costs; (b) measure the satisfaction of the parties with the Program; (c) explore enhancements or changes to the Program; and (d) compare components or elements of the Program.

## X. SANCTIONS

If a party or counsel fails to make a good faith effort to participate in the Program in accordance with the provisions and spirit of this Order, the assigned Judge or Court may impose appropriate sanctions.

12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

RHONDA CHEATEM,

                    **Plaintiff,**

v.

LANDMARK REALTY OF MISSOURI,
LLC

                    **Defendant.**

**Case No. 4:20-cv-00381-BP**

---

### DEFENDANT LANDMARK REALTY OF MISSOURI, LLC'S
### MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS

Defendant Landmark Realty of Missouri, LLC ("Landmark"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c), moves the Court for dismissal of this action and/or entry of judgment on the pleadings. The factual and legal grounds supporting this Motion are set forth in detail in the suggestions filed with this motion.

Counts I, II and III of the Petition allege that Landmark unlawfully charged and retained a $450 "security deposit" payment from Plaintiff. These claims should be dismissed for lack of subject matter jurisdiction because Plaintiff received a full refund of the disputed $450 payment and does not have standing to pursue the claims because she has not suffered an injury in fact. The claims also fail as a matter of law on the theories alleged. Landmark is entitled to judgment on the pleadings on Count I for violation of the Missouri security deposit statute, Mo. Rev. Stat. § 535.300, because the disputed $450 payment does not constitute a "security deposit" as defined in that statute. Landmark is entitled to judgment on the pleadings on Counts II and III for violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. 407.010 *et seq.*, because (i) the claims presuppose a non-existent underlying violation of the Missouri security

deposit statute; (ii) the security deposit statute is the exclusive remedy if any security deposit was wrongfully withheld (assuming the $450 payment qualifies as a "security deposit"); and (iii) the application form initialed and signed by Plaintiff shows as a matter of law that she knowingly and voluntarily agreed to the collection of the disputed $450 payment.

Count IV of the Petition alleges that Landmark charged Plaintiff an unconscionable $150 administration fee in connection with the rental application process in violation of the MMPA. This claim fails as a matter of Missouri law and Landmark is entitled to judgment on the pleadings because (i) Plaintiff knowingly and voluntarily agreed to pay the disputed fee; and (ii) the Petition does not plausibly allege any facts indicating either substantive or procedural unconscionability in the assessment of the fee.

WHEREFORE, Defendant Landmark Realty of Missouri, LLC respectfully requests that the Court grant this motion and enter an order dismissing and/or granting judgment on the pleadings in favor of Landmark on all claims asserted by Plaintiff Rhonda Cheatem.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_
      Nicholas J. Porto      MO #56938
      1600 Baltimore, Suite 200A
      Kansas City, Missouri 64108
      Telephone:  816.463.2311
      Facsimile:  816.463.9567
      nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_
      Stephen J. Moore      MO #59080
      1968 Shawnee Mission Pkwy, Suite 100
      Mission Woods, Kansas 66205
      Telephone:  816.471.0909
      Facsimile:  816.471.3888
      sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

## CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that the foregoing document was filed this 20th day of July, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

                                 _/s/ Stephen J. Moore_
                                 Attorney for Defendant

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

**SUGGESTIONS IN SUPPORT OF**
**DEFENDANT LANDMARK REALTY OF MISSOURI, LLC'S**
<u>**MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS**</u>

Defendant Landmark Realty of Missouri, LLC ("Landmark") submits the following suggestions in support of its Motion to Dismiss and/or for Judgment on the Pleadings (Doc. #13), filed July 20, 2020.

## Table of Contents

Table of Authorities ............................................................................................................. ii

Introduction ........................................................................................................................... 1

Factual Background ................................................................................................................ 2

Argument and Authorities ..................................................................................................... 4

I.     Plaintiff Lacks Standing to Bring the Claims Alleged in Counts I, II and III
Because the "Security Deposit" Payment that is the Subject of Those Claims
was Refunded and Plaintiff Therefore has Not Suffered Any Injury in Fact ............... 4

II.    Landmark is Entitled to Judgment on the Pleadings on All of Plaintiff's
Claims Because Those Claims Fail as a Matter of Law on the Facts Alleged ............. 6

     A.    Landmark is Entitled to Judgment on the Pleadings on Count I for
Violation of the Security Deposit Statute, Mo. Rev. Stat. § 535.300,
Because the Disputed Payment at Issue in this Claim was Not a
"Security Deposit" as Defined in That Statute .................................................... 7

     B.    Landmark is Entitled to Judgment on the Pleadings on Counts II and III
for Violation of the Missouri Merchandising Practices Act,
Mo. Rev. Stat. § 407.020 ................................................................................... 10

          i.    Counts II and III are Premised on an Underlying Violation of the
Missouri Security Deposit Statute, and Fail as a Matter of Law
Because No Such Violation has Occurred ................................................ 10

          ii.    Even if Plaintiff Could State a Violation of the Missouri Security
Deposit Statute, Counts II and III Fail as a Matter of Law Because
that Statute is the Exclusive Remedy for Improper Collection of a
Security Deposit ...................................................................................... 10

          iii.   Counts II and III Fail as a Matter of Law Because Plaintiff
Knowingly and Voluntarily Agreed to the Terms and Conditions of
the Application Form Under Which She Made the $450 Payment .......... 11

     C.    Landmark is Entitled to Judgment on the Pleadings on Count IV for
Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat.
§ 407.020, Because the Petition Does Not Plausibly Allege that the
Disputed $150 Administration Fee is Unconscionable ....................................... 14

Conclusion ........................................................................................................................... 15

i

## Table of Authorities

**Cases**

*Ashanti v. City of Golden Valley*,
   666 F.3d 1148 (8th Cir. 2012) ................................................................ 2-3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 6

*Auer v. Trans Union, LLC*,
   902 F.3d 873 (8th Cir. 2018) ................................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................ 6

*Chochorowksi v. Home Depot U.S.A.*,
   404 S.W.3d 220 (Mo. 2013) ............................................................. 11-14

*City of Clarkson Valley v. Mineta*,
   495 F.3d 567 (8th Cir. 2007) ................................................................... 5

*Croyle ex rel. Croyle v. United States*,
   908 F.3d 377 (8th Cir. 2018) ................................................................ 3-4

*Faibisch v. Univ. of Minn.*,
   304 F.3d 797 (8th Cir. 2002) ................................................................... 6

*Gallagher v. City of Clayton*,
   699 F.3d 1013 (8th Cir. 2012) ................................................................. 6

*Hargis. Access Capital Funding, LLC*,
   674 F.3d 783 (8th Cir. 2012) ................................................................... 5

*Lastra v. Intercontinental Invs. Co.*,
   745 S.W.2d 703 (Mo. Ct. App. 1987) ..................................................... 11

*Loescher v. Minn. Teamsters Pub. & Law Enforcement Emps.' Union, Local No. 320*,
   --- F. Supp. 3d ----, 2020 WL 912785 (D. Minn. Feb. 26, 2020) ................ 5

*Mansfield v. Horner*,
   443 S.W.3d 627 (Mo. Ct. App. 2014) ..................................................... 9

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) .................................................................... 4

*Olsen v. Holder*,
   610 F. Supp. 2d 985 (S.D. Iowa 2009) .................................................... 3

ii

*Osborn v. United States*,
   918 F.2d 724 (8th Cir. 1990) ..................................................................................4

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
   911 F.3d 505 (8th Cir. 2018) ................................................................................15

*Pleasants v. Am. Express Co.*,
   541 F.3d 853 (8th Cir. 2008) ................................................................................14

*Prop. Exch. & Sales, Inc. v. King*,
   863 S.W.2d 12 (Mo. Ct. App. 1993)......................................................................11

*Schwab v. Nat'l Dealers Warranty, Inc.*,
   298 S.W.3d 87 (Mo. Ct. App. 2009)........................................................................8

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ...........................................................4

*State ex rel. Nixon v. Estes*,
   108 S.W.3d 795 (Mo. Ct. App. 2003)......................................................................9

*Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*,
   533 S.W.3d 720 (Mo. 2017) ...................................................................................7

*Tovar v. Essentia Health*,
   342 F. Supp. 3d 947 (D. Minn. 2018) ....................................................................5

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) ...................................5

*Victorian v. Wells Fargo Home Mortg.*,
   No. 4:15-cv-00667-AGF, 2017 WL 2535673 (E.D. Mo. June 12, 2017)..................13

*Wivell v. Wells Fargo Bank, N.A.*,
   No. 6:12-CV-3457-DGK, 2015 WL 7259836 (W.D. Mo. Nov. 17, 2015) ...............13

*Wright v. Oasis Legal Fin., LLC*,
   No. 4:19cv926 RWS, 2020 WL 1433645 (E.D. Mo. Mar. 24, 2020).......................15

*Younker v. Inv. Realty, Inc.*,
   461 S.W.3d 1 (Mo. Ct. App. 2015).........................................................................7

**Statutes and Rules**

Mo. Rev. Stat. § 407.010 .............................................................................................1

Mo. Rev. Stat. § 535.300 ..................................................................................... 1, 7-10

Fed. R. Civ. P. 12........................................................................................................4, 6

## **Introduction**

This lawsuit is primarily based on an assertion that Landmark wrongfully retained a $450 "security deposit" payment made by Plaintiff Rhonda Cheatem while she was applying to rent an apartment from Landmark. This is false—the full amount of the $450 charge to Plaintiff's credit card was credited back to her account shortly after the charge was made on November 20, 2019. With that payment refund, Plaintiff has not suffered any injury in fact and does not have standing to pursue any claims based on the purported retention of that payment. This includes Count I for violation of the Missouri security deposit statute, Mo. Rev. Stat. § 535.300, and Counts II and III for violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.*, all of which allege injury from the purported loss of the $450 payment. (Pet., Doc. #1-1, ¶¶ 25, 34, 51.)[1]

All of Plaintiff's claims fail as a matter of law for many other reasons as well. The claim in Count I for violation of the Missouri security deposit statute fails as a matter of law because the disputed sum of money Plaintiff paid to Landmark does not constitute a "security deposit" as the term is defined in that statute. The claims in Counts II and III for violation of the MMPA fail as a matter of law because (i) no underlying violation of the Missouri security deposit statute has occurred; (ii) the Missouri security deposit statute provides Plaintiff's exclusive remedy even if she is correct that the money she paid was a "security deposit"; and (iii) Plaintiff knowingly and voluntarily agreed to make the payment that is the subject of these claims. The claim in Count IV of Plaintiff's Petition fails as a matter of law because she knowingly and voluntarily agreed to make the payment that is the subject of that claim, and also because Plaintiff has not plausibly alleged any unconscionability in the parties' transaction.

---

[1] Count IV asserts an MMPA claim regarding the separate payment of a $150 administration fee, which has not been refunded and is not the subject of Landmark's standing argument. That claims is subject to judgment on the pleadings as discussed on pages 14-15 of these suggestions.

1

**Factual Background**

Landmark owns and operates the Willow Creek Apartments. (*See* Pet., Doc. #1-1, ¶ 7.) In November 2019, Plaintiff applied to lease an apartment from Landmark. (*Id.* ¶ 8.) As part of the rental application process, Plaintiff reviewed and signed an application form establishing certain fees and deposits she would be required to pay, including a non-refundable $40 application fee; a non-refundable $150 administration fee; and a $450 payment described as a "security deposit" that may be refundable or non-refundable depending on circumstances outlined in the form. (*Id.* ¶¶ 9-14.) A copy of the application form Plaintiff initialed and signed is attached. (*See* Declaration of Jonathan Marcus, attached as **Exhibit 1**, ¶ 3 & Ex. 1-B.)[2]

The first paragraph of the form conspicuously advised Plaintiff that the form concerned fees and deposits that may be ***non-refundable***, instructed her to review the form very carefully, and warned her that her signature on the form would acknowledge her review and understanding of the document. (*See* **Ex. 1-B**.) The second paragraph of the form conspicuously advised Plaintiff that the $40 application fee and $150 administration fee were *non-refundable*. (*See id.*) Plaintiff separately initialed that paragraph and additionally executed a payment authorization form allowing Landmark to charge her credit card in the total amount of $190. (*See id.*)

The third paragraph of the form also conspicuously advised Plaintiff that the $450 "security deposit" payment would become *non-refundable* if her application was not cancelled within 48 hours or if it was determined that her application contained false, inaccurate, or misleading information. (*See id.*) The form included a note on the term "security deposit" explaining: "Until such time as a Lease Agreement is entered into by the parties, any Security Deposit deposited

---

[2] The application form is referenced and quoted in Plaintiff's Petition. (*See, e.g.*, Pet., Doc. 1-1, ¶¶ 9-14.) Because the document is embraced by the pleadings, the Court can consider the actual application form in assessing the viability of Plaintiff's claims without converting this to a motion for summary judgment. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

does not constitute a 'security deposit' as that term is defined by Missouri . . . law." (*See id.*) Plaintiff separately initialed this paragraph and additionally executed a payment authorization form allowing Landmark to charge her credit card in the amount of $450. (*See id.*)

Plaintiff also signed the form at the bottom of the page beneath an acknowledgement that read: "***Signatures below also indicate understanding of and an agreement to be bound by the policies stated above regarding fees and deposits***." (*See id.*)

Landmark denied Plaintiff's rental application and initially advised her that the $450 "security deposit" payment was non-refundable because her application included false information. (Pet., Doc. #1-1, ¶¶ 15-16; *see also* Marcus Decl., **Ex. 1**, ¶ 4 & Ex. 1-C.)[3] Plaintiff then disputed that charge, which was refunded to her credit card account in less than 30 days from the date of the original charge on November 20, 2019. This is reflected in Landmark's transactional records (*see* Marcus Decl., **Ex. 1**, ¶ 2 & Ex. 1-A), and also in the credit card statement Plaintiff produced in discovery in this lawsuit (*see* **Exhibit 2**).[4]

Plaintiff alleges that Landmark wrongfully retained her $450 "security deposit" payment in violation of the Missouri security deposit statute (Count I) and the MMPA (Counts II and III). She further alleges that Landmark charged her an unconscionable $150 administration fee in violation of the MMPA (Count IV). These claims fail as a matter of law as discussed below.

---

[3] Like the application form, the Move-Out Statement attached as Exhibit 1-C to the Marcus Declaration is embraced by the pleadings. (*See, e.g.*, Pet., Doc. #1, ¶¶ 15-16.) Again, the Court can consider the actual document in assessing the viability of Plaintiff's claims. *Ashanti*, 666 F.3d at 1151.

[4] Landmark's transactional records (**Ex. 1-A**) and Plaintiff's credit card account statement (**Ex. 2**) are submitted as evidence that Plaintiff lacks standing to bring the claims in Counts I, II and III of her Petition because the "security deposit" payment was refunded and she therefore has not suffered any injury in fact. Because Landmark raises the matter as a factual challenge of the Court's subject matter jurisdiction, the Court "may consider matters outside the pleadings." *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018); *see also Olsen v. Holder*, 610 F. Supp. 2d 985, 990 (S.D. Iowa 2009) ("If a party mounts a factual challenge [to subject matter jurisdiction], the Court may look outside the pleadings to determine if jurisdiction exists, and the nonmoving party loses the benefit of favorable inferences from its factual statements.").

<u>**Argument and Authorities**</u>

This matter should be dismissed for many reasons. First, Plaintiff lacks standing to bring the claims in Counts I, II and III because she received a complete refund of the "security deposit" payment at issue in the claims and has therefore not suffered an injury in fact. Second, Landmark is entitled to judgment on the pleadings on all of Plaintiff's claims because those claims fail as a matter of law on the facts alleged.

I. **Plaintiff Lacks Standing to Bring the Claims Alleged in Counts I, II and III Because the "Security Deposit" Payment that is the Subject of Those Claims was Refunded and Plaintiff Therefore has Not Suffered Any Injury in Fact**

Rule 12(b)(1) authorizes the dismissal of an action for lack of subject matter jurisdiction. On a factual challenge to subject matter jurisdiction, the Court "may consider matters outside the pleadings" and the non-moving party "does not have the benefit of 12(b)(6) safeguards." *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). With a factual challenge, "the plaintiff will have the burden of proof that jurisdiction does in fact exist" and "no presumptive truthfulness attaches to the plaintiff's allegations." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Here, Landmark makes a factual challenge to subject matter jurisdiction based on Plaintiff's lack of standing.

Article III of the United States Constitution limits judicial power to "cases and controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," and to establish the "irreducible constitutional minimum" for standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "It is well established that standing is a jurisdictional pre-

4

requisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).

Injury in fact is "foremost among [the standing] requirements." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). "To establish an injury in fact, a plaintiff must show an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018). "'Article III standing requires a concrete injury even in the context of a statutory violation,' and a plaintiff cannot 'allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement . . . .'" *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). "Standing must exist not only for each claim the plaintiff brings, but also for each form of relief that the plaintiff seeks." *Loescher v. Minn. Teamsters Pub. & Law Enforcement Emps.' Union, Local No. 320*, --- F. Supp. 3d ----, 2020 WL 912785, at *4 (D. Minn. Feb. 26, 2020) (citing *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)).

Here, Counts I, II and III of the Petition allege that Plaintiff is injured because Landmark retained her $450 "security deposit" payment. (*See* Pet., Doc. #1-1, ¶¶ 25, 34, 51.) In reality, that payment was credited back to Plaintiff less than thirty days after the original charge was run on her credit card. This is reflected in the account statement Plaintiff produced in discovery (**Ex. 2**) and in Landmark's own transactional records (Marcus Decl., **Ex. 1**, ¶ 2 & Ex. 1-A.) Because she has no out-of-pocket loss on the "security deposit" payment, Plaintiff has not suffered any injury in fact and does not have standing to pursue the claims in Counts I, II and III allegedly arising out of that payment. *See, e.g.*, *Hargis. Access Capital Funding, LLC*, 674 F.3d 783, 791 (8th Cir. 2012) ("If [plaintiff] did not pay Defendants, then she did not suffer an injury, and so would not have standing."); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 955 (D. Minn. 2018) (finding a

lack of standing when paid sums were reimbursed because plaintiff's "only cognizable injuries in fact, *i.e.*, her out-of-pocket expenses, have been redressed").

Plaintiff's lack of standing deprives the Court of subject matter jurisdiction on the claims in Counts I, II and III of the Petition. Those claims should be dismissed accordingly.

## II. Landmark is Entitled to Judgment on the Pleadings on All of Plaintiff's Claims Because Those Claims Fail as a Matter of Law on the Facts Alleged

Rule 12(c) provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." An entry of judgment on the pleadings "is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002).

On a motion for judgment on the pleadings under Rule 12(c), the Court employs the same standard used on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must allege facts that "raise a right to relief above the speculative level." *Id.* Conclusory factual allegations are not sufficient. *Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Nor are legal conclusions. *Id.* ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Here, Landmark is entitled to judgment as a matter of law on each of Plaintiff's claims because those claims fail as a matter of law on the facts alleged.

**A.** **Landmark is Entitled to Judgment on the Pleadings on Count I for Violation of the Security Deposit Statute, Mo. Rev. Stat. § 535.300, Because the Disputed Payment at Issue in this Claim was Not a "Security Deposit" as Defined in That Statute**

Count I of Plaintiff's Petition asserts that Landmark withheld her "security deposit" in violation of Section 535.300, which permits a landlord to retain a tenant's security deposit only in an amount necessary to (1) remedy a tenant's default in rent payment; (2) restore the condition of a dwelling unit; or (3) compensate for actual damages caused by a tenant's failure to give adequate notice to terminate the tenancy. Mo. Rev. Stat. § 535.300.4. Plaintiff's theory of liability puts the cart before the horse because the disputed sum of money retained by Landmark was not a "security deposit" as that term is used in Section 535.300, and the statute therefore has no application or bearing on Landmark's alleged conduct.

The statute expressly states: "As used in this section, the term 'security deposit' means any deposit of money or property, however denominated, which is furnished by a tenant to a landlord **to secure the performance of any part of the rental agreement**, including damages to the dwelling unit." Mo. Rev. Stat. § 535.300.8 (emphasis added). Whether the sum of money in dispute constitutes a "security deposit" is the threshold issue for application of Section 535.300. *See Younker v. Inv. Realty, Inc.*, 461 S.W.3d 1, 6 (Mo. Ct. App. 2015) ("Ordinarily, an analysis of the application of this section should begin with a determination as to whether particular funds paid by a tenant to a landlord meet the . . . statutory definition of a 'security deposit.'"). In making this determination, the Court must "give effect to legislative intent as reflected in the plain language of the statute at issue." *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. 2017).

For purposes of this case, the statute clearly and unmistakably requires the parties to have a rental agreement in place before any sum of money paid by a tenant to a landlord can be con-

sidered a "security deposit." Without a rental agreement between the parties, there is nothing for a tenant to perform and no part of a tenant's performance for a landlord to secure as required by the definition of "security deposit" in Section 535.300.8. The need for a formal rental agreement is reinforced by other provisions of the statute as well. Subsection (2) of the statute provides that "[a]ll security deposits shall be held by the landlord for the tenant, who is **a party to the rental agreement** . . . ." Mo. Rev. Stat. § 535.300.2 (emphasis added). And Subsection (5) of the statute provides for inspection of a dwelling unit "following **the termination of the rental agreement** to determine the amount of the security deposit to be withheld . . . ." Mo. Rev. Stat. § 535.300.5 (emphasis added). Without a formal rental agreement, these provisions are functionally meaningless. Under Missouri law, the Court is prohibited from interpreting the statute in a manner that would render its terms a nullity. *See Schwab v. Nat'l Dealers Warranty, Inc.*, 298 S.W.3d 87, 91 (Mo. Ct. App. 2009).

Here, the $450 payment from Plaintiff to Landmark was not a "security deposit" as that term is used in Section 535.300 because the parties did not have a rental agreement. The Petition acknowledges that Plaintiff's application was rejected and no rental agreement was ever entered into by the parties. (Pet., Doc. #1-1, ¶¶ 15-16.) Thus, the parties never had a landlord-tenant relationship, and the disputed sum of money was not required to be held by Landmark for Plaintiff as a party to a rental agreement. *See* Mo. Rev. Stat. § 535.300.2. Plaintiff also never moved into an apartment, and the parties were never required to inspect a dwelling unit following Plaintiff's move-out to determine an amount of money to be withheld from a security deposit. *See* Mo. Rev. Stat. § 535.300.5. Because the parties never had a rental agreement or a landlord-tenant relationship, the $450 payment from Plaintiff to Landmark cannot constitute a "security deposit" as that term is defined under Section 535.300.8 and the security deposit statute simply does not apply to the transaction between Plaintiff and Landmark.

Plaintiff alleges that the $450 payment was described as a "security deposit" in the application form (*see* Pet., Doc. #1-1, ¶ 13), but this colloquial description is not controlling and cannot override the statutory definition of "security deposit" in determining the legal application of Section 535.300. *See Mansfield v. Horner*, 443 S.W.3d 627, 660 (Mo. Ct. App. 2014) ("[A] court has no authority to write into a statute a provision not covered by its language."); *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 798 (Mo. Ct. App. 2003) ("The statutory definition should be followed in the interpretation of the statute to which it relates and is intended to apply and supersedes the commonly accepted dictionary or judicial definition and is binding on the courts." (internal quotations omitted)).

The Petition also neglects to mention the pertinent portion of the application form stating: "Until such time as a Lease Agreement is entered into by the parties, any Security Deposit deposited does not constitute a 'security deposit' as that term is defined by Missouri . . . law." (**Ex. 1-B** at n.1.) This is consistent with the statute's definitional requirement that a formal rental agreement be executed before a security deposit will exist. *See* Mo. Rev. Stat. § 535.300.8. It also demonstrates very clearly that the parties did not intend to expand the statute's protections or otherwise treat Plaintiff's $450 payment as a true "security deposit" for legal purposes until her rental application was approved and the parties entered into a written lease for an apartment. Before that time, the parties expressly agreed that the sum was potentially refundable but could be forfeited under the circumstances described in the application form.

Because the $450 payment from Plaintiff to Landmark was not a "security deposit" within the meaning of Section 535.300, that statute cannot apply to the parties' transaction and Plaintiff's claim for violation of that statute fails as a matter of law. The Court should therefore enter judgment on the pleadings in favor of Landmark on this claim.

9

**B.** **Landmark is Entitled to Judgment on the Pleadings on Counts II and III for Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020**

Counts II and III of the Petition allege that Landmark violated the MMPA by collecting a non-refundable security deposit. These claims fail as a matter of law because (i) they presuppose a non-existent violation of the Missouri security deposit statute; (ii) the security deposit statute is the exclusive remedy for any improper collection of a security deposit; and (iii) the terms of the parties' application form reflect Plaintiff's knowing and voluntary agreement to the collection of the "security deposit" payment.

      **i.** **Counts II and III are Premised on an Underlying Violation of the Missouri Security Deposit Statute, and Fail as a Matter of Law Because No Such Violation has Occurred**

The claims in Counts II and III are derivative of Count I; they allege that Landmark violated the MMPA by withholding Plaintiff's $450 payment in violation of Missouri's security deposit statute. (*See* Pet., Doc. #1-1, ¶¶ 30, 42-44.) As discussed above, Plaintiff's claim for violation of the security deposit statute fails as a matter of law because the disputed sum of money is not a "security deposit" as that term is defined in Section 535.300. For the same reason that the claim under Section 535.300 fails, the derivative claims under the MMPA also fail as a matter of law and Landmark is entitled to judgment on the pleadings on those claims.

      **ii.** **Even if Plaintiff Could State a Violation of the Missouri Security Deposit Statute, Counts II and III Fail as a Matter of Law Because that Statute is the Exclusive Remedy for Improper Collection of a Security Deposit**

The claims in Counts II and III are also caught in a double-bind. Even if the disputed sum of money paid by Plaintiff could be considered a "security deposit" under Section 535.300 and Plaintiff could state a cognizable claim against Landmark in Count I for retaining the money in violation of that statute, Plaintiff would still be precluded from making her claims in Counts II

and III under the MMPA because Section 535.300 provides the exclusive remedy for wrongful withholding of a security deposit. *See Prop. Exch. & Sales, Inc. v. King*, 863 S.W.2d 12, 15 (Mo. Ct. App. 1993) (holding that claims for fraud, unlawful practices, breach of contract and prima facie tort having "their common nucleus of operative fact [in] defendants' alleged wrongful failure to return the deposit" are precluded as a matter of law because Section 535.300 "provides tenants with their exclusive remedy when a landlord wrongfully withholds a security deposit"); *Lastra v. Intercontinental Invs. Co.*, 745 S.W.2d 703, 705-06 (Mo. Ct. App. 1987) ("The subject of claims for refund of security deposits to tenants has been pre-empted by the legislative enactment [of Section 535.300] which created the rights and obligations and limited the allowance of damages to not more than twice the amount of the deposit. . . . Appellants were confined to the statutory remedy and the trial court correctly so ruled.").

King is particularly instructive because it involved claims based on "alleged violations of the Merchandising Practices Act." *King*, 863 S.W.2d at 14. Like those claims, Plaintiff's MMPA claims in Counts II and III based on the alleged wrongful failure to return a security deposit are barred as a matter of law by the exclusive remedy of Section 535.300. For this reason, the Court should enter judgment on the pleadings in favor of Landmark on these claims.

### iii. Counts II and III Fail as a Matter of Law Because Plaintiff Knowingly and Voluntarily Agreed to the Terms and Conditions of the Application Form Under Which She Made the $450 Payment

Plaintiff's MMPA claims regarding the "security deposit" payment also fail as a matter of law because the terms of the parties' agreement were fully disclosed in the application form that Plaintiff knowingly and voluntarily signed. The controlling case on this issue is *Chochorowksi v. Home Depot U.S.A.*, 404 S.W.3d 220 (Mo. 2013), where the Missouri Supreme Court held that an MMPA claim predicated on an allegedly deceptive customer agreement failed as a matter of

law when the terms of that agreement were apparent and had been accepted by the customer. *Id.* at 228-29.

The salient facts in *Chochorowski* are strikingly similar to those at issue here. As in *Chochorowski*, the terms of the parties' agreement are "evidenced by their written contract" (i.e., the application form) that gives Plaintiff "obvious and unambiguous notice" of the circumstances in which her "security deposit" payment could be forfeited, and Plaintiff accepted the agreement by "affirmatively expressing her intention [to make the deal] by initialing and signing the [] agreement." *Chochorowksi*, 404 S.W.3d at 228. Like the customer in *Chochorowski*, Plaintiff "could have refused to accept [the agreement] by not signing." *Id.* Instead, as in *Chochorowski*, Plaintiff "initialed the special terms and conditions" set forth in the separate paragraph expressly pertaining to the "security deposit" payment, and then indicated her acceptance "a second time by signing her name at the bottom of the agreement[]." *Id.* at 229. Plaintiff's initials came immediately after the "security deposit" provision, and her signature at the bottom of the form came immediately after bold, italicized text stating: "***Signatures below also indicate understanding of and an agreement to be bound by the policies stated above regarding fees and deposits***." (Application Form, **Ex. 1-B**.) Plaintiff also signed a payment authorization from approving the $450 charge to her credit card, another clear indication of informed acceptance. (*See id.*)

Plaintiff does not allege anything untoward about her dealings with Landmark personnel at the time she voluntarily signed the application form. She does not suggest that she misunderstood the form, that the type size or format of the form was deceptive, that she was tricked or coerced into signing the form, or that she otherwise was prevented from making a fully informed and entirely voluntary decision to sign the form and accept its terms. Plaintiff does not even dispute in her Petition that the rental application she submitted contained false, inaccurate or misleading information so as to render her "security deposit" payment non-refundable under the

agreed terms. This is the basis on which Landmark initially retained the payment (*see* Move Out Statement, **Ex. 1-C**), and the actions taken by Landmark under these circumstances are entirely consistent with the terms of the application form to which Plaintiff agreed.

Given the alleged and undisputed facts, Missouri law recognizes that Plaintiff must be "held to the terms of the contract she signed." *Id.* at 228. Missouri courts will presume that a person in Plaintiff's position "knew the agreement's terms and accepted them" and will conclude that the execution of the agreement "was either a deliberate choice or an oversight for which she is responsible and not a defect of the contract itself." *Id.* at 228-29. Because Plaintiff knowingly and voluntary agreed to the terms in the application form, she is not entitled to any relief from the agreement and cannot, as a matter of Missouri law, state a claim for unlawful practices under the MMPA challenging enforcement of that agreement. *Id.*; *see also Victorian v. Wells Fargo Home Mortg.*, No. 4:15-cv-00667-AGF, 2017 WL 2535673, at *10 (E.D. Mo. June 12, 2017) (finding no viable claim for unlawful practices under the MMPA when challenged conduct was permitted by the parties' agreement).[5]

The claims in Count II and III of the Petition fail as a matter of law for these reasons, any one of which is sufficient to support dismissal. The Court should therefore enter judgment on the pleadings in favor of Landmark on these claims.

---

[5] Count III also alleges that a Landmark employee misrepresented the legality of the "security deposit" in a phone call with Plaintiff after the fact. (Pet., Doc. #1-1, ¶¶ 40, 42-44.) *Chochorowksi* forecloses this theory of liability by holding that the alleged after-the-fact statements about the parties' agreement have no bearing on the voluntary execution and proper enforcement of the agreement by its plain terms. *See Chochorowski*, 404 S.W.3d at 230 ("The employee's statement could not have modified the agreement or misled Ms. Chochorowski, however, because the statement was made after the transaction was completed except for her payment of the rental fees."); *see also Wivell v. Wells Fargo Bank, N.A.*, No. 6:12-CV-3457-DGK, 2015 WL 7259836, at *6 (W.D. Mo. Nov. 17, 2015) ("Missouri case law, exemplified by *Chochorowksi*, dictates that the oral communications here do not reach the level of unlawful trade practices.").

Moreover, to the extent Count III characterizes the $450 "security deposit" payment as unconscionable, it fails for the same reason as Count IV because the Petition does not plausibly allege any facts indicating either substantive or procedural unconscionability in the parties' transaction.

**C. Landmark is Entitled to Judgment on the Pleadings on Count IV for Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020, Because the Petition Does Not Plausibly Allege that the Disputed $150 Administration Fee is Unconscionable**

Count IV of the Petition alleges that the $150 administration fee changed by Landmark in the rental application process is unconscionable and violates the MMPA. Like Counts II and III, this claim fails as a matter of law because Landmark charged the administration fee according to the obvious and unambiguous terms of the application form that Plaintiff knowingly and voluntarily accepted (*see* **Ex. 1-B**), and Plaintiff has not alleged any facts plausible suggesting that she was somehow tricked, deceived, forced or otherwise compelled into making that agreement. *See Chochorowski*, 404 S.W.3d at 228-30.

With regard to Plaintiff's assertion of unconscionability, "Missouri courts have described an unconscionable agreement as one in which no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other, or one where there is an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Pleasants v. Am. Express Co.*, 541 F.3d 853, 857 (8th Cir. 2008) (internal quotations omitted). In Missouri, a contract is void for unconscionability only if it is both procedurally and substantively unconscionable: "Procedural unconscionability in general is involved with the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position. Substantive unconscionability refers to an undue harshness in the contract terms themselves." *Id.* at 857-58 (internal citations and quotations omitted).

Plaintiff's claim fails as a matter of law because she has not come even close to plausibly alleging either substantive or procedural unconscionability. The Petition does not allege any facts plausibly suggesting the $150 administration fee is out of line with industry standards, let alone

so high that it is substantively unconscionable. Nor has Plaintiff plausibly alleged any facts indicating procedural unconscionability in her execution of the application form in which she agreed to the $150 administration fee or the payment authorization form in which she approved a credit card charge in that amount. (See **Ex. 1-B**.) Count IV should be dismissed on this basis. *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 513 (8th Cir. 2018) (affirming dismissal of claims based on unconscionability because plaintiff "failed to plausibly allege that the agreement was unconscionable"); *see also Wright v. Oasis Legal Fin., LLC*, No. 4:19cv926 RWS, 2020 WL 1433645, at *4 (E.D. Mo. Mar. 24, 2020) ("Wright agreed to receive a loan of a sum certain and agreed to repay a sum certain on the maturity date of the loan. Both figures are prominently printed on the front of the agreement. . . . [The] amended complaint does not allege any high pressure sales tactics by employed by Oasis, unreadable fine print in the agreements, or any misrepresentation in the agreements. As a result, Wright has failed to allege facts to establish a plausible claim that the agreements are substantively or procedurally unconscionable." (internal citations omitted)).

## Conclusion

The Court should dismiss Counts I, II and III for lack of subject matter jurisdiction because Plaintiff has not suffered any injury in fact with respect her "security deposit" payment and lacks standing to pursue those claims. Landmark also is entitled to judgment on the pleadings on Count I because Missouri's security deposit statute is inapplicable in this case, and judgment on the pleadings on Counts II and III for the same reason and also because the security deposit statute is Plaintiff's exclusive remedy and because she knowingly and voluntarily agreed to make the "security deposit" payment. Finally, Landmark is entitled to judgment on the pleadings on Count IV because Plaintiff knowingly and voluntarily agreed to pay the administration fee and because she has not plausibly alleged that the fee was unconscionable.

15

Respectfully submitted,

**THE PORTO LAW FIRM**

By:   */s/ Nicholas J. Porto*              
      Nicholas J. Porto      MO #56938
      1600 Baltimore, Suite 200A
      Kansas City, Missouri 64108
      Telephone: 816.463.2311
      Facsimile: 816.463.9567
      nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By:   */s/ Stephen J. Moore*              
      Stephen J. Moore      MO #59080
      1968 Shawnee Mission Pkwy, Suite 100
      Mission Woods, Kansas 66205
      Telephone: 816.471.0909
      Facsimile: 816.471.3888
      sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 20th day of July, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

              */s/ Stephen J. Moore*          
              Attorney for Defendant

16

# EXHIBIT 1

**Declaration of Jonathan Marcus**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

## DECLARATION OF JONATHAN MARCUS

I, Jonathan Marcus, state as follows:

1.      I am a Regional Director of Property Management for Landmark Realty, LLC d/b/a Landmark Realty of Missouri, LLC ("Landmark"). This declaration is submitted in support of Landmark's Motion for Judgment on the Pleadings. I have personal knowledge of the facts stated in this declaration.

2.      The Petition asserts that Landmark retained the $450 payment made by Plaintiff at the time she applied to rent an apartment from Landmark. This is untrue. Landmark made a $450 charge to Plaintiff's credit card on November 20, 2019, but Plaintiff disputed the charge after her rental application was denied and the full amount of the $450 charge was quickly credited back to her credit card account. Attached as **Exhibit 1-A** are true and correct copies of the transaction records indicating a credit of the full amount to Plaintiff.

3.      The Petition references and quotes portions of the application form regarding fees and deposits associated with Plaintiff's application to rent an apartment from Landmark. Attached as **Exhibit 1-B** are true and correct copies of the pertinent application materials plaintiff

signed, including the application form regarding fees and deposits and payment authorization forms permitting Landmark to charge Plaintiff's credit card for fees and deposits in the agreed-to amounts.

4.      The Petition references a move-out statement explaining why Landmark initially determined that the $450 payment was non-refundable. A true and correct copy of that document is attached as **Exhibit 1-C**.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _16_ day of July, 2020.

_Jonathan Marcus_
Jonathan Marcus

2

# EXHIBIT 1-A
# to Marcus Declaration

_____

**Transactional Records
Showing Refund on $450 Payment**

**Brad Rash**

| | |
|---|---|
| **From:** | PaymentProcessor_Finance <PaymentProcessor_Finance@Yardi.Com> |
| **Sent:** | Monday, December 16, 2019 2:05 PM |
| **To:** | Larry Busgeon; Nick Condie |
| **Subject:** | Credit card transaction notice |
| **Attachments:** | Global Chargback 53970042 12-16-19.pdf |

Hi,

We received the attached chargeback adjust advice relating to the credit card transaction below. We have identified the transaction in our system and included transaction details below.

A chargeback adjust advice means that our account will be debited without further notice. **You can reply by faxing to the fax number on the notice.** When our account is debited, we will be debiting the property's bank account.

| Transaction ID | Source | Company | Merchant | Payment Type | Tenant Name | Charged Amount ($) | Payment Total Original | Status | Date Created (GMT) | Master Merchant Company |
|---|---|---|---|---|---|---|---|---|---|---|
| 53970042 | Voyager | Landmark | 01065 | CREDIT | Rhonda Cheatem | 450.00 | 450.00 | Settled | 11/20/2019 23:51:29 | Yardi |

| | | | |
|---|---|---|---|
| Transaction Id | 53970042 | Fraud Detected | No |
| Transaction Type | SALE | Original Trans. Id | |
| Status | Disputed | Returned Trans. Id | |
| Card Number | | Refunded Amount | |
| Card Type | Visa | Refunded Fee Amount | |
| Payment Type | CREDIT | Disputed Trans. Id | 55601757 |
| Date Created (GMT) | 11/20/2019 23:51:29 | Disputed Amount | |
| Tax Amount | 0.00 | Merchant Refrence Number | 2003896267 |
| Shipping Amount | 0.00 | Response Text | APPROVED 020210 |
| Total Amount | 450.00 | | |
| Discounted Amount | 450.00 | | |
| Payment Amount Original | 450.00 | **ACH Details** | |
| Invoice Number | 600675754 | | |
| Status Update Date (GMT) | 12/16/2019 20:03:14 | Submerchant Trans | Yes |
| Payer Id | 8737248 | ACH Amount | |
| Payer Name | Rhonda Cheatem | Expected Fee Amount | |
| Card Id | | ACH Fee Type | MERCHANT |
| Card Source | Internet | Requested ACH Fee Type | |
| Currency | USD | Requested Fee Amount | |
| Database | uzxcccmi_live | ACH Status | Transferred |
| Database Server | uzxcccmi_live | ACH Date | 11/25/2019 16:15:36 |
| Donation Transaction | No | Expected ACH Date | 11/25/2019 |
| Payment Label | Amount | ACH Processor | Jack Henry - NACHA File |
| Settlement Status | Settled | One Time New Contract Default | Yes |
| Client Transaction Id | 44139 | Fee Description | |
| Batch Sequence Number | 1498 | | Fee Applied to Merchant for Visa Credit Card |
| Originator Batch ID | 1200160478 | | |

Thank you,

# EXHIBIT 1-B
# to Marcus Declaration

_____

## Application Forms
## Initialed and Signed by Plaintiff



**LANDMARK**

## Administration Fee, Application Fee, and Security Deposit

This portion of the Application concerns certain fee(s) and/or deposits that may be ***non-refundable***. As such, it is important that you very carefully read and understand each of the following paragraphs. By initialing under each paragraph, you acknowledge that you have read each paragraph and understand that certain fee(s) and/or deposits may be ***non-refundable***.

### Nonrefundable Fees

As part of this Application, I understand that I am required to submit a *nonrefundable* administration fee of ONE HUNDRED AND FIFTY DOLLARS AND NO CENTS ($150.00) (hereinafter the "Administration Fee"). As further part of this Application, I understand that I am also required to submit a *nonrefundable* application fee of either FORTY DOLLARS AND NO CENTS ($40.00) or FIFTY DOLLARS AND NO CENTS ($50.00) per applicant (hereinafter the "Application Fee"), the precise amount which shall solely be determined by Landmark. I understand that both the Administration Fee and Application Fee are *nonrefundable*.

RC
Initial Here       _____       _____       _____

### Security Deposit that May Be Refundable

As part of this Application, I understand that I will be required to submit a Security Deposit equal to  (the "Security Deposit").[1] I also understand that Landmark, in Landmark's sole discretion, may require an additional Security Deposit if the information submitted in this Application does not satisfy Landmark's rental criteria. I understand that the Security Deposit (and any additional Security Deposit) is *refundable* if I cancel, in writing, the Application within 48 hours of the submission of the Application and any fees/deposits required by Landmark. I further understand that the Security Deposit *may be refundable* if Landmark denies my Application because the information I have submitted does not satisfy Landmark's application criteria.

If I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable*. Finally, I understand that I will be required to submit both a completed Application and any supporting information required by Landmark, including, but not limited to, a verification of identity, a verification of employment, a verification of income, and an authorization to obtain my rental history. If I fail to submit the aforementioned items within 48 hours of submitting my Application and any fees/deposits required by Landmark, or if any of the information I have submitted is false, inaccurate, or misleading in any way, the Security Deposit is *nonrefundable*.

RC
Initial Here       _____       _____       _____

### Validity Period

I understand that approved applications are effective for 30 days from the date of submission of the Application and any fees/deposits required by Landmark. If a lease is not executed within this time period, this Application must be resubmitted for verification and approval and Landmark may charge additional Administration and Application fees and an additional Security Deposit. Landmark may alter this validity period at any time in Landmark's sole discretion.

RC
Initial Here       _____       _____       _____

**NO CASH WILL BE ACCEPTED.** All initial rents, deposits, and fees must be paid by credit/debit card, cashier's check, or money order. *Applicants' signatures below indicate that they have carefully reviewed these policies and believe themselves to be eligible for rental of a unit. Signatures below also indicate understanding of and an agreement to be bound by the policies stated above regarding fees and deposits.*

| | | | |
|---|---|---|---|
| *signature* | 11/20/2019 | | |
| **Applicant Signature** | **Date** | **Applicant Signature** | **Date** |
| | | | |
| **Guarantor Signature** | **Date** | **Guarantor Signature** | **Date** |

[1] Until such time as a Lease Agreement is entered into by the parties, any Security Deposit deposited does not constitute a "security deposit" as that term is defined by Missouri or Kansas law.

This document is digitally signed using RENTCafe eSignature services. Document ID: 812529

Yardi Unit Code: _____

## One Time Payments Authorization Form

By signing this form you give us permission to debit your account for the amount indicated on or after the indicated date. This is permission for a single transaction only, and does not provide authorization for any additional unrelated debits or credits to your account.

### Please complete the information below:

I _Rhonda Cheatem_ authorize _Willow Creek_ to charge my account
  (full name)                      (Property Name)

Indicated below for $ _450.00_ on or after _11/20/2019_ .

Billing Address ██████████████     Phone# ████████████

City, State, Zip ████████████████     Email ████████████████

| Checking/ Savings Account | Credit Card |
|---|---|
| ☐ Checking   ☐ Savings | ☑ Visa   ☐ MasterCard |
| Name on Acct _____ | ☐ Amex   ☐ Discover |
| Bank Name _____ | Cardholder Name _Rhonda Cheatem_ |
| Account Number _____ | Account Number ████████████ |
| Bank Routing # _____ | Exp. Date ████████ |
| Bank City/State _____ | CVV Code ██████ |

Routing Number   Account Number

SIGNATURE _Rhonda Cheatem_     DATE _11/20/2019_

For ACH debits to my checking/savings account, I understand that because these are electronic transactions, these funds may be withdrawn from my account as soon as the above noted periodic transaction dates. In the case of an ACH Transaction being rejected for Non Sufficient Funds (NSF) I understand that Landmark Realty, LLC may at its discretion attempt to process the charge again within 30 days, and agree to an additional $50.00 charge for each attempt returned NSF which will be initiated as a separate transaction from the authorized recurring payment. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law. I certify that I am an authorized user of this credit card/bank account and will not dispute this transaction with my bank or credit card Company, so long as the transaction corresponds to the terms indicated in this authorization form.

Yardi Unit Code: _____

## One Time Payments Authorization Form

By signing this form you give us permission to debit your account for the amount indicated on or after the indicated date. This is permission for a single transaction only, and does not provide authorization for any additional unrelated debits or credits to your account.

### Please complete the information below:

I Rhonda Cheatem authorize Willow Creek to charge my account
_(full name)_             _(Property Name)_

indicated below for $190.00 on or after 11/20/2019 .

Billing Address ████████████████      Phone # ███████████

City, State, Zip ████████████████      Email ████████████████████

| Checking/ Savings Account | Credit Card |
|---|---|
| ☐ Checking    ☐ Savings | ☐ Visa     ☒ MasterCard |
| Name on Acct _____ | ☐ Amex    ☐ Discover |
| Bank Name _____ | Cardholder Name Rhonda Cheatem |
| Account Number _____ | Account Number ████████████ |
| Bank Routing # _____ | Exp. Date ████████ |
| Bank City/State _____ | CVV Code ██████ |
| Routing Number ꞏ ꞏ ꞏ ꞏ ꞏ ꞏ ꞏ | |

SIGNATURE _Rhonda Cheatem_      DATE 11/20/2019

For ACH debits to my checking/savings account, I understand that because these are electronic transactions, these funds may be withdrawn from my account as soon as the above noted periodic transaction dates. In the case of an ACH Transaction being rejected for Non Sufficient Funds (NSF) I understand that Landmark Reality, LLC may at its discretion attempt to process the charge again within 30 days, and agree to an additional $50.00 charge for each attempt returned NSF which will be initiated as a separate transaction from the authorized recurring payment. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law. I certify that I am an authorized user of this credit card/bank account and will not dispute this transaction with my bank or credit card Company; so long as the transaction corresponds to the terms indicated in this authorization form.

# EXHIBIT 1-C
# to Marcus Declaration

_____

## Move-Out Statement

**Move Out Statement**

Date: 11/26/2019

| | | | | | |
|---|---|---|---|---|---|
| Code | t0029718 | Property | 01065 | Lease From | 11/30/2019 |
| Name | Rhonda Cheatem | Unit | 115-304 | Lease To | 10/31/2020 |
| Address | | Status | Denied | Move In | 11/30/2019 |
| | | Rent | 979.00 | Move Out | |
| City | | | | Notice | |
| Telephone | (O)-( ) - (H)- | | | | |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|
| 11/20/2019 | creditck | Application Fee | 40.00 | | 40.00 | 1098005 |
| 11/20/2019 | adminfee | Administration Fee | 150.00 | | 190.00 | 1098006 |
| 11/20/2019 | sdeposit | Security Deposit | 450.00 | | 640.00 | 1098007 |
| 11/20/2019 | | chk# 53970042 Credit Card One Time Payment ; | | 450.00 | 190.00 | 675754 |
| 11/20/2019 | | chk# 53970160 Credit Card One Time Payment ; | | 190.00 | 0.00 | 675758 |
| 11/26/2019 | sdeposit | :Security Deposit credit | (450.00) | | (450.00) | 1098521 |
| 11/26/2019 | cxldfee | Cancellation Fees | 450.00 | | 0.00 | 1098522 |

Dear: Rhonda Cheatem,

Thank you for your interest in Willow Creek Apartments!

The application for apartment 115-304 was denied on November 25, 2019.

The security deposit is non-refundable due to falsification on application. Your security deposit of $450.00 has been retained and liquidated damages for our time and expense.

We wish you the best of luck in the future!

Sincerely,

Willow Creek Management

# EXHIBIT 2

———————————————————

**Credit Card Account Statement
Produced by Plaintiff in Discovery**

 **AppliedBank**

RHONDA K CHEATEM        Account Number: ▉▉▉▉▉▉▉▉▉▉

## ACCOUNT SUMMARY

| | |
|---|---|
| Credit Limit | |
| Credit Available | |
| Statement Closing Date | December 12, 2019 |
| Days in Billing Cycle | 30 |
| Previous Balance | |
| − Payments & Credits | |
| + Purchases & Other Charges | |
| + Cash Advances | $0.00 |
| + FEE CHARGED | |
| + INTEREST CHARGED | |
| = New Balance | |

Questions?

Call Customer Service     1-800-947-1090
Lost or Stolen Credit Card    1-800-558-5678

Or Write:
PO BOX 17125 WILMINGTON, DE 19850-7125

1-2

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | |
| Minimum Payment Due | |
| Payment Due Date | January 09, 2020 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $38.

**Minimum Payment Warning:** Making only the minimum payment will increase the amount of interest you pay and the time it takes to repay your balance. Any additional amounts added to your account balance during the billing period should be included with your minimum payment amount to meet the payoff schedule(s) listed below.

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 7 years | |
| | 3 years | (Savings = $ ) |

If you would like information about credit counseling services, call 1-877-316-6322

## TRANSACTIONS

| Tran Date | Post Date | Reference Number | Transaction Description | Amount |
|---|---|---|---|---|
| 11/13 | 11/13 | | | |
| 11/13 | 11/13 | | | |
| 11/13 | 11/13 | | | |
| 11/13 | 11/13 | | | |
| 11/17 | 11/17 | | | |
| 11/17 | 11/17 | | | |
| 11/18 | 11/18 | | | |

Transactions continued on next page

Notice: SEE REVERSE SIDE FOR MORE IMPORTANT INFORMATION

5584   8002 LLH    001   7   12   191212 0     PAGE 1 of 2     1 8 3641 3178 CTS2        7168

Please detach bottom portion and submit with payment using enclosed envelope

 **AppliedBank**
BANKCARD CENTER
PO BOX 17125
WILMINGTON DE 19850-7125

☐ PLEASE CHECK IF THERE IS A CHANGE OF ADDRESS AND PROVIDE THE INFORMATION ON THE BACK

FOR PROMPT CREDIT, MAIL PAYMENT TO LOCATION SHOWN BELOW. PAYMENT IN ANY OTHER WAY MAY DELAY CREDITING YOUR ACCOUNT UP TO 5 DAYS

RHONDA K CHEATEM       7168
                              0312

### PAYMENT INFORMATION

| | |
|---|---|
| Account Number: ▉▉▉▉▉▉▉▉ | |
| Payment Due Date | January 09, 2020 |
| New Balance | |
| Minimum Payment Due | |
| Past Due Amount | $0.00 |
| Amount Enclosed: | $ |

Make Check Payable to:

APPLIED BANK
PO BOX 70165
PHILADELPHIA PA 19176-0165

4227093172925806000114000024539 19

## TRANSACTIONS (continued)

| Tran Date | Post Date | Reference Number | Transaction Description | Amount |
|---|---|---|---|---|
| 11/19 | 11/19 | | | |
| 11/19 | 11/19 | | | |
| 11/19 | 11/19 | | | |
| 11/20 | 11/20 | F364100AR000Q5888 | ADJUSTMENT-PURCHASES Q5888 | 450.00- |
| 11/20 | 11/20 | 2407105A59KG3LHET | PROPERTY PAYMENT RENT  805-6992040 CA | 450.00 |
| 12/02 | 12/02 | | | |
| 12/05 | 12/05 | | | |
| 12/06 | 12/06 | | | |
| 12/06 | 12/06 | | | |
| 12/09 | 12/09 | | | |
| | | | **FEES** | |
| 12/12 | 12/12 | | MONTHLY MAINTENANCE FEE    WILM DE | |
| | | | **TOTAL FEES FOR THIS PERIOD** | |
| | | | **INTEREST CHARGED** | |
| 12/12 | 12/12 | | Interest Charge on Purchases | |
| 12/12 | 12/12 | | Interest Charge on Cash Advances | |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | |

| Totals 2019 Year-to-Date |
|---|
| Total fees charged in 2019 |
| Total interest charged in 2019 |

## INTEREST CHARGE CALCULATION

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | ANNUAL PERCENTAGE RATE (APR) | Balance Subject to Interest rate | Days in Billing Cycle | Interest Charge |
|---|---|---|---|---|
| Purchases | 29.99% (f) | | 30 | |
| Cash Advances | 29.99% (f) | $0.00 | 30 | $0.00 |

(v) = variable (f) = fixed

## IMPORTANT MESSAGES

NEVER MISS A PAYMENT!
ENROLL IN OUR AUTOMATIC PAYMENT PROGRAM TODAY!
IT'S SIMPLE AND CAN SAVE YOU TIME AND MONEY.
ACT NOW - VISIT AUTOPAY.APPLIEDBANK.COM

FREE, REAL-TIME ACCOUNT INFORMATION - ONLINE - ANYTIME.
VIEW PAYMENT OPTIONS AND MORE!
VISIT WWW.APPLIEDBANK.COM
------------------OR------------------
CALL TOLL FREE 1-800-225-5030 FOR 24 HOUR ACCOUNT INFORMATION
THERE IS A $0.50 AUTOMATED INFO FEE PER ACCOUNT INQUIRY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RHONDA CHEATEM, | | |
| | Plaintiff, | |
| v. | | Case Number: 20-CV-00381 BP |
| LANDMARK REALTY OF MISSOURI, LLC, | | Class Action |
| | Defendant. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that Plaintiff's first set of Interrogatories, Requests for

Production of Documents, and Requests for Admissions were served on Defendant by electronic

mail attachment on July 24, 2020, addressed to their attorneys of record as follows:

Nicholas J. Porto
The Porto Law Firm
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
Email: nporto@portolaw.com

and

Stephen J. Moore
Shank & Moore, LLC
1968 Shawnee Mission Parkway, Suite 100
Mission Woods, Kansas 66205
Email: sem@shankmoore.com
Attorneys for Defendant

*Respectfully submitted*,

By: /s/ Matthew S. Robertson
A.J. Stecklein                    #46663
Michael H. Rapp                   #66688
Matthew S. Robertson              #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone: 913-371-0727
Facsimile: 913-371-0727
Email: AJ@KCconsumerlawyer.com
       MR@KCconsumerlawyer.com
       MSR@KCconsumerlawyer.com

and

Gina Chiala  #59112
Heartland Center for Jobs and Freedom, Inc.
4047 Central Street
Kansas City, Missouri 64111
Telephone: 816-278-1092
Facsimile: 816-278-5785
Email: ginachiala@jobsandfreedom.org
**Attorneys for Plaintiff**

**CERTIFICATE OF FILING**

I hereby certify that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri on July 24, 2020, which will automatically generate notice of filing to all counsel of record.

 /s/ Matthew S. Robertson
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**KANSAS CITY**

RHONDA CHEATEM,

           **Plaintiff,**

vs.

LANDMARK REALTY OF MISSOURI, LLC,

           **Defendant.**

**Case Number: 20-CV-00381 BP**

## DESIGNATION OF MEDIATOR

    Plaintiff and Defendant files this Joint Designation of Mediator, pursuant to the Court's Notice of Inclusion in the Mediation and Assessment Program (Doc. 3).

    1.    Plaintiff is Rhonda Cheatem; Defendant is Landmark Realty of Missouri, LLC.

    2.    Plaintiff sued Defendant for violations of the Missouri Merchandising Practices Act.

    3.    Mediation is scheduled for September 29, 2020 at 9:00 a.m.

    4.    Parties have agreed to hire Mediator John Phillips to mediate their case remotely and at Jay Daugherty Mediation & Arbitration Services, 4717 Grand Avenue, Suite 830, Kansas City, Missouri 64112.

    5.    Mr. Phillips's address is Daugherty Mediation & Arbitration Services, 4717 Grand Avenue, Suite 830, Kansas City, Missouri 64112.

Respectfully submitted,

By: /s/ AJ Stecklein
A.J. Stecklein #46663
Michael Rapp #66688
Matthew Robertson #70442
Stecklein & Rapp Chartered
748 Ann Avenue, Suite 101
Kansas City, Kansas 66101
Telephone:     (913) 371-0727
Facsimile:     (913) 371-0727
Email:  aj@kcconsumerlawyer.com
mr@kcconsumerlawyer.com
msr@kcconsumerlawyer.com
Attorneys for Plaintiff


By: Nicholas J. Porto
Nicholas J. Porto
The Porto Law Firm
1600 Baltimore, Suite 200A
Kansas City, MO 64108
Email:  nporto@portolaw.com
Attorney for Landmark Realty of Missouri, LLC

Stephen J. Moore
Shank & Moore, LLC
1968 Shawnee Mission Parkway, Suite 100
Mission Woods, KS 66205
Email:  sjm@shankmoore.com
Attorney for Landmark Realty of Missouri, LLC


## CERTIFICATE OF FILING

I hereby certify that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri on August 3, 2020, which will automatically generate notice of filing to all counsel of record.


/s/ A.J. Stecklein
A.J. Stecklein #46663

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

Rhonda K. Cheatem, individually and on behalf of
all others similarly situated,

                                        Plaintiff,

                                                        Case No. 4:20-cv-00381-BP

vs.

Landmark Realty of Missouri, LLC                        CLASS ACTION PETITION
D/B/A Willow Creek
D/B/A Willow Creek Apartments                          JURY TRIAL DEMAND
D/B/A Landmark Realty

Serve:
Registered Agent, Nicholas Porto
1600 Baltimore Suite
Kansas City, Missouri 64108,

                                        Defendant.

## AMENDED COMPLAINT - CLASS ACTION

COMES NOW Plaintiff Rhonda K. Cheatem ("Plaintiff"), through counsel, and for

Plaintiff's causes of action against Defendant KC Willow Creek LLC d/b/a Willow Creek

Apartments ("Defendant") states:

## JURISDICTION AND VENUE

1.      This is a class action under the Missouri Merchandising Practices Act, RSMo

§ 407.025 and the Missouri Security Deposit Statute.

2.      This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C.

1332(a).

3.      Venue in this district is proper because Defendant conducts business in this district

and the events upon which this action is based transpired in this district.

1

**PARTIES**

4.     Plaintiff is a resident of the State of Missouri.

5.     Defendant KC Willow Creek LLC d/b/a Willow Creek Apartments is a Missouri Limited Liability Company.

6.     At all times, Defendant rented and managed residential real estate to consumers in the State of Missouri.

7.     As of November 2019, Defendant owned and operated an apartment complex at 201 W. 99th Terrace, Kansas City, Missouri  64114 ("leased premises").

**FACTS COMMON TO ALL COUNTS**

8.     On  November 20, 2019, Plaintiff applied for an apartment with Defendant.

9.     On November 20, 2019, Plaintiff signed an addendum to the application.

10.     The addendum to the application signed by Plaintiff was a form, with blanks to fill in to add the particulars of the applying tenant.

11.     The addendum to the application Plaintiff signed with Defendant read, in part: Administration Fee, Application Fee, and Security Deposit This portion of the Application concerns certain fee(s) and/or deposits that may be ***non-refundable***. As such, it is important that you very carefully read and understand each of the following paragraphs. By initialing under each paragraph, you acknowledge that you have read each paragraph and understand that certain fee(s) and/or deposits may be ***non-refundable.***

12.     Under this provision, Plaintiff paid a non-refundable  Application fee of $40.00

13.     The application Plaintiff signed with Defendant read, in part:  Nonrefundable Fees: As part of this Application, I understand that I am required to submit a *nonrefundable* administration fee of ONE HUNDRED AND FIFTY DOLLARS AND  NO CENTS  ($150.00)

(hereinafter the "Administration Fee"). As further part of this Application, I understand that I am also required to submit a _nonrefundable_ application fee of either FORTY DOLLARS AND NO CENTS ($40.00) or FIFTY DOLLARS AND NO CENTS ($50.00) per applicant (hereinafter the "Application Fee"), the precise amount which shall solely be determined by Landmark. I understand that both the Administration Fee and Application Fee are _nonrefundable_.

14. Under this provision, Plaintiff paid a non-refundable Administrative Fee of $150.00.

15. The application Plaintiff signed with Defendant read, in part: "Security Deposit that May Be Refundable As part of this Application, I understand that I will be required to submit a Security Deposit equal to (the "Security Deposit"). I also understand that Landmark, in Landmark's sole discretion, may require an additional Security Deposit if the information submitted in this Application does not satisfy Landmark's rental criteria. I understand that the Security Deposit (and any additional Security Deposit) is _refundable_ if I cancel, in writing, the Application within 48 hours of the submission of the Application and any fees/deposits required by Landmark. I further understand that the Security Deposit _may be refundable_ if Landmark denies my Application because the information I have submitted does not satisfy Landmark's application criteria. If I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is _nonrefundable_. Finally, I understand that I will be required to submit both a completed Application and any supporting information required by Landmark, including, but not limited to, a verification of identity, a verification of employment, a verification of income, and an authorization to obtain my rental history. If I fail to submit the aforementioned items within 48 hours of submitting my Application and any fees/deposits

required by Landmark, or if any of the information I have submitted is false, inaccurate, or misleading in any way, the Security Deposit is *nonrefundable*.

16.    This deposit falls within the definition of "security deposit" as it was  any deposit of money or property, however denominated, which is furnished by a tenant to a landlord to secure the performance of any part of the rental agreement under RSMo. § 535.300.7.

17.    Under this provision, Plaintiff paid a Security Deposit of $450.00 that became non-refundable 48 hours after submission of the Application if Plaintiff did not cancel in writing.

18.    Plaintiff did not cancel in writing by November 22, 2019 and, pursuant to the terms of the addendum to the lease, Plaintiff's $450.00 security deposit became non-refundable.

19.    On November 25, 2019, Defendant declined Plaintiff's application to lease an apartment and issued a "Move Out Statement" on November 26, 2019.

20.    The Move Out Statement itemized the $640 Plaintiff paid to apply for one of Defendant's apartments.

21.    The Move Out Statement indicated that the following amounts were not going to be refunded and retained by the Defendant:  the Application Fee of $40.00, the Administrative Fee of $150.00, and the Security Deposit $450.00.

22.    The November 26, 2019 Move Out Statement stated that the "security deposit is non-refundable due to falsification on application.  "Your security deposit of $450.00 has been retained and liquidated damages for our time and expense."

23.    However, pursuant to the terms application submitted by Plaintiff, the security deposit became non-refundable on November 22, 2019 (48 hours after the submission of the application if there was no written cancellation).

24.     On  November 27, 2019, Defendant confirmed Plaintiff's security deposit would not be refunded with Defendant.

25.     On November 27, 2019, Defendant refused to refund Plaintiff's $450.00 security deposit.

26.     On November 27, 2019, Defendant refused to refund Plaintiff's Application Fee of $40.00 and the Administrative Fee of $150.00

27.     On November 27, 2019, Defendant represented to Plaintiff that it was legally justified in retaining the security deposit.

28.     Because Defendant refused to refund the non-refundable security deposit upon demand, Plaintiff disputed the Defendant's retention of the security deposit with her Bankcard provider and on January 16, 2020.

29.     Subsequent to January 16, 2019,  Plaintiff was notified that the dispute was investigated, and Bankcard Service Center concluded she was not responsible for the charge.

30.     The $450.00 Security Deposit was refunded to Plaintiff by the Bankcard Service Center, and not by any actions of Defendant.

31.     The collection and retention of Plaintiff's $450.00 Security Deposit in Missouri violates RSMo. § 535.300 which provides that "the tenant *shall* recover as damages twice the amount wrongfully withheld." RSMo. § 535.300.6 (emphasis added).

32.     Defendant current retains $450.00 in damages to which Plaintiff is entitled pursuant to RSMo. § 535.300.6.

## COUNT I
## VIOLATION OF RSMo. § 535.300
## Non-Refundable Security Deposits

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count I

against Defendant, states and alleges:

33.     Plaintiff  incorporates by reference the preceding allegations in this petition.

34.     RSMo. § 535.300, entitled security deposits, places restrictions and requirements on landlords regarding security deposits.

35.     RSMo. § 535.300(3) lists what a landlord may legally withhold from a tenant's security deposit.

36.     RSMo. § 535.300(4) states that the landlord may withhold from the security deposit only such amounts as are reasonably necessary because:

> (1) To remedy a tenant's default in the payment of rent due to the landlord, pursuant to the rental agreement;

> (2) To restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted; or

> (3) To compensate the landlord for actual damages sustained as a result of the tenant's failure to give adequate notice to terminate the tenancy pursuant to law or the rental agreement; provided that the landlord makes reasonable efforts to mitigate damages.

37.     RSMo. §535.300(4) does not allow a landlord to designate part of the security deposit as non-refundable if there is no written cancellation within 48 hours of submission of the application.

38.     RSMo. §535.300(4) does not allow a landlord to designate part of the security deposit as non-refundable before the end of the application term.

39.     RSMo. §535.300(4) does not allow a landlord to designate part of the security deposit as non-refundable because the tenant "fail[ed] to cancel, in writing, the Application within

48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is _nonrefundable"_.

40.     RSMo. §535.300(3) does not allow a landlord to designate part of the security deposit as non-refundable because the landlord alleges the tenant misrepresented anything on her application.

41.     The language of the application states that $450.00 of the security deposit may be non-refundable if the tenant fail[ed] to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is _nonrefundable"_.

42.     Under the application, the security deposit paid by the Plaintiff was $450.00.

43.      states that "if the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant **shall recover** as damages not more than twice the amount wrongfully withheld."

44.     Under RSMo. § 535.300.6, Defendant is liable to Plaintiff for $450.00.

WHEREFORE, Plaintiff  and the putative class prays for judgment against Defendant for such damages as are fair and reasonable for violations of the RSMo. § 535.300; including the statutory relief provided for in RSMo. § 535.300 of damages twice the amount of the non-refundable security deposits withheld ; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

**COUNT II**
**MERCHANDISING PRACTICES ACT, § 407.020 RSMo.**
**Collecting Non-refundable Security Deposits**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count II against Defendant, states and alleges:

45.     Plaintiff incorporates by reference the preceding allegations in this petition.

46.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

47.     Defendant is deceptively assessing, collecting, and retaining non-refundable security deposits in violation of RSMo. § 535.300.

48.     RSMo § 407.020.1 states that the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

49.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

8

50.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

51.     Plaintiff has suffered an ascertainable loss in that Defendant wrongfully withheld a $450 security deposit from Plaintiff, resulting in statutory damages owed to Plaintiff, in the amount of not more than twice the non-refundable security deposit pursuant to § 535.300.

52.     Defendant retains $450.00 in damages to which Plaintiff is entitled.

53.     Plaintiff has suffered injury in fact because she has been denied the $450.00 in damages to which Plaintiff is entitled pursuant to § 535.300.

54.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

55.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

56.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

57.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff and the putative class prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

## COUNT III
## MERCHANDISING PRACTICES ACT, § 407.020 RSMo.
### Misrepresentation

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count III against Defendant, states and alleges:

58.     Plaintiff incorporates by reference the preceding allegations in this petition.

59.     Upon determining that Defendant wrongfully withheld Plaintiff's security deposit, Plaintiff telephoned Defendant and spoke to Johnathan L/N/U, who advised Plaintiff:

    a.  Defendant was "going by the book" by withholding the security deposit and was confident in their representation that "their I's are dotted and their T's are crossed";

    b.  There is no exposure to Defendant and that Plaintiff's sole remedy was with a past landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

    c.  That Defendant has given Plaintiff all the information that Defendant is required to and that it is not Defendant's fault, but solely the responsibility of the prior landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

60.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

61.     After her security deposit was unlawfully withheld, Plaintiff inquired with Defendant as to the reasons for withholding the security deposit.

62.     Defendant misrepresented to Plaintiff that the non-refundable deposit was legal.

63.     Defendant misrepresented the status of the non-refundable deposit to Plaintiff.

64.     The Missouri Attorney General has declared all unconscionable practices to be unfair practices in violation of the Missouri Merchandising Practices Act.  15 C.S.R. § 60-8.080(1).

65.     It is unconscionable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged."  15 C.S.R. § 60-8.080(2).

66.     These non-refundable security deposits are unconscionable.

67.     These fees are unconscionable in part because they are high in relation to the value of the application.

68.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

69.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

70.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss in that Plaintiff lost the amount of her security deposit.

71.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

72.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

73.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

74.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

**COUNT IV**
**MERCHANDISING PRACTICES ACT, § 407.020 RSMo.**
**Collecting Unconscionable Application Fees Generally**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count IV against Defendant, states and alleges:

75.     Plaintiff incorporates by reference the preceding allegations in this petition.

76.     In addition to charging the Plaintiff a non-refundable $450 security deposit fee, Defendant charged a $40 application fee and, on top of that, a $150 Administrative Fee.

77.     Defendant listed the fees that had to be paid in order to apply for an apartment on the fourth page of the application.

78.     On the fourth page of the application, third single-spaced paragraph from the top, beginning on the 7th line, under the title **Security Deposits that May Be Refundable**, is the statement, "[i]f I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is nonrefundable."

79.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

80.     The Missouri Attorney General has declared all unconscionable practices to be

unfair practices in violation of the Missouri Merchandising Practices Act. 15 C.S.R. § 60-8.080(1).

81.     It is unconscionable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged." 15 C.S.R. § 60-8.080(2).

82.     Defendant's conduct is unconscionable and constitutes violations of RSMo. § 407.020.

83.     The $150 Administrative Fee, is unconscionably high in relation to the value received by the Plaintiff or any expense incurred by Defendant, especially in light of the $40 Application fee.

84.     The $150 Administrative Fee, is unconscionably high when combined with the $40.00 Application fee and the $450.00 non-refundable security deposit.

85.     The $150 Administrative Fee, is unconscionably high because it obscures the total amount of fees an applicant will forfeited to apply for an apartment lease is unconscionable.

86.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss.

87.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

88.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

89.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

90.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be

recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff and the putative class prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

## CLASS ACTION ALLEGATIONS

91.     Plaintiff restates each allegation in the preceding paragraphs as if set forth at length herein.

92.     Under Federal Rule of Civil Procedure 23, Plaintiff sues for herself and on behalf of a class (the "Class A") for Counts I, II, IV initially defined:

> All Missouri tenants from whom Defendant collected a security deposit
>
> deemed nonrefundable under the application in the past five years.

93.     Under Federal Rule of Civil Procedure 23, Plaintiff sues for herself and on behalf of a class (the "Class B") for Counts I, II, III, IV initially defined:

> All Missouri tenants from whom Defendant collected a security deposit
>
> wherein all or a portion of that deposit was deemed nonrefundable under
>
> the application in the past five years and, upon inquiry by the class
>
> member, Defendant informed the class member that retaining the non-
>
> refundable deposit was legal or legally appropriate.

94.     Under Federal Rule of Civil Procedure 23, Plaintiff sues for herself and on behalf of a class (the "Class C") for Counts IV initially defined:

> All Missouri tenants from whom Defendant collected and retained a
>
> $150 Administrative fee and/or a $40.00 dollar Application fee under

the application in the past five years.

95.    Federal Rule of Civil Procedure 23(a) sets out the following requirements for class certification: .

One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members if impracticable, (2) there are questions of law or fact common to the class, (3) the claims and defense of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class

96.    Numerosity. Fed. R. Civ. P. 23(a)(1). Defendant owns and operates multi-unit apartment complexes using form applications and standardized procedures.  The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Numerosity can be inferred by Defendant' size, that it manages hundreds of apartment units using standardized contracts and procedures, and the fact that its omissions are part of its routine business practice.

97.    Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. Defendant uses standardized application provisions and procedures in managing hundreds of residential units. These common legal and factual questions include and without limitation:

a.    Did Defendant collect and retain a non-refundable security deposit?

b.    Did Defendant retain a security deposit for any reason other than those enumerated in § 535.300.5.

c.       Did Defendant collect and retain a $150 Administrative Fee and/or a $40.00

Application fee under an application in the past five years?

d.       Is it unconscionable to obscure the total amount of fees subject to forfeiture

in an application to lease an apartment?e.    Is a $150 Administrative Fee

unconscionably high for the value received by the Plaintiff or any expense incurred

by Defendant, especially in light of the $40 Application fee?

98.     Typicality. Plaintiff's claims are typical of the claims of each Class member. Their

contract was a standardized application with a provision that wrongfully deemed a security deposit

as nonrefundable, in violation of RSMo. § 535.300 and required an excessive Administrative Fee

that would apply to each member of the putative Class. In addition, Plaintiff is entitled to relief

under the same causes of action as the other members of the Class.

99.     Adequacy. Fed. R. Civ. P. 23(a)(3). Plaintiff is an adequate representative of the

Class because her interests coincide with, and are not antagonistic to, the interests of the members

of the Class she seeks to represent, she has retained counsel competent and experienced in such

litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly

and adequately protect the interests of the members of the Class.

100.    Superiority. Questions of law and fact common to the Class members predominate

over questions affecting only individual members, and a class action is superior to other available

methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The

damages sought by each member are such that individual prosecution would prove burdensome

and expensive given the complex and extensive litigation necessitated by Defendant's conduct.

Even if the members of the Class themselves could afford such individual litigation, it would be

an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for

inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will cause substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

101. Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2). Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief regarding Plaintiff and the Class members.

WHEREFORE, Plaintiff and the Class members pray for relief:

1. An order certifying the proposed classes herein under Missouri Supreme Court Rule 52.08 and appointing Plaintiff and her undersigned counsel of record to represent same;

2. The creation of a common fund available to provide notice of and remedy Defendant's violations;

3. Punitive damages as authorized by the MMPA;

4. Equitable and/or declaratory relief; including that Defendant be restrained from engaging in future conduct in violation of the MMPA;

5. Attorney's fees, expenses and costs;

6. An Order that Defendant, its agents, and anyone acting on Defendant's behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could identify Class members;

7. Pre-judgment and post-judgment interest as provided by law; and

8. Such other relief the Court does deem just, equitable and proper.

**JURY DEMAND**

Plaintiff demands trial by jury.

Respectfully submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein          #46663
Michael Rapp          #66688
Matthew Robertson    #70442
Stecklein & Rapp Chartered
748 Ann Avenue
Kansas City, KS 66101
Telephone:     (913) 371-0727
Facsimile:      (913) 371-0727
Email:  aj@kcconsumerlawyer.com
          mr@kcconsumerlawyer.com
          msr@kcconsumerlawyer.com


By: /s/ Gina Chiala
GINA CHIALA          # 59112
AMY SWEENY DAVIS    #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
          amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

     I certify that on August 3, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

                           /s/ A.J. Stecklein
                           Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **RHONDA K. CHEATEM**, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | |
| vs. | Case No. 4:20-cv-00381-BP |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| Defendant. | |

**PLAINTIFF'S MOTION TO WITHDRAW
HER AMENDED COMPLAINT – CLASS ACTION**

Plaintiff Rhonda K. Cheatem ("Plaintiff"), through counsel, respectfully files this Motion to Withdraw her Amended Complaint – Class Action filed on August 3, 2020 (Doc. 17). On April 13, 2020 Plaintiff filed her Class Action Petition in the Circuit Court of Jackson County, Missouri, alleging violations of *inter alia*, the Missouri Merchandising Practices Act, R.S.Mo. § 407.010 *et seq*. and the Missouri Security Deposit Statute, R.S.Mo. § 535.300. On May 13, 2020 Defendant Landmark Realty of Missouri LLC removed this matter to this Court. On May 20, 2020 Defendant Landmark Realty of Missouri LLC filed its Answer (Doc. 6). On July 20, 2020 Defendant filed a Motion to Dismiss (Doc. 14).

On August 3, 2020 Plaintiff filed her Amended Complaint – Class Action in an attempt to moot the pending motion to dismiss. Now Plaintiff moves the Court to allow her to withdraw her Amended Complaint – Class Action (Doc. 17).

WHEREFORE, Plaintiff respectfully requests that this Court allow her to withdraw her Amended Complaint – Class Action.

1

*Respectfully submitted*,

By: /s/ Matthew S. Robertson
A.J. Stecklein          #46663
Michael Rapp          #66688
Matthew Robertson   #70442
STECKLEIN & RAPP CHARTERED
748 Ann Avenue, Suite 101
Kansas City, KS 66101
Telephone:      (913) 371-0727
Facsimile:      (913) 371-0727
Email:  aj@kcconsumerlawyer.com
           mr@kcconsumerlawyer.com
           msr@kcconsumerlawyer.com

-and-

Gina Chiala           #59112
Amy Sweeny Davis   #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
           amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

2

**CERTIFICATE OF SERVICE**

     I certify that on August 3, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

                          /s/ Matthew S. Robertson
                          Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| **RHONDA K. CHEATEM**, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | |
| vs. | Case No. 4:20-cv-00381-BP |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| Defendant. | |

## UNOPPOSED MOTION TO EXTEND TIME FOR PLAINTIFF TO RESPOND TO DEFENDANT'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 6(b), Plaintiff Rhonda Cheatem, through undersigned counsel, respectfully moves the Court for an Order extending the time for her to respond to Defendant Landmark Realty of Missouri, LLC's motion to dismiss (Doc. 13) by fourteen (14) days, up to and including August 17, 2020. In support of this motion Plaintiff states:

1.      Plaintiff is Ms. Rhonda Cheatem, a Missouri citizen; Defendant is Landmark Realty of Missouri LLC.

2.      On July 20, 2020 Defendant filed a motion to dismiss Plaintiff's class action complaint. Plaintiff's deadline to file her suggestions in opposition is August 3, 2020.

3.      Plaintiff seeks an extension of fourteen (14) days to file her suggestions in opposition to Defendant's Motion to Dismiss, up to and including August 17, 2020.

4.      Good cause exists to grant the requested extension because of Plaintiff's Counsel's busy work schedule, he needs additional time to finalize Plaintiff's Suggestions in Opposition. Plaintiff will also seek leave to file an amended complaint which will dispose of some of the issues raised in the pending motion to dismiss. Defendant will not be prejudiced by this extension and

the requested extension is not made in bad faith or for any improper purpose.

5.      Plaintiff has not previously requested an extension of time to respond to Defendant's Motion to Dismiss.

6.      Counsel for Plaintiff has conferred with Counsel for Defendant, who consents to the requested extension.

Accordingly, Plaintiff respectfully asks the Court to grant Plaintiff's motion and issue an Order extending the time for Plaintiff to file her suggestions in opposition to Defendant's motion to dismiss by fourteen (14) days, up to and including August 17, 2020

*Respectfully submitted*,

By: /s/ Matthew S. Robertson
A.J. Stecklein        #46663
Michael Rapp        #66688
Matthew Robertson    #70442
STECKLEIN & RAPP CHARTERED
748 Ann Avenue, Suite 101
Kansas City, KS 66101
Telephone:    (913) 371-0727
Facsimile:     (913) 371-0727
Email:  aj@kcconsumerlawyer.com
          mr@kcconsumerlawyer.com
          msr@kcconsumerlawyer.com

-and-

Gina Chiala           #59112
Amy Sweeny Davis   #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
          amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

     I certify that on August 3, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

        /s/ Matthew S. Robertson
        Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

**RHONDA K. CHEATEM**, *individually and on*
*behalf of all others similarly situated,*

                              Plaintiff,

                                                      Case No. 4:20-cv-00381-BP

vs.

**LANDMARK REALTY OF MISSOURI, LLC**

                              Defendant.

**SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**AND/OR FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................**5**

**ARGUMENT**......................................................................................................................**6**

I.    Plaintiff has standing to sue because she did not received the totality of the benefits accorded to her by the Security Deposit Statute and the fact that a different entity 'refunded' her money, through no action of Defendant, does not deprive her of standing to bring this claim ..................................................................................................................................6

II.    Plaintiff plausibly alleges violations of the Security Deposit Statute and the Merchandising Practices Act....................................................................................................8

    a. The $450 fee is a security deposit under the terms of the Defendant drafted application...9

    b. The $450 fee is a security deposit under the broad statutory definition. .........................10

    c. The Security Deposit Statute is not the exclusive remedy for the violations alleged. ......13

    d. Counts II and III survive dismissal because Plaintiff's subjective knowledge is irrelevant for purposes of an MMPA claim. .......................................................................................15

    e. Plaintiff has plausibly alleged that the disputed application and administration fees are unconscionable in relation to the benefits those fees were allegedly for. .............................17

**CONCLUSION** ................................................................................................................**19**

# TABLE OF AUTHORITIES

**Cases**

*Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220 (Mo. banc 2013) ............................ 16, 17

*Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898 (Mo. App. E.D. 2003) ............................... 9

*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. banc 2014) ............................................... 10

*Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614 (8th Cir. 2015) .............................. 7

*Detling v. Edelbrock*, 671 S.W.2d 265 (Mo. 1984) ..................................................................... 15

*Dover v. Stanley*, 652 S.W.2d 258 (Mo. Ct. App. W.D. 1983) .................................................... 15

*Graham v. Catamaran Health Solutions LLC*, 940 F.3d 401 (8th Cir. 2017) ............................. 14

*Horne v. Flores*, 557 U.S. 433 (2009) ......................................................................................... 8

*Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 727 (Mo. banc 2009) ................. 16, 18

*In re American Eagle Coatings, Inc.*, 353 B.R. 656 (Bankr. W.D. Mo. 2006) ............................ 19

*Lastra v. Intercontinental Investments, Co.*, 745 S.W.2d 703 (Mo. App. 1987)......................... 14

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ................................................................................. 7

*Muir v. Navy Federal Credit Union*, 529 F.3d 1100 (D.C. Cir. 2008) ......................................... 8

*Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 (Mo. App. E.D. 2016) ............................... 9

*Pleasants v. Am. Express Co.*, 541 F.3d 853 (8th Cir. 2008) ..................................................... 19

*Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237 (Mo. banc 2001) ............................ 9

*Prop. Exch. & Sales, Inc. v. King,* 863 S.W.2d 12 (Mo. Ct. App. E.D. 1993) ..................... 13, 15

*Shaffer v. Royal Gate Dodge, Inc.*, 300 S.W.3d 556 (Mo. App. E.D. 2009)............................... 18

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) ............................................................................. 7

*State ex rel. Jackson v. Parker*, 496 S.W.3d 559 (Mo. App. 2016)............................................. 14

*State ex rel. Nixon v. RTC Development Ass'n*, 290 S.W.3d 756 (Mo. App. W.D. 2009) ............. 9

*State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633 (Mo. App. E.D. 1988) .................. 9, 16

*Triarch Industries, Inc. v. Crabtree*, 158 S.W.3d 772 (Mo. banc 2005) ..................................... 10

*United States v. Menasche*, 348 U.S. 528, 75 S.Ct. 513 (1955) ................................... 11

*Woods v. QC Financial Services, Inc.*, 280 S.W.3d 90 (Mo. App. E.D. 2008) ........................... 18

*Younker v. Investment Realty, Inc.*, 461 S.W.3d 1 (Mo. App. S.D. 2015) .................................. 8

**Statutes**

R.S.Mo § 535.300 ............................................................................................................... passim

R.S.Mo. § 407.025 .................................................................................................................. 14

**Regulations**

15 C.S.R. § 60-8.080 .............................................................................................................. 18

Plaintiff Rhonda Cheatem ("Ms. Cheatem" or "Plaintiff"), through undersigned counsel, respectfully submits these suggestions in opposition to Defendant Landmark Realty of Missouri, LLC's ("Defendant") Motion to Dismiss and/or for Judgment on the Pleadings (Doc. 13).

## INTRODUCTION

It cost Kansas City consumers $640.00 to apply for housing with Defendant. If a consumer does not withdraw her application within 48 hours, or for any other reason Defendant determines it does not want to consummate the transaction, it keeps the consumer's $640.00. In this class action, brought under the Missouri security deposit statute and the Missouri Merchandising Practices Act ("MMPA"), Plaintiff seeks to represent a class of consumers who paid Defendant the herein described nonrefundable fees as part of applying for a residential apartment lease with Defendant at any one of Defendant's Missouri locations.

Factually, this case begins with Plaintiff applying at Defendant's Willow Creek Apartment complex on November 20, 2019. As part of the application process Plaintiff paid three separate fees. These fees were represented to Plaintiff by Defendant as follows: a $450 security deposit that is non-refundable after 48 hours if not cancelled, a $150 administration fee non-refundable when paid, and a $40 application fee non-refundable when paid. Defendant eventually denied Plaintiff's rental application and initially refused to refund any of the monies paid by Plaintiff. Eventually, after a expending her time to dispute the charge through her credit card company, the $450 security deposit initially declared nonrefundable, was returned to her by the third party credit card company who found the charge offensive enough to return. Defendant had nothing to do with this refund. Defendant never returned the administration or application fees.

Before the Court is Defendant's motion seeking dismissal of every Count of Plaintiff's Class Action Petition. In Defendant's motion, Defendant now asserts that the $450.00 was

mislabeled and misrepresented to Plaintiff as a "security deposit", citing that while the application it drafted calls the large deposit a security deposit, it also disclaims that it is a security deposit. But the Defendant's motion creates and then ignores the white elephant in the room. If this is not a security deposit as it has been misrepresented, what is it and how is it supported. This reinforces Plaintiff's argument that Defendant is unlawfully collecting and retaining excessive and unreasonably high fees from their prospective tenants that are not authorized by law or agreement.

## ARGUMENT

I. **Plaintiff has standing to sue because she did not received the totality of the benefits accorded to her by the Security Deposit Statute and the fact that a different entity 'refunded' her money, through no action of Defendant, does not deprive her of standing to bring this claim.**

Defendant's first argument in favor of dismissal is that Plaintiff suffered no injury in fact for purposes of Article III standing. Essentially Defendant argues that Plaintiff was refunded the $450.00 security that she had paid and consequently she "has no out-of-pocket loss on the 'security deposit' payment." <u>Doc 14 at 9</u>.[1] Defendant fails to detail the facts that the Defendant refused to refund the security deposit upon demand and that the refund was the result of Plaintiff's necessary efforts to successfully convince a third party that the charge should be refunded. This defense is only available to the Defendant because the Plaintiff did not pay the illegal fee by check or cash. Furthermore, this argument misses the mark because it assumes that all Plaintiff was entitled to recover for the unlawfully withheld security deposit, was the balance of the security deposit itself. That is not true under the statute.

The Missouri security deposit statute requires that a tenant recover "as damages twice the amount wrongfully withheld." <u>R.S.Mo § 535.300.6</u>. Defendant withheld the security deposit, and

---

[1] Defendant styles its motion as a Motion to Dismiss while interjecting affidavits and evidence outside the pleadings. The Court should not give any consideration to those attachments.

subsequently verbally refused to refund upon demand, entitling Plaintiff to $900.00. Ms. Cheatem

has not received the statutory penalty that the statute demands that tenant receive. The Eighth

Circuit has confirmed that the right to recover statutory damages presents a concrete dispute

sufficient to meet Article III's standards. *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d

614, 620–21 (8th Cir. 2015). "Standing" is not an arbitrary limitation. It only operates to ensure

the court's resources are brought to bear on a real dispute asserted by a genuinely interested party

with something to gain:

> '[T]he gist of the question of standing' is whether the petitioners have 'such a
> personal stake in the outcome of the controversy as to assure that concrete
> adverseness which sharpens the presentation of issues upon which the court so
> largely depends for illumination.'

*Massachusetts v. EPA*, 549 U.S. 497, 517 (2007); *see also Spokeo, Inc. v. Robins*, 136 S.Ct. 1540,

1556 (2016) (Ginsburg, J., dissenting) ("The basic inquiry is whether the 'conflicting contentions

of the parties . . . present a real, substantial controversy. . .'").

     Plaintiff squarely meets these concerns. She alleges real (not hypothetical) violations of the

MMPA and the Security Deposit Statute, the latter of which accords her a statutory right to recover

twice the amount of her security deposit. As such, the actual violation of her substantive rights and

her resulting ability to recover statutory damages presents a real, substantial controversy by a

plaintiff with a concrete stake. *See Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614,

620-21 (8th Cir. 2015) ("plaintiffs who fail to allege actual damages nonetheless satisfy both the

injury in fact and redressability requirements of Article III standing by suing for statutory

damages.").[2] For this additional reason, Plaintiff satisfies Article III. *See Horne v. Flores*, 557 U.S.

---

[2] Chief Justice Roberts, who joined the majority in *Spokeo*, reached this same conclusion in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), going out of his way to note that the plaintiff's claim for statutory damages gave rise to an injury in fact. *See id.* at 679 (Roberts, C.J., dissenting) ("All agree that at the time Gomez filed suit, he had a personal stake in the litigation. In his complaint, Gomez alleged that he suffered an injury in fact when he received unauthorized text messages from Campbell. To remedy that

433, 445 (2009) ("Here, as in all standing inquiries, *the critical question* is whether at least one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'") (emphasis added, citations omitted).

Finally, to the extent that Defendant argues on Reply that Plaintiff's standing is dependent on whether the security deposit statute was violated (as they argue that there was never a 'security deposit' in this case, *see* <u>Doc. 14 at 11–12</u>) this Court should remember that a plaintiff need not prove an unlawful action to have standing, because "whether a statute has been violated 'is a question that goes to the merits . . . and not to constitutional standing.'" *Muir v. Navy Federal Credit Union*, 529 F.3d 1100, 1106 (D.C. Cir. 2008).

In summary, the moment that Plaintiff's security deposit was withheld by Defendant for an unlawful reason, Plaintiff was entitled to a statutory penalty twice the amount of her deposit. She has not received that <u>mandatory</u> statutory penalty. <u>R.S.Mo § 535.300.6 (</u>"the tenant **shall** recover as damages twice the amount wrongfully withheld") (emphasis added). As a consequence Ms. Cheatem has a personal stake in the outcome of his controversy, which is all she needs in order to have standing to pursue these claims.

## II. Plaintiff plausibly alleges violations of the Security Deposit Statute and the Merchandising Practices Act.

The purpose of the Missouri Security Deposit Statute is to put residential tenants and their landlords on are more equal footing than that relationship typically had under the common law. *Younker v. Investment Realty, Inc*., 461 S.W.3d 1, 8 (Mo. App. S.D. 2015). Unlike the narrow role of the Security Deposit Statute, the Merchandising Practices Act's "objective is consumer protection." *State ex rel. Nixon v. RTC Development Ass'n*, 290 S.W.3d 756, 759 (Mo. App. W.D.

---

injury, he requested $1500 in statutory damages for each unauthorized text message.").

2009). "The Merchandising Practices Act was created to supplement the definition of common-law fraud." *Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898, 899 (Mo. App. E.D. 2003). "[The Merchandising Practices Act] does not define deceptive practices; it simply declares unfair or deceptive practices unlawful. This was done to give broad scope to the meaning of the statute and to prevent evasion because of overly meticulous definitions." *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 645 (Mo. App. E.D. 1988).

> The [Merchandising Practices Act], as first adopted by the legislature in 1967, protects consumers by expanding the common law definition of fraud to preserve fundamental honesty, fair play and right dealings in public transactions . . . It is the defendant's conduct, not his intent, which determines whether a violation has occurred. Moreover, [a] consumer's reliance on an unlawful practice is not required under the [the Act].

*Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 310–11 (Mo. App. E.D. 2016)

The Merchandising Practices Act's reach is "unrestricted, all-encompassing and exceedingly broad. For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). In spite of this law, Defendant now argues "the parties never had a landlord-tenant relationship, and the disputed sum of money was not required to be held by Landmark for Plaintiff as party to a rental agreement." But Landmark did hold the deposit. And Defendant alleges not only was Defendant not required to hold it, it was precluded by law. This argument is non-sensical, not consistent with the law, and contradicts Defendant's other arguments.

    **a. The $450 fee is a security deposit under the terms of the Defendant drafted application.**

Defendant drafted the application. Plaintiff had no say in the terms used. The contract labels the $450.00 portion of the $650.00 payment as a security deposit. Once sued for wrongfully withholding the security deposit, Defendant argues that the application does mean what Defendant

said it meant, and how Plaintiff described and represented it to Plaintiff. Not only does this create

an independent deceptive act, it flies in the fact of construing contracts against the drafter. *Triarch*

*Industries, Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005).

      **b.  The $450 fee is a security deposit under the broad statutory definition.**

Defendant argues that the $450.00 "security deposit," which is the language used in

Defendant's application, is not actually a security deposit as defined in the Missouri Security

Deposit Statute. <u>Doc. 14 at 11; 14</u>. The statute itself defines a security deposit as:

> any deposit of money or property, *however denominated*, which is furnished by a
> tenant to a landlord to secure the performance *of any part* of the rental agreement,
> including damages to the dwelling unit. This term does not include any money or
> property denominated as a deposit for a pet on the premises.

<u>R.S.Mo. § 535.300.8</u>  (Emphasis added). The italicized words of "however denominated" and "of

any part" clearly show that the legislature intended to have this provision broadly construed to not

allow a landlord to mislabel or disguise a security deposit, which is exactly what the Defendant is

doing here. Furthermore, "of any part" clearly recognizes that part of a consumer transaction is

following the landlord dictated application process, whether the rental agreement is consummated

or not.[3]

Defendant concludes that this language does not make the application process "part of" the

transaction between a landlord and tenant and requires a rental agreement be consummated. This

ignores the reality that application process was dictated by the Defendant and would lead to the

absurd result that Defendant can refer to a payment as "Security Deposit," —because consumers

are familiar with paying security deposits-- but not be bound by Missouri laws that protect

consumers from Landlord's abusive tactics. This allows a landlord to mislabel a *required* payment,

---

[3] The Missouri Supreme Court, in interpreting a section of the Merchandising Practices Act, has read not dissimilar
language to include actions that occur before, during, and after the sale or merchandise or services. See *Conway v.*
*CitiMortgage, Inc.*, 438 S.W.3d 410, 415–16 (Mo. banc 2014).

accept the payment, unilaterally refuse to consummate the transaction, and keep the payment for a completely unexplainable and undetermined reason. Understandably, Defendant cites to no cases supporting this particularly narrow and absurd interpretation of the clearly broad statute. The statute does not impose any such restriction. In fact the statutory language is broad covering "any deposit of money" "by a tenant to a landlord" "to secure the performance of any part of the rental agreement." *Id.* Ms. Cheatem had to deposit $450.00 in order to even enter into a rental agreement with Defendant. Ms. Cheatem paid this amount of money—which again, Defendant's own contract describes as a 'security deposit'[4]—for purposes of securing a landlord's performance (i.e., renting her an apartment). Under these facts the $450 payment is consistent with what Defendant chose to represent the payment to Plaintiff as—a security deposit.

Nonetheless, Defendant suggests that if this Court concludes the payment in this case is a security deposit then it would render meaningless the other provisions of the statute governing, *inter alia*, inspection of the dwelling unit. Doc. 14 at 12. If this Court holds that the $450 payment is *not* a security deposit then the only provision of the statute which would be nullified is the only statutorily provided exception to what qualifies as a security deposit. The statutory definition includes only one exception: specifically, a security deposit "does not include any money . . . as a deposit for a pet on the premises." R.S.Mo. § 535.300.8. If this Court holds that a payment which is called and treated by Defendant to be a "security deposit" is not, then this sole exception to what qualifies as a security deposit is mere surplusage. This Court should therefore decline Defendant's interpretation to reinvent the statutory definition of security deposit under Missouri law. *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513 (1955) ("It is our duty 'to give

---

[4] Defendant argues that its contract disclaims this payment being a security deposit (Doc. 14 at 13), but that disclaimer conflicts with the statutory language, is ambiguous, and should be accorded no weight given the use of the term in the body of paragraph governing security deposits.

effect, if possible, to every clause and word of a statute rather than to emasculate an entire section") (internal citation removed).

**Alternatively**, Defendant's other argument in favor of dismissal is that its contract is not deceptive. These two arguments are mutually exclusive. If the "security deposit" that they withheld from Ms. Cheatem is not, as the contract implies, a "security deposit" then Defendant misrepresented the payment. Simply, Defendant is using a term in its application, to wit: "security deposit," that it now disclaims. This makes it even more obvious that Defendant is collecting money deceptively. Defendant's application describes the fee in this case as a "security deposit" and uses that term to outline when and under what circumstances the security deposit is nonrefundable. Defendant now argues that although its application calls this $450.00 fee a security deposit, that it actually isn't, and therefore the Missouri Security Deposit Statute does not apply to this transaction. Assuming, *arguendo*, that this $450.00 nonrefundable payment is *not* a security deposit—then what is it? Defendant does not suggest what it might be if it's not a security deposit, but clearly it's a $450.00 dollar fee that the prospective tenant cannot ever get back if Defendant turns down their application and they do not cancel within 48 hours.

What's more, if it truly is <u>not</u> a security deposit then there is <u>never</u> a time when it becomes "nonrefundable" under Defendant's own contract. Put differently, if this $450.00 payment is not a "security deposit" as that term is defined in Defendant's contract, then Defendant has no right to retain the payment if a rental agreement is never entered into with a prospective tenant. Defendant's application allows it to (unlawfully) retain "security deposits." If this fee is not a security deposit, then it should have never been declared nonrefundable. If this Court buys Defendant's ambitious reading of the Security Deposit Statute's definition of "security deposit," and as a consequence holds that the Security Deposit Count should be dismissed, then this Court

cannot dismiss Plaintiff's MMPA claims because Defendant is taking and retaining money from Missouri consumers that it is not entitled to by any law or agreement.

### c. The Security Deposit Statute is not the exclusive remedy for the violations alleged.

Defendant asserts instead that § 535.300 R.S.Mo. is the sole remedy available for wrongfully withholding a security deposit. However, there is nothing in the plain language of § 535.300 R.S.Mo. suggesting any such restriction. The relevant provision states:

> If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages twice the amount wrongfully withheld.

§ 535.300.6 R.S.Mo. The statute's silence speaks volumes. The legislature regularly crafts legislation that creates exclusive remedies; had it intended to do so here, it would have said as much. *Cf.* § 535.300 R.S.Mo. with §§ 408.696; 287.120; 213.070; 454.101; 362.730 R.S.Mo. (all creating exclusive remedies). Taken together, § 535.300.6 R.S.Mo.'s silence, the MMPA's broad reach, and the MMPA's definition of "unfair practice" to include violations of state law, destroy any notion of the MMPA's inapplicability.

Only one case has dealt with the applicability of the Merchandising Practices Act to security deposit issues: *Prop. Exch. & Sales, Inc. v. King,* 863 S.W.2d 12, 14-15 (Mo. Ct. App. E.D. 1993) ( "Property Exchange"). There, the court made a general ruling that § 535.300 R.S.Mo. was the exclusive remedy for deposit issues, but that opinion should not be followed for several reasons. First, one year after *Property Exchange,* Title 15 CSR 60-8.020 and 60-8.090 of the Missouri Attorney General's Regulations made clear that the MMPA's prohibition of unfair practices encompasses the violation of other state laws like § 535.300 R.S.Mo. Also since then, § 535.300 R.S.Mo. has been amended and the limiting language, "not more than" has been removed. Thus, the statute originally stated:

If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages not more than twice the amount wrongfully withheld.

But now states:

If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages twice the amount wrongfully withheld.

§ 535.300 R.S.Mo. (as amended in 2016). Without doubt, § 535.300 R.S.Mo. is not intended to act as an exclusive remedy.

Second, the extremely brief decision (less than two pages) only mentioned the MMPA one time and did so in passing. It contained no analysis of the MMPA's remedial nature nor its applicability, and the appellant's briefing on the issue was anemic at best. (*See* <u>Exh. A, Prop. Exch. Appellant's Brief – notably, the appellant did not know the name of the MMPA</u>)[5]. Indeed, the tenant in *Property Exchange* was a business to which the MMPA did not actually apply. § 407.025 R.S.Mo. (providing a private right of action only when a purchase is made for personal, family or household use). Given that the issue was not briefed or analyzed, *Property Exchange* is wholly unhelpful.

Finally, the *Property Exchange* appellant brought its MMPA claim alongside a number of common law claims and the appellant (along with the court) analyzed the MMPA and common law claims as one and the same. However, the examination of two statutes requires a different analysis than the examination of a statute's relationship to common law. *Cf, Lastra v. Intercontinental Investments, Co.*, 745 S.W.2d 703, 705 (Mo. App. 1987) (holding that § 535.300 limits common law damages) to *State ex rel. Jackson v. Parker*, 496 S.W.3d 559 (Mo. App. 2016) (analyzing two statutes with an eye toward harmonizing them). Indeed, the court in *Property*

---

[5] This brief is a public record and the Court can take judicial notice of it. *Graham v. Catamaran Health Solutions LLC*, 940 F.3d 401, 405 fn.1 (8th Cir. 2017).

*Exchange* summarily followed *Lastra,* which dealt with the relationship between common law conversion and § 535.300 R.S.Mo. – not with two consumer protection statutes. *Prop. Exch,* 863 S.W.2d at 14–15 (citing *Lastra,* 745 S.W.2d 703).

When examining two state law statutes, Missouri courts must make every effort to reconcile them. *Dover v. Stanley,* 652 S.W.2d 258, 263 (Mo. Ct. App. W.D. 1983). Where, as here, two statutes can be harmonized, the analysis ends and statutory construction does not come into play. *Jackson,* 496 S.W.3d at 562. Without clear legislative intent creating an exclusive remedy, two statutes do not conflict merely because each one provides its own remedy. *E.g., Detling v. Edelbrock*, 671 S.W.2d 265 (Mo. 1984) (ruling that the statutory remedies for housing code violations did not deprive tenants of other statutory and common law remedies addressing issues of habitability) (abrogated on other grounds). This is especially true where – like here – the statute providing the more limited damages (§ 535.300 R.S.Mo.) sought to expand – not restrict – consumers' damages at the time it was passed. Not only is it the case that the MMPA and § 535.300 R.S.Mo. are both consumer protection statutes with harmonious goals, but state regulations provide that the violation of one expressly violates the other. As such, Counts II and III of the Class Action Petition cannot be dismissed.

> **d. Counts II and III survive dismissal because Plaintiff's subjective knowledge is irrelevant for purposes of an MMPA claim.**

Defendant argues that the clear disclosure of the excessive and unreasonable fees in the rental application preclude a claim under the MMPA. First this argument is predicated upon the assertion that the Plaintiff clearly understood the terms of the application in the application. This argument flies in the face of Defendant's first argument – that the application does not mean what it was drafted by Defendant to say. Defendant is now alleging that it misrepresented the $450.0 as a "security deposit." Then Defendant argues that Plaintiff understood the application.

Furthermore, Plaintiff's subjective knowledge of the terms of the agreement do not bear on whether the MMPA was violated because the MMPA does not require that a consumer actually be misled as a result of the unfair practice. The MMPA is concerned with the Defendant's actions, not whether the consumer was a misled. *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635–36 (Mo. App. E.D. 1988).

Instead, Defendant's argument is based essentially on waiver or consent because Ms. Cheatem voluntarily paid the unfair and mislabeled fees that were demanded by the rental application. But this type of defense is not available to Defendant in MMPA actions. In *Huch v. Charter Communications, Inc.*, the Missouri Supreme Court considered whether a consumer's voluntary payment of unfair fees should be a defense to an MMPA action. 290 S.W.3d 721, 727 (Mo. banc 2009). In holding that the protections of the 'voluntary payment doctrine' were not an available defense to an MMPA claim the Supreme Court stated that to allow the MMPA defendant to "avoid liability for this unfair practice through the voluntary payment doctrine would nullify the protections of the act and be contrary to the intent of the legislature." *Id*.

For this reason, and others, Defendant's reliance on *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220 (Mo. banc 2013) is misplaced. It simply is not a defense to an MMPA claim that Plaintiff voluntarily paid what constitutes an unlawful fee under a contract whose terms conflict with Missouri law.

Furthermore, while the Supreme Court in *Chochorowski* held that the protections of the MMPA were not in conflict with the "basic tenants" of contract law, this case does not concern itself strictly with contract law. There is no dispute here that the mislabeled and misrepresented terms of the rental application were provided to Ms. Cheatem. The allegations here are that Defendant's contract violates the laws that govern Defendant's behavior in that the contract makes

a security deposit nonrefundable in violation of the Security Deposit Statute and that Defendant's contract allows them to charge, collect, *and retain* an unconscionable sum from Missouri consumers, just for rental applications. This is not a case of a "[c]learly [o]ptional" damage waiver, *cf.*, *Chochorowski*, 404 S.W.3d at 229, this is a case of charging and withholding fees and deposits in a manner that violates Missouri law. This distinction would be material to the Missouri Supreme Court which recognized that "[u]nlike the clear ban on negative options in 15 CSR 60–8.060, there is no corresponding regulation that expressly makes selling merchandise of no value an unfair practice under the MMPA." *Id* at 231. Here, however, there is a *statute* that makes it unlawful to withhold a security deposit as "nonrefundable." *See* R.S.Mo § 535.300.6. For these reasons, Defendant's reliance on *Chochorowski* is misplaced and Ms. Cheatem's MMPA claims should survive threshold dismissal.

     **e. Plaintiff has plausibly alleged that the disputed application and administration fees are unconscionable in relation to the benefits those fees were allegedly for.**

     Ultimately, it is important to remember that this case involves Ms. Cheatem, and members of the putative class, paying a $450.00 security deposit, a $150.00 administration fee, and a $40.00 application fee just to get to the point where they *might* get an apartment if Defendant unilaterally decides to go forward with accepting their rental applications. In Plaintiff's case, the totality of this sum was initially taken and withheld from her after she tried to get her deposit back. Under the facts as they are alleged, Plaintiff has plausibly alleged that the collection and retention of these fees is unconscionably unfair and unreasonable.

     In Missouri, "it has been suggested . . . that there be a balancing between the substantive and procedural aspects, and that if there exists gross procedural unconscionability then not much be needed by way of substantive unconscionability, and that the same 'sliding scale' be applied if there be great substantive unconscionability but little procedural unconscionability." *Woods v. QC*

*Financial Services, Inc*., 280 S.W.3d 90, 95 (Mo. App. E.D. 2008); *see also e.g., Shaffer v. Royal Gate Dodge, Inc*., 300 S.W.3d 556, 559 (Mo. App. E.D. 2009) ("In light of this agreement's considerable substantive unconscionability, we need not find significant procedural unconscionability."). As it relates to Plaintiff's claims, the Attorney General's Rules for the MMPA make clear that that "[i]t is an unfair practice for any person . . . to engage in any unconscionable act or practice." 15 C.S.R. § 60-8.080(1). An act is unconscionable when the "contract or term . . . results in a gross disparity of the values exchanged." *Id*. at § 60-8.080(2). The Attorney General Rules have the force of law. *Huch v. Charter Communications, Inc*. 290 S.W.3d 721, 725 (Mo. banc 2009) ("properly adopted and promulgated rules have independent power as law").

Particularly in light of Defendant's assertion that the $450.00 is not really a security deposit and Defendant's complete failure to explain alternatively what it is, it clearly can be stated that $640.00 paid to be considered for housing at the complete discretion of Defendant meets this standard. What more of a "gross disparity of the values exchanged" that a consumer looking for housing pay $640.00 and Defendant merely decline to consummate the transaction. Furthermore, as outlined in Plaintiff's Class Action Petition, the payment of these three separate fees is unconscionable because it was caused by the unequal bargaining position of the Parties and results in a gross disparity of the values exchanged. Here, Plaintiff pled that she paid $640.00 to essentially be turned down for an apartment. The contract's terms authorize only 48 hours to cancel an application in writing before the $450 security deposit becomes nonrefundable. This payment is essentially a duplicative application fee if the tenant cancels after the first 48 hours—the actual administration fee is itself a *nonrefundable* $150.00 sum. To these two sums an additional $40 nonrefundable application fee is added. This all must be paid before a rental application is even

considered by Defendant. The disparity of values exchanged ($640.00 from Ms. Cheatem in exchange for a denial of her rental application) forms the basis of the unconscionability analysis. *See In re American Eagle Coatings, Inc.*, 353 B.R. 656, 664 (Bankr. W.D. Mo. 2006) (noting that unconscionability would "turn on whether the [party] received fair value for the payments made"). Clearly Ms. Cheatem did not receive any value equal to her payments.

Defendant attempts to narrow the scope of the allegations against it by independently attacking each fee, focusing predominately on the $150.00 administration fee. Doc. 14 at 18-19 ("The Petition does not allege any facts plausibly suggesting the $150 administration fee is out of line with industry standards, let alone so high that it is substantively unconscionable."). However, Plaintiff's petition does not make this separation. *Cf.*, Doc 1-1 ¶ 61 (A $150 Administrative Fee, especially when combined with the application fee and nonrefundable deposit, is unconscionably high in relation to the value of the application."). Defendant does not argue that these three combined fees are not unconscionable in relation to the value of a denied rental application. *Cf.*, Doc. 14 at 18-19. Nor can they, no reasonable person would doubt the inequity of that transaction. *See Pleasants v. Am. Express Co.*, 541 F.3d 853, 857 (8th Cir. 2008). For these reasons, Plaintiff's Count IV should survive dismissal.

## CONCLUSION

Accordingly, Ms. Cheatem prays the Court deny Defendant's motion to dismiss and/or for judgment on the pleadings and grant her any other and further relief this Court deems just and proper.

*Respectfully submitted*,

By: /s/ Matthew S. Robertson
A.J. Stecklein          #46663
Michael Rapp           #66688
Matthew Robertson    #70442
STECKLEIN & RAPP CHARTERED
748 Ann Avenue, Suite 101
Kansas City, KS 66101
Telephone:     (913) 371-0727
Facsimile:      (913) 371-0727
Email:  aj@kcconsumerlawyer.com
            mr@kcconsumerlawyer.com
            msr@kcconsumerlawyer.com

-and-

Gina Chiala           #59112
Amy Sweeny Davis   #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
            amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on August 17, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

/s/ Matthew S. Robertson
Attorney for Plaintiff



ORIGINAL
RECEIVED

APR 6 1993

MISSOURI COURT
OF APPEALS
EASTERN DISTRICT

IN THE MISSOURI COURT OF APPEALS
EASTERN DISTRICT

PROPERTY EXCHANGE & SALES, INC., )
                         Appellant )
                                   )
                                   )
                                   )
                                   )
v.                                 )          No. 60484 5
                                   )
                                   )
                                   )
                                   )
JOSEPH P. KING, ET AL,             )
                         Respondents )

FILED

APR - 6 1993

DEIRDRE O. SMITH
CLERK MISSOURI COURT OF APPEALS
EASTERN DISTRICT

---

Appeal from the Circuit Court of St. Louis
Ccounty, Missouri

The Honorable William M.  Corrigan

---

B R I E F   O F   A P P E L L A N T

D. Johnson, Attorney for
Appellant
Property Exchange & Sales, Inc.
625 N. New Ballas #200-P
St. Louis, Missouri 63141

TABLE OF CONTENTS

Jurisdictional Statement . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . 2

Points Relied On . . . . . . . . . . . . . . . . . . . . 5

Argument. . . . . . . . . . . . . . . . . . . . . . . . . 6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . 13

JURISDICTIONAL STATEMENT


Appellant appeals from the trial court's ruling dismissing Respondent's Petition, Counts I, II, IV and V of Appellant's Petition.  Said counts allege fraud, unlawful practices, breach of contract, and prima-facie tort.  Count III was subsequently dismissed without prejudice.  Jurisdiction for this appeal lies in the Court of Appeals for the Eastern District of Missouri given that this appeal does not involve any of the categories reserved for the exclusive appellate jurisdiction of the Supreme Court of Missouri under Article V, §3, Missouri Constitution.

STATEMENT OF FACTS

On December 22, 1989 Plaintiff corporation, filed a Petition
for damages against five individuals doing business as Town & Four Villages,
etc.   (Supp. Legal File 1-13).  The Petition consisted of five counts
consisting of fraud, unlawful practices, wrongful failure to return security
deposit, breach of contract, and prima facie tort.  The first count alleged
that when the Plaintiff's took over the premises from a third party, the
defendants required a new lease but agreed that the entire security deposit
of $520 would be refunded at the conclusion of the lease.  The previous
lessee turned over all right, title, and interest to the security deposit
to the Plaintiff.  The allegation of Count I indicates that the Plaintiff
inspected the premises and that upon vacating, the property was in good,
if not better, condition then when it was leased, and that the statements
made at the time of the new lease to return the security deposit paid by
the previous tenant and transferred to the Plaintiff were false, were made
with the intention of the Plaintiff to rely on the representations so that
the Defendants could obtain a new lease, there was a reckless disregard for the
truth or falsity of the statments by the defendants or it was false, and
it was material to the Plaintiff's signing a new lease.  Plaintiff   prayed for
judgment in actual damages plus punitive damages.

The second count of unlawful practices  dealt with the failure of
the defendants to return the security deposit after promising to do so and
their attempt to coerce the Plaintiff into settling for less than $520 by
putting on the back of their check for $384 that endorsement constituted
full and complete settlement of all claims and the failure and refusal of
the Defendants to release the $384 since it was undisputed without any release
of claims against the Defendants for the balance due to Plaintiff.   This

Count II was pursuant to the Merchandising Practices Act of the State of Missouri which includes reasonable attorney fees as damages, §407.410, RSMO. as well as twice their damages which Plaintiff calculated to be $2245.02. Punitive damages were also requested pursuant to Count II.

The third count dealt with wrongful failure to return a security deposit pursuant to RSMO §535.300 and provides damages of twice the amount lost plus all costs and interest. The fourth count dealt with breach of contract and the failure of the defendants to return the security deposit of $520 and the failure and refusal to even refund the $384.00 without attaching conditions, to wit: the demand that ALL CLAIMS against defendants be released in return for the undisputed return of $384.00. Interest and damages were sought under this count.

The last count dealt with prima facie tort and the fact that by refusing to refund the undisputed amount of the security deposit, to wit: $384.00 and attaching conditions to it, the defendants, although doing something they could legally do, did so without justification and this operated to the damage of the plaintiff. Further, the conduct of doing this was outrageous, willful, and wanton and punitive damages as well as actual damages were applicable.

Subsequently defendant Weinberger filed an answer to each of the five counts. (L.F.13-17) as well as affirmative defenses, alleging that Counts I,II, IV, V should be dismissed since they purportedly sought relief for failure to return a security deposit and that such relief was provided for under §535.300 of R.S. Mo. 1986. This defendant stated that the only remedy was under this particular section and that this was an "adequate remdy" provided by law.

Subsequently on February 7, 1992 Defendant Bozarth and Weinberger filed a Motion to Dismiss alleging, again, that §535.300 RSMO set forth various limitations and rights with respect to security deposits and that Plaintiff could recover only twice the amount wrongfully withheld and no more. The Motion requested the Court to dismiss Plaintiff's Counts I, II, IV and V. (L.F. 10).

On March 16, 1992 the trial court heard defendant's Motion to Dismiss and dismissed, with prejudice, Counts I, II, IV, and V. Subsequently Count III was set for trial and counsel for Plaintiff sought leave to withdraw and such was denied since Plaintiff's counsel had failed to advise Plaintiff of an impending trial date. (L.F.8). Subsequently, another judge granted leave to withdraw but refused to continue the trial so that Plaintiff could obtain new counsel. On October 27, 1993 the final count, Count III, was dismissed without prejudice. (L.F. 1).

The Plaintiff appeals the dismissal of Counts I, II, IV, and V.

<u>POINTS RELIED ON</u>

       THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S
COUNTS FOR FRAUD, UNLAWFUL PRACTICES, BREACH OF
CONTRACT AND PRIMA-FACIE TORT IN THAT IT WAS
NOT THE INTENT OF THE LEGISLATURE UNDER R.S.MO.
1986 §535.300 TO PREVENT AN INJURED PARTY FROM
SUIT AGAINST A LANDLORD FOR TORTIOUS CONDUCT
WHICH MAY BE ANCILLARY AND UNRELATED TO A RE-
FUND OF A SECURITY DEPOSIT, I.E. FRAUD, UNLAWFUL
PRACTICES.  A PLAINTIFF IS NOT PRECLUDED FROM
SUIT FOR ANY AND ALL CONDUCT OF A LANDLORD WHICH
IS TORTIOUS, WHETHER RELATED TO REFUND OF A
SECURITY DEPOSIT OR NOT AND IS ENTITLED TO TRIAL
ON SUCH OTHER ALLEGATIONS.

<u>Watkins v. Wattle</u>, 558 S.W.2d 705, 711 (Mo. App. 1977)

<u>Huff v. Union Electric Co.</u>, 598 S.W.2d 503 (Mo. App. 1980)

<u>Detling v. Edelbrock</u>, 671 S.W.2d 265 (Mo. banc 1984)

<u>Lastra v. Intercontinental Investment Co., Inc.</u>,
     745 S.W.2d 703 (W.D. Mo. App. 1987)

<u>Lugo v. Vest</u>, 336 S.2d 972

<u>Presberg v. Chelton Realty, Inc</u>. 344 A.2d 341, 342

<u>Missouri Security Deposit Statute</u>, St. Louis U. L.J., Vol. 28:1035

3 Suterland Statutory Construction, §61.01, p.78

82 C.J.S. Statutes, §393, pp. 939, 940

R.S.Mo. 1986, §535.300

Missouri Unlawful Practices Act, Chapter 407

R.S. Mo. §537.053

R.S. Mo. §287.120

- 5 -

ARGUMENT

       The issue is whether Mo. Rev. Stats, Sec. 535.300 nullifies a
a plaintiff's right to recover for common law claims unrelated directly to
the actual security deposit.  It is well established by rules of construction
that all statutes in derogation of the common law are to be construed strictly.
Watkins v. Wattle, 558 S.W.2d 705, 711 (Mo.  App. 1977)  and 82 C.J.S. Statutes,
§393, pp. 939,940.  If there is a question as to whether the statute takes
away common law rights, the decision should be weighed in favor of retention
of the common law right of action.  Huff v. Union Electric Co., 598 S.W.2d 503,
(Mo. App. 1980).

       In pertinent part, R.S.MO. §535.300, provides, inter-alia:

> "5.  If the landlord wrongfully withholds all or any
> portion of the security deposit, in violation of this
> section, the tenant shall recover as damages not more
> than twice the amount wrongfully withheld."

       If a change is to be made in the common law, the legislative
purpose  to do so must be clearly and plainly expressed.  3 Sutherland
Statutory Construction §61.01, p. 78.

       Statutes which are in derogation of the common law will not be
extended by implication beyond their precise terms or obvious import, and will
not be held to be in derogation of the common law unless there is an irreconcilable
repugnance, or unless the statute itself shows that such was the object and
intention of the lawmakers.  82 C.J.S. Statutes, §393., pp. 939, 940.

       With respect to §535.300 R.S.MO., the legislature has failed to
clearly and plainly express its desire to nullify plaintiff's right to obtain
unrelated damages when, for example, the landlord issues a check and
attempts to coerce the plaintiff to release "all claims" in return for release of

the portion of a security deposit that is undisputed.  The legislature has
failed to clearly and plainly express its desire to nullify plaintiff's right
to obtain unrelated damages : when, for example, a landlord makes false and
fraudulent representations to a tenant in order to obtain a new lease when
a tenant has agreed to take over the existing lease of the prior tenant.
The legislature has failed to clearly and plainly express its desire to nullify
plaintiff's right for a claim under Missouri Unlawful Practices Act,
Mo. Rev. Stats. Sec., Chapter 407,for the actions of a landlord in refusing
to even refund an undisputed portion of a security refund unless the tenant
agrees to release "all claims" against the landlord and it has failed to
indicate that the tenant is not entitled to the attorney fees provided for under
the M.U.P.A. (Missouri Unlawful Practices Act)

      The general rule is that a statutory right of action shall not
be deemed to supersede and displace remedies otherwise available at common law
in the absence of language to that effect unless the statutory remedy fully
comprehends and envelopes the remedies provided by common law.  Detling v.
Edelbrock, 671 S.W.2d 265 (Mo. banc 1984)  Arguendo, one might say that
Mo.R.Stats. Sec. 535.300 fully comprehended an action by a tenant against a
landlord for breach of contract for the failure of the landlord to refund a
security deposit, BUT NOTHING MORE!  Such, however, is not admitted herein.

      The language of the statute does not support  the argument that
plaintiff's right to common law recovery has been abrogated by necessary
implication.  §535.500 R.S.Mo. merely limits recovery for a claim based on
the statute to an amount not to exceed twice the amount "wrongfully withheld".

      Manifestly, this statute does not speak to a cause of action
for fraud, nor to an action under another statute, the Missouri Unlawful
Practices Act, Chapter 407.  The statute fails to address a situation and facts

applicable to this particular case.

That the legislature did not intend to impliedly abrogate the plaintiff's rights to recover on unrelated, but ancillary claims, is also suggested by the fact that the legislature commonly makes specific mention of a desire to limit or nullify common law recovery in statutes which create remedies or rights of recovery. See e.g. §537.053 R.S.MO. (Dram Shop Act) and §287.120 R.S.MO. (Worker's Compensation Act).

Missouri Security Deposit Statute, St. Louis University Law Journal, Vol 28:1035, discussed in detail Mo. Rev. Stats. Sec. 535.300. The article indicates that prior to the passage of section 535.300, there was no statute and very little common law, pertaining to tenant security deposits in Missouri. The article states that: "[T]he apparent reason for the paucity of the common law was that, without statutory provisions for either penalties or attorney's fees, litigation over the relatively small sums involved in landlord-tenant disputes generally was not worthwhile in terms of either money or time. Without the strength of statute establishing definite limits and penalties, a tenant generally had no incentive to litigate. Most of the cases that had been brought were heard in small claims courts and were unreported."

The article further indicates that "The Statute now provides tenants with the right to recover up to double the amount of the deposit wrongfully withheld. This provision should increase the number of cases litigated and reported. Security deposit litigation has increased in those states that have adopted similar laws over the past fifteen years. The same undoubedly will occur in Missouri, despite certain weaknesses in the law that may serve as disincentives to litigation."

A New Jersey court, the article indicates at P-1044, held that its statute similar to Sec. 535.300, was inapplicable to commercial tenancies because of its finding that the legislative intent behind the statute was to aid residential tenants. [Presberg v. Chelton Realty, Inc. 344 A.2d 341, 342].

The author of <u>Missouri Security Deposit Statute</u> indicates at P-1045 of the article: "Based upon the wording of the Missouri statute, and upon the past versions of the bill, it is reasonable to assume that the law was aimed solely at residential tenancies."  If this were true, then the Plaintiff in the case at bar, a corporation, is not limited in any way to redress under Sec. 535.300, even for the breach of contract count!

The St. Louis University Law Journal article concludes by indicating that: "The incentive of double recovery by tenants, especially for those with large deposits, will encourage litigation. . . The law will be worthwhile if it merely encourages more speedy and equitable return of security deposits to tenants. <u>THAT, AFTER ALL, IS ITS PURPOSE</u>." (emphasis added).  Further, the article indicates that compliance with the Statute will encourage speedier return of security deposits.  Until now, the article states, landlords generally have been able to retain deposits for long periods of time, with the tenant having little recourse.

There can be  no doubt as to what the intent of the Missouri legislature was --- it enabled a tenant to recover a small amount of money to which he was entitled for a refund of a security deposit and provided some degree of incentive on the part of the landlord, with the double recovery provision and the 30 day provision, to treat tenants fairly and more equitably. The statute also transferred the burden from the tenant, i.e. on a statutory action from tenant, to the landlord; a landlord is forced to do certain things under the statute within a certain period of time.

The fact that a similar statute in New Jersey was construed only to applicability to a residential tenant also buttresses the point that this statute was designed for the lower-rent and lower-security deposit situations.

Last but not least is the case of <u>Lastra v. Intercontinental</u>
<u>Investments Company, Inc.</u>, 745 S.W.2d 703, (Mo. App. 1987) in which the
Western District Missouri Court of Appeals held that a statute that provides
affirmative remedy does not take away the common-law remedy, but confines
an injured party to the statutory remedy when a new remedy provides a new
right or means to acquire the right and is an "adequate remedy." The
issue in <u>Lastra</u> was whether §535.300, RSMO 1986 limited the amount appellants
might recover to twice the sum deposited and withheld. In <u>Lastra</u>, the trial
court allowed a trial and at the conclusion, ruled that the plaintiff's
"had not offered substantial, competent evidence of any misapplication of the
security deposit" and further held that the damages were limited by §535.300.
The Plaintiffs in that case had filed a count for conversion of the funds
in the landlord's possession. In <u>Lastra</u>, "the remainder of the case was submitted
to the jury for decision in accordance with the statute."

The ruling on submission of a count for conversion was ruled upon
on the basis that the Plaintiffs had failed to make a submissible case for the
jury and the Court of Appeals, Western District, therefore did not consider this
claim. The <u>Lastra</u> appellate court indicated that prior to the Statute,
a tenant could resort to an action for conversion or for breach of contract.
No mention is made by that Court with regard to unrelated and ancillary causes of
action against the landlord as are present in the instant case. <u>Lastra</u>
reiterated the reduced burden upon the tenant to obtain his security deposit back:
"The tenant-claimant need only show that the deposit was not refunded within
thirty days and that no itemized list of damages to which the deposit was applied
has been furnished by the landlord." <u>Lastra</u> found that the Plaintiff's claims,
IN THAT CASE, fell "squarely within the provisions of Sec. 535.300, RSMO 1986.

It is noteworthy that there was a dissent filed in Lastra by Judge Pritchard, who opined at 708: "The statute is therefore no bar to appellants' action because the statute, if in derogation of the common law, must be construed strictly. [Citing Watkins, supra, and Huff, supra]. Pritchard went on to state in the dissent that "If there is a close question, as there is here, the decision should be weighed in favor of retention of the common law right of action." He even suggested that if there were any post-opinion motions filed in that Court of Appeals, that the Appellant should apply to the Supreme Court of Missouri for transfer on the ground of general interest and importance. Apparently the Appellant, because of the amount of money involved, elected not to file any post-opinion motion and seek transfer. The dissent in Lastra indicated that the judgment "should be reversed and the case remanded upon appellants' claim for conversion and for punitive damages."

In the case at bar, not only is there a claim for breach of contract, but there are also claims involving fraudulent conduct and claims relating to another statute, the Missouri Unlawful Practices Act. If the dissent would reverse in Lastra where there was only an alternate claim for conversion, surely unrelated fraudulent conduct and violation of another Missouri Act would mandate that those other claims be heard. Perhaps the Court should consider also, as did the New Jersey Court, that such a statute as RSMO Sec. 535.300 is elective as to a plaintiff corporation which is going to require counsel under Missouri law in any event. Further, it should be kept in mind that the pleading in Lastra wasn't merely dismissed on the pleadings, but went to trial.

Other states have re-affirmed that statutes similar to Missouri's §535.300 RSMO 1986 were for the purpose of providing a tenant with a remedy for an otherwise economically unfeasible wrong. See: Lugo v. Vest, 336 S.2d 972

The Lugo court stated at P-973: "The provisions . . . were enacted by our legislature to allow a tenant with an economically unfeasable litigious right to protect himself from arbitrary refusal by a landlord to return his deposit. [Citations omitted]." The Missouri Legislature enacted RSMO §535.300 for the exact same reason and the reading-in of anything further abrogates the intent of this statute and denies a plaintiff the right to litigate other matters unrelated to the specific return of a security deposit, even if, arguendo, one does not agree with the dissent in Lastra.

<u>C O N C L U S I O N</u>

In light of the foregoing, the plaintiff respectfully requests this Court to reverse and remand this action for trial on all counts and to find that Missouri §535.300 RSMO 1986 not only does not preclude a common law cause of action for breach of contract, but cannot be found to exclude actions under other statutues, e.g. Missouri Unlawful Practices Act, Chapter 407, and for other common law actions such as fraud and prima-facie tort.

Respectfully submitted,

D. Johnson, Attorney for Appellant
Property Exchange Sales, Inc.
625 N. New Ballas #200
St. Louis, Missouri 63141

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

RHONDA K. CHEATEM, *individually and on behalf of all others similarly situated*,

Plaintiff,

vs.

LANDMARK REALTY OF MISSOURI, LLC,

Defendant.

Case No. 4:20-cv-00381-BP

## PLAINTIFF'S MOTION FOR LEAVE
## TO FILE AMENDED COMPLAINT

Plaintiff Rhonda Cheatem, by undersigned counsel, respectfully moves this Court for an Order pursuant to Federal Rule of Civil Procedure Rule 15(a)(2) allowing Plaintiff leave to file an Amended Class Action Complaint. In support of this Motion, Plaintiff respectfully submits her concurrently filed Suggestions in Support.

WHEREFORE, Plaintiff prays the Court grant this motion and issues an Order authorizing Plaintiff to file the Amended Complaint attached hereto as Exhibit A.

*Respectfully submitted*,

By: /s/ Matthew S. Robertson
A.J. Stecklein        #46663
Michael Rapp         #66688
Matthew Robertson    #70442
STECKLEIN & RAPP CHARTERED
748 Ann Avenue, Suite 101
Kansas City, KS 66101
Telephone:    (913) 371-0727
Facsimile:    (913) 371-0727
Email:  aj@kcconsumerlawyer.com
        mr@kcconsumerlawyer.com
        msr@kcconsumerlawyer.com

1

-and-

Gina Chiala            #59112
Amy Sweeny Davis    #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
          amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on August 27, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

 /s/ Matthew S. Robertson
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| Rhonda K. Cheatem, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 4:20-cv-00381-BP |
| vs. | |
| Landmark Realty of Missouri, LLC D/B/A Willow Creek D/B/A Willow Creek Apartments D/B/A Landmark Realty | CLASS ACTION PETITION JURY TRIAL DEMAND |
| Serve: Registered Agent, Nicholas Porto 1600 Baltimore Suite Kansas City, Missouri 64108, | |
| Defendant. | |

## AMENDED COMPLAINT - CLASS ACTION

COMES NOW Plaintiff Rhonda K. Cheatem ("Plaintiff"), through counsel, and for Plaintiff's causes of action against Defendant KC Willow Creek LLC d/b/a Willow Creek Apartments ("Defendant") states:

## JURISDICTION AND VENUE

1.      This is a class action under the Missouri Merchandising Practices Act, RSMo § 407.025 and the Missouri Security Deposit Statute.

2.      This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. 1332(a).

3.      Venue in this district is proper because Defendant conducts business in this district and the events upon which this action is based transpired in this district.

1

**PARTIES**

4.      Plaintiff is a resident of the State of Missouri.

5.      Defendant KC Willow Creek LLC d/b/a Willow Creek Apartments is a Missouri Limited Liability Company.

6.      At all times, Defendant rented and managed residential real estate to consumers in the State of Missouri.

7.      As of November 2019, Defendant owned and operated an apartment complex at 201 W. 99th Terrace, Kansas City, Missouri  64114 ("leased premises").

**FACTS COMMON TO ALL COUNTS**

8.      On  November 20, 2019, Plaintiff applied for an apartment with Defendant.

9.      On November 20, 2019, Plaintiff signed an addendum to the application.

10.      The addendum to the application signed by Plaintiff was a form, with blanks to fill in to add the particulars of the applying tenant.

11.      The addendum to the application Plaintiff signed with Defendant read, in part: Administration Fee, Application Fee, and Security Deposit This portion of the Application concerns certain fee(s) and/or deposits that may be ***non-refundable***. As such, it is important that you very carefully read and understand each of the following paragraphs. By initialing under each paragraph, you acknowledge that you have read each paragraph and understand that certain fee(s) and/or deposits may be ***non-refundable.***

12.      Under this provision, Plaintiff paid a non-refundable  Application fee of $40.00

13.      The application Plaintiff signed with Defendant read, in part:  Nonrefundable Fees: As part of this Application, I understand that I am required to submit a *nonrefundable* administration fee of ONE HUNDRED AND FIFTY DOLLARS AND  NO CENTS ($150.00)

(hereinafter the "Administration Fee"). As further part of this Application, I understand that I am also required to submit a _nonrefundable_ application fee of either FORTY DOLLARS AND NO CENTS ($40.00) or FIFTY DOLLARS AND NO CENTS ($50.00) per applicant (hereinafter the "Application Fee"), the precise amount which shall solely be determined by Landmark. I understand that both the Administration Fee and Application Fee are _nonrefundable_.

14.  Under this provision, Plaintiff paid a non-refundable Administrative Fee of $150.00.

15.  The application Plaintiff signed with Defendant read, in part: "Security Deposit that May Be Refundable As part of this Application, I understand that I will be required to submit a Security Deposit equal to (the "Security Deposit"). I also understand that Landmark, in Landmark's sole discretion, may require an additional Security Deposit if the information submitted in this Application does not satisfy Landmark's rental criteria. I understand that the Security Deposit (and any additional Security Deposit) is _refundable_ if I cancel, in writing, the Application within 48 hours of the submission of the Application and any fees/deposits required by Landmark. I further understand that the Security Deposit _may be refundable_ if Landmark denies my Application because the information I have submitted does not satisfy Landmark's application criteria. If I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is _nonrefundable_. Finally, I understand that I will be required to submit both a completed Application and any supporting information required by Landmark, including, but not limited to, a verification of identity, a verification of employment, a verification of income, and an authorization to obtain my rental history. If I fail to submit the aforementioned items within 48 hours of submitting my Application and any fees/deposits

required by Landmark, or if any of the information I have submitted is false, inaccurate, or misleading in any way, the Security Deposit is *nonrefundable*.

16.     This deposit falls within the broad definition of "security deposit" as it was  any deposit of money or property, *however denominated*, which is furnished by a tenant to a landlord to secure the performance of *any part* of the rental agreement under RSMo. § 535.300.7.

17.     Under this provision, Plaintiff paid a Security Deposit of $450.00 that became non-refundable 48 hours after submission of the Application if Plaintiff did not cancel in writing.

18.     Plaintiff did not cancel in writing by November 22, 2019 and, pursuant to the terms of the addendum to the lease, Plaintiff's $450.00 security deposit became non-refundable.

19.     On November 25, 2019, Defendant declined Plaintiff's application to lease an apartment and issued a "Move Out Statement" on November 26, 2019.

20.     The Move Out Statement itemized the $640 Plaintiff paid to apply for one of Defendant's apartments.

21.     The Move Out Statement indicated that the following amounts were not going to be refunded and retained by the Defendant:  the Application Fee of $40.00, the Administrative Fee of $150.00, and the Security Deposit $450.00.

22.     The November 26, 2019 Move Out Statement stated that the "security deposit is non-refundable due to falsification on application.  "Your security deposit of $450.00 has been retained and liquidated damages for our time and expense."

23.     However, pursuant to the terms application submitted by Plaintiff, the security deposit became non-refundable on November 22, 2019 (48 hours after the submission of the application if there was no written cancellation).

24.    On  November 27, 2019, Defendant confirmed Plaintiff's security deposit would not be refunded with Defendant.

25.    On November 27, 2019, Defendant refused to refund Plaintiff's $450.00 security deposit.

26.    On November 27, 2019, Defendant refused to refund Plaintiff's Application Fee of $40.00 and the Administrative Fee of $150.00

27.    On November 27, 2019, Defendant represented to Plaintiff that it was legally justified in retaining the security deposit.

28.    Because Defendant refused to refund the non-refundable security deposit upon demand, Plaintiff disputed the Defendant's retention of the security deposit with her Bankcard provider and on January 16, 2020.

29.    Subsequent to January 16, 2019,  Plaintiff was notified that the dispute was investigated, and Bankcard Service Center concluded she was not responsible for the charge.

30.    The $450.00 Security Deposit was refunded to Plaintiff by the Bankcard Service Center, and not by any actions of Defendant.

31.    The collection and retention of Plaintiff's $450.00 Security Deposit in Missouri violates RSMo. § 535.300.6 which states that "the tenant *shall* recover as damages twice the amount wrongfully withheld." RSMo. § 535.300.6 (emphasis added).

32.    Defendant current retains $450.00 in damages to which Plaintiff is entitled pursuant to RSMo. § 535.300.6.


**COUNT I**
**VIOLATION OF RSMo. § 535.300**
**Non-Refundable Security Deposits**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count I

against Defendant, states and alleges:

33.     Plaintiff incorporates by reference the preceding allegations in this petition.

34.     RSMo. § 535.300, entitled security deposits, places restrictions and requirements on landlords regarding security deposits.

35.     RSMo. § 535.300(3) lists what a landlord may legally withhold from a tenant's security deposit.

36.     RSMo. § 535.300(4) states that the landlord may withhold from the security deposit only such amounts as are reasonably necessary because:

> (1) To remedy a tenant's default in the payment of rent due to the landlord, pursuant to the rental agreement;
>
> (2) To restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted; or
>
> (3) To compensate the landlord for actual damages sustained as a result of the tenant's failure to give adequate notice to terminate the tenancy pursuant to law or the rental agreement; provided that the landlord makes reasonable efforts to mitigate damages.

37.     RSMo. §535.300(4) does not allow a landlord to designate part of the security deposit as non-refundable if there is no written cancellation within 48 hours of submission of the application.

38.     RSMo. §535.300(4) does not allow a landlord to designate part of the security deposit as non-refundable before the end of the application term.

39.     RSMo. §535.300(4) does not allow a landlord to designate part of the security deposit as non-refundable because the tenant "fail[ed] to cancel, in writing, the Application within

48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable"*.

40.    RSMo. §535.300(3) does not allow a landlord to designate part of the security deposit as non-refundable because the landlord alleges the tenant misrepresented anything on her application.

41.    The language of the application states that $450.00 of the security deposit may be non-refundable if the tenant fail[ed] to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable"*.

42.    Under the application, the security deposit paid by the Plaintiff was $450.00.

43.     states that "if the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant **shall recover** as damages not more than twice the amount wrongfully withheld."

44.    Under RSMo. § 535.300.6, Defendant is liable to Plaintiff for $450.00.

WHEREFORE, Plaintiff and the putative class prays for judgment against Defendant for such damages as are fair and reasonable for violations of the RSMo. § 535.300; including the statutory relief provided for in RSMo. § 535.300 of damages twice the amount of the non-refundable security deposits withheld ; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

## COUNT II
## MERCHANDISING PRACTICES ACT, § 407.020 RSMo.
### Collecting Non-refundable Security Deposits

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count II against Defendant, states and alleges:

45.     Plaintiff incorporates by reference the preceding allegations in this petition.

46.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

47.     Defendant is deceptively assessing, collecting, and retaining non-refundable security deposits in violation of RSMo. § 535.300.

48.     RSMo § 407.020.1 states that the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

49.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

50.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

51.     Plaintiff has suffered an ascertainable loss in that Defendant wrongfully withheld a $450 security deposit from Plaintiff, resulting in statutory damages owed to Plaintiff, in the amount of not more than twice the non-refundable security deposit pursuant to § 535.300.

52.     Defendant retains $450.00 in damages to which Plaintiff is entitled.

53.     Plaintiff has suffered injury in fact because she has been denied the $450.00 in damages to which Plaintiff is entitled pursuant to § 535.300.

54.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

55.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

56.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

57.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff and the putative class prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

9

## COUNT III
## MERCHANDISING PRACTICES ACT, § 407.020 RSMo.
### Misrepresentation

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count III against Defendant, states and alleges:

58.     Plaintiff incorporates by reference the preceding allegations in this petition.

59.     Upon determining that Defendant wrongfully withheld Plaintiff's security deposit, Plaintiff telephoned Defendant and spoke to Johnathan L/N/U, who advised Plaintiff:

   a.  Defendant was "going by the book" by withholding the security deposit and was confident in their representation that "their I's are dotted and their T's are crossed";

   b.  There is no exposure to Defendant and that Plaintiff's sole remedy was with a past landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

   c.  That Defendant has given Plaintiff all the information that Defendant is required to and that it is not Defendant's fault, but solely the responsibility of the prior landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

60.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

61.     After her security deposit was unlawfully withheld, Plaintiff inquired with Defendant as to the reasons for withholding the security deposit.

62.     Defendant misrepresented to Plaintiff that the non-refundable deposit was legal.

63.     Defendant misrepresented the status of the non-refundable deposit to Plaintiff.

64.     The Missouri Attorney General has declared all excessive and unreasonable practices to be unfair practices in violation of the Missouri Merchandising Practices Act. 15 C.S.R. § 60-8.080(1).

65.     It is excessive and unreasonable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged." 15 C.S.R. § 60-8.080(2).

66.     These non-refundable security deposits are excessive and unreasonable.

67.     These fees are excessive and unreasonable in part because they are high in relation to the value of the application.

68.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

69.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

70.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss in that Plaintiff lost the amount of her security deposit.

71.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

72.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

73.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

74.    Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

**COUNT IV**
**MERCHANDISING PRACTICES ACT, § 407.020 RSMo.**
**Collecting Excessive and Unreasonable Application Fees Generally**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count IV against Defendant, states and alleges:

75.    Plaintiff incorporates by reference the preceding allegations in this petition.

76.    In addition to charging the Plaintiff a non-refundable $450 security deposit fee, Defendant charged a $40 application fee and, on top of that, a $150 Administrative Fee.

77.    Defendant listed the fees that had to be paid in order to apply for an apartment on the fourth page of the application.

78.    On the fourth page of the application, third single-spaced paragraph from the top, beginning on the 7th line, under the title **Security Deposits that May Be Refundable**, is the statement, "[i]f I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is nonrefundable."

79.    These fees required to apply total $640.00, however they are labeled by Defendant, i.e. "security deposit "or otherwise, and are non-refundable if not cancelled within 48 hours.

80.    Whether the $450.00 of the payment is legally defined as a security deposit

pursuant to RSMO § 535.300.7, it is a non-refundable payment required to apply for an apartment.

81.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

82.     The Missouri Attorney General has declared all excessive and unreasonable practices to be unfair practices in violation of the Missouri Merchandising Practices Act. 15 C.S.R. § 60-8.080(1).

83.     It is excessive and unreasonable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged." 15 C.S.R. § 60-8.080(2).

84.     Defendant's conduct is excessive and unreasonable and constitutes violations of RSMo. § 407.020.

85.     The $150 Administrative Fee, is excessively, unfairly, and unreasonably high in relation to the value received by the Plaintiff or any expense incurred by Defendant, especially in light of the $40 Application fee

86.     The $150 Administrative Fee is excessively, unfairly, and unreasonably high when combined with the $40.00 Application fee and the $450.00 non-refundable security deposit.

87.     The $150 Administrative Fee, is excessively, unfairly, and unreasonably high because it obscures the total amount of fees an applicant will forfeited to apply for an apartment lease is excessive and unreasonable.

88.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss.

89.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

90.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages;

attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

91.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

92.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff and the putative class prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

## CLASS ACTION ALLEGATIONS

93.     Plaintiff restates each allegation in the preceding paragraphs as if set forth at length herein.

94.     Under Federal Rule of Civil Procedure 23, Plaintiff sues for herself and on behalf of a class (the "Class A") for Counts I, II, IV initially defined:

> All Missouri tenants from whom Defendant collected a security deposit
>
> deemed nonrefundable under the application in the past five years.

95.     Under Federal Rule of Civil Procedure 23, Plaintiff sues for herself and on behalf of a class (the "Class B") for Counts I, II, III, IV initially defined:

> All Missouri tenants from whom Defendant collected a security deposit
>
> wherein all or a portion of that deposit was deemed nonrefundable under
>
> the application in the past five years and, upon inquiry by the class
>
> member, Defendant informed the class member that retaining the non-

refundable deposit was legal or legally appropriate.

96.     Under Federal Rule of Civil Procedure 23, Plaintiff sues for herself and on behalf of a class (the "Class C") for Counts IV initially defined:

> All Missouri tenants from whom Defendant collected and retained a $150 Administrative fee and/or a $40.00 dollar Application fee under the application in the past five years.

97.     Federal Rule of Civil Procedure 23(a) sets out the following requirements for class certification: .

One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members if impracticable, (2) there are questions of law or fact common to the class, (3) the claims and defense of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class

98.     Numerosity. Fed. R. Civ. P. 23(a)(1). Defendant owns and operates multi-unit apartment complexes using form applications and standardized procedures.  The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Numerosity can be inferred by Defendant' size, that it manages hundreds of apartment units using standardized contracts and procedures, and the fact that its omissions are part of its routine business practice.

99.     Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. Defendant uses

standardized application provisions and procedures in managing hundreds of residential units. These common legal and factual questions include and without limitation:

a. Did Defendant collect and retain a non-refundable security deposit?

b. Did Defendant retain a security deposit for any reason other than those enumerated in § 535.300.5.

c. Did Defendant collect and retain a $150 Administrative Fee and/or a $40.00 Application fee under an application in the past five years?

d. Is it excessive and unreasonable to obscure the total amount of fees subject to forfeiture in an application to lease an apartment?e. Is a $150 Administrative Fee excessively, unfairly, and unreasonably high for the value received by the Plaintiff or any expense incurred by Defendant, especially in light of the $40 Application fee?

100. Typicality. Plaintiff's claims are typical of the claims of each Class member. Their contract was a standardized application with a provision that wrongfully deemed a security deposit as nonrefundable, in violation of RSMo. § 535.300 and required an excessive Administrative Fee that would apply to each member of the putative Class. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

101. Adequacy. Fed. R. Civ. P. 23(a)(3). Plaintiff is an adequate representative of the Class because her interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class.

102. Superiority. Questions of law and fact common to the Class members predominate

over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will cause substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

103.    Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2). Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief regarding Plaintiff and the Class members.

WHEREFORE, Plaintiff and the Class members pray for relief:

1.    An order certifying the proposed classes herein under Missouri Supreme Court Rule 52.08 and appointing Plaintiff and her undersigned counsel of record to represent same;

2.    The creation of a common fund available to provide notice of and remedy Defendant's violations;

3.    Punitive damages as authorized by the MMPA;

4.    Equitable and/or declaratory relief; including that Defendant be restrained from engaging in future conduct in violation of the MMPA;

5.     Attorney's fees, expenses and costs;

6.     An Order that Defendant, its agents, and anyone acting on Defendant's behalf, be immediately restrained from altering, deleting, or destroying any documents or records that could identify Class members;

7.     Pre-judgment and post-judgment interest as provided by law; and

8.     Such other relief the Court does deem just, equitable and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein     #46663
Michael Rapp     #66688
Matthew Robertson   #70442
Stecklein & Rapp Chartered
748 Ann Avenue
Kansas City, KS 66101
Telephone:   (913) 371-0727
Facsimile:    (913) 371-0727
Email: aj@kcconsumerlawyer.com
       mr@kcconsumerlawyer.com
       msr@kcconsumerlawyer.com


GINA CHIALA     # 59112
AMY SWEENY DAVIS   #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email: ginachiala@jobsandfreedom.org
       amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      I certify that on August 27, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

/s/ _____
Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| **RHONDA K. CHEATEM**, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | |
| vs. | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC,** | |
| Defendant. | |

## PLAINTIFF'S SUGGESTIONS IN SUPPORT OF MOTION
## FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff Rhonda Cheatem ("Ms. Cheatem" or "Plaintiff"), by undersigned counsel, respectfully moves this Court for an Order pursuant to Federal Rule of Civil Procedure Rule 15(a)(2) allowing Plaintiff leave to file an Amended Class Action Complaint against Defendant Landmark Realty of Missouri, LLC ("Defendant"). In support of her motion Plaintiff states:

### INTRODUCTION

In this class action, brought under the Missouri Security Deposit Statute, R.S.Mo. 535.300 *et seq*. and the Missouri Merchandising Practices Act R.S.Mo. 407.010 *et seq*. ("MMPA"), Plaintiff seeks to represent a class of consumers who paid Defendant three deceptively identified nonrefundable fees as part of applying for a residential apartment lease with Defendant at any one of Defendant's Missouri locations. Plaintiff is moving to amend her Class Action Complaint to add additional facts regarding the deceptively labeled fees and to clarify that the fees demanded by the rental application qualify as a "security deposit" under the security deposit statute.

Importantly, also pending before the Court is Defendant's motion to dismiss or for

judgment on the pleadings. <u>Doc. 13</u>. Defendant's motion raises a number of issues, but ultimately seeks dismissal of all of Plaintiff's claims. *See generally* <u>Doc. 14</u>. Plaintiff originally filed an amended complaint (<u>Doc. 17</u>), but subsequently moved the Court to allow her to withdraw the amended complaint in that Defendant had previously filed an Answer (<u>Doc. 18</u>). Plaintiff has responded in opposition to Defendant's motion to dismiss or for judgment on the pleadings. <u>Doc. 21</u>.

      Plaintiff believes that taking up the motion to amend and the motion to dismiss at the same time will serve the interests of the Party's resources and time and judicial economy. There are issues presented in the motion to dismiss that go beyond the pleadings themselves. For example, Defendant moves to dismiss on the basis, in part, on the basis that Plaintiff has not suffered an ascertainable loss of money or property sufficient to state a claim under the MMPA because a third party credit card company determined Defendant should not retain the deposit after Defendant refused to refund the deposit to Plaintiff. Plaintiff responds that she has been denied the remedy afforded by the security deposit statute (twice the amount wrongfully withheld) and consequently she has suffered as ascertainable loss. The differences in these positions, and others outlined in Defendant's motion are subject to a legal resolution, not a factual pleading issue and consequently an Order on the motion to dismiss is necessary to guide the direction of the case going forward.

## ARGUMENT

**I.   Standard:**

      Rule 15(1)(A) of the Federal Rules of Civil Procedure allows a litigant to amend its pleading as a matter of right within 21 days of the filing of a responsive pleading. Thereafter, amendment can only be done by order of the court, which should freely grant leave to amend when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Unless the opposing party can show

2

prejudice, bad faith, or undue delay, a court should grant leave to file an amended pleading. *Foman,* 371 U.S. at 182; *see also Trademark Medical LLC v. Birchwood Laboratories, Inc.,* 22 F. Supp. 3d 998, 1001 (E.D. Mo. 2014) (citing *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 715 (8th Cir.2008)). "Whether to grant a motion for leave to amend is within the discretion of the Court." *Id.* at 1002 (citing *Nadist, LLC v. Doe Run Resources Corp.,* No. 06-cv-969, 2009 WL 3680533, at *1 (E.D. Mo. Oct. 30, 2009)).

## II. The Factors for Granting Leave to Amend are Met and the Court Should Allow the Filing of the Proposed Amended Class Action Complaint:

On July 2, 2020, the Court filed a Scheduling Order ordering that any motions to for leave to join additional parties or to otherwise amend the pleadings should be filed by September 20, 2020. (ECF No. 9).

Rule 15(1)(A) of the Federal Rules of Civil Procedure allows a litigant to amend its pleading as a matter of right within 21 days of the service of Answers or the serving of a motion to dismiss under Rule 12(b). Thereafter, the amendment can only be done by order of the court, which should freely be granted when justice so requires. "The Supreme Court has interpreted this to mean that "absent a good reason for denial—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment—leave to amend should be granted." *Brown v. Wallace,* 957 F.2d 564, 565–566 (8th Cir. 1992).

The Defendant cannot show prejudice. The deadline for amending had not yet passed when Plaintiff's Motion to Amend was filed. Defendants will not be unduly prejudiced by the amendment. No additional parties or claims are being raised and the allegations themselves have not substantially changed. Plaintiff is seeking amendment in light of Defendant's motion to dismiss, and to plead additional facts to support her claims. Plaintiff brings this Motion without

undue delay or untimeliness. Plaintiff has sought no extensions or continuances since the removal of this case, and the case is still in an infant stage of litigation. The Court should allow the filing of Plaintiffs' amended pleading because it is appropriate and necessary. *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1255-56 (8th Cir. 1994).

The Court should allow the filing of Plaintiffs' amended pleading because Defendants will not be prejudiced by the amended pleading. *Bylin* 568 F.3d at 1229-30; *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994). There are no newly added facts that could surprise or prejudice the Defendants. Discovery is still proceeding and does not close until May 28, 2021. (ECF No. 9 at 2).

Plaintiffs are not guilty of undue delay. *Foman* 371 U.S. at 182. The Court should allow the filing of Plaintiffs' amended pleading because the Court will not be substantially burdened by any delay that Plaintiffs' amended pleading may cause. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004). Additionally, the Court should allow the filing of Plaintiffs' amended pleading because Plaintiffs are not guilty of bad faith. *Foman* 371 U.S. at 182. And the amendment is not futile. *Foman* 371 U.S. at 182.

The amendment would not be futile, the claims are not time barred, and "[a]bsent a specific finding of flagrant abuse, bad faith, or futility, the determining factor in evaluating a motion to amend should be the prejudice to the opposing party." *Steinert v. Winn Grp., Inc.*, 190 F.R.D. 680, 683 (D. Kan. 2000). The burden of showing prejudice is on the party opposing the motion to amend. *Phelps v. Hamilton*, 166 F.R.D. 489, 491 (D. Kan. 1996). Only the "addition of a host of new issues or theories requiring substantial additional evidence or a change in tactics or theories by a party causing undue difficulty in defending a lawsuit may constitute prejudice in this context." *Steinert*, 190 F.R.D. at 683.

**CONCLUSION**

Plaintiff asks the Court for leave to file an amended class action complaint. All factors for granting leave indicate that such an amendment is proper.

WHEREFORE, Plaintiff prays the Court grant this motion and issues an Order authorizing Plaintiff to file the Amended Complaint attached hereto as Exhibit A.

*Respectfully submitted*,

By: /s/ Matthew S. Robertson
A.J. Stecklein          #46663
Michael Rapp           #66688
Matthew Robertson    #70442
STECKLEIN & RAPP CHARTERED
748 Ann Avenue, Suite 101
Kansas City, KS 66101
Telephone:    (913) 371-0727
Facsimile:     (913) 371-0727
Email:  aj@kcconsumerlawyer.com
            mr@kcconsumerlawyer.com
            msr@kcconsumerlawyer.com

-and-

Gina Chiala            #59112
Amy Sweeny Davis    #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
            amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

## **CERTIFICATE OF SERVICE**

I certify that on August 27, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

 /s/ Matthew S. Robertson     
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

**REPLY SUGGESTIONS IN SUPPORT OF
DEFENDANT LANDMARK REALTY OF MISSOURI, LLC'S
<u>MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS</u>**

Defendant Landmark Realty of Missouri, LLC ("Landmark") submits the following reply suggestions in support of its Motion to Dismiss and/or for Judgment on the Pleadings (Doc. #13), filed July 20, 2020.

## Table of Contents

Table of Authorities ..................................................................................................................... ii

Introduction .................................................................................................................................1

Argument and Authorities ...........................................................................................................1

    I.     Plaintiff has Not Satisfied Her Burden of Proof to Demonstrate She has
           Standing to Bring the Claims in Counts I, II and III of Her Petition............................1

    II.    Landmark is Entitled to Judgment on the Pleadings on All of Plaintiff's
           Claims Because Those Claims Fail as a Matter of Law on the Facts Alleged..............4

    A.    Landmark is Entitled to Judgment on the Pleadings on Count I for Violation
           of the Security Deposit Statute, Mo. Rev. Stat. § 535.300, Because the Disputed
           Payment at Issue in this Claim was Not a "Security Deposit" as Defined in
           That Statute ...............................................................................................................4

    B.    Landmark is Entitled to Judgment on the Pleadings on Counts II and III for
           Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020 .....7

    C.    Landmark is Entitled to Judgment on the Pleadings on Count IV for Violation
           of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020, Because
           the Petition Does Not Plausibly Allege that the Disputed $150 Administration
           Fee is Unconscionable ..............................................................................................10

Conclusion ................................................................................................................................10

<u>**Table of Authorities**</u>

<u>**Cases**</u>

*Battis v. Hofmann*,
   832 S.W.2d 937 (Mo. Ct. App. 1992)....................................................................4, 7-8

*Braitberg v. Charter Commc'ns, Inc.*,
   836 F.3d 925 (8th Cir. 2016) ........................................................................................ 3

*Chochorowksi v. Home Depot U.S.A.*,
   404 S.W.3d 220 (Mo. 2013) ...................................................................................... 8-9

*Croyle ex rel. Croyle v. United States*,
   908 F.3d 377 (8th Cir. 2018) ................................................................................... 2, 4

*Dress v. Capital One Bank (USA), N.A.*,
   No. 1:19-cv-00343, 2019 WL 3451304 (E.D. Va. July 30, 2019)................................ 2

*Hargis. Access Capital Funding, LLC*,
   674 F.3d 783 (8th Cir. 2012) ....................................................................................... 2

*Huch v. Charter Commc'ns, Inc.*,
   290 S.W.3d 721 (Mo. 2009) ........................................................................................ 9

*Lastra v. Intercontinental Invs. Co.*,
   745 S.W.2d 703 (Mo. Ct. App. 1987) .......................................................................... 7

*Mansfield v. Horner*,
   443 S.W.3d 627 (Mo. Ct. App. 2014) .......................................................................... 5

*Martin v. Consumer Adjustment Co.*,
   No. 16-01180-CV-ODS, 2017 WL 6570210, at *3 (W.D. Mo. Dec. 22, 2017)............... 3

*Osborn v. United States*,
   918 F.2d 724 (8th Cir. 1990) ....................................................................................... 2

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
   911 F.3d 505 (8th Cir. 2018) ..................................................................................... 10

*PDQ Tower Servs., Inc. v. Adams*,
   213 S.W.3d 697 (Mo. Ct. App. 2007)........................................................................... 8

*Prop. Exch. & Sales, Inc. v. King*,
   863 S.W.2d 12 (Mo. Ct. App. 1993) ............................................................................ 7

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................................3

*State ex rel. Nixon v. Estes*,
    108 S.W.3d 795 (Mo. Ct. App. 2003) ......................................................................5

*State ex rel. Webster v. Areaco Inv. Co.*,
    756 S.W.2d 633 (Mo. Ct. App. 1988) ......................................................................9

*Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*,
    533 S.W.3d 720 (Mo. 2017) ....................................................................................5

*Tovar v. Essentia Health*,
    342 F. Supp. 3d 947 (D. Minn. 2018) ......................................................................2

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) ...................................3

*Wright v. Oasis Legal Fin., LLC*,
    No. 4:19cv926 RWS, 2020 WL 1433645 (E.D. Mo. Mar. 24, 2020)......................10

*Younker v. Inv. Realty, Inc.*,
    461 S.W.3d 1 (Mo. Ct. App. 2015).......................................................................5, 8

## Statutes and Rules

Mo. Rev. Stat. § 535.300....................................................................................................4, 6

**Introduction**

Plaintiff's claims fail as a matter of law and are subject to dismissal on several grounds. Plaintiff recently filed a motion for leave to file an amended complaint, hoping that the amended pleading would moot this motion. As Landmark will detail in separate suggestions in opposition to Plaintiff's motion, leave to amend should be denied because the proposed amended pleading does not cure the defects in Plaintiff's claims and is therefore futile. Nothing will change the fact that Plaintiff lacks standing to bring the claims in Counts I, II and III because her $450 payment has been refunded. And Plaintiff does not make any new allegations that would prevent all of her claims from failing as a matter of law for the reasons argued in Landmark's opening suggestions and below. In these circumstances, the Court should proceed in granting this motion to dismiss and/or for judgment on the pleadings for the reasons outlined.

**Argument and Authorities**

**I.      Plaintiff has Not Satisfied Her Burden of Proof to Demonstrate She has Standing to Bring the Claims in Counts I, II and III of Her Petition**

Plaintiff does not dispute that the claims in Counts I, II and III of the Petition all are predicated on the alleged wrongful retention of the $450 "security deposit" she paid when applying to lease an apartment. Plaintiff also concedes that this $450 payment was refunded to her through a credit card chargeback less than 30 days after she made the payment. On the undisputed factual record, Plaintiff cannot meet her burden to demonstrate standing on the claims in Counts I, II and III because she has not suffered any injury in fact with respect to those claims.

Plaintiff first objects that Landmark submits evidence outside the pleadings and asserts that "[t]he Court should not give any consideration to those attachments." (Doc. #21 at 6 n.1.) This misunderstands the standard of review on a motion to dismiss making a factual challenge to subject matter jurisdiction under Rule 12(b)(1), where a court is permitted to consider evidence

1

outside the pleadings. *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (holding that in a "factual attack" on subject matter jurisdiction the district court "may consider matters outside the pleadings" and plaintiff "does not have the benefit of 12(b)(6) safeguards"). Here, the evidence submitted by Landmark is properly considered and is undisputed.

That undisputed evidence—including the affidavit of Landmark Regional Director Jonathan Marcus (Doc. #14-1 ¶ 2) and Plaintiff's credit card account statement (Doc. #14-2)—shows that the $450 payment was credited back to Plaintiff's account less than 30 days after the original charge to her credit card. Because Plaintiff has no out-of-pocket loss following this payment refund, she has no injury in fact and lacks standing to bring claims based on the $450 charge. *See, e.g.*, *Hargis Access Capital Funding, LLC*, 674 F.3d 783, 791 (8th Cir. 2012); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 955 (D. Minn. 2018). These cases are based on analogous facts, are cited in Landmark's opening brief, and are not addressed or distinguished by Plaintiff. *See also Dress v. Capital One Bank (USA), N.A.*, No. 1:19-cv-00343, 2019 WL 3451304, at *3 (E.D. Va. July 30, 2019) (holding that plaintiff lacked standing to bring putative class action when disputed credit card interest charge was refunded pre-litigation). Plaintiff has not cited contrary authority or provided rebuttal evidence to meet her burden of proving injury in fact, and her allegations by themselves are not sufficient to overcome the weight of the record against her. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

Plaintiff's only argument against dismissal is that Landmark "refused to refund the security deposit upon demand" and "from the moment that Plaintiff's security deposit was withheld by [Landmark] for an unlawful reason, Plaintiff was entitled to a statutory penalty twice the amount of her deposit," which she has not received. (Doc. #21 at 6, 8.) For several reasons, this does not satisfy the injury in fact requirement.

First, the availability of a statutory penalty on Plaintiff's claim in Count I under the Missouri security deposit statute does nothing to establish injury in fact on Plaintiff's separate claims in Counts II and III under the Missouri Merchandising Practices Act ("MMPA")—which does not provide a similar statutory penalty. In fact, Plaintiff does not even pray for double recovery of the $450 charge in the requests for relief on the MMPA claims. (*Compare* Pet., Doc. #1-1, at 5 (prayer for relief on Count I), *with id.* at 7, 9 (prayers for relief on Counts II and III).) It is well settled that "standing is not dispensed in gross" and that "a plaintiff must demonstrate standing for each claim [she] seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). Because Plaintiff fails to demonstrate standing on Counts II and III for MMPA violations based on the $450 payment that was refunded to her, those claims should be dismissed for lack of subject matter under Rule 12(b)(1).

Even on Count I, potential availability of a statutory penalty does not establish a concrete injury in fact for purposes of standing when Plaintiff cannot otherwise demonstrate she has been harmed. Stripped of a real financial injury following the refund of her $450 payment, Plaintiff's claim is just "a bare procedural violation" that is insufficient for standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *see also Martin v. Consumer Adjustment Co.*, No. 16-01180-CV-ODS, 2017 WL 6570210, at *3 (W.D. Mo. Dec. 22, 2017) ("Following *Spokeo*, the Eighth Circuit requires a plaintiff to identify a risk of real harm that is neither speculative not hypothetical in cases alleging violations of procedural rights." (citing *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016))).

More fundamentally, Plaintiff is simply incorrect that she is entitled to a statutory penalty of double damages from the "moment" a security deposit is withheld. Even if Plaintiff was correct that the $450 payment constituted a "security deposit" under the Missouri security deposit

statute and that Landmark wrongfully withheld that money for a brief period of time, the statute provides a 30-day window of time for return of a security deposit. Mo. Rev. Stat. § 535.300.3(1) ("Within thirty days after the date of termination of the tenancy, the landlord shall: (1) Return the full amount of the security deposit . . . ."). As a matter of Missouri law, no violation of the statute occurs unless a security deposit is withheld *beyond* the 30-day window. *Battis v. Hofmann*, 832 S.W.2d 937, 940 (Mo. Ct. App. 1992) (holding that to recover under Section 535.300, the tenant must "show the deposit was not refunded within thirty days").

Because Plaintiff concedes that her $450 payment was refunded within 30 days of when the charge was made, she cannot claim a violation of the Missouri security deposit statute and is precluded from recovering the statutory penalty on her claim in Count I of the Petition. On this undisputed record, Plaintiff has no injury in fact and the Court should dismiss Count I for lack of subject matter jurisdiction under Rule 12(b)(1). *Croyle*, 908 F.3d at 380 ("If the jurisdictional issue is 'bound up' with the merits of the case, the district court may 'decide whether to evaluate the evidence under the summary judgment standard.'").

## II.     Landmark is Entitled to Judgment on the Pleadings on All of Plaintiff's Claims Because Those Claims Fail as a Matter of Law on the Facts Alleged

Even if Plaintiff got past the lack of standing on Counts I, II and III, those claims fail as a matter of law as explained below. Count IV fails as a matter of law as well. Landmark is entitled to judgment on the pleadings on these claims.

### A.     Landmark is Entitled to Judgment on the Pleadings on Count I for Violation of the Security Deposit Statute, Mo. Rev. Stat. § 535.300, Because the Disputed Payment at Issue in this Claim was Not a "Security Deposit" as Defined in That Statute

The Missouri security deposit statute applies only to a "deposit of money or property, however denominated, which is furnished by a tenant to a landlord to secure the performance of any part of **the rental agreement**." Mo. Rev. Stat. § 535.300.8 (emphasis added). Plaintiff does

not dispute that she never had a rental agreement with Landmark, and this simple fact causes her claim under Section 535.300 to fail as a matter of law because without a rental agreement, no payment of money can be considered a "security deposit" for purposes of the statute.

Plaintiff argues that her $450 payment was a "security deposit" under the statute because that term was used in Plaintiff's application form. Plaintiff cites no authority for this proposition, and Missouri law holds that Section 535.300 (and its definitional provisions) must be interpreted and applied according to the statute's express language, which cannot be enlarged by the parties' contract or judicial decision. *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. 2017); *Mansfield v. Horner*, 443 S.W.3d 627, 660 (Mo. Ct. App. 2014); *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 798 (Mo. Ct. App. 2003). Plaintiff also fails to meaningfully address the language in the application form explaining to prospective tenants (like Plaintiff) that the $450 payment does not become a "security deposit" for purposes of Section 535.300 until a separate lease agreement is made. (*See* Doc. #14-1, Ex. 1-B at n.1.) Although contract language cannot supersede the statutory definition of "security deposit," the application form puts to rest any suggestion Landmark intended to charge Plaintiff a "security deposit" under Section 535.300 at the application stage.

Plaintiff further argues that her $450 payment was a security deposit because the statute covers payments "however denominated." This argument is backwards—the "however denominated" language does not expand the statute to cover whatever the parties describe as a "security deposit"; rather, it allows a payment that otherwise meets the statutory definition to be treated as a "security deposit" under the statute even if that term is *not* used to describe the payment. *Younker v. Inv. Realty, Inc.*, 461 S.W.3d 1, 8 (Mo. Ct. App. 2015) ("[T]he seventh subsection refers to funds 'however denominated.' Section 535.300.7 This broad language indicates that the legislature intended to control security deposits regardless of the contractual language used in the lease.

The implication is that once funds meet all the definitional components of a 'security deposit' as set forth in this subsection, those funds cannot then escape the security deposit requirements set forth in section 535.300."). The "however denominated" language has no bearing in this case because Plaintiff's $450 payment was not made as part of a "rental agreement" and therefore does not meet the statutory definition of "security deposit" regardless of what it was called in the application form.

Plaintiff also argues that the $450 payment is covered by the security deposit statute because the application is "part" of the rental agreement. This misconstrues the statute's reference to "any part of the rental agreement," which describes the obligations secured by the payment, including obligations to pay rent and repair damage to the property. Without a rental agreement, the parties have no obligations and nothing to secure, which is why a payment made outside of a rental agreement (like Plaintiff's $450 payment) is not considered a "security deposit" for purposes of Section 535.300. Other provisions of the security deposit statute make equally clear that a formal rental agreement is necessary for a "security deposit" to exist. *See, e.g.*, Mo. Rev. Stat. § 535.300.2 (noting that a security deposit is held for "the tenant, who is a party to the rental agreement"); *id.* § 535.300.5 (explaining procedure for disposing of security deposit "following the termination of the rental agreement").

The rest of Plaintiff's arguments on this issue are difficult to follow and do nothing to undermine Landmark's position based on the clear language of the security deposit statute. The parade of abuses Plaintiff imagines and the supposed unfairness of calling the payment a "security deposit" when it does not meet the statutory definition are irrelevant to whether Plaintiff states a viable claim under the security deposit statute. Because Plaintiff has no valid argument that her $450 payment constitutes a "security deposit" as defined in Section 535.300, the claim in Count I fails as a matter of law and Landmark is entitled to judgment on the pleadings.

**B.     Landmark is Entitled to Judgment on the Pleadings on Counts II and III for Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020**

Plaintiff does not dispute that Counts II and III for violation of the MMPA are based on an underlying violation of the Missouri security deposit statute. (Pet., Doc. #1-1, ¶¶ 30, 42-44.) She also does not respond to Landmark's argument that if Count I fails as a mater of law because the $450 payment was not a "security deposit" as defined in Section 535.300, then the derivative claims in Counts II and III necessarily fail as well. (*See* Doc. #14 at 10.) The Court should enter judgment on the pleadings in favor of Landmark on these claims for this reason.

And even if the $450 payment could be considered a "security deposit" for purposes of stating a viable claim under Section 535.300, Counts II and III under the MMPA still fail as a matter of law because Section 535.300 is Plaintiff's exclusive remedy for alleged wrongful with-holding of that security deposit. (*See* Doc. #14 at 10-11.) Missouri courts generally recognize that Section 535.300 "provides the tenant [her] exclusive remedy for the wrongful withholding of a security deposit." *Battis*, 832 S.W.2d at 940; *see also Lastra v. Intercontinental Invs. Co.*, 745 S.W.2d 703, 705-06 (Mo. Ct. App. 1987) ("The subject of claims for refund of security deposits to tenants has been pre-empted by the legislative enactment [of Section 535.300] which created the rights and obligations and limited the allowance of damages to not more than twice the amount of the deposit. . . . Appellants were confined to the statutory remedy and the trial court correctly so ruled."). More specifically, this rule is applied to bar MMPA claims (like Plaintiff's) complaining of the wrongful withholding of a security deposit. *See Prop. Exch. & Sales, Inc. v. King*, 863 S.W.2d 12, 15 (Mo. Ct. App. 1993).

Plaintiff points out that some statutes have more explicit exclusivity provisions, but this does not preclude Section 535.300 from also providing an exclusive remedy as indicated in *King*, *Battis* and *Lastra*. Plaintiff suggests MMPA-related regulations promulgated by the Missouri At-

torney General in 1994 negate the holding in *King*, but Plaintiff cites no supporting authority and Missouri courts still recognize Section 535.300 as the "exclusive remedy for the wrongful withholding of a security deposit." *Younker*, 461 S.W.3d at 7; *PDQ Tower Servs., Inc. v. Adams*, 213 S.W.3d 697, 700 (Mo. Ct. App. 2007) (citing *King* for proposition that "section 535.300 is the exclusive remedy for tenants to recover security deposits").

Plaintiff notes that Section 535.300 was amended in 2016 from stating that "the tenant shall recover as damages not more than twice the amount wrongfully withheld" to stating more conclusively that "the tenant shall recover as damages twice the amount wrongfully withheld." Removing the words "not more than" simply eliminated the court's discretion to award damages less than twice the amount of the wrongfully withheld security deposit. *See Battis*, 832 S.W.2d at 940-41 (discussing legal effect of pre-amendment language). Plaintiff does not explain how this undermines the exclusivity of the statute; if anything, it reinforces the statute's exclusivity by reflecting the intent of the Missouri legislature to establish certain recovery for a violation of the statute no matter what the circumstance of the wrongful withholding.

Plaintiff nitpicks the length of the written opinion and the quality of arguments in *King*, but that decision is supported by many cases (cited above) similarly confirming the exclusivity of Section 535.300 against a variety of claims related to withheld security deposits. Plaintiff cites no authority indicating that MMPA claims should be carved out of Section 535.300's otherwise exclusive remedy, particularly in light of the controlling holding to the contrary in *King*.

Plaintiff also fails to meaningfully distinguish the Missouri Supreme Court's decision in *Chochorowksi v. Home Depot U.S.A.*, 404 S.W.3d 220 (Mo. 2013), which provides a separate basis for entering judgment on the pleadings in favor of Landmark. As explained in Landmark's opening brief (*see* Doc. #14 at 11-13), *Chochorowski* holds that a plaintiff who voluntarily enters into an agreement with full appreciation and acceptance of the terms cannot later claim to have

been deceived under the MMPA about those terms. 404 S.W.3d at 228-29. The facts in that case are virtually identical to the facts here—the terms of the lease application were outlined clearly in writing, with Plaintiff's review and acceptance of the terms indicated by her initialing of the relevant paragraphs and her signature at the end of the one-page form confirming "***agreement to be bound by the policies stated above regarding fees and deposits***." (Doc. #14-1, Ex. 1-B at 1.) Plaintiff does not argue—let alone allege—that she was somehow prevented from understanding the amount of fees she would be paying or the circumstances in which those fees would become non-refundable. Plaintiff also does not dispute that Landmark retained the $450 payment because Plaintiff submitted false information on her application form, a decision expressly contemplated and approved in the application form.

Like the retail contract in *Chochorowski*, Plaintiff had the option to sign the application form and made the $450 payment knowing the terms of the deal. Plaintiff cannot now complain of that decision. She attempts to distinguish *Chochorowski* by arguing that the terms of her deal with Landmark were unlawful under Section 535.300, but this only reinforces the fact that her claim fails as a matter of law if it is determined that the Missouri security deposit statute does not apply and/or has not been violated.[1] Under the circumstances, the Court should find that Plaintiff's claims in Count II and III fail as a matter of law and that Landmark is entitled to judgment on the pleadings on the claims.

---

[1] Plaintiff also cites two cases that do not distinguish or undermine *Chochorowski*—both pre-date that opinion and neither deals with a similar fact scenario. *See Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 727 (Mo. 2009) (addressing deceitful billing and collection of unlawful charges for unsolicited merchandise); *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635-36 (Mo. Ct. App. 1988) (addressing misleading mailers and deceitful charges for misrepresented merchandise).

9

**C. Landmark is Entitled to Judgment on the Pleadings on Count IV for Violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020, Because the Petition Does Not Plausibly Allege that the Disputed $150 Administration Fee is Unconscionable**

Plaintiff does not identify any allegations in her Petition plausibly suggesting substantive or procedural unconscionability in the execution of the application form. (Doc. #14 at 14-15.) She simply argues that unconscionability is determined on a sliding scale under Missouri law, where greater substantive unconscionability requires less procedural unconscionability, and vice-versa. This skips past fundamental pleading deficiencies in Plaintiff's claim, which rests entirely on conclusory and threadbare assertions of unconscionability. Plaintiff suggests, at most, that the fees she paid are unconscionable because they are high compared to the value of the application (Doc. #1-1 ¶ 61), but the Petition does not allege any facts plausibly suggesting the fees are out of line with industry standards, let alone so high that they are substantively unconscionable. And even if Plaintiff was credited with a proper allegation of substantive unconscionability, her claim still fails because the Petition includes *no* allegations of procedural unconscionability from high pressure tactics or other improper conduct in the execution of the application. Plaintiff's claim should be dismissed under the circumstances. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 513 (8th Cir. 2018); *Wright v. Oasis Legal Fin., LLC*, No. 4:19cv926 RWS, 2020 WL 1433645, at *4 (E.D. Mo. Mar. 24, 2020).

<u>Conclusion</u>

For the foregoing reasons, the Court should dismiss Counts I, II and III for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiff lacks standing to bring those claims. Alternatively or in addition, the Court should enter judgment on the pleadings in favor of Landmark because all Plaintiff's claims fail as a matter of law.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: ___/s/ Nicholas J. Porto_____
      Nicholas J. Porto     MO #56938
      1600 Baltimore, Suite 200A
      Kansas City, Missouri 64108
      Telephone:  816.463.2311
      Facsimile:  816.463.9567
      nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: ___/s/ Stephen J. Moore_____
      Stephen J. Moore     MO #59080
      1968 Shawnee Mission Pkwy, Suite 100
      Mission Woods, Kansas 66205
      Telephone:  816.471.0909
      Facsimile:  816.471.3888
      sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

### CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that the foregoing document was filed this 31st day of August, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

          ___/s/ Stephen J. Moore_____
          Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| Rhonda K. Cheatem, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case Number: 20-CV-00381 BP |
| vs. | |
| Landmark Realty of Missouri, LLC | |
| Defendant. | |

## ENTRY OF APPEARANCES

COMES NOW Amy Sweeny Davis and hereby enters her appearance in the above-captioned matter on behalf of the Plaintiff, Rhonda Cheatem.

By: /s/ Amy Sweeny Davis
AMY SWEENY DAVIS  # 45766
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4033 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email: amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

RHONDA CHEATEM,

                Plaintiff,

v.

LANDMARK REALTY OF MISSOURI,
LLC

                Defendant.

Case No. 4:20-cv-00381-BP

## SUGGESTIONS IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Defendant Landmark Realty of Missouri, LLC ("Landmark") submits the following sug-

gestions in opposition to Plaintiff's Motion for Leave to File Amended Complaint (Doc. #22),

filed August 27, 2020:

### Introduction

Plaintiff is seeking leave to file an amended complaint after Landmark filed its Motion to

Dismiss and/or for Judgment on the Pleadings and suggestions in support. (Doc. ##13-14.) Plain-

tiff admits the filing of an amended complaint is "an attempt to moot the pending motion to dis-

miss" (Doc. #18 at 1), but the proposed amended complaint does not correct any of the deficien-

cies identified in Landmark's dispositive motion. Despite having a roadmap of Landmark's ar-

guments for dismissal and knowing Landmark would argue the futility of the proposed amended

complaint, the motion to amend fails to explain how the proposed amended complaint states any

viable claims except to assert that "[t]he amendment would not be futile [because] the claims are

not time barred." (Doc. #23 at 4.) It may be true that the claims are not time-barred, but those

claims fail for many other reasons. The motion to amend should be denied as futile.

**Arguments and Authorities**

Although Rule 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires," the Eighth Circuit recognizes that "there is no absolute right to amend." *Doe v. Cassel*, 403 F.3d 986, 990 (8th Cir. 2005) (internal quotations omitted). "A district court's denial of leave to amend a complaint may be justified if the amendment would be futile" because "district courts need not indulge in futile gestures." *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013) (internal quotations omitted).

"[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion." *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). Here, the motion for leave to amend should be denied as futile because the proposed amended complaint does not cure any of the Rule 12 deficiencies identified in Landmark's Motion to Dismiss and/or for Judgment on the Pleadings (*see generally* Doc. ##13-14, 22). In particular, Counts I, II and III of the proposed amended complaint are subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiff has not suffered any injury in fact and does not have standing to bring claims concerning the $450 "security deposit" payment that was fully refunded to her. In addition, Landmark is entitled to judgment on the pleadings under Rule 12(c) because all claims in the proposed amended complaint fail as a matter of law.

I.    **The Proposed Amended Complaint is Futile with Respect to the Claims in Counts I, II and II Because Plaintiff Still Lacks Standing to Pursue Those Claims**

A motion for leave to amend is properly denied as futile when the amended pleading does not cure a lack of standing. *See, e.g.*, *Davis v. Morris-Walker, Ltd.*, 922 F.3d 868, 872 (8th Cir. 2019) ("[The plaintiff] seeks to sue over violations inside a building that she never entered, and we conclude that she lacks standing to do so. Therefore, the district court did not abuse its discre-

tion in denying [plaintiff's] motion to amend as futile."); *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 527 (8th Cir. 2007) ("[I]n view of the fact that [the plaintiff] has not indicated any amendment he could make that would cure the [standing] defect in his complaint, the district court correctly denied permission to replead as futile."); *Woods v. Caremark, LLC*, No. 4:15-cv-00535-SRB, 2016 WL 6908108, at *6 (W.D. Mo. July 28, 2016) ("[T]he same standing analysis applies to [plaintiff's] proposed Second Amended Complaint necessitating that leave to amend be denied as futile."); *Dalton v. Simonson Station Stores, Inc.*, No. 17-cv-4427 (SRN/LIB), 2018 WL 11025788, at *9 (D. Minn. Sept. 6, 2018) ("To the extent Plaintiff seeks to further amend his Amended Complaint . . . , [he] has failed to sufficiently allege that he has Article III standing to raise those claims. Accordingly, . . . Plaintiff's Motion [for leave to amend] is futile.").

Here, Plaintiff has not suffered any injury in fact and lacks standing to bring the claims in Counts I, II and III regarding payment of the $450 "security deposit" because she received a full refund of that payment within 30 days from when the payment was first made. (*See* Doc. #24 at 3 (factual support), 4-6 (legal argument); Doc. #24 at 1-4 (reply argument).) The new and revised allegations in the proposed amended complaint do not cure this lack of standing.

The proposed amended complaint alleges that Plaintiff made the $450 payment on November 20, 2019; that Landmark refused to refund the payment on November 27, 2019; that she disputed the charge with her credit card provider; and that she was notified "subsequent to January 16, [2020]" that the payment was refunded. (*See* Doc. #22-1 ¶¶ 17-18, 24-25, 28-30.) These allegations confirm Plaintiff received a refund of the $450 payment and bolster the argument that she lacks standing to bring the claims in Counts I, II and III regarding that payment.

And regardless of when Plaintiff was "notified" of the payment refund (Doc. #22-1 ¶ 29) or who was responsible for the refund (*id.* ¶ 30), the undisputed evidence proves she *received* the refund in the same billing cycle less than 30 days after the payment was made, as shown in her

December 12, 2019 credit card account statement. (Doc. #14-2 at 1-2.) For ease of reference, a copy of that statement is reattached hereto as **EXHIBIT A**.[1] The new allegations in the proposed amended complaint do not contest this.

Plaintiff attempts to sidestep the implication of the full refund by alleging that she is separately entitled to a statutory penalty of another $450 under the Missouri security deposit statute. (*See* Doc. #22-1 ¶¶ 31-32, 43-44, 51-53.) A statutory penalty, however, is not sufficient by itself to create injury in fact for standing purposes. (*See* Doc. #24 at 3.) Moreover, Plaintiff's premise is incorrect as a matter of Missouri law. The pertinent provision of the Missouri security deposit statute states: "If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages twice the amount wrongfully withheld." Mo. Rev. Stat. § 535.300.6. As explained in Landmark's reply brief on the motion to dismiss, a statutory penalty is not available in this case because Plaintiff admits she received her full refund in less than 30 days. (*See* Doc. #24 at 3-4.) This conclusion is necessarily drawn from the express language of the statute providing 30 days to make a required refund, *see* Mo. Rev. Stat. § 535.300.3(1), and Missouri case law holding that a violation of the statute cannot occur unless a security deposit is withheld *beyond* the 30-day window, *Battis v. Hofmann*, 832 S.W.2d 937, 940 (Mo. Ct. App. 1992) (for a claim under Section 535.300, the tenant must "show the deposit was not refunded within thirty days").

The proposed amended complaint does not change the fact Plaintiff has no injury in fact and lacks standing to bring the claims in Counts I, II and III because she received a full refund of the $450 payment. The motion for leave to amend should be denied as futile.

---

[1] The Court is permitted to consider evidence outside the pleadings in determining the issue of standing. *See Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (holding that in a "factual attack" on subject matter jurisdiction the district court "may consider matters outside the pleadings" and plaintiff "does not have the benefit of 12(b)(6) safeguards").

## II. The Proposed Amended Complaint is Futile Because All of Plaintiff's Claims Fail as a Matter of Law and Landmark is Entitled to Judgment on the Pleadings

The Eighth Circuit recognizes that "[a]n amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (internal quotations omitted); *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) ("[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) . . . ."). Here, Landmark filed a motion for judgment on the pleadings under Rule 12(c) arguing that Plaintiff's original claims all fail as a matter of Missouri law. (*See* Doc. #14 at 6-15; Doc. #24 at 4-10.) The motion for judgment on the pleadings uses the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Gallagher v. City of Clayton*, 699 >F3d 1013, 1016 (8th Cir. 2002). Because the claims in Plaintiff's proposed amended complaint continue to suffer the same deficiencies as Plaintiff's original claims, those claims still fail as a matter of law and the motion for leave to amend is therefore futile.

### Count I – Violation of the Missouri Security Deposit Statute

The $450 payment at issue in Count I is not a "security deposit" as that term is defined in the Missouri security deposit statute because the parties never executed a lease and the payment was not made "to secure the performance of any part of the rental agreement." Mo. Rev. Stat. § 535.300.8. Landmark's argument on this issue and the supporting authorities are discussed at length in its opening suggestions (Doc. #14 at 7-9) and its reply suggestions (Doc. #24 at 4-6) on the motion for judgment on the pleadings.

The proposed amended complaint includes a new allegation that the $450 payment "falls within the broad definition of 'security deposit' as it was any deposit of money or property, *how-*

*ever denominated*, which is furnished by a tenant to a landlord to secure the performance of *any* part of the rental agreement under RSMo. § 535.300.7." (Doc. #22-1 ¶ 16.) This is incorrect. (*See* Doc. #24 at 5-6.) Moreover, this allegation merely parrots the statute and is the epitome of a legal conclusion and formulaic recitation that will not support of plausible cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a plausible claim requires more than "labels and conclusions" or "formulaic recitation of the elements of a cause of action"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Nothing in the proposed amended complaint changes the fact that Plaintiff and Landmark never entered into a rental agreement, which precludes the $450 payment from qualifying as a "security deposit" for purposes of Section 535.300. The claim still fails as a matter of law and leave to amend regarding Count I should therefore be denied as futile.

### <u>Counts II and III – Violations of the MMPA Related to $450 Payment</u>

Counts II and III of the proposed amended complaint continue to allege violations of the MMPA predicated on an underlying violation of the Missouri security deposit statute. (Doc. #22-1 ¶¶ 47, 61-63.) In fact, the allegations in Count III have not changed from the original pleading and the connection to the Missouri security deposit statute in Count II is even more pronounced in the proposed amended complaint, which adds allegations tying both liability *and damages* to an underlying violation of Section 535.300. (*Id.* ¶¶ 51-53.)

The claims in the proposed amended complaint are caught in the same double-bind as the original claims. If Landmark is correct that the Missouri security deposit statute does not apply to the $450 payment, there is no underlying violation of that statute to support the MMPA claims in Counts II and III, which then also fail as a matter of law. (*See* Doc. #14 at 10; Doc. #24 at 7.) But even if the Missouri security deposit statute applies to the $450 payment, the associated MMPA

claims in Counts II and III still fail as a matter of law because the Missouri security deposit statute provides the exclusive remedy for wrongful withholding of a security deposit. (*See* Doc. #14 at 10-11; Doc. #24 at 7-8.) Nothing in the proposed amended complaint resolves this problem for Plaintiff, which is fatal to her claims and supports denial of the motion for leave to amend based on futility.

Like Plaintiff's original claims, the claims in Counts II and III of the proposed amended complaint also fail as a matter of law because Plaintiff knowingly and voluntarily agreed to the clear and unambiguous terms of the application form she initialed and signed, including the $450 payment. (*See* Doc. #14 at 11-13; Doc. #24 at 8-9.) As in *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220 (Mo. 2013), Plaintiff's MMPA claims fail because "she is held to the terms of the contract she signed" and has not suggested fraud or lack of capacity in her execution of the application form. *Id.* at 228-29. Plaintiff has not alleged that she was deceived into executing the application form[2] and has not even challenged the basis on which Landmark initially retained the security deposit—i.e., that Plaintiff falsified her application, which is identified in the application form as a basis for forfeiting the security deposit. (*See* Doc. #14 at 12-13 & Exs. 1-B and 1-C to Doc. #14-1.) Nothing in the proposed amended complaint changes the fact that Plaintiff made a deliberate decision to move forward with the transaction on the terms outlined in the application form, which negates her MMPA claims and renders futile her motion to amend.

---

[2] Plaintiff continues to allege in the proposed amended complaint that the enforceability and legality of the $450 payment were misrepresented to her *after the fact*. (Doc. #22-1 ¶¶ 59, 61-63.) This is incorrect as a matter of law because the $450 payment is not subject to the Missouri security deposit statute. In any event, as argued in Landmark's motion for judgment on the pleadings (Doc. #14 at 13 n.5), these allegations do not state a viable cause of action under the MMPA because they do not change the fact that Plaintiff knowingly made the deal in the first place. *Chochorowski*, 404 S.W.3d at 230 ("The employee's statement could not have modified the agreement or misled Ms. Chochorowski, however, because the statement was made after the transaction was completed except for her payment of the rental fees."); *see also Wivell v. Wells Fargo Bank, N.A.*, No. 6:12-CV-3457-DGK, 2015 WL 7259836, at *6 (W.D. Mo. Nov. 17, 2015) ("Missouri case law, exemplified by *Chochorowski*, dictates that the oral communications here do not reach the level of unlawful trade practices."). Nothing in Counts II and III can overcome the bar to recovery created by *Chochorowski*.

## Count IV – Violation of the MMPA Based on Unconscionable Administration Fee

Count IV continues to challenge Landmark's $150 administration fee,[3] but instead of alleging that the fee is "unconscionable" as she did in her original pleading, Plaintiff now alleges that the fee is "excessive and unreasonable." This is a distinction without a difference—the operative regulation cited in the proposed amended complaint pertains to "unconscionable practices" (*see* Doc. #22-1 ¶¶ 82-83) and there is no authority for the proposition that "excessive and unreasonable" fees somehow separately violate the MMPA without showing that those fees are in fact unconscionable.[4] Plaintiff tacitly acknowledges her original allegations were insufficient to state a claim for unconscionability, and attempts to sidestep this by dressing up her claim in different terminology. This claim still fails for the reasons outlined in Landmark's motion for judgment on the pleadings—most notably because Plaintiff does not allege any procedural unconscionability in her execution of the application form. (*See* Doc. #14 at 14-15; Doc. #24 at 10.)

Nothing in the proposed amended complaint plausibly alleges any of the fees charged by Landmark are substantively or procedurally unconscionable. Landmark is therefore entitled to judgment on the pleadings on Count IV and the Court should deny the motion for leave to amend that claim as futile.

---

[3] Plaintiff mentions three fees in Count IV but focuses exclusively on the $150 administration fee as the fee that is supposedly excessive and unreasonable. (Doc. #22-1 ¶¶ 85-87.) She alleges the $150 administration fee is unlawfully high "especially in light of" the other fees (*id.*), but Plaintiff does not allege that either of the other fees—the $40 application fee and $450 "security deposit"—are independently excessive, unreasonable, or otherwise actionable apart from the $150 administration fee.

[4] Paragraphs 82 and 83 of the proposed amended complaint cite Mo. Code Regs. Ann. tit. 15, § 60-8.080, which is titled "unconscionable practices" and states: "(1) It is an unfair practice for any person in connection with the sale of merchandise to engage in any unconscionable act or practice, or to use any unconscionable contract or contract term. (2) It is unconscionable to take advantage of an unequal bargaining position and obtain a contract or term which results in a gross disparity of values exchanged." Nothing in the Missouri Attorney General's regulations dealing with unfair or fraudulent practices, *see* Mo. Code Regs. Ann. tit. 15, § 60-8.010 *et seq.* and Mo. Code Regs. Ann. tit. 15, § 60-9.010 *et seq.*, indicates that "unreasonable" fees violate the MMPA and the only reference in these regulations to "excessive" prices deals with the unrelated scenario of price gouging in the event of a disaster, Mo. Code Regs. Ann. tit. 15, § 60-8.030(1)(B)-(C).

**Conclusion**

Plaintiff filed a motion for leave to amend with the intent of mooting Landmark's pending dispositive motion, but made no effort in her initial filing to explain how the new and revised allegations of the proposed amended complaint cure the deficiencies identified in Landmark's motion. This is reason enough for the Court to deny the motion for leave to amend and proceed with dismissing the case. *Plymouth Cnty., Iowa v. Merscope, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) ("[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim."). And a reply brief is "too late to properly raise a new issue before the district court." *Fish v. United States*, 748 Fed. App'x 91, 92 n.2 (8th Cir. 2019).

The Court should not permit sandbagging and should disregard any new arguments made by Plaintiff in reply about how the proposed amended complaint cures the deficiencies outlined in Landmark's motion to dismiss and/or for judgment on the pleadings. The record clearly shows that the proposed amended complaint still fails as a matter of law for numerous reasons. The motion for leave to amend should therefore be denied as futile.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_
      Nicholas J. Porto     MO #56938
      1600 Baltimore, Suite 200A
      Kansas City, Missouri 64108
      Telephone:  816.463.2311
      Facsimile:  816.463.9567
      nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_
      Stephen J. Moore     MO #59080
      1968 Shawnee Mission Pkwy, Suite 100
      Mission Woods, Kansas 66205
      Telephone:  816.471.0909
      Facsimile:  816.471.3888
      sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 4th day of September, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

          _/s/ Stephen J. Moore_
          Attorney for Defendant

10

# EXHIBIT A

---

**Credit Card Account Statement
Produced by Plaintiff in Discovery**

 **AppliedBank.**

**RHONDA K CHEATEM**                                     Account Number: █████████████

## ACCOUNT SUMMARY

| | |
|---|---|
| Credit Limit | |
| Credit Available | |
| Statement Closing Date | December 12, 2019 |
| Days in Billing Cycle | 30 |
| Previous Balance | |
| − Payments & Credits | |
| + Purchases & Other Charges | |
| + Cash Advances | $0.00 |
| + FEE CHARGED | |
| + INTEREST CHARGED | |
| = New Balance | |

Questions?

| | |
|---|---|
| Call Customer Service | 1-800-947-1090 |
| Lost or Stolen Credit Card | 1-800-556-5678 |

Or Write:
PO BOX 17125 WILMINGTON, DE 19850-7125

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | |
| Minimum Payment Due | |
| Payment Due Date | January 09, 2020 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $38.

**Minimum Payment Warning:** Making only the minimum payment will increase the amount of interest you pay and the time it takes to repay your balance. Any additional amounts added to your account balance during the billing period should be included with your minimum payment amount to meet the payoff schedule(s) listed below.

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 7 years | |
| | 3 years | (Savings = $    ) |

If you would like information about credit counseling services, call 1-877-316-6322

## TRANSACTIONS

| Tran Date | Post Date | Reference Number | Transaction Description | Amount |
|---|---|---|---|---|
| 11/13 | 11/13 | | | |
| 11/13 | 11/13 | | | |
| 11/13 | 11/13 | | | |
| 11/13 | 11/13 | | | |
| 11/17 | 11/17 | | | |
| 11/17 | 11/17 | | | |
| 11/18 | 11/18 | | | |

Transactions continued on next page

Notice: SEE REVERSE SIDE FOR MORE IMPORTANT INFORMATION

5584  8802 LLH  001  7  12  191212 0   PAGE 1 of 2    1 8 3641 3178 CTS2          7168

Please detach bottom portion and submit with payment using enclosed envelope

 **AppliedBank.**  BANKCARD CENTER
PO BOX 17125
WILMINGTON DE 19850-7125

### PAYMENT INFORMATION

| | |
|---|---|
| Account Number: | █████████████ |
| Payment Due Date | January 09, 2020 |
| New Balance | |
| Minimum Payment Due | |
| Past Due Amount | $0.00 |
| Amount Enclosed: | $ |

☐ PLEASE CHECK IF THERE IS A CHANGE OF ADDRESS AND PROVIDE THE INFORMATION ON THE BACK

FOR PROMPT CREDIT, MAIL PAYMENT TO LOCATION SHOWN BELOW. PAYMENT IN ANY OTHER WAY MAY DELAY CREDITING YOUR ACCOUNT UP TO 5 DAYS

RHONDA K CHEATEM                    7168
                                   0312

Make Check Payable to:

APPLIED BANK
PO BOX 70165
PHILADELPHIA PA 19176-0165

4227093172925806000114000024539L9

## TRANSACTIONS (continued)

| Tran Date | Post Date | Reference Number | Transaction Description | Amount |
|-----------|-----------|------------------|-------------------------|--------|
| 11/19 | 11/19 | | | |
| 11/19 | 11/19 | | | |
| 11/19 | 11/19 | | | |
| 11/20 | 11/20 | F364100AR000Q5888 | ADJUSTMENT-PURCHASES | 450.00- |
| | | | Q5888 | |
| 11/20 | 11/20 | 2407105A59KG3LHET | PROPERTY PAYMENT RENT  805-6992040  CA | 450.00 |
| 12/02 | 12/02 | | | |
| 12/05 | 12/05 | | | |
| 12/06 | 12/06 | | | |
| 12/06 | 12/06 | | | |
| 12/09 | 12/09 | | | |
| | | | **FEES** | |
| 12/12 | 12/12 | | MONTHLY MAINTENANCE FEE    WILM DE | |
| | | | **TOTAL FEES FOR THIS PERIOD** | |
| | | | **INTEREST CHARGED** | |
| 12/12 | 12/12 | | Interest Charge on Purchases | |
| 12/12 | 12/12 | | Interest Charge on Cash Advances | |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | |

| Totals 2019 Year-to-Date |
|--------------------------|
| Total fees charged in 2019 |
| Total interest charged in 2019 |

## INTEREST CHARGE CALCULATION

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | ANNUAL PERCENTAGE RATE (APR) | Balance Subject to Interest rate | Days in Billing Cycle | Interest Charge |
|-----------------|------------------------------|----------------------------------|-----------------------|-----------------|
| Purchases | 29.99% (f) | | 30 | |
| Cash Advances | 29.99% (f) | $0.00 | 30 | $0.00 |

(v) = variable (f) = fixed

## IMPORTANT MESSAGES

NEVER MISS A PAYMENT!
ENROLL IN OUR AUTOMATIC PAYMENT PROGRAM TODAY!
IT'S SIMPLE AND CAN SAVE YOU TIME AND MONEY.
ACT NOW - VISIT AUTOPAY.APPLIEDBANK.COM

FREE, REAL-TIME ACCOUNT INFORMATION - ONLINE - ANYTIME.
VIEW PAYMENT OPTIONS AND MORE!
VISIT WWW.APPLIEDBANK.COM
---------------OR----------------
CALL TOLL FREE 1-800-225-5030 FOR 24 HOUR ACCOUNT INFORMATION
THERE IS A $0.50 AUTOMATED  INFO FEE PER ACCOUNT INQUIRY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 20-CV-00381 BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

## CERTIFICATE OF SERVICE OF DISCOVERY RESPONSES

COMES NOW Defendant Landmark Realty of Missouri, LLC, by and through its counsel of record, and states that on September 15, 2020, it served its Answers to Plaintiff's Interrogatories, Responses to Plaintiff's First Request for Production of Documents, and Responses to Plaintiff's Requests for Admission.

Respectfully submitted,

**THE PORTO LAW FIRM**

By:   /s/ Nicholas J. Porto
        Nicholas J. Porto        MO #56938
        1600 Baltimore, Suite 200A
        Kansas City, Missouri 64108
        Telephone:  816.463.2311
        Facsimile:   816.463.9567
        nporto@portloaw.com

      -and-

**SHANK & MOORE, LLC**

By:   /s/ Stephen J. Moore
        Stephen J. Moore        MO #59080
        1968 Shawnee Mission Pkwy, Suite 100
        Mission Woods, Kansas 66205
        Telephone:  816.471.0909
        Facsimile:   816.471.3888
        sjm@shankmoore.com
        *Attorneys for Defendant Landmark Realty of Missouri, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was served this 15th day of September, 2020 via United States mail and electronic mail to the following counsel of record:

      **Counsel for Plaintiff**
      A.J. Stecklein
      Stecklein & Rapp, Chartered
      748 Ann Avenue
      Kansas City, Kansas 66101
      aj@kcconsumerlawyer.com

      Gina Chiala
      Heartland Center for Jobs and Freedom
      4047 Central Street
      Kansas City, Missouri 64111
      ginachiala@jobsandfreedom.org

             *Nicholas J. Porto*
             Attorney for Defendant

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **RHONDA K. CHEATEM**, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | |
| vs. | Case No. 4:20-cv-00381-BP |
| **LANDMARK REALTY OF MISSOURI, LLC,** | |
| Defendant. | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER**
**MOTION TO AMEND COMPLAINT**

Plaintiff Rhonda Cheatem ("Ms. Cheatem" or "Plaintiff"), by undersigned counsel, respectfully submits this reply in support of her motion to amend her class action complaint as follows.

**REPLY TO INTRODUCTION**

Defendant opposes Plaintiff's motion to amend exclusively on the basis of futility and resubmits the same arguments that were raised in its motion to dismiss. In Plaintiff's motion to amend Plaintiff explained that it makes sense for the Court to take up the motion to dismiss and the motion to amend the complaint at the same time. It is clear from Defendant's suggestions in opposition that this is true because they raised the same arguments in their opposition to this motion, that they raised in the motion to dismiss. The legal questions raised in both these motions, concerning whether Plaintiff has standing after she received a refund from a third party credit card dispute process and whether the Missouri Security Deposit Statute is the exclusive remedy for Missouri tenants are integral to the resolution of both motions.

1

**REPLY TO ARGUMENT**

Defendant's criticism that Plaintiff's proposed amended complaint fails to address the issues raised in Defendant's motion for judgment on the pleadings ignores that some of the threshold issues in this case are those of first impression. For example, Plaintiff asserts that the $450.00 dollar security deposit (so-named by Defendant) is a 'security deposit' for purposes of the Missouri Security Deposit Statute. Defendant argues, absent citation to any authority, that the Parties need to have entered into a landlord tenant agreement before what they called a 'security deposit' actually becomes one for purposes of Plaintiff's Counts I and II. Nothing in Plaintiff's amended complaint resolves this issue because this is a matter of statutory interpretation and must be resolved by the Court.

Also, Defendant argues, both here and in their motion for judgment on the pleadings, that the Missouri Security Deposit Statute is the exclusive remedy for the violation complained of in Plaintiff's proposed amended complaint. Defendant cites *Prop. Exch. & Sales, Inc. v. King*, 863 S.W.2d 12, 15 (Mo. App. 1993), but for the reasons outlined in Plaintiff's suggestions in opposition to Defendant's motion for judgment on the pleadings this decision should not be followed.

**I. Plaintiff has standing.**

Defendant again raises the issue of standing. For the reasons outlined in Plaintiff's suggestions in opposition to Defendant's motion to dismiss, Plaintiff has standing. Defendant's argument is again premised on the idea that Plaintiff was not harmed because she received what Defendant construes as a 'full refund' of the money that was wrongfully withheld from her. Defendant's position is essentially concluding that Plaintiff being deprived of her money for a period of time, for a reason contrary to Missouri law, does not confer standing to sue when she, through her own efforts and with the aid of a third party, receives her money back. What Defendant

2

misses is that the process of withholding security deposits by unilaterally declaring them nonrefundable for reasons not authorized by the statute, and forcing Plaintiff to involve her credit card issuer as a way to mitigate her damages and depriving her of the immediate use and the time value of that money, has given her a personal stake in the outcome of the litigation.

> '[T]he gist of the question of standing' is whether the petitioners have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'

*Massachusetts v. EPA*, 549 U.S. 497, 517 (2007); *see also Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1556 (2016) (Ginsburg, J., dissenting) ("The basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy. . .'").

The actual violation of her substantive rights gives rise to a claim for violations of both the Security Deposit Statue and the MMPA. The former grants her a right to recover statutory damages in the amount of not less than twice the amount wrongfully withheld from Plaintiff. This alone establishes that Plaintiff has standing. *See Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620-21 (8th Cir. 2015) ("plaintiffs who fail to allege actual damages nonetheless satisfy both the injury in fact and redressability requirements of Article III standing by suing for statutory damages.").

Defendant has adopted a "who cares" attitude as it relates to their wrongfully withholding Plaintiff's security deposit based on the fact that Plaintiff *eventually* (and without Defendant's assistance) got her money back. But this position ignores that Plaintiff was forced to involve her credit card issuer who, upon *their own review*, looked at Defendant's practice and determined that Plaintiff was entitled to a credit for her money—a decision it came to in mid-January 2020. Defendant misrepresents the *temporary* credit to plaintiff's account by the credit card company as *refund* by the landlord. The temporary credit included a warning from the credit card company

reminding Plaintiff that if the investigation was "unsuccessful, the item will remain your responsibility.[1]" Defendant *never returned* the security deposit and the credit card company release of the "temporary credit" was more than 30 days after it was notified. "If the *landlord* wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant *shall recover* as damages twice the amount wrongfully withheld. Mo. Rev. Stat. 535.300.6 During that time Plaintiff was robbed of the immediately use and the time value of her money, which by itself is sufficient to establish standing. *See e.g.*, *Ensminger v. Credit Law Center, LLC*, No. 19-cv-2417-JWL, 2019 WL 4341215, at *3 (D. Kan. Sept. 12, 2019) ("The Court agrees with these courts that the loss of the time value of money – even a small amount – constitutes a tangible financial injury that satisfies the requirement of an injury in fact for purposes of standing."). Simply getting her money back, as Defendant would have the Court believe, does not deprive Plaintiff of standing as even an "identifiable trifle" is sufficient. *See United States v. Students Challenging Regulatory Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). Plaintiff has alleged more than a mere 'identifiable trifle' and therefore has standing to pursue these claims.

## II. The Proposed Amended Class Action Complaint is not futile.

"A district court should freely give leave to a party to amend its pleadings when justice so requires, however, it may properly deny a party's motion to amend its complaint when such amendment would unduly prejudice the non-moving party or would be futile." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir. 2008) (internal quotation marks removed). "[W]hen the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Munro v. Lucy Activewear, Inc.*, 899

---

[1] Letter dated December 10, 2019 Bankcard Service Center, attached hereto as <u>Exhibit A.</u>

F.3d 858, 589 (8th Cir. 2018).

      **a. Plaintiff has adequately pled a violation of the Missouri Security Deposit Statute because Defendant has conceded that the $450 fee was a security deposit and was retained for a reason not authorized by the statute.**

Defendant again argues that the $450.00 "security deposit," which is the language used in Defendant's application and the language used in their own documentation for withholding this security deposit, is not actually a security deposit as defined in the Missouri Security Deposit Statute. The statute itself defines a security deposit as:

> any deposit of money or property, however denominated, which is furnished by a tenant to a landlord to secure the performance of any part of the rental agreement, including damages to the dwelling unit. This term does not include any money or property denominated as a deposit for a pet on the premises.

R.S.Mo. § 535.300.8. Defendant again argues that this language requires a "rental agreement" before any money deposited with Defendant is considered a rental agreement. Importantly, Defendant's argument is based entirely on the statutory text and ignores Defendant's own conduct and representations regarding this deposit.

As to Defendant's textual argument, Defendant concludes that the statutory language requires a rental agreement but the salient statutory language that a deposit is a security deposit if it is made to "to secure the performance of any part of the rental agreement." R.S.Mo. § 535.300.8. It cannot be disputed that Plaintiff was required to make this deposit as part of her application, which means that her deposit secures her ability to even enter into a rental agreement. In other words, it's still a "part" of the rental agreement.

Simply, Defendant considered the $450 fee a security deposit and treated it as a security deposit. Plaintiff has pled that she applied for an apartment at one of Defendant's complexes and that she paid a security deposit to Defendant. ECF No. 22-1 ¶ 10–12; 17. She has further pled that Defendant treated this deposit as a security deposit. *See id.* ¶ 17–18; 20–22. She has finally pled

that Defendant, in its Move Out Statement, represented to her that she had paid a security deposit and that it was being withheld from her. *See id.* ¶ 20–22; 25.

Defendant treated this fee as a security deposit, named it a security deposit in communications with Plaintiff, and represented to Plaintiff that it was withholding her "security deposit" for a reason not authorized by the statute. So it's a security deposit. Any assertion that the fee was *not* a security deposit is simply lawyers' argument divorced from the reality of Defendant's conduct and representations.

      **b. Plaintiff has adequately pled a violation of the Merchandising Practices Act in that (1) the Security Deposit Statute does not preclude MMPA liability and (2) knowingly and voluntarily entering into an *unfair* agreement does not render that agreement immune to the MMPA.**

Defendant argues that Plaintiff's Counts II and III, both for violations of the Missouri Merchandising Practices Act, fail for the same reasons outlined in its motion to dismiss. First, only Count II rises or falls with Count I, the security deposit statute claim. The Missouri Attorney General's rules are clear that it is an unfair practice is "any practice which . . . [o]ffends any public policy as it has been established by . . . statutes or common law of this state." 15 C.S.R. § 60-8.020(1)(A)(1). Defendants are partly correct that Count II is premised on Defendant's violation of the Security Deposit Statute (Count III is not, as discussed below). The AG Rules are clear that any practice which offends the public policy of Missouri statutes is an unfair practice equally offensive to the MMPA. Plaintiff can therefore bring both claims.

This is because, the issue of whether the Security Deposit Statute presents the exclusive remedy for a landlord's wrongfully retaining a security deposit has not been cleanly presented to the Missouri Supreme Court. This Court must then attempt to predict how the Missouri Supreme Court would rule. See *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) ("When there is no state supreme court case directly on point, our role is to predict how the state supreme

court would rule if faced with the [same issue] before us. . . . In other words, we must make an '*Erie*-educated guess' when the law of the forum state is not crystal clear."). For the reasons outlined in Plaintiff's suggestions in opposition to Defendant's motion to dismiss, this issue is not crystal clear and the Missouri appellate courts did not attempt to reconcile these two statutes as they should have. *See Dover v. Stanley*, 652 S.W.2d 258, 263 (Mo. Ct. App. W.D. 1983); *see e.g., Detling v. Edelbrock*, 671 S.W.2d 265 (Mo. 1984) (ruling that the statutory remedies for housing code violations did not deprive tenants of other statutory and common law remedies addressing issues of habitability) (abrogated on other grounds).

Second, as outlined above, Defendant cannot argue that it did not treat the security deposit as a security deposit. Defendant's own representations to Plaintiff confirm that they treated it as a security deposit and even intended to withhold it for a reason that was not authorized by the Missouri Security Deposit Statute. This separate representation forms a separate claim under the Missouri Merchandising Practices Act. Separating these claims, which Defendant lumps together into one pile, is important because unlike the Missouri Security Deposit Statute, the MMPA actually prohibits misrepresentations in these types of consumer-business relationships.

Third, Defendant's reliance on *Chochorowski* is again misplaced. Defendant blames the victim and essentially argues that because Plaintiff voluntarily agreed to pay the deposit that she was bound by the contracts unfair terms. A contract and process that was designed to deceive, to have her believe the deposit was as it was represented to be -a security deposit—kept by the landlord once approved.  Moreover, this argument sidesteps that the misrepresentations complaint of in Count III include those which occurred after the application was made and the deposit furnished to Defendant. Defendant's only argument against this point is reduced to a footnote which again asserts that the $450 dollar deposit is not a security deposit. This argument also fails.

Assuming, arguendo, that the $450 deposit is not, unlike it was named and treated by Defendant, a "security deposit" then Defendant had absolutely no reason under either the statute or its own application to keep it. Nonetheless it did and Defendant's misrepresentations about why they erroneously thought they could withhold it are actionable.

> ### c. Plaintiff has adequately pled a violation of the Merchandising Practices Act based on Defendant's charging and collecting excessive and unreasonable fees in relation to applications for rental housing.

Defendant asserts that the changes between the prior unconscionable language and the amended excessive and unreasonable language is a distinction without a difference but that is not true. An unfair practice, which is what the MMPA prohibits, is not the same thing as an unconscionable practice.

The original complaint named the improper standard for this claim. As pointed out in the briefing on Defendant's motion to dismiss, as originally drafted the claim implicated issues involving procedural unconscionability that generally are not considered essentially elements for a MMPA claim. Put differently, the MMPA claim need not meet the standard of an 'unconscionable practice.'

The MMPA speaks in terms of 'unfair' or 'deceptive' practices, not just unconscionable ones. "[The MMPA] does not define deceptive practices; it simply declares unfair or deceptive practices unlawful. This was done to give broad scope to the meaning of the statute and to prevent evasion because of overly meticulous definitions." *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 645 (Mo. App. E.D. 1988); *Conway v. CitiMortgage,* 438 S.W.3d 410, 416 (Mo. 2014) ("The Act is "unrestricted, all-encompassing and exceedingly broad . . . covering every practice imaginable and every unfairness to whatever degree") (internal citation omitted)..This is important because the amended language states the correct standard and these fees are excessive

relative to the value that derived from them. It should not be forgotten that Plaintiff paid $640 just to be denied an apartment.

## CONCLUSION

Defendant again asserts that Plaintiff has not made an effort to "cure the deficiencies identified in Landmark's motion" but what Defendant concludes are deficiencies are actually not. As set forth in Plaintiff's suggestions in opposition to Defendant's motion for judgment on the pleadings, and as set explained again above, Plaintiff has plausibly pled violations of the Missouri Security Deposit Statute and the Missouri Merchandising Practices Act. Plaintiff should be allowed to file her proposed amended complaint.

WHEREFORE, Plaintiff prays the Court grant this motion and issues an Order authorizing Plaintiff to file the Amended Complaint.

*Respectfully submitted*,

By: /s/ Matthew S. Robertson
A.J. Stecklein          #46663
Michael Rapp          #66688
Matthew Robertson    #70442
STECKLEIN & RAPP CHARTERED
748 Ann Avenue, Suite 101
Kansas City, KS 66101
Telephone:     (913) 371-0727
Facsimile:      (913) 371-0727
Email:  aj@kcconsumerlawyer.com
          mr@kcconsumerlawyer.com
          msr@kcconsumerlawyer.com

-and-

Gina Chiala            #59112
Amy Sweeny Davis    #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092

9

Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
        amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on September 18, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

        /s/ Matthew S. Robertson
        Attorney for Plaintiff

BANKCARD SERVICE CENTER
P.O. BOX 15809
WILMINGTON, DE 19850-5809
WWW.APPLIEDBANK.COM

December 10, 2019

RHONDA K CHEATEM ███████████

███████████████████████

███████████████████████

RE: Account Number Ending in ████

Dear Rhonda K Cheatem

While we attempt to resolve your dispute, a **temporary** credit for $450.00 from property payment rent will appear on your next statement.

The information regarding the disputed charge has been submitted to the merchant's bank. Under Regulations governing credit transactions, the merchant has 45 days to accept or reject our action. Please do not discard your records regarding this charge, as they might prove helpful to you in the future.

Under very specific guidelines, we assure you that we are doing everything possible to obtain a permanent credit for your account. However, if this effort is not successful, the item will remain your responsibility.

Sincerely,

Deighe Wigington
1-866-353-5089 Ext 2002288
Dispute Resolution Services

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

|  |  |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

## DEFENDANT'S UNOPPOSED MOTION FOR LEAVE TO FILE SUR-REPLY SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT WITH SUGGESTIONS IN SUPPORT

Defendant Landmark Realty of Missouri, LLC ("Landmark") hereby moves the Court for leave to file sur-reply suggestions in opposition to Plaintiff's Motion for Leave to File Amended Complaint (Doc. #22). In support of this unopposed motion, Landmark states as follows:

1.      On July 20, 2020, Landmark filed its Motion to Dismiss and/or for Judgment on the Pleadings. (Doc. ##13-14.) The motion argues in part that Counts I, II and III of the Petition (Doc. #1-1) should be dismissed for lack of standing because the $450 payment at issue on those claims was fully refunded to Plaintiff and she has therefore suffered no injury in fact. (*See* Doc. #14 at 4-6; Doc. #24 at 1-4.) The motion is fully briefed.

2.      In an attempt to moot that dispositive motion, Plaintiff filed a Motion for Leave to File Amended Complaint. (Doc. #22.) Landmark opposes the motion for leave to amend as futile and, in particular, argues that Plaintiff still lacks standing to assert Counts I, II and III in the proposed Amended Complaint (Doc. #22-1) because she has still no injury in fact with regard to the refunded $450 payment at issue on those claims. (*See* Doc. #26 at 2-4.)

3. In Plaintiff's reply suggestions in support of the motion for leave to amend, she argues for the first time that she has standing to bring the claims in Counts I, II and III regarding the $450 payment because she received only a "temporary credit" of that payment and lost the time value of her money. (*See* Doc. #28 at 2-4.) This argument was not made in Plaintiff's response to Landmark's motion to dismiss (*see* Doc. #21 at 6-8), nor was it made in her opening suggestions in support of her motion for leave to amend (*see* Doc. #23 at 1-4) even though she should have anticipated Landmark would oppose that motion as futile based on lack of standing just as it had previously argued in its motion to dismiss.

4. The Court can disregard the new standing argument in Plaintiff's reply. *See Fish v. United States*, 748 Fed. App'x 91, 92 n.2 (8th Cir. 2019) (noting that a reply brief is "too late to properly raise a new issue before the district court"); *Plymouth Cnty., Iowa v. Merscope, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) ("[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim."). If the new argument is not disregarded, Landmark requests that it be given leave to file sur-reply suggestions addressing the new argument. *See, e.g., Int'l Envtl. Mgmt. v. United Corp. Servs., Inc.*, No. 2:12-cv-4305-FJG, 2016 WL 1298144, at *3 (W.D. Mo. Mar. 31, 2016) (granting leave to file sur-reply "in the interest of full consideration of the issues"); *Colbert v. Kemma*, No. 07-6051-CV-SJ-FJG, 2010 WL 3516212, at *1 (W.D. Mo. Aug. 31, 2010) (granting leave to file sur-reply when "defendants' reply suggestions raised new arguments and new authorities that were not raised in their opening suggestions at all").

5. The proposed sur-reply is attached as **Exhibit 1**. It is limited to the new standing argument raised in Plaintiff's reply and is short and direct, addressing the issue in just three (3) pages. The Court should allow the sur-reply "in the interest of full consideration of the issues." *Int'l Envtl. Mgmt.*, 2016 WL 1298144, at *3.

6. Counsel for Plaintiff has indicated that this motion is unopposed.

WHEREFORE, Defendant Landmark Realty of Missouri, LLC respectfully requests that the Court grant this Motion for Leave and enter an order allowing it to file the proposed sur-reply suggestions attached as **Exhibit 1**.

Respectfully submitted,

**THE PORTO LAW FIRM**

By:   /s/ Nicholas J. Porto
        Nicholas J. Porto      MO #56938
        1600 Baltimore, Suite 200A
        Kansas City, Missouri 64108
        Telephone:  816.463.2311
        Facsimile:  816.463.9567
        nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By:   /s/ Stephen J. Moore
        Stephen J. Moore      MO #59080
        1968 Shawnee Mission Pkwy, Suite 100
        Mission Woods, Kansas 66205
        Telephone:  816.471.0909
        Facsimile:  816.471.3888
        sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the foregoing document was filed this 23rd day of September, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

_/s/ Stephen J. Moore_____
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

**SUR-REPLY SUGGESTIONS IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Defendant Landmark Realty of Missouri, LLC ("Landmark") submits the following sur-reply suggestions in opposition to Plaintiff's Motion for Leave to File Amended Complaint (Doc. #22), filed August 27, 2020.

Landmark's suggestions in support of its Motion to Dismiss and/or Motion for Judgment on the Pleadings argue that Counts I, II and III of the original Petition should be dismissed for lack of standing because the $450 payment at issue in those claims was fully refunded to Plaintiff and she therefore has suffered no injury in fact. (*See* Doc. #14 at 4-6.) This position is reinforced in the reply suggestions in support of that Motion. (*See* Doc. #24 at 1-4.)

Plaintiff seeks to moot Landmark's dispositive motion by attempting to file an Amended Complaint (Doc. #22), but Counts I, II and III of the proposed Amended Complaint (Doc. #22-1) still fail for lack of standing because the $450 payment at issue in those claims was quickly and fully refunded to Plaintiff (*see* Doc. #26 at 2-4).

In her reply suggestions in support of the Motion for Leave to File Amended Complaint, Plaintiff argues **for the first time** that she has standing to bring the claims in Counts I, II and III

regarding the $450 payment because she received only a "temporary credit" of that payment and lost the time value of her money. (Doc. #28 at 2-4.) This argument was not made in Plaintiff's response to Landmark's Motion to Dismiss (*see* Doc. #21 at 6-8), nor was it made in her opening suggestions in support of her Motion to Amend (*see* Doc. #23 at 1-4) even though she should have anticipated Landmark would oppose the Motion as futile based on lack of standing just as it had previously argued in its Motion to Dismiss.

The argument should be rejected as new and untimely in the reply suggestions, especially because Plaintiff made no effort whatsoever in her opening suggestions to explain how the new and revised allegations of the proposed Amended Complaint would cure the lack of standing that has been argued by Landmark since it filed its Motion to Dismiss. *Fish v. United States*, 748 Fed. App'x 91, 92 n.2 (8th Cir. 2019) (noting that a reply brief is "too late to properly raise a new issue before the district court"); *Plymouth Cnty., Iowa v. Merscope, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) ("[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim.").

In any event, Plaintiff's new argument is fundamentally incorrect. Under the billing error regulations of the Truth in Lending Act, Plaintiff was immediately relieved of any obligation to pay the $450 charge when she disputed that charge with her credit card company. *See* 12 C.F.R. § 1026.13(d) ("Until a billing error is resolved . . . [t]he consumer need not pay (and the creditor may not try to collect) any portion of any required payment that the consumer believes is related to the disputed amount (including related finance or other charges).").[1] This means she was not injured by the $450 charge because the dispute eliminated any out of pocket loss.

---

[1] The same is true if the $450 payment was characterized as "unauthorized charge" rather than a "billing error." *See* 12 C.F.R. § 1026.12(c)(1) ("When a person who honors a credit card fails to resolve satisfactorily a dispute as to property or services purchased with the credit card in a consumer credit transaction, . . . [t]he cardholder may withhold payment up to the amount of credit outstanding for the property or services that gave rise to the dispute and any finance or other charges imposed on that amount.").

The December 10, 2019 letter from Plaintiff's credit card company attached to her reply brief (*see* Doc. #28-1) confirms she was given a full credit of the $450 payment shortly after the charge was first applied to her account on November 20, 2019. This is also reflected on her credit card account statement. (*See* Doc. ##14-2, 26-1.) The fact that this credit was "temporary" is immaterial because the uncontested dispute was resolved in Plaintiff's favor and the $450 charge was never reinstated. There was no "release" of the temporary credit at a later time, as Plaintiff asserts. The "temporary" credit was immediately applied for the full amount and never undone. Thus, as indicated in the regulations, Plaintiff was not obligated to make the $450 payment and was never at a loss of money that might constitute an injury in fact.

This also debunks the notion Plaintiff lost any time value of money related to the charge. That is not alleged as a theory of damages in either the original Petition or the proposed Amended Complaint, but even it was it would not create an injury in fact for standing purposes because this was a *credit* transaction and the $450 charge was reversed before any payment became due. Simply put, there is no injury for the lost time value of money in this case because Plaintiff never paid any money out of pocket to Landmark, her credit card company or otherwise. *Cf. Ensminger v. Credit Law Ctr., LLC*, No. 19-2147-JWL, 2019 WL 4341215, at *2 (D. Kan. Sept. 12, 2019) ("[T]he loss of the time value of *money that was paid before it should have been* does constitute a concrete injury for purposes of standing." (emphasis added)).

Plaintiff's new arguments do not meet her burden to show an injury in fact on the $450 payment, and Counts I, II and III based on that payment still fail for lack of standing. For this reason and others outlined in Landmark's motion papers, the Court should deny the Motion for Leave to File Amended Complaint as futile and grant Landmark's Motion to Dismiss and/or for Judgment on the Pleadings.

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_
       Nicholas J. Porto     MO #56938
       1600 Baltimore, Suite 200A
       Kansas City, Missouri 64108
       Telephone:  816.463.2311
       Facsimile:  816.463.9567
       nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_
       Stephen J. Moore     MO #59080
       1968 Shawnee Mission Pkwy, Suite 100
       Mission Woods, Kansas 66205
       Telephone:  816.471.0909
       Facsimile:  816.471.3888
       sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this ___ day of September, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

              _/s/ Stephen J. Moore_
              Attorney for Defendant

4

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| RHONDA CHEATEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 20-00381-CV-W-BP |
| | ) | |
| LANDMARK REALTY OF MISSOURI, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING PLAINTIFF'S MOTION
## FOR LEAVE TO FILE AND AMENDED COMPLAINT

Plaintiff filed this suit in state court in April 2020, and Defendant removed it to federal court approximately one month later. (Doc. 1.) Generally speaking, Plaintiff alleged that she paid a security deposit in connection with an application to rent an apartment, but that Defendant claimed the security deposit was nonrefundable and refused to return it. She has asserted claims under state law on behalf of herself and a would-be class. (Doc. 1-1.)

Defendant filed a Motion to Dismiss or for Judgment on the Pleadings, asserting that Plaintiff lacks standing, has failed to state a claim, and that the pleadings demonstrate it is entitled to judgment. Plaintiff responded to the motion and Defendant filed Reply Suggestions, so this motion is fully briefed. Meanwhile, Plaintiff also sought leave to file an Amended Complaint. Defendant has opposed Plaintiff's motion, arguing that allowing the Amended Complaint to be filed is futile because it does not resolve the issues Defendant has raised with respect to Plaintiff's original pleading. Plaintiff's motion is also fully briefed.[1]

After considering the parties' arguments Plaintiff's Motion for Leave to File an Amended Complaint, (Doc. 22), is granted. Once the Amended Complaint is filed, Defendant's Motion to

Dismiss will be deemed moot.  Federal Rule of Civil Procedure 15(a)(2) directs that the Court "should freely give leave" to amend the pleadings "when justice so requires."  However, "[a] district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1053, 1065 (8th Cir. 2005) (quotations omitted); *see also Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1068-69 (8th Cir. 2004).  To say that a proposed amendment is futile "means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure . . . ."  *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008).

Defendant opposes the filing of an Amended Complaint by contending that the effort is futile.  But the issue of "futility" is complicated by the fact that in large measure Defendant relies on its Motion to Dismiss, which is directed to the original pleading.  This requires the Court to compare the Amended Complaint to the original Petition and analyze the differences to determine whether (1) the original Petition was deficient and then (2) whether the Amended Complaint remedies those deficiencies.  Given that this case is in its early stages and that Plaintiff's request to file an Amended Complaint is undeniably timely, (*see* Doc. 9, ¶ 4), the Court believes the preferred course is to allow Plaintiff to file the Amended Complaint and allow Defendant (if it wishes to do so) to file a Motion to Dismiss that focuses on the Amended Complaint.

---

[1] Defendant's Motion for Leave to file Surreply, (Doc. 29), is denied.

Accordingly, the Motion for Leave to File an Amended Complaint, (Doc. 22), is **GRANTED** and Plaintiff shall have three business days to electronically file her Amended Complaint.  Once that is done, the Court will deny the Motion to Dismiss as moot.

IT IS SO ORDERED.

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATE: <u>October 5, 2020</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| Rhonda K. Cheatem, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 4:20-cv-00381-BP |
| vs. | |
| Landmark Realty of Missouri, LLC D/B/A Willow Creek D/B/A Willow Creek Apartments D/B/A Landmark Realty | CLASS ACTION PETITION JURY TRIAL DEMAND |
| Serve: Registered Agent, Nicholas Porto 1600 Baltimore Suite Kansas City, Missouri 64108, | |
| Defendant. | |

## AMENDED COMPLAINT - CLASS ACTION

COMES NOW Plaintiff Rhonda K. Cheatem ("Plaintiff"), through counsel, and for Plaintiff's causes of action against Defendant KC Willow Creek LLC d/b/a Willow Creek Apartments ("Defendant") states:

### JURISDICTION AND VENUE

1.     This is a class action under the Missouri Merchandising Practices Act, RSMo § 407.025 and the Missouri Security Deposit Statute.

2.     This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. 1332(a).

3.     Venue in this district is proper because Defendant conducts business in this district and the events upon which this action is based transpired in this district.

1

**PARTIES**

4.　　　Plaintiff is a resident of the State of Missouri.

5.　　　Defendant KC Willow Creek LLC d/b/a Willow Creek Apartments is a Missouri Limited Liability Company.

6.　　　At all times, Defendant rented and managed residential real estate to consumers in the State of Missouri.

7.　　　As of November 2019, Defendant owned and operated an apartment complex at 201 W. 99th Terrace, Kansas City, Missouri  64114 ("leased premises").

**FACTS COMMON TO ALL COUNTS**

8.　　　On  November 20, 2019, Plaintiff applied for an apartment with Defendant.

9.　　　On November 20, 2019, Plaintiff signed an addendum to the application.

10.　　The addendum to the application signed by Plaintiff was a form, with blanks to fill in to add the particulars of the applying tenant.

11.　　The addendum to the application Plaintiff signed with Defendant read, in part: Administration Fee, Application Fee, and Security Deposit This portion of the Application concerns certain fee(s) and/or deposits that may be ***non-refundable***. As such, it is important that you very carefully read and understand each of the following paragraphs. By initialing under each paragraph, you acknowledge that you have read each paragraph and understand that certain fee(s) and/or deposits may be ***non-refundable.***

12.　　Under this provision, Plaintiff paid a non-refundable  Application fee of $40.00

13.　　The application Plaintiff signed with Defendant read, in part:  Nonrefundable Fees: As part of this Application, I understand that I am required to submit a *nonrefundable* administration fee of ONE HUNDRED AND FIFTY DOLLARS AND NO CENTS ($150.00)

(hereinafter the "Administration Fee"). As further part of this Application, I understand that I am also required to submit a *nonrefundable* application fee of either FORTY DOLLARS AND NO CENTS ($40.00) or FIFTY DOLLARS AND NO CENTS ($50.00) per applicant (hereinafter the "Application Fee"), the precise amount which shall solely be determined by Landmark. I understand that both the Administration Fee and Application Fee are *nonrefundable*.

14.     Under this provision, Plaintiff paid a non-refundable Administrative Fee of $150.00.

15.     The application Plaintiff signed with Defendant read, in part: "Security Deposit that May Be Refundable  As part of this Application, I understand that I will be required to submit a Security Deposit equal to (the "Security Deposit"). I also understand that Landmark, in Landmark's sole discretion, may require an additional Security Deposit if the information submitted in this Application does not satisfy Landmark's rental criteria. I understand that the Security Deposit (and any additional Security Deposit) is *refundable* if I cancel, in writing, the Application within 48 hours of the submission of the Application and any fees/deposits required by Landmark. I further understand that the Security Deposit *may be refundable* if Landmark denies my Application because the information I have submitted does not satisfy Landmark's application criteria.  If I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable*. Finally, I understand that I will be required to submit both a completed Application and any supporting information required by Landmark, including, but not limited to, a verification of identity, a verification of employment, a verification of income, and an authorization to obtain my rental history. If I fail to submit the aforementioned items within 48 hours of submitting my Application and any fees/deposits

required by Landmark, or if any of the information I have submitted is false, inaccurate, or misleading in any way, the Security Deposit is _nonrefundable_.

16.     This deposit falls within the broad definition of "security deposit" as it was  any deposit of money or property, _however denominated_, which is furnished by a tenant to a landlord to secure the performance of _any part_ of the rental agreement under RSMo. § 535.300.7.

17.     Under this provision, Plaintiff paid a Security Deposit of $450.00 that became non-refundable 48 hours after submission of the Application if Plaintiff did not cancel in writing.

18.     Plaintiff did not cancel in writing by November 22, 2019 and, pursuant to the terms of the addendum to the lease, Plaintiff's $450.00 security deposit became non-refundable.

19.     On November 25, 2019, Defendant declined Plaintiff's application to lease an apartment and issued a "Move Out Statement" on November 26, 2019.

20.     The Move Out Statement itemized the $640 Plaintiff paid to apply for one of Defendant's apartments.

21.     The Move Out Statement indicated that the following amounts were not going to be refunded and retained by the Defendant:  the Application Fee of $40.00, the Administrative Fee of $150.00, and the Security Deposit $450.00.

22.     The November 26, 2019 Move Out Statement stated that the "security deposit is non-refundable due to falsification on application.  "Your security deposit of $450.00 has been retained and liquidated damages for our time and expense."

23.     However, pursuant to the terms application submitted by Plaintiff, the security deposit became non-refundable on November 22, 2019 (48 hours after the submission of the application if there was no written cancellation).

24.     On November 27, 2019, Defendant confirmed Plaintiff's security deposit would not be refunded with Defendant.

25.     On November 27, 2019, Defendant refused to refund Plaintiff's $450.00 security deposit.

26.     On November 27, 2019, Defendant refused to refund Plaintiff's Application Fee of $40.00 and the Administrative Fee of $150.00

27.     On November 27, 2019, Defendant represented to Plaintiff that it was legally justified in retaining the security deposit.

28.     Because Defendant refused to refund the non-refundable security deposit upon demand, Plaintiff disputed the Defendant's retention of the security deposit with her Bankcard provider and on January 16, 2020.

29.     Subsequent to January 16, 2019,  Plaintiff was notified that the dispute was investigated, and Bankcard Service Center concluded she was not responsible for the charge.

30.     The $450.00 Security Deposit was refunded to Plaintiff by the Bankcard Service Center, and not by any actions of Defendant.

31.     The collection and retention of Plaintiff's $450.00 Security Deposit in Missouri violates RSMo. § 535.300.6 which states that "the tenant **shall** recover as damages twice the amount wrongfully withheld." RSMo. § 535.300.6 (emphasis added).

32.     Defendant current retains $450.00 in damages to which Plaintiff is entitled pursuant to RSMo. § 535.300.6.


### COUNT I
### VIOLATION OF RSMo. § 535.300
### Non-Refundable Security Deposits

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count I

against Defendant, states and alleges:

33.     Plaintiff incorporates by reference the preceding allegations in this petition.

34.     RSMo. § 535.300, entitled security deposits, places restrictions and requirements on landlords regarding security deposits.

35.     RSMo. § 535.300(3) lists what a landlord may legally withhold from a tenant's security deposit.

36.     RSMo. § 535.300(4) states that the landlord may withhold from the security deposit only such amounts as are reasonably necessary because:

> (1) To remedy a tenant's default in the payment of rent due to the landlord, pursuant to the rental agreement;
>
> (2) To restore the dwelling unit to its condition at the commencement of the tenancy, ordinary wear and tear excepted; or
>
> (3) To compensate the landlord for actual damages sustained as a result of the tenant's failure to give adequate notice to terminate the tenancy pursuant to law or the rental agreement; provided that the landlord makes reasonable efforts to mitigate damages.

37.     RSMo. §535.300(4) does not allow a landlord to designate part of the security deposit as non-refundable if there is no written cancellation within 48 hours of submission of the application.

38.     RSMo. §535.300(4) does not allow a landlord to designate part of the security deposit as non-refundable before the end of the application term.

39.     RSMo. §535.300(4) does not allow a landlord to designate part of the security deposit as non-refundable because the tenant "fail[ed] to cancel, in writing, the Application within

48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is _nonrefundable"._

      40.     RSMo. §535.300(3) does not allow a landlord to designate part of the security deposit as non-refundable because the landlord alleges the tenant misrepresented anything on her application.

      41.     The language of the application states that $450.00 of the security deposit may be non-refundable if the tenant fail[ed] to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is _nonrefundable"._

      42.     Under the application, the security deposit paid by the Plaintiff was $450.00.

      43.     states that "if the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant **shall recover** as damages not more than twice the amount wrongfully withheld."

      44.     Under RSMo. § 535.300.6, Defendant is liable to Plaintiff for $450.00.

      WHEREFORE, Plaintiff and the putative class prays for judgment against Defendant for such damages as are fair and reasonable for violations of the RSMo. § 535.300; including the statutory relief provided for in RSMo. § 535.300 of damages twice the amount of the non-refundable security deposits withheld ; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

**COUNT II**
**MERCHANDISING PRACTICES ACT, § 407.020 RSMo.**
**Collecting Non-refundable Security Deposits**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count II against Defendant, states and alleges:

45.     Plaintiff incorporates by reference the preceding allegations in this petition.

46.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

47.     Defendant is deceptively assessing, collecting, and retaining non-refundable security deposits in violation of RSMo. § 535.300.

48.     RSMo § 407.020.1 states that the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section § 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

49.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

50.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

51.     Plaintiff has suffered an ascertainable loss in that Defendant wrongfully withheld a $450 security deposit from Plaintiff, resulting in statutory damages owed to Plaintiff, in the amount of not more than twice the non-refundable security deposit pursuant to § 535.300.

52.     Defendant retains $450.00 in damages to which Plaintiff is entitled.

53.     Plaintiff has suffered injury in fact because she has been denied the $450.00 in damages to which Plaintiff is entitled pursuant to § 535.300.

54.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

55.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

56.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

57.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff and the putative class prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

## COUNT III
## MERCHANDISING PRACTICES ACT, § 407.020 RSMo.
## Misrepresentation

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count III against Defendant, states and alleges:

58.     Plaintiff incorporates by reference the preceding allegations in this petition.

59.     Upon determining that Defendant wrongfully withheld Plaintiff's security deposit, Plaintiff telephoned Defendant and spoke to Johnathan L/N/U, who advised Plaintiff:

   a.   Defendant was "going by the book" by withholding the security deposit and was confident in their representation that "their I's are dotted and their T's are crossed";

   b.   There is no exposure to Defendant and that Plaintiff's sole remedy was with a past landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

   c.   That Defendant has given Plaintiff all the information that Defendant is required to and that it is not Defendant's fault, but solely the responsibility of the prior landlord alleging an eviction that was the basis for Defendant withholding Plaintiff's $450.00 security deposit.

60.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

61.     After her security deposit was unlawfully withheld, Plaintiff inquired with Defendant as to the reasons for withholding the security deposit.

62.     Defendant misrepresented to Plaintiff that the non-refundable deposit was legal.

63.     Defendant misrepresented the status of the non-refundable deposit to Plaintiff.

64.     The Missouri Attorney General has declared all excessive and unreasonable practices to be unfair practices in violation of the Missouri Merchandising Practices Act.  15 C.S.R. § 60-8.080(1).

65.     It is excessive and unreasonable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged."  15 C.S.R. § 60-8.080(2).

66.     These non-refundable security deposits are excessive and unreasonable.

67.     These fees are excessive and unreasonable in part because they are high in relation to the value of the application.

68.     Defendant's conduct as described herein constitutes violations of RSMo. § 407.020.

69.     Defendant's acts use and employment of deception, false pretenses, false promises, misrepresentation, unfair practices and concealment, suppression, or omission of material facts for the sale of consumer products in trade and commerce, is an unlawful practice.

70.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss in that Plaintiff lost the amount of her security deposit.

71.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

72.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages; attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

73.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

74.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for Plaintiff's reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

**COUNT IV**
**MERCHANDISING PRACTICES ACT, § 407.020 RSMo.**
**Collecting Excessive and Unreasonable Application Fees Generally**

COMES NOW Plaintiff, on behalf of herself and those similarly situated, and for Count IV against Defendant, states and alleges:

75.     Plaintiff incorporates by reference the preceding allegations in this petition.

76.     In addition to charging the Plaintiff a non-refundable $450 security deposit fee, Defendant charged a $40 application fee and, on top of that, a $150 Administrative Fee.

77.     Defendant listed the fees that had to be paid in order to apply for an apartment on the fourth page of the application.

78.     On the fourth page of the application, third single-spaced paragraph from the top, beginning on the 7th line, under the title **Security Deposits that May Be Refundable**, is the statement, "[i]f I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is nonrefundable."

79.     These fees required to apply total $640.00, however they are labeled by Defendant, i.e. "security deposit "or otherwise, and are non-refundable if not cancelled within 48 hours.

80.     Whether the $450.00 of the payment is legally defined as a security deposit

pursuant to RSMO § 535.300.7, it is a non-refundable payment required to apply for an apartment.

81.     Defendant is subject to the requirements and provisions of the Missouri Merchandising Practices Act.

82.     The Missouri Attorney General has declared all excessive and unreasonable practices to be unfair practices in violation of the Missouri Merchandising Practices Act.  15 C.S.R. § 60-8.080(1).

83.     It is excessive and unreasonable to "take advantage of an unequal bargaining position and to obtain a contract or term which results in gross disparity of values exchanged." 15 C.S.R. § 60-8.080(2).

84.     Defendant's conduct is excessive and unreasonable and constitutes violations of RSMo. § 407.020.

85.     The $150 Administrative Fee, is excessively, unfairly, and unreasonably high in relation to the value received by the Plaintiff or any expense incurred by Defendant, especially in light of the $40 Application fee

86.     The $150 Administrative Fee is excessively, unfairly, and unreasonably high when combined with the $40.00 Application fee and the $450.00 non-refundable security deposit.

87.     The $150 Administrative Fee, is excessively, unfairly, and unreasonably high because it obscures the total amount of fees an applicant will forfeited to apply for an apartment lease is excessive and unreasonable.

88.     The unlawful practices caused the Plaintiff to suffer an ascertainable loss.

89.     The Plaintiff attempted to lease housing for personal, family or household purposes in that the housing she sought was residential and would be used for her own personal shelter.

90.     Under RSMo. § 407.020, Plaintiff may recover actual damages; punitive damages;

attorney's fees and expenses for Defendant's violations of RSMo. § 407.020; and to equitable relief.

91.     Because of Defendant's unlawful acts and practices, Plaintiff incurred actual damages.

92.     Plaintiff has incurred attorney's fees and continues to incur said fees, which can be recovered under the Missouri Merchandising Practices Act, RSMo. § 407.020.

WHEREFORE, Plaintiff and the putative class prays for judgment against Defendant for such actual and punitive damages as are fair and reasonable for violations of the RSMo. § 407.020; for  reasonable attorney's fees and expenses; for injunctive relief, and for the costs of this action; and for such relief as the Court considers just and proper.

## CLASS ACTION ALLEGATIONS

93.     Plaintiff restates each allegation in the preceding paragraphs as if set forth at length herein.

94.     Under Federal Rule of Civil Procedure 23, Plaintiff sues for herself and on behalf of a class (the "Class A") for Counts I, II, IV initially defined:

All Missouri tenants from whom Defendant collected a security deposit

deemed nonrefundable under the application in the past five years.

95.     Under Federal Rule of Civil Procedure 23, Plaintiff sues for herself and on behalf of a class (the "Class B") for Counts I, II, III, IV initially defined:

All Missouri tenants from whom Defendant collected a security deposit

wherein all or a portion of that deposit was deemed nonrefundable under

the application in the past five years and, upon inquiry by the class

member, Defendant informed the class member that retaining the non-

refundable deposit was legal or legally appropriate.

96.     Under Federal Rule of Civil Procedure 23, Plaintiff sues for herself and on behalf of a class (the "Class C") for Counts IV initially defined:

> All Missouri tenants from whom Defendant collected and retained a $150 Administrative fee and/or a $40.00 dollar Application fee under the application in the past five years.

97.     Federal Rule of Civil Procedure 23(a) sets out the following requirements for class certification: .

One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members if impracticable, (2) there are questions of law or fact common to the class, (3) the claims and defense of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class

98.     Numerosity. Fed. R. Civ. P. 23(a)(1). Defendant owns and operates multi-unit apartment complexes using form applications and standardized procedures.  The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice. Numerosity can be inferred by Defendant' size, that it manages hundreds of apartment units using standardized contracts and procedures, and the fact that its omissions are part of its routine business practice.

99.     Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. Defendant uses

standardized application provisions and procedures in managing hundreds of residential units. These common legal and factual questions include and without limitation:

        a.      Did Defendant collect and retain a non-refundable security deposit?

        b.      Did Defendant retain a security deposit for any reason other than those enumerated in § 535.300.5.

        c.      Did Defendant collect and retain a $150 Administrative Fee and/or a $40.00 Application fee under an application in the past five years?

        d.      Is it excessive and unreasonable to obscure the total amount of fees subject to forfeiture in an application to lease an apartment?e.      Is a $150 Administrative Fee excessively, unfairly, and unreasonably high for the value received by the Plaintiff or any expense incurred by Defendant, especially in light of the $40 Application fee?

100.      Typicality. Plaintiff's claims are typical of the claims of each Class member. Their contract was a standardized application with a provision that wrongfully deemed a security deposit as nonrefundable, in violation of RSMo. § 535.300 and required an excessive Administrative Fee that would apply to each member of the putative Class. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

101.      Adequacy. Fed. R. Civ. P. 23(a)(3). Plaintiff is an adequate representative of the Class because her interests coincide with, and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class.

102.      Superiority. Questions of law and fact common to the Class members predominate

over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will cause substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

103. Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2). Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief regarding Plaintiff and the Class members.

WHEREFORE, Plaintiff and the Class members pray for relief:

1. An order certifying the proposed classes herein under Missouri Supreme Court Rule 52.08 and appointing Plaintiff and her undersigned counsel of record to represent same;

2. The creation of a common fund available to provide notice of and remedy Defendant's violations;

3. Punitive damages as authorized by the MMPA;

4. Equitable and/or declaratory relief; including that Defendant be restrained from engaging in future conduct in violation of the MMPA;

17

5.      Attorney's fees, expenses and costs;

6.      An Order that Defendant, its agents, and anyone acting on Defendant's

        behalf, be immediately restrained from altering, deleting, or destroying

        any documents or records that could identify Class members;

7.      Pre-judgment and post-judgment interest as provided by law; and

8.      Such other relief the Court does deem just, equitable and proper.

**JURY DEMAND**

Plaintiff demands trial by jury.

Respectfully submitted,

By: /s/ A.J. Stecklein
A.J. Stecklein          #46663
Michael Rapp            #66688
Matthew Robertson       #70442
Stecklein & Rapp Chartered
748 Ann Avenue
Kansas City, KS 66101
Telephone:    (913) 371-0727
Facsimile:    (913) 371-0727
Email:  aj@kcconsumerlawyer.com
        mr@kcconsumerlawyer.com
        msr@kcconsumerlawyer.com


GINA CHIALA            # 59112
AMY SWEENY DAVIS      #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
        amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on October 5, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

/s/ A.J. Stecklein
_____
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

**DEFENDANT LANDMARK REALTY OF MISSOURI, LLC'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1) AND
FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)**

Defendant Landmark Realty of Missouri, LLC ("Landmark"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), moves the Court to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim. The factual and legal grounds supporting this Motion are set forth in detail in the suggestions filed with this motion.

Counts I, II and III of the Amended Complaint allege that Landmark unlawfully charged Plaintiff Rhonda Cheatem a non-refundable $450 "security deposit" fee when she applied to rent an apartment. The claims should be dismissed for lack of subject matter jurisdiction because the disputed charge was credited back to Plaintiff, meaning she has no injury in fact and lacks standing to pursue any claims based on the $450 charge.

These claims also should be dismissed for failure to state a claim. Count I for violation of the Missouri security deposit statute, Mo. Rev. Stat. § 535.300, fails as a matter of law on the facts alleged because the disputed $450 fee was not a "security deposit" as defined in that statute. Counts II and III for violation of the Missouri Merchandising Practices Act ("MMPA"), Mo.

Rev. Stat. § 407.010 *et seq.*, fail as a matter of law on the facts alleged because (i) the claims are predicated on a non-existent underlying violation of the Missouri security deposit statute; (ii) the security deposit statute is the exclusive remedy if any security deposit was wrongfully withheld (assuming the $450 fee qualifies as a "security deposit"); and (iii) the application form reviewed and executed by Plaintiff shows as a matter of law that she knowingly and voluntarily agreed to pay the $450 fee.

Counts III and IV of the Amended Complaint allege that the various fees charged by Landmark—including the $450 "security deposit" fee, the $150 administration fee, and the $40 application fee—were unconscionably "excessive and unreasonable" in violation of the MMPA. These claims fail as a matter of law on the facts alleged because (i) Plaintiff knowingly and voluntarily agreed to pay the disputed fees; and (ii) the Amended Complaint does not plausibly allege any facts indicating either substantive or procedural unconscionability in the assessment of the fees.

WHEREFORE, Defendant Landmark Realty of Missouri, LLC respectfully requests that the Court grant this motion and enter an order dismissing all claims asserted by Plaintiff Rhonda Cheatem for lack of subject matter jurisdiction under Rule 12(b)(1) and/or failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_
     Nicholas J. Porto     MO #56938
     1600 Baltimore, Suite 200A
     Kansas City, Missouri 64108
     Telephone:  816.463.2311
     Facsimile:  816.463.9567
     nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_
     Stephen J. Moore     MO #59080
     1968 Shawnee Mission Pkwy, Suite 100
     Mission Woods, Kansas 66205
     Telephone:  816.471.0909
     Facsimile:  816.471.3888
     sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 7th day of October, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

          _/s/ Stephen J. Moore_
          Attorney for Defendant

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

RHONDA CHEATEM,

            Plaintiff,

v.

LANDMARK REALTY OF MISSOURI,
LLC

            Defendant.

Case No. 4:20-cv-00381-BP

**SUGGESTIONS IN SUPPORT OF**
**DEFENDANT LANDMARK REALTY OF MISSOURI, LLC'S MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1) AND**
**FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)**

Defendant Landmark Realty of Missouri, LLC ("Landmark") offers these suggestions in

support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) and

for Failure to State a Claim Under Rule 12(b)(6) (Doc. #33), filed October 7, 2020.

# Table of Contents

Table of Authorities ................................................................................................................ ii

Introduction .............................................................................................................................. 1

Factual Background ................................................................................................................. 2

Argument and Authorities ....................................................................................................... 4

    I.    Plaintiff Lacks Standing to Bring Any Claims Based on the $450
        "Security Deposit" Charge Because the Charge was Credited Back
        and Plaintiff Therefore has Not Suffered Any Injury in Fact ....................................... 4

    II.   The Amended Complaint Should be Dismissed for Failure to State a
        Claim Because All of Plaintiff's Claims Fail as a Matter of Law on the
        Facts Alleged ................................................................................................................ 6

        A.    Count I Fails to State a Claim for Violation of the Security Deposit
              Statute, Mo. Rev. Stat. § 535.300, Because the $450 Fee at Issue on
              that Claim was Not a "Security Deposit" as Defined in that Statute ................... 7

        B.    Counts II and III Fail to State Claims for Violation of the MMPA
              Based on the $450 Fee .......................................................................................... 10

              i.    Counts II and III are Premised on an Underlying Violation of the
                     Missouri Security Deposit Statute, and Fail as a Matter of Law
                     Because No Such Violation has Occurred .................................................. 10

              ii.   Counts II and III Fail as a Matter of Law Because Section 535.300
                  is the Exclusive Remedy for Improper Collection of a
                  Security Deposit ......................................................................................... 10

              iii.  Counts II and III Fail as a Matter of Law Because Plaintiff
                  Knowingly and Voluntarily Agreed to the Terms and Conditions
                  of the Application Form Under Which the $450 Charge was Made ........ 11

        C.    Counts III and IV Fail to State Claims Under the MMPA Based on
               "Excessive and Unreasonable Fees" ..................................................................... 14

Conclusion ............................................................................................................................. 15

# Table of Authorities

**Cases**

*Ashanti v. City of Golden Valley*,
    666 F.3d 1148 (8th Cir. 2012) ................................................................. 2-3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................... 6, 8

*Auer v. Trans Union, LLC*,
    902 F.3d 873 (8th Cir. 2018) ..................................................................... 5

*Battis v. Hoffman*,
    832 S.W.2d 937 (Mo. Ct. App. 1992) ......................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 6

*Chochorowksi v. Home Depot U.S.A.*,
    404 S.W.3d 220 (Mo. 2013) ............................................................... 11-14

*City of Clarkson Valley v. Mineta*,
    495 F.3d 567 (8th Cir. 2007) ..................................................................... 4

*Croyle ex rel. Croyle v. United States*,
    908 F.3d 377 (8th Cir. 2018) ................................................................. 3-4

*Dress v. Capital One Bank (USA), N.A.*,
    No. 1:19-cv-00343, 2019 WL 3451304 (E.D. Va. July 30, 2019) ................... 6

*Gill v. Whitford*, 138 S. Ct. 1916 (2018) .................................................... 5

*Hargis. Access Capital Funding, LLC*,
    674 F.3d 783 (8th Cir. 2012) ................................................................. 5-6

*Lastra v. Intercontinental Invs. Co.*,
    745 S.W.2d 703 (Mo. Ct. App. 1987) ....................................................... 11

*Loescher v. Minn. Teamsters Pub. & Law Enforcement Emps.' Union, Local No. 320*,
    441 F. Supp. 3d 762 (D. Minn. 2020) ......................................................... 5

*Mansfield v. Horner*,
    443 S.W.3d 627 (Mo. Ct. App. 2014) ......................................................... 9

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884 (3d Cir. 1977) ..................................................................... 4

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 393 of 502

*Olsen v. Holder*,
610 F. Supp. 2d 985 (S.D. Iowa 2009) ......................................................................................3

*Osborn v. United States*,
918 F.2d 724 (8th Cir. 1990) ....................................................................................................4

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
911 F.3d 505 (8th Cir. 2018) ..................................................................................................15

*Pleasants v. Am. Express Co.*,
541 F.3d 853 (8th Cir. 2008) ..................................................................................................15

*Prop. Exch. & Sales, Inc. v. King*,
863 S.W.2d 12 (Mo. Ct. App. 1993)...................................................................................10-11

*Schwab v. Nat'l Dealers Warranty, Inc.*,
298 S.W.3d 87 (Mo. Ct. App. 2009).........................................................................................8

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ..........................................................................4-5

*State ex rel. Nixon v. Estes*,
108 S.W.3d 795 (Mo. Ct. App. 2003).......................................................................................9

*Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*,
533 S.W.3d 720 (Mo. 2017) .....................................................................................................7

*Tovar v. Essentia Health*,
342 F. Supp. 3d 947 (D. Minn. 2018) .......................................................................................6

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) ..................................................5

*Victorian v. Wells Fargo Home Mortg.*,
No. 4:15-cv-00667-AGF, 2017 WL 2535673 (E.D. Mo. June 12, 2017)..................................13

*Wivell v. Wells Fargo Bank, N.A.*,
No. 6:12-CV-3457-DGK, 2015 WL 7259836 (W.D. Mo. Nov. 17, 2015) ...............................13

*Wright v. Oasis Legal Fin., LLC*,
No. 4:19cv926 RWS, 2020 WL 1433645 (E.D. Mo. Mar. 24, 2020)........................................15

*Younker v. Inv. Realty, Inc.*,
461 S.W.3d 1 (Mo. Ct. App. 2015).............................................................................................7

iii

**Statutes and Regulations**

Mo. Rev. Stat. § 407.010 *et seq.* ...................................................................................................1

Mo. Rev. Stat. § 535.300 ................................................................................................ 1, 5, 7-9

Mo. Code Regs. Ann. tit. 15, § 60-8.010 *et seq.*........................................................................14

Mo. Code Regs. Ann. tit. 15, § 60-8.030 ..................................................................................14

Mo. Code Regs. Ann. tit. 15, § 60-8.080 ..................................................................................14

Mo. Code Regs. Ann. tit. 15, § 60-9.010 *et seq.*......................................................................14

**Introduction**

This lawsuit is primarily based on an assertion that Landmark wrongfully charged a non-refundable $450 "security deposit" fee to Plaintiff Rhonda Cheatem when she applied to rent an apartment from Landmark. This ignores the fact that the full amount of the $450 charge to Plaintiff's credit card was credited back to her account shortly after the charge was made. In light of that charge credit, Plaintiff has not suffered an injury in fact and does not have standing to pursue claims based on the purported retention of that "security deposit" fee. This includes Count I for violation of the Missouri security deposit statute, Mo. Rev. Stat. § 535.300, and Counts II and III for violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.*, all of which assert injury from the $450 charge. (*See* Am. Compl. Doc. #31, ¶¶ 31-32, 42, 51, 70.) It also includes Count IV to the extent that claim is based on the same $450 charge. (*See id.* ¶¶ 79-80, 86.)

All of Plaintiff's claims fail as a matter of law for many other reasons as well. The claim in Count I for violation of the Missouri security deposit statute fails as a matter of law because the disputed $450 fee does not constitute a "security deposit" as the term is defined in the statute. The claims in Counts II and III for violation of the MMPA fail as a matter of law because (i) no underlying violation of the Missouri security deposit statute has occurred; (ii) the Missouri security deposit statute provides Plaintiff's exclusive remedy even if she is correct that the $450 fee was a "security deposit"; and (iii) Plaintiff knowingly and voluntarily agreed to pay that fee. The claims in Counts III and IV similarly fail as a matter of law because Plaintiff knowingly and voluntarily agreed to pay the disputed fees, and also because Plaintiff has not plausibly alleged any unconscionability in the parties' transaction.

Landmark allegedly owns/operates Willow Creek Apartments. (Am. Compl., Doc. #31, ¶ 7.) Plaintiff applied to lease an apartment from Landmark in November 2018. (*Id.* ¶ 8.) As part of the rental application process, Plaintiff reviewed and signed an application form establishing the fees and deposits she was required to pay, including a non-refundable $40 application fee; a non-refundable $150 administration fee; and a $450 payment described as a "security deposit" that may be refundable or non-refundable depending on circumstances outlined in the form. (*Id.* ¶¶ 11-15, 17.) A copy of the application form Plaintiff initialed and signed is attached. (*See* Declaration of Jonathan Marcus, attached as **Exhibit 1**, ¶ 3 & Ex. 1-B.)[1]

The first paragraph of the form conspicuously advised Plaintiff that the form concerned fees and deposits that may be ***non-refundable***, instructed her to review the form very carefully, and warned her that her signature on the form would acknowledge her review and understanding of the document. (*See* **Ex. 1-B**.) The second paragraph of the form conspicuously advised Plaintiff that the $40 application fee and $150 administration fee were *non-refundable*. (*See id.*) Plaintiff separately initialed that paragraph and also executed a payment authorization form allowing Landmark to charge her credit card in the total amount of $190. (*See id.*)

The third paragraph of the form also conspicuously advised Plaintiff that the $450 "security deposit" payment would become *non-refundable* if her application was not cancelled within 48 hours or if it was determined that her application contained false, inaccurate, or misleading information. (*See id.*) The form included a note on the term "security deposit" explaining: "Until such time as a Lease Agreement is entered into by the parties, any Security Deposit deposited

---

[1] The application is referenced and quoted in part in the Amended Complaint. (*See, e.g.*, Am. Compl., Doc. #31, ¶¶ 11, 13, 15.) Because this document is embraced by the pleadings, the Court can consider the substance of the application form in assessing the viability of Plaintiff's claims without converting the motion to dismiss to a motion for summary judgment. *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

does not constitute a 'security deposit' as that term is defined by Missouri . . . law." (*See id.*) Plaintiff separately initialed this paragraph and executed a payment authorization form allowing Landmark to charge her credit card in the amount of $450. (*See id.*)

Plaintiff also signed the form at the bottom of the page beneath an acknowledgement that read: "***Signatures below also indicate understanding of and an agreement to be bound by the policies stated above regarding fees and deposits***." (*See id.*)

Landmark rejected Plaintiff's rental application because she provided false information and advised that the $450 fee would be non-refundable for that reason. (Am. Compl., Doc. #31, ¶¶ 19-22; *see also* Marcus Decl., **Ex. 1**, ¶ 4 & Ex. 1-C.)[2] Plaintiff then disputed the charge, which was credited back to her account in less than 30 days from the date of the original charge. (Am. Compl. Doc. #31, ¶¶ 28-30.) This is reflected in Landmark's transactional records (*see* Marcus Decl., **Ex. 1**, ¶ 2 & Ex. 1-A), and the credit card account statement Plaintiff produced in discovery in this lawsuit (*see* **Exhibit 2**).[3]

Plaintiff claims Landmark wrongfully charged a non-refundable $450 "security deposit" fee in violation of the Missouri security deposit statute (Count I) and the MMPA (Counts II and III). She further alleges Landmark charged "excessive and unreasonable" fees in violation of the MMPA (Counts III and IV). These claims fail as a matter of law as discussed below.

---

[2] Like the application form, the Move-Out Statement attached as Exhibit 1-C to the Marcus Declaration is embraced by the pleadings. (*See, e.g.*, Am. Compl., Doc. #31, ¶¶ 19-22.) Again, the Court can consider the actual document in assessing the viability of Plaintiff's claims on a motion to dismiss for failure to state a claim. *Ashanti*, 666 F.3d at 1151.

[3] Landmark's transactional records (**Ex. 1-A**) and Plaintiff's credit card account statement (**Ex. 2**) are submitted as evidence that Plaintiff lacks standing to bring claims based on the $450 payment because that payment was refunded and she therefore has no injury in fact. Because Landmark raises the matter as a factual challenge of the Court's subject matter jurisdiction, the Court "may consider matters outside the pleadings." *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018); *see also Olsen v. Holder*, 610 F. Supp. 2d 985, 990 (S.D. Iowa 2009) ("If a party mounts a factual challenge [to subject matter jurisdiction], the Court may look outside the pleadings to determine if jurisdiction exists, and the nonmoving party loses the benefit of favorable inferences from its factual statements.").

## Argument and Authorities

This matter should be dismissed for many reasons. First, Plaintiff lacks standing to bring claims based on the $450 "security deposit" fee that was quickly and fully credited back to her. Second, Plaintiff fails to state any claim on which relief may be granted because all of her claims fail as a matter of the law on the facts alleged.

### I. Plaintiff Lacks Standing to Bring Any Claims Based on the $450 "Security Deposit" Charge Because the Charge was Credited Back and Plaintiff Therefore has Not Suffered Any Injury in Fact

Rule 12(b)(1) authorizes the dismissal of an action for lack of subject matter jurisdiction. On a factual challenge to subject matter jurisdiction, the Court "may consider matters outside the pleadings" and the non-moving party "does not have the benefit of 12(b)(6) safeguards." *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). With a factual challenge, "the plaintiff will have the burden of proof that jurisdiction does in fact exist" and "no presumptive truthfulness attaches to the plaintiff's allegations." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Here, Landmark makes a factual challenge to subject matter jurisdiction based on Plaintiff's lack of standing.

Article III of the United States Constitution limits judicial power to "cases and controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy," and to establish the "irreducible constitutional minimum" for standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "It is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007).

Injury in fact is "foremost among [the standing] requirements." *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018). "To establish an injury in fact, a plaintiff must show an injury that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018). "'Article III standing requires a concrete injury even in the context of a statutory violation,'" and "'a bare procedural violation, divorced from any concrete harm'" will not suffice. *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549). "Standing must exist not only for each claim the plaintiff brings, but also for each form of relief that the plaintiff seeks." *Loescher v. Minn. Teamsters Pub. & Law Enforcement Emps.' Union, Local No. 320*, 441 F. Supp. 3d 762, 769 (D. Minn. 2020) (citing *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)).

Plaintiff alleges a statutory injury because Landmark charged her a non-refundable $450 "security deposit" fee. (Am. Compl., Doc. #31, ¶¶ 31-32, 42, 51-53, 70.) That charge, however, was fully credited back to Plaintiff less than 30 days after it was made on her credit card. This is reflected in Plaintiff's account statement (**Ex. 2**) and in Landmark's transactional records (Marcus Decl., **Ex. 1**, ¶ 2 & Ex. 1-A.) It is also confirmed in Plaintiff's allegations. (Am. Compl., Doc. #31, ¶¶ 28-30.) The credit of that charge within 30 days satisfies the Missouri security deposit statute (assuming it even applies) and precludes Plaintiff from claiming an injury or seeking damages for the alleged wrongful withholding of a security deposit. *See, e.g.*, Mo. Rev. Stat. § 535.300.3(1) (permitting 30 days to refund a security deposit); *Id.* § 535.300.6 (providing for statutory damages only when security deposit is wrongfully withheld); *Battis v. Hofmann*, 832 S.W.2d 937, 940 (Mo. Ct. App. 1992) (holding that for a claim under Section 535.300, the tenant must "show the deposit was not refunded within thirty days").

Because the $450 charge was credited back to her, Plaintiff has no injury in fact and lacks standing to bring claims based on that payment. *See, e.g.*, *Hargis. Access Capital Funding, LLC*,

674 F.3d 783, 791 (8th Cir. 2012) ("If [plaintiff] did not pay Defendants, then she did not suffer an injury, and so would not have standing."); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 955 (D. Minn. 2018) (finding a lack of standing when paid sums were reimbursed because plaintiff's "only cognizable injuries in fact, *i.e.*, her out-of-pocket expenses, have been redressed"); *Dress v. Capital One Bank (USA), N.A.*, No. 1:19-cv-00343, 2019 WL 3451304, at *3 (E.D. Va. July 30, 2019) (holding that plaintiff lacked standing to bring putative class action when disputed credit card interest charge was refunded pre-litigation).

Plaintiff's lack of standing deprives the Court of subject matter jurisdiction on the claims in Counts I, II and III, which all depend entirely on alleged injury from wrongful assessment of a non-refundable $450 "security deposit" fee. This is also true for Count IV to the extent it based on the same fee. The claims should be dismissed accordingly.

## II.    The Amended Complaint Should be Dismissed for Failure to State a Claim Because All of Plaintiff's Claims Fail as a Matter of Law on the Facts Alleged

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must allege facts that "raise a right to relief above the speculative level." *Id.* Conclusory factual allegations are not sufficient. *Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Nor are legal conclusions. *Id.* ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Here, Plaintiff's claims should all be dismissed because they fail as a matter of law on the facts alleged.

**A.** **Count I Fails to State a Claim for Violation of the Security Deposit Statute, Mo. Rev. Stat. § 535.300, Because the $450 Fee at Issue on that Claim was Not a "Security Deposit" as Defined in that Statute**

Count I of Plaintiff's Complaint asserts Landmark withheld her "security deposit" fee in violation of Section 535.300, which permits a landlord to retain a tenant's security deposit only in an amount necessary to (1) remedy a tenant's default in rent payment; (2) restore the condition of a dwelling unit; or (3) compensate for actual damages caused by a tenant's failure to give adequate notice to terminate the tenancy. Mo. Rev. Stat. § 535.300.4. Plaintiff's theory of liability puts the cart before the horse because the disputed fee was not a "security deposit" as that term is used in Section 535.300, and the statute therefore has no application or bearing on Landmark's alleged conduct.

The statute expressly states: "As used in this section, the term 'security deposit' means any deposit of money or property, however denominated, which is furnished by a tenant to a landlord **to secure the performance of any part of the rental agreement**, including damages to the dwelling unit." Mo. Rev. Stat. § 535.300.8 (emphasis added). Whether the sum of money in dispute constitutes a "security deposit" is the threshold issue for application of Section 535.300. *See Younker v. Inv. Realty, Inc.*, 461 S.W.3d 1, 6 (Mo. Ct. App. 2015) ("Ordinarily, an analysis of the application of this section should begin with a determination as to whether particular funds paid by a tenant to a landlord meet the . . . statutory definition of a 'security deposit.'"). In making this determination, the Court must "give effect to legislative intent as reflected in the plain language of the statute at issue." *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. 2017).

The statute requires the parties to have a rental agreement before any sum of money paid by a tenant to a landlord becomes a "security deposit." Without a rental agreement by the parties, there is nothing for a tenant to perform and no part of a tenant's performance for a landlord to

secure as required by the statute's definitional provision. *See* Mo. Rev. Stat. § 535.300.8. This is reinforced by other provisions of the statute. Subsection (2) provides that "[a]ll security deposits shall be held by the landlord for the tenant, who is **a party to the rental agreement** . . . ." *Id.* § 535.300.2 (emphasis added). Subsection (5) requires inspection of a dwelling unit "following **the termination of the rental agreement** to determine the amount of the security deposit to be withheld . . . ." *Id.* § 535.300.5 (emphasis added). Without a rental agreement, these provisions are functionally meaningless. Under Missouri law, the Court is prohibited from interpreting the statute in a manner that would render its terms a nullity. *See Schwab v. Nat'l Dealers Warranty, Inc.*, 298 S.W.3d 87, 91 (Mo. Ct. App. 2009).

Here, the $450 fee was not a "security deposit" as that term is used in Section 535.300 because Plaintiff and Landmark did not have a rental agreement. In fact, the Amended Complaint acknowledges that Landmark rejected Plaintiff's rental application because she provided false information. (*See* Am. Compl., Doc. #31, ¶¶ 19, 22.) In other words, the parties never had a land-lord-tenant relationship, and the disputed fee was not required to be held by Landmark for Plaintiff as a party to a rental agreement. *See* Mo. Rev. Stat. § 535.300.2. Plaintiff also never moved into an apartment, and the parties were never required to inspect a dwelling unit following a move-out to determine an amount of money to be withheld. *See* Mo. Rev. Stat. § 535.300.5. Because the parties never had a rental agreement or landlord-tenant relationship, the $450 charge made by Landmark does not constitute a "security deposit" as that term is defined under Section 535.300.8 and the security deposit statute simply does not apply to the transaction between Plaintiff and Landmark.

The Amended Complaint makes a legal conclusion that the $450 fee is a security deposit for purposes of Section 535.300. (Am. Compl., Doc. #31, ¶ 16.) The Court should disregard this legal conclusion in assessing the sufficiency of Plaintiff's claim. *Iqbal*, 556 U.S. at 678-79. In

any event, this allegation cannot overcome the fact that the $450 fee does not meet the statute's definitional provision, as outlined above. Plaintiff further alleges the $450 fee was described as a "security deposit" in the application form (Am. Compl., Doc. #31, ¶ 15), but this colloquial description is not controlling and cannot override the statutory definition of "security deposit" in determining the application of Section 535.300. *Mansfield v. Horner*, 443 S.W.3d 627, 660 (Mo. Ct. App. 2014) ("[A] court has no authority to write into a statute a provision not covered by its language."); *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 798 (Mo. Ct. App. 2003) ("The statutory definition should be followed in the interpretation of the statute to which it relates and is intended to apply and supersedes the commonly accepted dictionary or judicial definition and is binding on the courts." (internal quotations omitted)).

The Amended Complaint also neglects to mention the pertinent portion of the application form stating: "Until such time as a Lease Agreement is entered into by the parties, any Security Deposit deposited does not constitute a 'security deposit' as that term is defined by Missouri . . . law." (**Ex. 1-B** at n.1.) This is consistent with the statute's definitional requirement that a formal rental agreement be executed before a security deposit will exist. *See* Mo. Rev. Stat. § 535.300.8. It also demonstrates very clearly that the parties did not intend to expand the statute's protections or otherwise treat the $450 fee as a true "security deposit" for legal purposes until her rental application was approved and the parties entered into a written lease for an apartment. Before that time, the parties expressly agreed that the sum was potentially refundable but could be forfeited under the circumstances described in the application form.

Because the $450 fee was not a "security deposit" for purposes of Section 535.300, that statute cannot apply to the parties' transaction and Plaintiff's claim for violation of that statute fails as a matter of law. The Court should dismiss Count I on this basis.

**B.      Counts II and III Fail to State Claims for Violation of the MMPA Based on the $450 Fee**

Counts II and III allege Landmark violated the MMPA by collecting a non-refundable security deposit in violation of the Missouri security deposit statute. These claims fail as a matter of law because (i) they presuppose a non-existent violation of the Missouri security deposit statute; (ii) the security deposit statute is the exclusive remedy for any improper collection of a security deposit; and (iii) the terms of the application form reflect Plaintiff's knowing and voluntary agreement to the collection of the "security deposit" fee.

**i.      Counts II and III are Premised on an Underlying Violation of the Missouri Security Deposit Statute, and Fail as a Matter of Law Because No Such Violation has Occurred**

The claims in Counts II and III are derivative of Count I—they allege Landmark is liable under the MMPA for charging the $450 "security deposit" fee in violation of Missouri's security deposit statute. (*See* Am. Compl., Doc. #31, ¶¶ 47, 51, 61.) As argued above, Plaintiff's claim for violation of the security deposit statute fails as a matter of law because the disputed fee is not a "security deposit" as defined in Section 535.300.8. For the same reason that the claim in Count I under Section 535.300 fails, the derivative claims in Counts II and III under the MMPA also fail as a matter of law and should be dismissed.

**ii.      Counts II and III Fail as a Matter of Law Because Section 535.300 is the Exclusive Remedy for Improper Collection of a Security Deposit**

The claims in Counts II and III are also caught in a double-bind. Even if the $450 fee could be considered a "security deposit" under Section 535.300 and Plaintiff could state a viable claim against Landmark in Count I for wrongfully charging that fee as non-refundable in violation of the Missouri security deposit statute, Plaintiff still is precluded from asserting the claims in Counts II and III under the MMPA because Section 535.300 provides the exclusive remedy for wrongful withholding of a security deposit. *Prop. Exch. & Sales, Inc. v. King*, 863 S.W.2d

12, 15 (Mo. Ct. App. 1993) (holding that claims for fraud, unlawful practices, breach of contract and prima facie tort having "their common nucleus of operative fact [in] defendants' alleged wrongful failure to return the deposit" are precluded as a matter of law because Section 535.300 "provides tenants with their exclusive remedy when a landlord wrongfully withholds a security deposit"); *Lastra v. Intercontinental Invs. Co.*, 745 S.W.2d 703, 705-06 (Mo. Ct. App. 1987) ("The subject of claims for refund of security deposits to tenants has been pre-empted by the legislative enactment [of Section 535.300] which created the rights and obligations and limited the allowance of damages to not more than twice the amount of the deposit. . . . Appellants were confined to the statutory remedy and the trial court correctly so ruled.").

*King* is particularly instructive because it involved a claim based on "alleged violations of the Merchandising Practices Act." *King*, 863 S.W.2d at 14. Like that claim, the MMPA claims in Counts II and III based on the alleged wrongful failure to return a security deposit are barred as a matter of law by the exclusive remedy of the Missouri security deposit statute. The Court should dismiss Counts II and III on this basis.

### iii.    Counts II and III Fail as a Matter of Law Because Plaintiff Knowingly and Voluntarily Agreed to the Terms and Conditions of the Application Form Under Which the $450 Charge was Made

Plaintiff's MMPA claims regarding the $450 "security deposit" fee also fail as a matter of law because the terms of the parties' agreement were fully disclosed in the application form that Plaintiff knowingly and voluntarily signed. The controlling case on this issue is *Chochorowksi v. Home Depot U.S.A.*, 404 S.W.3d 220 (Mo. 2013), where the Missouri Supreme Court held that an MMPA claim predicated on an allegedly deceptive customer agreement failed as a matter of law when the terms of that agreement were apparent and had been accepted by the customer. *Id.* at 228-29.

The salient facts in *Chochorowski* are strikingly similar to those at issue here. As in *Chochorowski*, the terms of the parties' agreement are "evidenced by their written contract" (i.e., the application form) that gives Plaintiff "obvious and unambiguous notice" of the circumstances in which her "security deposit" fee could be forfeited, and Plaintiff accepted the terms by "affirmatively expressing her intention [to make the deal] by initialing and signing the [] agreement." *Id.* at 228. Like the customer in *Chochorowski*, Plaintiff "could have refused to accept [the agreement] by not signing." *Id.* Instead, as in *Chochorowski*, Plaintiff "initialed the special terms and conditions" set forth in the separate paragraph expressly pertaining to the "security deposit" fee, and then also indicated her acceptance "a second time by signing her name at the bottom of the agreement[]." *Id.* at 229. Plaintiff's initials came immediately after the "security deposit" provision, and her signature at the bottom of the form came immediately after bold, italicized text stating: "***Signatures below also indicate understanding of and an agreement to be bound by the policies stated above regarding fees and deposits***." (Application Form, **Ex. 1-B**.) Plaintiff also signed a payment authorization form approving the $450 charge to her credit card, another clear indication of informed acceptance of that fee. (*See id.*)

Plaintiff does not allege anything untoward in her dealings with Landmark when she reviewed and signed the application form. She does not suggest she misunderstood the form, that the type size or format of the form was deceptive, that she was tricked or coerced into signing the form, or that she otherwise was prevented from making the fully informed and entirely voluntary decision to sign the form and accept its terms. Plaintiff does not even dispute that her rental application contained false information, which made the $450 fee non-refundable under the agreed terms. (Am. Compl., Doc. #31, ¶ 22.) Landmark initially refused to refund the charge on this basis (*see* Move Out Statement, **Ex. 1-C**), and its actions under the circumstances were consistent with the terms of the application form to which Plaintiff agreed.

Given the alleged and undisputed facts, Missouri law recognizes that Plaintiff must be "held to the terms of the contract she signed." *Id.* at 228. Missouri courts will presume that a person in Plaintiff's position "knew the agreement's terms and accepted them" and will conclude that the execution of the agreement "was either a deliberate choice or an oversight for which she is responsible and not a defect of the contract itself." *Id.* at 228-29. Because Plaintiff knowingly and voluntarily agreed to the terms in the application form, she is not entitled to any relief from the agreement and cannot, as a matter of Missouri law, state a claim for unlawful practices under the MMPA challenging the enforcement of that agreement. *Id.*; *see also Victorian v. Wells Fargo Home Mortg.*, No. 4:15-cv-00667-AGF, 2017 WL 2535673, at *10 (E.D. Mo. June 12, 2017) (finding no viable claim for unlawful practices under the MMPA when challenged conduct was permitted by the parties' agreement).

To the extent Count III alleges that Landmark misrepresented the "security deposit" in a phone call with Plaintiff after the fact (*see* Am. Compl., Doc. #31, ¶¶ 61-63), *Chochorowksi* also forecloses this theory of liability by holding that after-the-fact statements regarding the parties' agreement have no bearing on the voluntary execution and proper enforcement of the agreement by its plain terms. *Chochorowski*, 404 S.W.3d at 230 ("The employee's statement could not have modified the agreement or misled Ms. Chochorowski, however, because the statement was made after the transaction was completed except for her payment of the rental fees."); *see also Wivell v. Wells Fargo Bank, N.A.*, No. 6:12-CV-3457-DGK, 2015 WL 7259836, at *6 (W.D. Mo. Nov. 17, 2015) ("Missouri case law, exemplified by *Chochorowksi*, dictates that the oral communications here do not reach the level of unlawful trade practices.").[4]

---

[4] To the extent Count III characterizes the $450 "security deposit" fee as unconscionable or "excessive and unreasonable," it fails for the same reason as Count IV because the Amended Complaint does not plausibly allege any facts indicating either substantive or procedural unconscionability in the parties' transaction. This is addressed in the next section.

These are all independent bases for dismissal. For any or all of these reasons, the Court should dismiss Counts II and III for failure to state a claim.

    **C.**    **Counts III and IV Fail to State Claims Under the MMPA Based on "Excessive and Unreasonable Fees"**

Counts III and IV allege Plaintiff paid application fees that violated the MMPA because they were "excessive and unreasonable." As just discussed, these claims fail as a matter of law because Landmark charged the fees according to the terms of the application form that Plaintiff knowingly and voluntarily accepted (*see* **Ex. 1-B**), and Plaintiff has not alleged any facts plausible suggesting she was somehow tricked, deceived, forced or otherwise compelled into making that agreement. *See Chochorowski*, 404 S.W.3d at 228-30.

The Amended Complaint tries to backtrack from the claim in the original Petition that the application fees are unconscionable by changing the verbiage to "excessive and unreasonable." (*Compare* Doc. #1-1 ¶¶ 47-48, 61, *with* Doc. #31 ¶¶ 66-67, 84.) This is a distinction without a difference because there is no authority for the proposition that "excessive and unreasonable" fees somehow separately violate the MMPA without showing that those fees are in fact unconscionable.[5] To find an unconscionable contract, Missouri law requires both procedural and substantive unconscionability: "Procedural unconscionability in general is involved with the contract formation process, and focuses on high pressure exerted on the parties, fine print of the contract, misrepresentation, or unequal bargaining position. Substantive unconscionability refers to an un-

---

[5] Paragraphs 64-65 and 82-83 of the Amended Complaint cite Mo. Code Regs. Ann. tit. 15, § 60-8.080, which is titled "unconscionable practices" and states: "(1) It is an unfair practice for any person in connection with the sale of merchandise to engage in any unconscionable act or practice, or to use any unconscionable contract or contract term. (2) It is unconscionable to take advantage of an unequal bargaining position and obtain a contract or term which results in a gross disparity of values exchanged." Nothing in the Missouri Attorney General's regulations dealing with unfair or fraudulent practices, *see* Mo. Code Regs. Ann. tit. 15, § 60-8.010 *et seq.* and Mo. Code Regs. Ann. tit. 15, § 60-9.010 *et seq.*, indicates that "unreasonable" fees violate the MMPA and the only reference in these regulations to "excessive" prices deals with the unrelated scenario of price gouging in the event of a disaster, Mo. Code Regs. Ann. tit. 15, § 60-8.030(1)(B)-(C).

due harshness in the contract terms themselves." *Pleasants v. Am. Express Co.*, 541 F.3d 853, 857-58 (8th Cir. 2008) (internal citations and quotations omitted).

Plaintiff's claims of unconscionability from "excessive and unreasonable" fees fail as a matter of law because she has not come even close to plausibly alleging either substantive or procedural unconscionability. The Amended complaint does not allege any facts plausibly suggesting that the disputed fees are out of line with industry standards, let alone so high that they are substantively unconscionable. Nor does the Amended Complaint plausibly allege any facts indicating procedural unconscionability in Plaintiff's execution of the application form where she agreed to pay the disputed fees or the payment authorization forms where she approved the credit card charges in those amounts. (See **Ex. 1-B**.) Counts III and IV should be dismissed on this basis. *See Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 513 (8th Cir. 2018) (affirming dismissal of claims based on unconscionability because plaintiff "failed to plausibly allege that the agreement was unconscionable"); *Wright v. Oasis Legal Fin., LLC*, No. 4:19cv926 RWS, 2020 WL 1433645, at *4 (E.D. Mo. Mar. 24, 2020) ("Wright agreed to receive a loan of a sum certain and agreed to repay a sum certain on the maturity date of the loan. Both figures are prominently printed on the front of the agreement. . . . [The] amended complaint does not allege any high pressure sales tactics by employed by Oasis, unreadable fine print in the agreements, or any misrepresentation in the agreements. As a result, Wright has failed to allege facts to establish a plausible claim that the agreements are substantively or procedurally unconscionable." (internal citations omitted)).

<u>Conclusion</u>

For these reasons, the Court should dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and/or failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

**THE PORTO LAW FIRM**

By:  /s/ Nicholas J. Porto
      Nicholas J. Porto     MO #56938
      1600 Baltimore, Suite 200A
      Kansas City, Missouri 64108
      Telephone:  816.463.2311
      Facsimile:  816.463.9567
      nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By:  /s/ Stephen J. Moore
      Stephen J. Moore     MO #59080
      1968 Shawnee Mission Pkwy, Suite 100
      Mission Woods, Kansas 66205
      Telephone:  816.471.0909
      Facsimile:  816.471.3888
      sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 7th day of October, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

                      /s/ Stephen J. Moore
                      Attorney for Defendant

16

# EXHIBIT 1

_____

## Declaration of Jonathan Marcus

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

**DECLARATION OF JONATHAN MARCUS**

I, Jonathan Marcus, state as follows:

1.      I am a Regional Director of Property Management for Landmark Realty, LLC d/b/a Landmark Realty of Missouri, LLC ("Landmark"). This declaration is submitted in support of Landmark's Motion for Judgment on the Pleadings. I have personal knowledge of the facts stated in this declaration.

2.      The Petition asserts that Landmark retained the $450 payment made by Plaintiff at the time she applied to rent an apartment from Landmark. This is untrue. Landmark made a $450 charge to Plaintiff's credit card on November 20, 2019, but Plaintiff disputed the charge after her rental application was denied and the full amount of the $450 charge was quickly credited back to her credit card account. Attached as **Exhibit 1-A** are true and correct copies of the transaction records indicating a credit of the full amount to Plaintiff.

3.      The Petition references and quotes portions of the application form regarding fees and deposits associated with Plaintiff's application to rent an apartment from Landmark. Attached as **Exhibit 1-B** are true and correct copies of the pertinent application materials plaintiff

signed, including the application form regarding fees and deposits and payment authorization forms permitting Landmark to charge Plaintiff's credit card for fees and deposits in the agreed-to amounts.

4.      The Petition references a move-out statement explaining why Landmark initially determined that the $450 payment was non-refundable. A true and correct copy of that document is attached as **Exhibit 1-C**.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _16_ day of July, 2020.

_____
Jonathan Marcus

2

# EXHIBIT 1-A
# to Marcus Declaration

_____

**Transactional Records
Showing Refund on $450 Payment**

**Brad Rash**

| | |
|---|---|
| **From:** | PaymentProcessor_Finance <PaymentProcessor_Finance@Yardi.Com> |
| **Sent:** | Monday, December 16, 2019 2:05 PM |
| **To:** | Larry Busgeon; Nick Condie |
| **Subject:** | Credit card transaction notice |
| **Attachments:** | Global Chargback 53970042 12-16-19.pdf |

Hi,

We received the attached chargeback adjust advice relating to the credit card transaction below. We have identified the transaction in our system and included transaction details below.

A chargeback adjust advice means that our account will be debited without further notice. **You can reply by faxing to the fax number on the notice.** When our account is debited, we will be debiting the property's bank account.

| Transaction ID | Source | Company | Merchant | Payment Type | Tenant Name | Charged Amount ($) | Payment Total Original | Status | Date Created (GMT) | Master Merchant Company |
|---|---|---|---|---|---|---|---|---|---|---|
| 53970042 | Voyager | Landmark | 01065 | CREDIT | Rhonda Cheatem | 450.00 | 450.00 | Settled | 11/20/2019 23:51:29 | Yardi |

| | | | |
|---|---|---|---|
| Transaction Id | 53970042 | Fraud Detected | No |
| Transaction Type | SALE | Original Trans. Id | |
| Status | Disputed | Returned Trans. Id | |
| Card Number | | Refunded Amount | |
| Card Type | Visa | Refunded Fee Amount | |
| Payment Type | CREDIT | Disputed Trans. Id | 55601757 |
| Date Created (GMT) | 11/20/2019 23:51:29 | Disputed Amount | |
| Tax Amount | 0.00 | Merchant Refrence Number | 2003896267 |
| Shipping Amount | 0.00 | Response Text | APPROVED 020210 |
| Total Amount | 450.00 | | |
| Discounted Amount | 450.00 | | |
| Payment Amount Original | 450.00 | | |

## ACH Details

| | | | |
|---|---|---|---|
| Invoice Number | 600675754 | | |
| Status Update Date (GMT) | 12/16/2019 20:03:14 | Submerchant Trans | Yes |
| Payer Id | 8737248 | ACH Amount | |
| Payer Name | Rhonda Cheatem | Expected Fee Amount | |
| Card Id | | ACH Fee Type | MERCHANT |
| Card Source | Internet | Requested ACH Fee Type | |
| Currency | USD | Requested Fee Amount | |
| Database | uzxcccmi_live | ACH Status | Transferred |
| Database Server | uzxcccmi_live | ACH Date | 11/25/2019 16:15:36 |
| Donation Transaction | No | Expected ACH Date | 11/25/2019 |
| Payment Label | Amount | ACH Processor | Jack Henry - NACHA File |
| Settlement Status | Settled | One Time New Contract Default | Yes |
| Client Transaction Id | 44139 | Fee Description | |
| Batch Sequence Number | 1498 | | Fee Applied to Merchant for Visa Credit Card |
| Originator Batch ID | 1200160478 | | |

Thank you,

# EXHIBIT 1-B
# to Marcus Declaration

_____

## Application Forms
## Initialed and Signed by Plaintiff



## Administration Fee, Application Fee, and Security Deposit

This portion of the Application concerns certain fee(s) and/or deposits that may be *__non-refundable__*. As such, it is important that you very carefully read and understand each of the following paragraphs. By initialing under each paragraph, you acknowledge that you have read each paragraph and understand that certain fee(s) and/or deposits may be *__non-refundable.__*

### Nonrefundable Fees

As part of this Application, I understand that I am required to submit a *nonrefundable* administration fee of ONE HUNDRED AND FIFTY DOLLARS AND NO CENTS ($150.00) (hereinafter the "Administration Fee"). As further part of this Application, I understand that I am also required to submit a *nonrefundable* application fee of either FORTY DOLLARS AND NO CENTS ($40.00) or FIFTY DOLLARS AND NO CENTS ($50.00) per applicant (hereinafter the "Application Fee"), the precise amount which shall solely be determined by Landmark. I understand that both the Administration Fee and Application Fee are *nonrefundable*.

*R.C.*
Initial Here

### Security Deposit that May Be Refundable

As part of this Application, I understand that I will be required to submit a Security Deposit equal to  (the "Security Deposit").[1] I also understand that Landmark, in Landmark's sole discretion, may require an additional Security Deposit if the information submitted in this Application does not satisfy Landmark's rental criteria. I understand that the Security Deposit (and any additional Security Deposit) is *refundable* if I cancel, in writing, the Application within 48 hours of the submission of the Application and any fees/deposits required by Landmark. I further understand that the Security Deposit *may be refundable* if Landmark denies my Application because the information I have submitted does not satisfy Landmark's application criteria. If I fail to cancel, in writing, the Application within 48 hours of submission of the Application and any fees/deposits required by Landmark, I understand that the Security Deposit is *nonrefundable*. Finally, I understand that I will be required to submit both a completed Application and any supporting information required by Landmark, including, but not limited to, a verification of identity, a verification of employment, a verification of income, and an authorization to obtain my rental history. If I fail to submit the aforementioned items within 48 hours of submitting my Application and any fees/deposits required by Landmark, or if any of the information I have submitted is false, inaccurate, or misleading in any way, the Security Deposit is *nonrefundable*.

*R.C.*
Initial Here

### Validity Period

I understand that approved applications are effective for 30 days from the date of submission of the Application and any fees/deposits required by Landmark. If a lease is not executed within this time period, this Application must be resubmitted for verification and approval and Landmark may charge additional Administration and Application fees and an additional Security Deposit. Landmark may alter this validity period at any time in Landmark's sole discretion.

*R.C.*
Initial Here

**NO CASH WILL BE ACCEPTED.** All initial rents, deposits, and fees must be paid by credit/debit card, cashier's check, or money order. *Applicants' signatures below indicate that they have carefully reviewed these policies and believe themselves to be eligible for rental of a unit. Signatures below also indicate understanding of and an agreement to be bound by the policies stated above regarding fees and deposits.*

| | | | |
|---|---|---|---|
| *signature* | 11/20/2019 | | |
| **Applicant Signature** | **Date** | **Applicant Signature** | **Date** |
| | | | |
| **Guarantor Signature** | **Date** | **Guarantor Signature** | **Date** |

[1] Until such time as a Lease Agreement is entered into by the parties, any Security Deposit deposited does not constitute a "security deposit" as that term is defined by Missouri or Kansas law.

This document is digitally signed using RENTCafe eSignature services. Document ID: 812529.

## One Time Payments Authorization Form

By signing this form you give us permission to debit your account for the amount indicated on or after the indicated date. This is permission for a single transaction only, and does not provide authorization for any additional unrelated debits or credits to your account.

### Please complete the information below:

I <u>Rhonda Cheatem</u> authorize <u>Willow Creek</u> to charge my account
(full name)                           (Property Name)

Indicated below for $ <u>450.00</u> on or after <u>11/20/2019</u> .

Billing Address ▮▮▮▮▮▮▮▮        Phone# ▮▮▮▮▮▮▮▮

City, State, Zip ▮▮▮▮▮▮▮▮        Email ▮▮▮▮▮▮▮▮

| Checking/ Savings Account | Credit Card |
|---|---|
| ☐ Checking   ☐ Savings | ☑ Visa   ☐ MasterCard |
| Name on Acct _____ | ☐ Amex   ☐ Discover |
| Bank Name _____ | Cardholder Name <u>Rhonda Cheatem</u> |
| Account Number _____ | Account Number ▮▮▮▮▮▮ |
| Bank Routing # _____ | Exp. Date ▮▮▮▮ |
| Bank City/State _____ | CVV Code ▮▮▮ |

Routing Number  Account Number

SIGNATURE *Rhonda Cheatem*   DATE <u>11/20/2019</u>

For ACH debits to my checking/savings account, I understand that because these are electronic transactions, these funds may be withdrawn from my account as soon as the above noted periodic transaction dates. In the case of an ACH Transaction being rejected for Non Sufficient Funds (NSF) I understand that Landmark Realty, LLC may at its discretion attempt to process the charge again within 30 days, and agree to an additional $50.00 charge for each attempt returned NSF which will be initiated as a separate transaction from the authorized recurring payment. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law. I certify that I am an authorized user of this credit card/bank account and will not dispute this transaction with my bank or credit card Company; so long as the transaction corresponds to the terms indicated in this authorization form.

## One Time Payments Authorization Form

By signing this form you give us permission to debit your account for the amount indicated on or after the indicated date. This is permission for a single transaction only, and does not provide authorization for any additional unrelated debits or credits to your account.

### Please complete the information below:

I _Rhonda Cheatem_ authorize _Willow Creek_ to charge my account
    (full name)           (Property Name)

indicated below for $_190.00_ on or after _11/20/2019_ .

Billing Address ███████████████████

City, State, Zip ███████████████████

Phone # ██████████████████████

Email ██████████████████████████

#### Checking/ Savings Account

☐ Checking    ☐ Savings

Name on Acct _____

Bank Name _____

Account Number _____

Bank Routing # _____

Bank City/State _____

Routing Number _____

#### Credit Card

☐ Visa    ☒ MasterCard

☐ Amex    ☐ Discover

Cardholder Name _Rhonda Cheatem_

Account Number ███████████████

Exp. Date ████████

CVV Code ████████

SIGNATURE _Rhonda Cheatem_    DATE _11/20/2019_

For ACH debits to my checking/savings account, I understand that because these are electronic transactions, these funds may be withdrawn from my account as soon as the above noted periodic transaction dates. In the case of an ACH Transaction being rejected for Non Sufficient Funds (NSF) I understand that Landmark Reality, LLC may at its discretion attempt to process the charge again within 30 days, and agree to an additional $50.00 charge for each attempt returned NSF which will be initiated as a separate transaction from the authorized recurring payment. I acknowledge that the origination of ACH transactions to my account must comply with the provisions of U.S. law. I certify that I am an authorized user of this credit card/bank account and will not dispute this transaction with my bank or credit card Company; so long as the transaction corresponds to the terms indicated in this authorization form.

# EXHIBIT 1-C
# to Marcus Declaration

_____

## Move-Out Statement

**Move Out Statement**

Date: 11/26/2019

| | | | | | |
|---|---|---|---|---|---|
| Code | t0029718 | Property | 01065 | Lease From | 11/30/2019 |
| Name | Rhonda Cheatem | Unit | 115-304 | Lease To | 10/31/2020 |
| Address | | Status | Denied | Move In | 11/30/2019 |
| | | Rent | 979.00 | Move Out | |
| City | | | | Notice | |
| Telephone | (O)-( ) - (H)- | | | | |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|
| 11/20/2019 | creditck | Application Fee | 40.00 | | 40.00 | 1098005 |
| 11/20/2019 | adminfee | Administration Fee | 150.00 | | 190.00 | 1098006 |
| 11/20/2019 | sdeposit | Security Deposit | 450.00 | | 640.00 | 1098007 |
| 11/20/2019 | | chk# 53970042 Credit Card One Time Payment ; | | 450.00 | 190.00 | 675754 |
| 11/20/2019 | | chk# 53970160 Credit Card One Time Payment ; | | 190.00 | 0.00 | 675758 |
| 11/26/2019 | sdeposit | :Security Deposit credit | (450.00) | | (450.00) | 1098521 |
| 11/26/2019 | cxldfee | Cancellation Fees | 450.00 | | 0.00 | 1098522 |

Dear: Rhonda Cheatem,

Thank you for your interest in Willow Creek Apartments!

The application for apartment 115-304 was denied on November 25, 2019.

The security deposit is non-refundable due to falsification on application. Your security deposit of $450.00 has been retained and liquidated damages for our time and expense.

We wish you the best of luck in the future!

Sincerely,

Willow Creek Management

# EXHIBIT 2

---

## Credit Card Account Statement
## Produced by Plaintiff in Discovery

 **AppliedBank**

RHONDA K CHEATEM

Account Number: ▮▮▮▮▮▮▮▮

## ACCOUNT SUMMARY

| | |
|---|---|
| Credit Limit | |
| Credit Available | |
| Statement Closing Date | December 12, 2019 |
| Days in Billing Cycle | 30 |
| Previous Balance | |
| - Payments & Credits | |
| + Purchases & Other Charges | |
| + Cash Advances | $0.00 |
| + FEE CHARGED | |
| + INTEREST CHARGED | |
| = New Balance | |

Questions?
Call Customer Service     1-800-947-1090
Lost or Stolen Credit Card    1-800-556-5678

Or Write:
PO BOX 17125 WILMINGTON, DE 19850-7125

## PAYMENT INFORMATION

| | |
|---|---|
| New Balance | |
| Minimum Payment Due | |
| Payment Due Date | January 09, 2020 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $38.

**Minimum Payment Warning:** Making only the minimum payment will increase the amount of interest you pay and the time it takes to repay your balance. Any additional amounts added to your account balance during the billing period should be included with your minimum payment amount to meet the payoff schedule(s) listed below.

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 7 years | |
| | 3 years | (Savings = $ ) |

If you would like information about credit counseling services, call 1-877-316-6322

## TRANSACTIONS

| Tran Date | Post Date | Reference Number | Transaction Description | Amount |
|---|---|---|---|---|
| 11/13 | 11/13 | | | |
| 11/13 | 11/13 | | | |
| 11/13 | 11/13 | | | |
| 11/13 | 11/13 | | | |
| 11/17 | 11/17 | | | |
| 11/17 | 11/17 | | | |
| 11/18 | 11/18 | | | |

Transactions continued on next page

Notice: SEE REVERSE SIDE FOR MORE IMPORTANT INFORMATION

5584   8002 LLH    001   7   12   191212 0    PAGE 1 of 2    1 0 3641 3178 CTS2     7168

Please detach bottom portion and submit with payment using enclosed envelope

 **AppliedBank**   BANKCARD CENTER
PO BOX 17125
WILMINGTON DE 19850-7125

☐ PLEASE CHECK IF THERE IS A CHANGE OF ADDRESS AND PROVIDE THE INFORMATION ON THE BACK

FOR PROMPT CREDIT, MAIL PAYMENT TO LOCATION SHOWN BELOW. PAYMENT IN ANY OTHER WAY MAY DELAY CREDITING YOUR ACCOUNT UP TO 5 DAYS

RHONDA K CHEATEM     7168
    0312

### PAYMENT INFORMATION

| | |
|---|---|
| Account Number: | ▮▮▮▮▮▮▮▮ |
| Payment Due Date | January 09, 2020 |
| New Balance | |
| Minimum Payment Due | |
| Past Due Amount | $0.00 |
| Amount Enclosed: | $ |

Make Check Payable to:

APPLIED BANK
PO BOX 70165
PHILADELPHIA PA 19176-0165

4227093172925806000114000024539L9

## TRANSACTIONS (continued)

| Tran Date | Post Date | Reference Number | Transaction Description | Amount |
|---|---|---|---|---|
| 11/19 | 11/19 | | | |
| 11/19 | 11/19 | | | |
| 11/19 | 11/19 | | | |
| 11/20 | 11/20 | F364100AR000Q5888 | ADJUSTMENT-PURCHASES Q5888 | 450.00- |
| 11/20 | 11/20 | 2407105A59KG3LHET | PROPERTY PAYMENT RENT 805-6992040 CA | 450.00 |
| 12/02 | 12/02 | | | |
| 12/05 | 12/05 | | | |
| 12/06 | 12/06 | | | |
| 12/06 | 12/06 | | | |
| 12/09 | 12/09 | | | |
| | | | **FEES** | |
| 12/12 | 12/12 | | MONTHLY MAINTENANCE FEE WILM DE | |
| | | | **TOTAL FEES FOR THIS PERIOD** | |
| | | | **INTEREST CHARGED** | |
| 12/12 | 12/12 | | Interest Charge on Purchases | |
| 12/12 | 12/12 | | Interest Charge on Cash Advances | |
| | | | **TOTAL INTEREST FOR THIS PERIOD** | |

| Totals 2019 Year-to-Date |
|---|
| Total fees charged in 2019 |
| Total interest charged in 2019 |

## INTEREST CHARGE CALCULATION

Your **Annual Percentage Rate (APR)** is the annual interest rate on your account.

| Type of Balance | ANNUAL PERCENTAGE RATE (APR) | Balance Subject to Interest rate | Days in Billing Cycle | Interest Charge |
|---|---|---|---|---|
| Purchases | 29.99% (f) | | 30 | |
| Cash Advances | 29.99% (f) | $0.00 | 30 | $0.00 |

(v) = variable (f) = fixed

## IMPORTANT MESSAGES

NEVER MISS A PAYMENT!
ENROLL IN OUR AUTOMATIC PAYMENT PROGRAM TODAY!
IT'S SIMPLE AND CAN SAVE YOU TIME AND MONEY.
ACT NOW - VISIT AUTOPAY.APPLIEDBANK.COM

FREE, REAL-TIME ACCOUNT INFORMATION - ONLINE - ANYTIME.
VIEW PAYMENT OPTIONS AND MORE!
VISIT WWW.APPLIEDBANK.COM
------------OR------------
CALL TOLL FREE 1-800-225-5030 FOR 24 HOUR ACCOUNT INFORMATION
THERE IS A $0.50 AUTOMATED INFO FEE PER ACCOUNT INQUIRY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

**RHONDA K. CHEATEM**, *individually and on behalf of all others similarly situated*,

        Plaintiff,

vs.

**LANDMARK REALTY OF MISSOURI, LLC**

        Defendant.

**Case No. 4:20-cv-00381-BP**

## <u>PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

1

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................**5**

**ARGUMENT** ......................................................................................................................**6**

I.    Plaintiff has standing to sue because she did not received the totality of the benefits accorded to her by the Security Deposit Statute and the fact that a different entity 'refunded' her money, through no action of Defendant, does not deprive her of standing to bring this claim ...................................................................................................................................6

II.    Plaintiff plausibly alleges violations of the Security Deposit Statute and the Merchandising Practices Act.......................................................................................................9

   a.  The $450 fee is a security deposit under the terms of the Defendant drafted application.. .........................................................................................................................................10

   b.  The $450 fee is a security deposit under the broad statutory definition.  .........................10

   c.  The Security Deposit Statute is not the exclusive remedy for the violations alleged.  ......13

   d.  Counts II and III survive dismissal because Plaintiff's subjective knowledge is irrelevant for purposes of an MMPA claim.  ........................................................................................16

   e.  Plaintiff has plausibly alleged that the fees required by Defendant are unfair in that it results in a gross disparity of values exchanged in violation of the MMPA.........................18

**CONCLUSION** .................................................................................................................**19**

2

**TABLE OF AUTHORITIES**

**Cases**

*Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220 (Mo. banc 2013) ................................... 17

*Clement v. St. Charles Nissan, Inc.*, 103 S.W.3d 898 (Mo. App. E.D. 2003) .............................. 9

*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. banc 2014) ............................................... 11

*Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614 (8th Cir. 2015) ............................. 7

*Detling v. Edelbrock*, 671 S.W.2d 265 (Mo. 1984) ..................................................................... 16

*Dover v. Stanley*, 652 S.W.2d 258 (Mo. Ct. App. W.D. 1983) ................................................... 15

*Dress v. Capital One Bank (USA) N.A.*, No. 19-cv-343, 2019 WL 3451304 (E.D. Va. July 30,

   2019) ...................................................................................................................................... 9

*Ensminger v. Credit Law Center, LLC*, No. 19-cv-2417-JWL, 2019 WL 4341215 (D. Kan.

   Sept. 12, 2019) ...................................................................................................................... 8

*Graham v. Catamaran Health Solutions LLC*, 940 F.3d 401 (8th Cir. 2017) ............................ 15

*Horne v. Flores*, 557 U.S. 433 (2009) ........................................................................................ 7

*Huch v. Charter Communications, Inc.*, 290 S.W.3d 721 (Mo. banc 2009) ............................... 17

*In re American Eagle Coatings, Inc.*, 353 B.R. 656 (Bankr. W.D. Mo. 2006) ........................... 19

*Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015) ............................... 18

*Lastra v. Intercontinental Investments, Co.*, 745 S.W.2d 703 (Mo. App. 1987) ......................... 15

*Massachusetts v. EPA*, 549 U.S. 497 (2007) ............................................................................... 7

*Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308 (Mo. App. E.D. 2016) ............................. 10

*Pleasants v. Am. Express Co.*, 541 F.3d 853 (8th Cir. 2008) ...................................................... 19

*Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237 (Mo. banc 2001) ........................... 10

*Prop. Exch. & Sales, Inc. v. King,* 863 S.W.2d 12 (Mo. Ct. App. E.D. 1993) ..................... 14, 15

*Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016) ............................................................. 7

*State ex rel. Jackson v. Parker*, 496 S.W.3d 559 (Mo. App. 2016)............................................... 15

*State ex rel. Nixon v. RTC Development Ass'n*, 290 S.W.3d 756 (Mo. App. W.D. 2009) ............. 9

*State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633 (Mo. App. E.D. 1988)...................... 16

*Tovar v. Essentia Health*, 342 F. Supp. 3d 947 (D. Minn. 2018) ................................................... 9

*Triarch Industries, Inc. v. Crabtree*, 158 S.W.3d 772 (Mo. banc 2005) ...................................... 10

*United States v. Menasche*, 348 U.S. 528, 75 S.Ct. 513 (1955) .................................................... 12

*United States v. Students Challenging Regulatory Agency Procs. (SCRAP)*, 412 U.S. 669
    (1973)..................................................................................................................................... 8

*Ward v. West County Motor Co., Inc.*, 403 S.W.3d 82 (Mo. banc 2013) ..................................... 18

*Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404 (Mo. banc 2014) .......................... 18

*Younker v. Investment Realty, Inc.*, 461 S.W.3d 1 (Mo. App. S.D. 2015)...................................... 9

**Statutes**

R.S.Mo. § 535.300 ........................................................................................................... passim

R.S.Mo. § 407.020 ..................................................................................................................... 18

**Regulations**

15 C.S.R. § 60-8.080................................................................................................................... 19

Plaintiff Rhonda Cheatem ("Ms. Cheatem" or "Plaintiff"), through undersigned counsel, respectfully submits these suggestions in opposition to Defendant Landmark Realty of Missouri, LLC's ("Defendant") Motion to Dismiss (Doc. 33).

## INTRODUCTION

It costs Kansas City consumers $640.00 to apply for housing with Defendant. If a consumer does not withdraw her application within 48 hours, or for any other reason Defendant determines it does not want to consummate the transaction, it keeps the consumer's $640.00. In this class action, brought under the Missouri security deposit statute and the Missouri Merchandising Practices Act ("MMPA"), Plaintiff seeks to represent a class of consumers who paid Defendant nonrefundable fees as part of applying for a residential apartment lease with Defendant at any one of Defendant's Missouri locations.

Factually, this case begins with Plaintiff applying at Defendant's Willow Creek Apartment complex on November 20, 2019. As part of the application process Plaintiff paid three separate fees. These fees were represented to Plaintiff by Defendant as follows: a $450 security deposit that is non-refundable after 48 hours if not cancelled, a $150 administration fee non-refundable when paid, and a $40 application fee non-refundable when paid. Defendant eventually denied Plaintiff's rental application and refused to refund any of the monies paid by Plaintiff. Eventually, after expending her time to dispute the charge through her credit card company, the $450 security deposit initially declared nonrefundable, was returned to her by the third party credit card company who found the charge offensive enough to return. Defendant had nothing to do with this refund. Defendant never returned the administration or application fees.

Before the Court is Defendant's motion seeking dismissal of every Count of Plaintiff's Class Action Petition. Defendant asserts that the $450.00 was mislabeled and misrepresented to

Plaintiff as a "security deposit," citing that while the application it drafted calls the large deposit a security deposit, it also disclaims that it is a security deposit. But the Defendant's motion creates and then ignores the white elephant in the room. If this is not a security deposit, it has been misrepresented as one. This reinforces Plaintiff's argument that Defendant is unlawfully collecting and retaining excessive and unreasonably high fees from their prospective tenants that are not authorized by law or agreement.

## ARGUMENT

I. **Plaintiff has standing to sue because she did not received the totality of the benefits accorded to her by the Security Deposit Statute and the fact that a different entity 'refunded' her money, through no action of Defendant, does not deprive her of standing to bring this claim.**

Defendant's first argument in favor of dismissal is that Plaintiff suffered no injury in fact for purposes of Article III standing. Essentially Defendant argues that Plaintiff was refunded the $450.00 security that she had paid and consequently she "has no injury in fact . . . based on that payment." Doc 34 at 10. Defendant fails to detail the facts that the Defendant refused to refund the security deposit upon demand and that the refund was the result of Plaintiff's necessary efforts to successfully convince a third party that the charge should be refunded. This defense is only available to the Defendant because the Plaintiff did not pay the security deposit by check or cash. Furthermore, this argument misses the mark because it assumes that all Plaintiff was entitled to recover for the unlawfully withheld security deposit, was the balance of the security deposit itself. That is not true under the statute.

The Missouri security deposit statute requires that a tenant recover "as damages twice the amount wrongfully withheld." R.S.Mo § 535.300.6. Defendant withheld the security deposit, and subsequently verbally refused to refund upon demand, entitling Plaintiff to $900.00. Ms. Cheatem has not received the statutory penalty that the statute demands that tenant receive. The Eighth

Circuit has confirmed that the right to recover statutory damages presents a concrete dispute sufficient to meet Article III's standards. *Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620–21 (8th Cir. 2015). "Standing" is not an arbitrary limitation. It only operates to ensure the court's resources are brought to bear on a real dispute asserted by a genuinely interested party with something to gain:

> '[T]he gist of the question of standing' is whether the petitioners have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'

*Massachusetts v. EPA*, 549 U.S. 497, 517 (2007); *see also Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1556 (2016) (Ginsburg, J., dissenting) ("The basic inquiry is whether the 'conflicting contentions of the parties . . . present a real, substantial controversy. . .'").

Plaintiff squarely meets these concerns. She alleges real (not hypothetical) violations of the MMPA and the Security Deposit Statute, the latter of which accords her a statutory right to recover twice the amount of her security deposit. As such, the actual violation of her substantive rights and her resulting ability to recover statutory damages presents a real, substantial controversy by a plaintiff with a concrete stake. *See Cuellar-Aguilar v. Deggeller Attractions, Inc.*, 812 F.3d 614, 620-21 (8th Cir. 2015) ("plaintiffs who fail to allege actual damages nonetheless satisfy both the injury in fact and redressability requirements of Article III standing by suing for statutory damages."). For this additional reason, Plaintiff satisfies Article III. *See Horne v. Flores*, 557 U.S. 433, 445 (2009) ("Here, as in all standing inquiries, *the critical question* is whether at least one petitioner has 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'") (emphasis added, citations omitted).

Defendant argues that the refund itself deprives Plaintiff of standing but that is not the case. Defendant has adopted a "who cares" attitude as it relates to their wrongfully withholding

Plaintiff's security deposit based on the fact that Plaintiff *eventually* (and without Defendant's assistance) got her money back. But this position ignores that Plaintiff was forced to involve her credit card issuer who, upon *their own review*, looked at Defendant's practice and determined that Plaintiff was entitled to a credit for her money—a decision it came to in mid-January 2020. Defendant misrepresents the *temporary* credit to plaintiff's account by the credit card company as a refund by the landlord. The temporary credit included a warning from the credit card company reminding Plaintiff that if the investigation was "unsuccessful, the item will remain your responsibility.[1]" Defendant never returned the security deposit and the credit card company release of the "temporary credit" was more than 30 days after it was notified. "If the *landlord* wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant *shall recover* as damages twice the amount wrongfully withheld. Mo. Rev. Stat. 535.300.6 (emphasis added). During that time Plaintiff was robbed of the immediately use and the time value of her money, which by itself is sufficient to establish standing. *See e.g.*, *Ensminger v. Credit Law Center, LLC*, No. 19-cv-2417-JWL, 2019 WL 4341215, at *3 (D. Kan. Sept. 12, 2019) ("the loss of the time value of money – even a small amount – constitutes a tangible financial injury that satisfies the requirement of an injury in fact for purposes of standing."). Simply getting her money back, as Defendant would have the Court believe, does not deprive Plaintiff of standing. All that standing requires is an "identifiable trifle." *See United States v. Students Challenging Regulatory Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973).

Finally, Defendant's reliance on the cases of *Tovar v. Essentia Health*, 342 F. Supp. 3d 947 (D. Minn. 2018) and *Dress v. Capital One Bank (USA) N.A.*, No. 19-cv-343, 2019 WL 3451304 (E.D. Va. July 30, 2019) (Doc. 34 at 11) is misplaced. Defendant cites these cases for the

---

[1] Letter dated December 10, 2019 Bankcard Service Center, attached hereto as Exhibit A.

proposition that a plaintiff is deprived standing when they're reimbursed for the money that they're

suing for. But these cases are distinguishable because those plaintiffs received their refunds from

the defendants in those actions. That means that the party redressing the harm in those cases is the

party who caused it. In this case, Defendant has done nothing to assist Plaintiff in securing a refund

of the security deposit that was wrongfully withheld from her. Her claims against Landmark should

therefore be allowed to go forward.

In summary, the moment that Plaintiff's security deposit was withheld by Defendant for

an unlawful reason, Plaintiff was entitled to a statutory penalty twice the amount of her deposit.

She has not received that mandatory statutory penalty. R.S.Mo § 535.300.6. As a consequence Ms.

Cheatem has a personal stake in the outcome of his controversy, and she has alleged more than a

mere 'identifiable trifle,' which is all she needs in order to have standing to pursue these claims.

## II. Plaintiff plausibly alleges violations of the Security Deposit Statute and the Merchandising Practices Act.

The purpose of the Missouri Security Deposit Statute is to put residential tenants and their

landlords on are more equal footing than that relationship typically had under the common law.

*Younker v. Investment Realty, Inc.*, 461 S.W.3d 1, 8 (Mo. App. S.D. 2015). Unlike the narrow role

of the Security Deposit Statute, the Merchandising Practices Act's "objective is consumer

protection." *State ex rel. Nixon v. RTC Development Ass'n*, 290 S.W.3d 756, 759 (Mo. App. W.D.

2009). "The Merchandising Practices Act was created to supplement the definition of common-

law fraud." *Clement v. St. Charles Nissan, Inc*., 103 S.W.3d 898, 899 (Mo. App. E.D. 2003).

> The [Merchandising Practices Act], as first adopted by the legislature in
> 1967, protects consumers by expanding the common law definition of fraud to
> preserve fundamental honesty, fair play and right dealings in public transactions
> . . . It is the defendant's conduct, not his intent, which determines whether a
> violation has occurred. Moreover, [a] consumer's reliance on an unlawful practice
> is not required under the [the Act].

*Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 310–11 (Mo. App. E.D. 2016).

The Merchandising Practices Act's reach is "unrestricted, all-encompassing and exceedingly broad. For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree." *Ports Petroleum Co., Inc. of Ohio v. Nixon*, 37 S.W.3d 237, 240 (Mo. banc 2001). In spite of this law, Defendant now argues "the parties never had a landlord-tenant relationship, and the disputed sum of money was not required to be held by Landmark for Plaintiff as party to a rental agreement." Doc. 34 at 13. But Landmark *did* withhold the deposit, and represented to Plaintiff that it was a security deposit. Landmark's argument is non-sensical, not consistent with the law, and contradicts Defendant's other arguments.

### a. The $450 fee is a security deposit under the terms of the Defendant drafted application.

Defendant drafted the application. Plaintiff had no say in the terms used. The contract labels the $450.00 portion of the $650.00 payment as a security deposit and Defendant treated it as security deposit when it sent Plaintiff a "move out notice," as required by 535.300.3(2) informing her that her "security deposit" was retained. Once sued for wrongfully withholding the security deposit, Defendant argues that the application does mean what Defendant said it meant, and how Plaintiff described and represented it to Plaintiff. Not only does this create an independent deceptive act, it flies in the fact of construing contracts against the drafter. *Triarch Industries, Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005).

### b. The $450 fee is a security deposit under the broad statutory definition.

Defendant argues that the $450.00 "security deposit," which is the language used in Defendant's application, is not actually a security deposit as defined in the Missouri Security Deposit Statute. *See* Doc. 34 at 12–14. The statute itself defines a security deposit as:

any deposit of money or property, *however denominated*, which is furnished by a

tenant to a landlord to secure the performance *of any part* of the rental agreement, including damages to the dwelling unit. This term does not include any money or property denominated as a deposit for a pet on the premises.

R.S.Mo. § 535.300.8 (Emphasis added). The italicized words of "however denominated" and "of any part" clearly show that the legislature intended to have this provision broadly construed to not allow a landlord to mislabel or disguise a security deposit, which is exactly what the Defendant is doing here. Furthermore, "of any part" clearly recognizes that part of a consumer transaction is following the landlord dictated application process, whether the rental agreement is consummated or not.[2]

Defendant concludes that this language does not make the application process "part of" the transaction between a landlord and tenant and requires a rental agreement be consummated. This ignores the reality that application process was dictated by the Defendant and would lead to the absurd result that Defendant can refer to a payment as "Security Deposit," —because consumers are familiar with paying security deposits—but not be bound by Missouri laws that protect consumers from Landlord's abusive and deceptive tactics. This allows a landlord to mislabel a *required* payment, accept the payment, unilaterally refuse to consummate the transaction, and keep the payment for a completely unexplainable and undetermined reason. Consumers don't pay $450 or more to have their housing application considered for 48 hours; instead they are paying the commonly charged "security deposit" prior to leasing a home.

The statutory definition of "security deposit" is broad covering "any deposit of money" "by a tenant to a landlord" "to secure the performance of any part of the rental agreement." *Id*. Ms. Cheatem had to deposit $450.00 in order to even enter into a rental agreement with Defendant.

---

[2] The Missouri Supreme Court, in interpreting a section of the Merchandising Practices Act, has read not dissimilar language to include actions that occur before, during, and after the sale or merchandise or services. See *Conway v. CitiMortgage, Inc*., 438 S.W.3d 410, 415–16 (Mo. banc 2014).

Ms. Cheatem paid this amount of money—which again, Defendant's own contract describes as a 'security deposit'[3]—for purposes of securing a landlord's performance (i.e., renting her an apartment). Under these facts the $450 payment is consistent with what Defendant chose to represent the payment to Plaintiff as—a security deposit.

Nonetheless, Defendant suggests that if this Court concludes the payment in this case is a security deposit then it would render meaningless the other provisions of the statute governing, *inter alia*, inspection of the dwelling unit. Doc. 34 at 13. But if this Court holds that the $450 payment is *not* a security deposit then the only provision of the statute which would be nullified is the only statutorily provided exception to what qualifies as a security deposit. The statutory definition includes only one exception: specifically, a security deposit "does not include any money . . . as a deposit for a pet on the premises." R.S.Mo. § 535.300.8. If this Court holds that a payment which is called and treated by Defendant to be a "security deposit" is not, then this sole exception to what qualifies as a security deposit is mere surplusage. This Court should therefore decline Defendant's interpretation to reinvent the statutory definition of security deposit under Missouri law. *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section") (internal citation removed).

**Alternatively**, Defendant's other argument in favor of dismissal is that its contract is not deceptive. These two arguments are mutually exclusive. If the "security deposit" withheld from Ms. Cheatem is not, as the contract implies, a "security deposit" then Defendant misrepresented what the payment was for. This makes it even more obvious that Defendant is collecting money

---

[3] Defendant argues that its contract disclaims this payment being a security deposit (Doc. 34 at 14), but that disclaimer conflicts with the statutory language, is ambiguous, and should be accorded no weight given the use of the term in the body of paragraph governing security deposits.

deceptively. Defendant's application describes the fee in this case as a "security deposit" and uses that term to outline when and under what circumstances the security deposit is nonrefundable. Defendant now argues that although its application calls this $450.00 fee a security deposit, that it actually isn't, and therefore the Missouri Security Deposit Statute does not apply to this transaction. Assuming, *arguendo*, that this $450.00 nonrefundable payment is *not* a security deposit—then what is it? Defendant does not suggest what it might be if it's not a security deposit, but clearly it's a $450.00 dollar fee that the prospective tenant cannot ever get back if Defendant turns down their application and they do not cancel within 48 hours. At this point if Count I fails for want of the fee being a security deposit, then Count IV cannot be dismissed.

What's more, if it truly is <u>not</u> a security deposit then there is <u>never</u> a time when it becomes "nonrefundable" under Defendant's own contract. Put differently, if this $450.00 payment is not a "security deposit" as that term is defined in Defendant's contract, then Defendant has no right to retain the payment if a rental agreement is never entered into with a prospective tenant. If this Court buys Defendant's ambitious reading of the Security Deposit Statute's definition of "security deposit," and as a consequence holds that the Security Deposit Count should be dismissed, then this Court cannot dismiss Plaintiff's MMPA claims because Defendant is taking and retaining money from Missouri consumers that it is not entitled to by any law or agreement.

### c. The Security Deposit Statute is not the exclusive remedy for the violations alleged.

Defendant asserts that § 535.300 R.S.Mo. is the sole remedy available for wrongfully withholding a security deposit. However, there is nothing in the plain language of § 535.300 R.S.Mo. suggesting any such restriction. The relevant provision states:

> If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages twice the amount wrongfully withheld.

§ 535.300.6 R.S.Mo. The statute's silence speaks volumes. The legislature regularly crafts legislation that creates exclusive remedies; had it intended to do so here, it would have said as much. *Cf.* § 535.300 R.S.Mo. with §§ 408.696; 287.120; 213.070; 454.101; 362.730 R.S.Mo. (all creating exclusive remedies). Taken together, § 535.300.6 R.S.Mo.'s silence, the MMPA's broad reach, and the MMPA's definition of "unfair practice" to include violations of state law, destroy any notion of the MMPA's inapplicability.

Only one case has dealt with the applicability of the Merchandising Practices Act to security deposit issues: *Prop. Exch. & Sales, Inc. v. King,* 863 S.W.2d 12, 14-15 (Mo. Ct. App. E.D. 1993) ( "Property Exchange"). There, the court made a general ruling that § 535.300 R.S.Mo. was the exclusive remedy for deposit issues, but that opinion should not be followed for several reasons. First, one year after *Property Exchange,* Title 15 CSR 60-8.020 and 60-8.090 of the Missouri Attorney General's Regulations made clear that the MMPA's prohibition of unfair practices encompasses the violation of other state laws like § 535.300 R.S.Mo. Also since then, § 535.300 R.S.Mo. has been amended and the limiting language, "not more than" has been removed. Thus, the statute originally stated:

> If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages not more than twice the amount wrongfully withheld.

But now states:

> If the landlord wrongfully withholds all or any portion of the security deposit in violation of this section, the tenant shall recover as damages twice the amount wrongfully withheld.

§ 535.300 R.S.Mo. (as amended in 2016). Without doubt, § 535.300 R.S.Mo. is not intended to act as an exclusive remedy.

Second, the extremely brief decision only mentioned the MMPA one time and did so in

passing. It contained no analysis of the MMPA's remedial nature nor its applicability, and the appellant's briefing on the issue was anemic at best. (*See* Ex. B, Prop. Exch. Appellant's Brief – notably, the appellant did not know the name of the MMPA)[4]. Indeed, the tenant in *Property Exchange* was a business to which the MMPA did not actually apply. § 407.025 R.S.Mo. (providing a private right of action only when a purchase is made for personal, family or household use). Given that the issue was not briefed or analyzed, *Property Exchange* is wholly unhelpful.

Finally, the *Property Exchange* appellant brought its MMPA claim alongside a number of common law claims and the appellant (along with the court) analyzed the MMPA and common law claims as one and the same. However, the examination of two statutes requires a different analysis than the examination of a statute's relationship to common law. *Cf, Lastra v. Intercontinental Investments, Co.*, 745 S.W.2d 703, 705 (Mo. App. 1987) (holding that § 535.300 limits common law damages) to *State ex rel. Jackson v. Parker*, 496 S.W.3d 559 (Mo. App. 2016) (analyzing two statutes with an eye toward harmonizing them). Indeed, the court in *Property Exchange* summarily followed *Lastra,* which dealt with the relationship between common law conversion and § 535.300 R.S.Mo. – not with two consumer protection statutes. *Prop. Exch,* 863 S.W.2d at 14–15 (citing *Lastra,* 745 S.W.2d 703).

When examining two state law statutes, Missouri courts must make every effort to reconcile them. *Dover v. Stanley*, 652 S.W.2d 258, 263 (Mo. Ct. App. W.D. 1983). Where, as here, two statutes can be harmonized, the analysis ends and statutory construction does not come into play. *Jackson,* 496 S.W.3d at 562. Without clear legislative intent creating an exclusive remedy, two statutes do not conflict merely because each one provides its own remedy. *E.g., Detling v. Edelbrock*, 671 S.W.2d 265 (Mo. 1984) (ruling that the statutory remedies for housing code

---

[4] This brief is a public record and the Court can take judicial notice of it. *Graham v. Catamaran Health Solutions LLC*, 940 F.3d 401, 405 fn.1 (8th Cir. 2017).

violations did not deprive tenants of other statutory and common law remedies addressing issues of habitability) (abrogated on other grounds). This is especially true where, like here, the statute providing the more limited damages (§ 535.300 R.S.Mo.) sought to expand, not restrict consumers' damages at the time it was passed. Not only is it the case that the MMPA and § 535.300 R.S.Mo. are both consumer protection statutes with harmonious goals, but state regulations provide that the violation of one expressly violates the other. As such, Counts II and III of the Class Action Petition cannot be dismissed.

    **d.  Counts II and III survive dismissal because Plaintiff's subjective knowledge is irrelevant for purposes of an MMPA claim.**

Defendant argues that the clear disclosure of the excessive and unreasonable fees in the rental application preclude a claim under the MMPA. First this argument is predicated upon the assertion that the Plaintiff clearly understood the terms of the application in the application, which contradicts the amended petition. <u>Doc. 31 ¶ 59</u>. This argument flies in the face of Defendant's first argument – that the application does not mean what it was drafted by Defendant to say. Defendant is now alleging that it misrepresented the $450 as a "security deposit." Then Defendant argues that Plaintiff understood the application.

Furthermore, Plaintiff's subjective knowledge of the terms of the agreement do not bear on whether the MMPA was violated because the MMPA does not require that a consumer actually be misled as a result of the unfair practice. The MMPA is concerned with the Defendant's actions, not whether the consumer was a misled. *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 635–36 (Mo. App. E.D. 1988).

Instead, Defendant's argument is based essentially on waiver or consent because Ms. Cheatem voluntarily paid the unfair and mislabeled fees that were demanded by the rental application. But this type of defense is not available to Defendant in MMPA actions. In *Huch v.*

*Charter Communications, Inc.*, the Missouri Supreme Court considered whether a consumer's voluntary payment of unfair fees should be a defense to an MMPA action. 290 S.W.3d 721, 727 (Mo. banc 2009). In holding that the protections of the 'voluntary payment doctrine' were not an available defense to an MMPA claim the Supreme Court stated that to allow the MMPA defendant to "avoid liability for this unfair practice through the voluntary payment doctrine would nullify the protections of the act and be contrary to the intent of the legislature." *Id*.

For this reason, and others, Defendant's reliance on *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220 (Mo. banc 2013) is misplaced. It simply is not a defense to an MMPA claim that Plaintiff voluntarily paid what constitutes an unlawful fee under a contract whose terms conflict with Missouri law.

Furthermore, while the Supreme Court in *Chochorowski* held that the protections of the MMPA were not in conflict with the "basic tenants" of contract law, this case does not concern itself strictly with contract law. There is no dispute here that the mislabeled and misrepresented terms of the rental application were provided to Ms. Cheatem. The allegations here are that Defendant's contract violates the laws that govern Defendant's behavior in that the contract makes a security deposit nonrefundable in violation of the Security Deposit Statute and that Defendant's contract allows them to charge, collect, *and retain* an unconscionable sum from Missouri consumers, just for rental applications. This is not a case of a "[c]learly [o]ptional" damage waiver, *cf.*, *Chochorowski*, 404 S.W.3d at 229, this is a case of charging and withholding fees and deposits in a manner that violates Missouri law. This distinction would be material to the Missouri Supreme Court which recognized that "[u]nlike the clear ban on negative options in 15 CSR 60–8.060, there is no corresponding regulation that expressly makes selling merchandise of no value an unfair practice under the MMPA." *Id* at 231. Here, however, there is a *statute* that makes it unlawful to

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 443 of 502

withhold a security deposit as "nonrefundable." *See* R.S.Mo § 535.300.6. For these reasons, Defendant's reliance on *Chochorowski* is misplaced and Ms. Cheatem's MMPA claims should survive threshold dismissal.

> **e. Plaintiff has plausibly alleged that the fees required by Defendant are unfair in that it results in a gross disparity of values exchanged in violation of the MMPA.**

Defendant appears to claim that only unconscionable practices can violate the MMPA. *Cf.* Doc. 34 at 19. To the extent that that's Defendant argument, it's wrong. The statute itself does not speak in terms of unconscionable practices, it speaks of "unfair" or "deceptive" practices. R.S.Mo. § 407.020.1. And the MMPA "does not define deceptive practices; it simply declares unfair or deceptive practices unlawful." *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 759 (W.D. Mo. 2015). Plaintiff does not need to plead an unconscionable practice to satisfy the MMPA's requirement of an unfair one. The mere absence of good faith in a consumer transaction is sufficient. *See Watson v. Wells Fargo Home Mortg., Inc*., 438 S.W.3d 404, 408 (Mo. banc 2014) (citing *Ward v. West County Motor Co., Inc*., 403 S.W.3d 82 (Mo. banc 2013)).

Additionally, it is the *practice* is charging these fees that is unconscionable. Defendant uses it position of power—it's total control over the contract terms—to require Missouri Consumers to pay three fees: two of which are nonrefundable a $150.00 administration fee, and a $40.00 application fee and a "security deposit" that is only refundable if the applicant chooses to withdraw the application in 48 hours. So even for consumers who timely withdraws their application they lose $190, Defendant notably provides no explanation for how allowing someone to submit an application for 48 hours before one withdraws it provides any value to the Consumer. In exchange for $190 and the amount of a security deposit, $640 in Ms. Cheatem's case, the Defendant *might* unilaterally decide to accept their rental applications. Plaintiff received no value for the $640 that

Defendant required prior to accepting her application. The unequal bargaining position of the Parties results in a gross disparity of the values exchanged. *See In re American Eagle Coatings, Inc.*, 353 B.R. 656, 664 (Bankr. W.D. Mo. 2006) (noting that unconscionability would "turn on whether the [party] received fair value for the payments made"). And the result is unconscionable under the AG's Rules. <u>15 C.S.R. § 60-8.080(2)</u>. Clearly Ms. Cheatem did not receive any value equal to her payments. Defendant does not even attempt to argue that these fees provide *any* value to the consumer, especially in relation to the value of a denied rental application. *Cf*. <u>Doc. 34 at 19–20</u>. Nor can they, no reasonable person would doubt the inequity of that transaction. *See Pleasants v. Am. Express Co*., 541 F.3d 853, 857 (8th Cir. 2008). For these reasons, Plaintiff's Count IV should survive dismissal. Under the facts as they are alleged, Plaintiff has plausibly alleged that the collection, description, and retention of these fees is unfair. Plaintiff's Count IV should therefore be submitted to a jury to decide.

**CONCLUSION**

Accordingly, Ms. Cheatem prays the Court deny Defendant's motion to dismiss and grant Plaintiff any other and further relief this Court deems just and proper.

*Respectfully submitted*,

By: /s/ Matthew S. Robertson
A.J. Stecklein          #46663
Michael Rapp          #66688
Matthew Robertson    #70442
STECKLEIN & RAPP CHARTERED
748 Ann Avenue, Suite 101
Kansas City, KS 66101
Telephone:     (913) 371-0727
Facsimile:      (913) 371-0727
Email:  aj@kcconsumerlawyer.com
            mr@kcconsumerlawyer.com
            msr@kcconsumerlawyer.com

-and-

Gina Chiala          #59112
Amy Sweeny Davis   #45760
Heartland Center
For Jobs and Freedom, Inc.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092
Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
           amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on October 21, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

/s/ Matthew S. Robertson
Attorney for Plaintiff

# Exhibit A

BANKCARD SERVICE CENTER
P.O. BOX 15809
WILMINGTON, DE 19850-5809
WWW.APPLIEDBANK.COM

December 10, 2019

RHONDA K CHEATEM

RE: Account Number Ending in ████

Dear Rhonda K Cheatem

While we attempt to resolve your dispute, a **temporary** credit for $450.00 from property payment rent will appear on your next statement.

The information regarding the disputed charge has been submitted to the merchant's bank. Under Regulations governing credit transactions, the merchant has 45 days to accept or reject our action. Please do not discard your records regarding this charge, as they might prove helpful to you in the future.

Under very specific guidelines, we assure you that we are doing everything possible to obtain a permanent credit for your account. However, if this effort is not successful, the item will remain your responsibility.

Sincerely,

Deighe Wigington
1-866-353-5089 Ext 2002288
Dispute Resolution Services

# Exhibit B



ORIGINAL
RECEIVED

APR 6 1993

MISSOURI COURT
OF APPEALS
EASTERN DISTRICT

IN THE MISSOURI COURT OF APPEALS
EASTERN DISTRICT

PROPERTY EXCHANGE & SALES, INC.,　　　　)
　　　　　　　　　　　　Appellant　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　No. 604845
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
JOSEPH P. KING, ET AL,　　　　　　　　)
　　　　　　　　　　　　Respondents)

FILED

APR - 6 1993

DEIRDRE O. SMITH
CLERK, MISSOURI COURT OF APPEALS
EASTERN DISTRICT

---

Appeal from the Circuit Court of St. Louis
Ccounty, Missouri

The Honorable William M. Corrigan

---

B R I E F  O F  A P P E L L A N T

D. Johnson, Attorney for
Appellant
Property Exchange & Sales, Inc.
625 N. New Ballas #200-P
St. Louis, Missouri 63141

TABLE OF CONTENTS

Jurisdictional Statement . . . . . . . . . . . . . . . . .  1

Statement of Facts. . . . . . . . . . . . . . . . . . . . .  2

Points Relied On  . . . . . . . . . . . . . . . . . . . . .  5

Argument. . . . . . . . . . . . . . . . . . . . . . . . . .  6

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . 13

## JURISDICTIONAL STATEMENT

Appellant appeals from the trial court's ruling dismissing Respondent's Petition, Counts I, II, IV and V of Appellant's Petition. Said counts allege fraud, unlawful practices, breach of contract, and prima-facie tort. Count III was subsequently dismissed without prejudice. Jurisdiction for this appeal lies in the Court of Appeals for the Eastern District of Missouri given that this appeal does not involve any of the categories reserved for the exclusive appellate jurisdiction of the Supreme Court of Missouri under Article V, §3, Missouri Constitution.

STATEMENT OF FACTS

On December 22, 1989 Plaintiff corporation, filed a Petition
for damages against five individuals doing business as Town & Four Villages,
etc.  (Supp. Legal File l-13).  The Petition consisted of five counts
consisting of fraud, unlawful practices, wrongful failure to return security
deposit, breach of contract, and prima facie tort.  The first count alleged
that when the Plaintiff's took over the premises from a third party, the
defendants required a new lease but agreed that the entire security deposit
of $520 would be refunded at the conclusion of the lease.  The previous
lessee turned over all right, title, and interest to the security deposit
to the Plaintiff.  The allegation of Count I indicates that the Plaintiff
inspected the premises and that upon vacating, the property was in good,
if not better, condition then when it was leased, and that the statements
made at the time of the new lease to return the security deposit paid by
the previous tenant and transferred to the Plaintiff were false, were made
with the intention of the Plaintiff to rely on the representations so that
the Defendants could obtain a new lease, there was a reckless disregard for the
truth or falsity of the statments by the defendants or it was false, and
it was material to the Plaintiff's signing a new lease.  Plaintiff   prayed for
judgment in actual damages plus punitive damages.

The second count of unlawful practices  dealt with the failure of
the defendants to return the security deposit after promising to do so and
their attempt to coerce the Plaintiff into settling for less than $520 by
putting on the back of their check for $384 that endorsement constituted
full and complete settlement of all claims and the failure and refusal of
the Defendants to release the $384 since it was undisputed without any release
of claims against the Defendants for the balance due to Plaintiff.   This

Case 4:20-cv-00958-DGK   Document 1-2   Filed 12/04/20   Page 453 of 502

Count II was pursuant to the Merchandising Practices Act of the State of
Missouri which includes reasonable attorney fees as damages, §407.410,
RSMO. as well as twice their damages which Plaintiff calculated to be
$2245.02. Punitive damages were also requested pursuant to Count II.

The third count dealt with wrongful failure to return a
security deposit pursuant to RSMO §535.300 and provides damages of
twice the amount lost plus all costs and interest. The fourth count
dealt with breach of contract and the failure of the defendants to
return the security deposit of $520 and the failure and refusal to even
refund the $384.00 without attaching conditions, to wit: the demand that
ALL CLAIMS against defendants be released in return for the undisputed
return of $384.00. Interest and damages were sought under this count.

The last count dealt with prima facie tort and the fact that
by refusing to refund the undisputed amount of the security deposit,
to wit: $384.00 and attaching conditions to it, the defendants,
although doing something they could legally do, did so without justification
and this operated to the damage of the plaintiff. Further, the conduct
of doing this was outrageous , willful, and wanton and punitive damages as
well as actual damages were applicable.

Subsequently defendant Weinberger filed an answer to each of
the five counts. (L.F.13-17) as well as affirmative defenses, alleging
that Counts I,II, IV, V should be dismissed since they purportedly sought
relief for failure to return a security deposit and that such relief was
provided for under §535.300 of R.S. Mo. 1986. This defendant stated that
the only remedy was under this particular section and that this was an "adequate
remdy" provided by law.

Subsequently on February 7, 1992 Defendant Bozarth and Weinberger filed a Motion to Dismiss alleging, again, that §535.300 RSMO set forth various limitations and rights with respect to security deposits and that Plaintiff could recover only twice the amount wrongfully withheld and no more. The Motion requested the Court to dismiss Plaintiff's Counts I, II, IV and V. (L.F. 10).

On March 16, 1992 the trial court heard defendant's Motion to Dismiss and dismissed, with prejudice, Counts I, II, IV, and V. Subsequently Count III was set for trial and counsel for Plaintiff sought leave to withdraw and such was denied since Plaintiff's counsel had failed to advise Plaintiff of an impending trial date. (L.F.8). Subsequently, another judge granted leave to withdraw but refused to continue the trial so that Plaintiff could obtain new counsel. On October 27, 1993 the final count, Count III, was dismissed without prejudice. (L.F. 1).

The Plaintiff appeals the dismissal of Counts I, II, IV, and V.

POINTS RELIED ON

> THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF'S
> COUNTS FOR FRAUD, UNLAWFUL PRACTICES, BREACH OF
> CONTRACT AND PRIMA-FACIE TORT IN THAT IT WAS
> NOT THE INTENT OF THE LEGISLATURE UNDER R.S.MO.
> 1986 §535.300 TO PREVENT AN INJURED PARTY FROM
> SUIT AGAINST A LANDLORD FOR TORTIOUS CONDUCT
> WHICH MAY BE ANCILLARY AND UNRELATED TO A RE-
> FUND OF A SECURITY DEPOSIT, I.E. FRAUD, UNLAWFUL
> PRACTICES. A PLAINTIFF IS NOT PRECLUDED FROM
> SUIT FOR ANY AND ALL CONDUCT OF A LANDLORD WHICH
> IS TORTIOUS, WHETHER RELATED TO REFUND OF A
> SECURITY DEPOSIT OR NOT AND IS ENTITLED TO TRIAL
> ON SUCH OTHER ALLEGATIONS.

Watkins v. Wattle, 558 S.W.2d 705, 711 (Mo. App. 1977)

Huff v. Union Electric Co., 598 S.W.2d 503 (Mo. App. 1980)

Detling v. Edelbrock, 671 S.W.2d 265 (Mo. banc 1984)

Lastra v. Intercontinental Investment Co., Inc.,
        745 S.W.2d 703 (W.D. Mo. App. 1987)

Lugo v. Vest, 336 S.2d 972

Presberg v. Chelton Realty, Inc. 344 A.2d 341, 342

Missouri Security Deposit Statute, St. Louis U. L.J., Vol. 28:1035

3 Suterland Statutory Construction, §61.01, p.78

82 C.J.S. Statutes, §393, pp. 939, 940

R.S.Mo. 1986, §535.300

Missouri Unlawful Practices Act, Chapter 407

R.S. Mo. §537.053

R.S. Mo. §287.120

- 5 -

ARGUMENT

The issue is whether Mo. Rev. Stats, Sec. 535.300 nullifies a
a plaintiff's right to recover for common law claims unrelated directly to
the actual security deposit.  It is well established by rules of construction
that all statutes in derogation of the common law are to be construed strictly.
Watkins v. Wattle, 558 S.W.2d 705, 711 (Mo.  App. 1977)  and 82 C.J.S. Statutes,
$393, pp. 939,940.  If there is a question as to whether the statute takes
away common law rights, the decision should be weighed in favor of retention
of the common law right of action.  Huff v. Union Electric Co., 598 S.W.2d 503,
(Mo. App. 1980).

In pertinent part, R.S.MO. $535.300, provides, inter-alia:

> "5.  If the landlord wrongfully withholds all or any
> portion of the security deposit, in violation of this
> section, the tenant shall recover as damages not more
> than twice the amount wrongfully withheld."

If a change is to be made in the common law, the legislative
purpose  to do so must be clearly and plainly expressed.  3 Sutherland
Statutory Construction $61.01, p. 78.

Statutes which are in derogation of the common law will not be
extended by implication beyond their precise terms or obvious import, and will
not be held to be in derogation of the common law unless there is an irreconcilable
repugnance, or unless the statute itself shows that such was the object and
intention of the lawmakers.  82 C.J.S. Statutes, $393., pp. 939, 940.

With respect to $535.300 R.S.MO., the legislature has failed to
clearly and plainly express its desire to nullify plaintiff's right to obtain
unrelated damages when, for example, the landlord issues a check and
attempts to coerce the plaintiff to release "all claims" in return for ·release of

the portion of a security deposit that is undisputed.  The legislature has
failed to clearly and plainly express its desire to nullify plaintiff's right
to obtain unrelated damages  when, for example, a landlord makes false and
fraudulent representations to a tenant in order to obtain a new lease when
a tenant has agreed to take over the existing lease of the prior tenant.
The legislature has failed to clearly and plainly express its desire to nullify
plaintiff's right for a claim under Missouri Unlawful Practices Act,
Mo. Rev. Stats. Sec., Chapter 407,for the actions of a landlord in refusing
to even refund an undisputed portion of a security refund unless the tenant
agrees to release "all claims" against the landlord and it has failed to
indicate that the tenant is not entitled to the attorney fees provided for under
the M.U.P.A. (Missouri Unlawful Practices Act)

     The general rule is that a statutory right of action shall not
be deemed to supersede and displace remedies otherwise available at common law
in the absence of language to that effect unless the statutory remedy fully
comprehends and envelopes the remedies provided by common law.  Detling v.
Edelbrock, 671 S.W.2d 265 (Mo. banc 1984)  Arguendo, one might say that
Mo.R.Stats. Sec. 535.300 fully comprehended an action by a tenant against a
landlord for breach of contract for the failure of the landlord to refund a
security deposit, BUT NOTHING MORE!  Such, however, is not admitted herein.

     The language of the statute does not support  the argument that
plaintiff's right to common law recovery has been abrogated by necessary
implication.  §535.500 R.S.Mo. merely limits recovery for a claim based on
the statute to an amount not to exceed twice the amount "wrongfully withheld".

     Manifestly, this statute does not speak to a cause of action
for fraud, nor to an action under another statute, the Missouri Unlawful
Practices Act, Chapter 407.  The statute fails to address a situation and facts

applicable to this particular case.

That the legislature did not intend to impliedly abrogate the plaintiff's rights to recover on unrelated, but ancillary claims, is also suggested by the fact that the legislature commonly makes specific mention of a desire to limit or nullify common law recovery in statutes which create remedies or rights of recovery. See e.g. §537.053 R.S.MO. (Dram Shop Act) and §287.120 R.S.MO. (Worker's Compensation Act).

Missouri Security Deposit Statute, St. Louis University Law Journal, Vol 28:1035, discussed in detail Mo. Rev. Stats. Sec. 535.300. The article indicates that prior to the passage of section 535.300, there was no statute and very little common law, pertaining to tenant security deposits in Missouri. The article states that: "[T]he apparent reason for the paucity of the common law was that, without statutory provisions for either penalties or attorney's fees, litigation over the relatively small sums involved in landlord-tenant disputes generally was not worthwhile in terms of either money or time. Without the strength of statute establishing definite limits and penalties, a tenant generally had no incentive to litigate. Most of the cases that had been brought were heard in small claims courts and were unreported."

The article further indicates that "The Statute now provides tenants with the right to recover up to double the amount of the deposit wrongfully withheld. This provision should increase the number of cases litigated and reported. Security deposit litigation has increased in those states that have adopted similar laws over the past fifteen years. The same undoubedly will occur in Missouri, despite certain weaknesses in the law that may serve as disincentives to litigation."

A New Jersey court, the article indicates at P-1044, held that its statute similar to Sec. 535.300, was inapplicable to commercial tenancies because of its finding that the legislative intent behind the statute was to aid residential tenants. [Presberg v. Chelton Realty, Inc. 344 A.2d 341, 342].

The author of <u>Missouri Security Deposit Statute</u> indicates at P-1045 of the article: "Based upon the wording of the Missouri statute, and upon the past versions of the bill, it is reasonable to assume that the law was aimed solely at residential tenancies." If this were true, then the Plaintiff in the case at bar, a corporation, is not limited in any way to redress under Sec. 535.300, even for the breach of contract count!

The St. Louis University Law Journal article concludes by indicating that: "The incentive of double recovery by tenants, especially for those with large deposits, will encourage litigation. . . The law will be worthwhile if it merely encourages more speedy and equitable return of security deposits to tenants. <u>THAT, AFTER ALL, IS ITS PURPOSE</u>." (emphasis added). Further, the article indicates that compliance with the Statute will encourage speedier return of security deposits. Until now, the article states, landlords generally have been able to retain deposits for long periods of time, with the tenant having little recourse.

There can be no doubt as to what the intent of the Missouri legislature was --- it enabled a tenant to recover a small amount of money to which he was entitled for a refund of a security deposit and provided some degree of incentive on the part of the landlord, with the double recovery provision and the 30 day provision, to treat tenants fairly and more equitably. The statute also transferred the burden from the tenant, i.e. on a statutory action from tenant, to the landlord; a landlord is forced to do certain things under the statute within a certain period of time.

The fact that a similar statute in New Jersey was construed only to applicability to a residential tenant also buttresses the point that this statute was designed for the lower-rent and lower-security deposit situations.

Last but not least is the case of <u>Lastra v. Intercontinental</u>
<u>Investments Company, Inc.</u>, 745 S.W.2d 703, (Mo. App. 1987) in which the
Western District  Missouri Court of Appeals held that a statute that provides
affirmative remedy does not take away the common-law remedy, but confines
an injured party to the statutory remedy when a new remedy provides a new
right or means to acquire the right and is an "adequate remedy."  The
issue in <u>Lastra</u> was whether §535.300, RSMO 1986 limited the amount appellants
might recover to twice the sum deposited and withheld.  In <u>Lastra</u>, the trial
court allowed a trial and at the conclusion, ruled that the plaintiff's
"had not offered substantial, competent evidence of any misapplication of the
security deposit" and further held that the damages were limited by §535.300.
The Plaintiffs in that case had filed a count for conversion of the funds
in the landlord's possession.  In <u>Lastra</u>, "the remainder of the case was submitted
to the jury for decision in accordance with the statute."

The ruling on submission of a count for conversion was ruled upon
on the basis that the Plaintiffs  had failed to make a submissible case for the
jury and the Court of Appeals, Western District, therefore did not consider this
claim.  The <u>Lastra</u>  appellate court indicated that prior to the Statute,
a tenant could resort to an action for conversion or for breach of contract.
No mention is made by that Court with regard to unrelated and ancillary causes of
action against the landlord as are present in the instant case.   <u>Lastra</u>
reiterated the reduced burden upon the tenant to obtain his security deposit back:
"The tenant-claimant need only show that the deposit was not refunded within
thirty days and that no itemized list of damages to which the deposit was applied
has been furnished by the landlord."   <u>Lastra</u> found that the Plaintiff's claims,
IN THAT CASE, fell "squarely within the provisions of Sec. 535.300, RSMO 1986.

It is noteworthy that there was a dissent filed in Lastra by Judge Pritchard, who opined at 708: "The statute is therefore no bar to appellants' action because the statute, if in derogation of the common law, must be construed strictly. [Citing Watkins, supra, and Huff, supra]. Pritchard went on to state in the dissent that "If there is a close question, as there is here, the decision should be weighed in favor of retention of the common law right of action." He even suggested that if there were any post-opinion motions filed in that Court of Appeals, that the Appellant should apply to the Supreme Court of Missouri for transfer on the ground of general interest and importance. Apparently the Appellant, because of the amount of money involved, elected not to file any post-opinion motion and seek transfer. The dissent in Lastra indicated that the judgment "should be reversed and the case remanded upon appellants' claim for conversion and for punitive damages."

In the case at bar, not only is there a claim for breach of contract, but there are also claims involving fraudulent conduct and claims relating to another statute, the Missouri Unlawful Practices Act. If the dissent would reverse in Lastra where there was only an alternate claim for conversion, surely unrelated fraudulent conduct and violation of another Missouri Act would mandate that those other claims be heard. Perhaps the Court should consider also, as did the New Jersey Court, that such a statute as RSMO Sec. 535.300 is elective as to a plaintiff corporation which is going to require counsel under Missouri law in any event. Further, it should be kept in mind that the pleading in Lastra wasn't merely dismissed on the pleadings, but went to trial.

Other states have re-affirmed that statutes similar to Missouri's §535.300 RSMO 1986 were for the purpose of providing a tenant with a remedy for an otherwise economically unfeasible wrong. See: Lugo v. Vest, 336 S.2d 972

The Lugo court stated at P-973: "The provisions . . . were enacted by our legislature to allow a tenant with an economically unfeasable litigious right to protect himself from arbitrary refusal by a landlord to return his deposit. [Citations omitted]." The Missouri Legislature enacted RSMO §535.300 for the exact same reason and the reading-in of anything further abrogates the intent of this statute and denies a plaintiff the right to litigate other matters unrelated to the specific return of a security deposit, even if, arguendo, one does not agree with the dissent in Lastra.

<u>C O N C L U S I O N</u>

In light of the foregoing, the plaintiff respectfully requests this Court to reverse and remand this action for trial on all counts and to find that Missouri §535.300 RSMO 1986 not only does not preclude a common law cause of action for breach of contract, but cannot be found to exclude actions under other statutues, e.g. Missouri Unlawful Practices Act, Chapter 407, and for other common law actions such as fraud and prima-facie tort.

Respectfully submitted,

D. Johnson, Attorney for Appellant
Property Exchange Sales, Inc.
625 N. New Ballas #200
St. Louis, Missouri 63141

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **RHONDA CHEATEM,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC** | |
| **Defendant.** | |

**REPLY SUGGESTIONS IN SUPPORT OF**
**DEFENDANT LANDMARK REALTY OF MISSOURI, LLC'S MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1) AND**
<u>**FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)**</u>

Defendant Landmark Realty of Missouri, LLC ("Landmark") files its reply suggestions in support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) and for Failure to State a Claim Under Rule 12(b)(6) (Doc. #33), filed October 7, 2020.

## **Table of Contents**

Table of Authorities ............................................................................................................. ii

I.  Plaintiff has Not Satisfied Her Burden to Demonstrate She has Standing
    to Bring Any Claims Regarding the $450 "Security Deposit" Charge ................................1

II. The Amended Complaint Should be Dismissed for Failure to State a Claim
    Because All of Plaintiff's Claims Fail as a Matter of Law on the Facts Alleged .................5

    A.  Count I Fails to State a Claim Under the Security Deposit Statute Because
        the $450 Charge was Not a "Security Deposit" as Defined in that Statute .................5

    B.  Counts II and III Fail to State Claims for Violation of the MMPA Based on
        the $450 Charge.......................................................................................................7

    C.  Counts III and IV Fail to State Claims for Excessive and Unreasonable Fees ...........10

Conclusion ...........................................................................................................................10

<u>**Table of Authorities**</u>

<u>**Cases**</u>

*Battis v. Hofmann*,
   832 S.W.2d 937 (Mo. Ct. App. 1992) ............................................................................3, 7-8

*Braitberg v. Charter Commc'ns, Inc.*,
   836 F.3d 925 (8th Cir. 2016) .................................................................................................2

*Brown v. Mo. Bd. of Probation & Parole*,
   517 S.W.3d 24 (Mo. Ct. App. 2016)......................................................................................8

*Chochorowksi v. Home Depot U.S.A.*,
   404 S.W.3d 220 (Mo. 2013) ............................................................................................. 8-9

*Cuellar-Aguilar v. Deggeller Attractions, Inc*,
   812 F.3d 614 (8th Cir. 2015) .................................................................................................2

*Dress v. Capital One Bank (USA), N.A.*,
   1:19-cv-00343, 2019 WL 3451304 (E.D. Va. July 30, 2019) ...................................................1

*Driver v. BPV Market Place Investors, LLC*,
   No. 4:17–CV–1607 CAS, 2018 WL 3363795 (E.D. Mo. July 10, 2018) ...............................10

*Ensminger v. Credit Law Ctr., LLC*,
   No. 19-2147-JWL, 2019 WL 4341215 (D. Kan. Sept. 12, 2019)............................................4

*Golan v. FreeEats.com, Inc.*,
   930 F.3d 950 (8th Cir. 2019) .................................................................................................2

*Hargis. Access Capital Funding, LLC*,
   674 F.3d 783 (8th Cir. 2012) .................................................................................................1

*Huch v. Charter Communications, Inc.*,
   290 S.W.3d 721 (Mo. 2009) ..................................................................................................9

*Lastra v. Intercontinental Invs. Co.*,
   745 S.W.2d 703 (Mo. Ct. App. 1987) ............................................................................... 7-8

*Mansfield v. Horner*,
   443 S.W.3d 627 (Mo. Ct. App. 2014) ...................................................................................5

*Martin v. Consumer Adjustment Co.*,
   No. 16-01180-cv-ODS, 2017 WL 6570210 (W.D. Mo. Dec. 22, 2017)...................................2

*Park Irmat Drug Corp. v. Express Scripts Holding Co.*,
    911 F.3d 505 (8th Cir. 2018) .................................................................................. 10

*PDQ Tower Servs., Inc. v. Adams*,
    213 S.W.3d 697 (Mo. Ct. App. 2007) ......................................................................... 7

*Prop. Exch. & Sales, Inc. v. King*,
    863 S.W.2d 12 (Mo. Ct. App. 1993) ............................................................................ 7

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .......................................................... 2

*State ex rel. Nixon v. Estes*,
    108 S.W.3d 795 (Mo. Ct. App. 2003) ......................................................................... 5

*Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*,
    533 S.W.3d 720 (Mo. 2017) ...................................................................................... 5

*Toben v. Bridgestone Retail Operations, LLC*,
    751 F.3d 888 (8th Cir. 2014) ................................................................................9-10

*Tovar v. Essentia Health*,
    342 F. Supp. 3d 947 (D. Minn. 2018) .......................................................................... 1

*Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017) ................................... 2

*Wright v. Oasis Legal Fin., LLC*,
    No. 4:19cv926 RWS, 2020 WL 1433645 (E.D. Mo. Mar. 24, 2020) ......................... 10

*Younker v. Inv. Realty, Inc.*,
    461 S.W.3d 1 (Mo. Ct. App. 2015) ............................................................................. 6

## Statutes, Rules and Regulations

Mo. Rev. Stat. § 535.300 ....................................................................................... 3, 5-6

12 C.F.R. § 1026.12 ................................................................................................... 3

12 C.F.R. § 1026.13 ................................................................................................... 3

**I.    Plaintiff has Not Satisfied Her Burden to Demonstrate She has Standing to Bring Any Claims Regarding the $450 "Security Deposit" Charge**

Plaintiff does not dispute that the claims in Counts I, II and III are predicated on alleged wrongful retention of the $450 "security deposit" charged in connection with a lease application. Plaintiff concedes, however, that the $450 fee was charged to her credit card and that this charge was reversed. Indeed, the undisputed evidence—including the declaration of Landmark Regional Director Jonathan Marcus (*see* Doc. #34-1 ¶ 2) and Plaintiff's credit card account statement (*see* Doc. #34-2)—shows the $450 charge was credited back to Plaintiff's account less than 30 days after the charge was made. To be perfectly clear, Plaintiff never paid the $450 fee and was never obligated to pay her credit card bill including that fee because the charge was reversed within a single billing cycle. Because Plaintiff has no out-of-pocket loss after the chargeback, she has no injury in fact and lacks standing to bring claims based on the $450 charge. *Hargis Access Capital Funding, LLC*, 674 F.3d 783, 791 (8th Cir. 2012) (finding lack of standing because plaintiff "suffered no injury because she did not directly pay the processing or administration fee").[1]

Plaintiff argues Landmark "refused to refund the security deposit on demand" and "from the moment that Plaintiff's security deposit was withheld by [Landmark] for an unlawful reason, [she] was entitled to a statutory penalty twice the amount of her deposit," which she has not yet received. (Doc. #35 at 6, 9.) For several reasons, the purported statutory penalty does not satisfy the injury in fact requirement for standing.

First, the availability of a statutory penalty on Plaintiff's claim in Count I under the Missouri security deposit statute does nothing to establish injury in fact on Plaintiff's separate claims

---

[1] Landmark cites additional cases supporting this proposition, including *Tovar v. Essentia Health,* 342 F. Supp. 3d 947, 955 (D. Minn. 2018), and *Dress v. Capital One Bank (USA), N.A.*, 1:19-cv-00343, 2019 WL 3451304, at *3 (E.D. Va. July 30, 2019). Plaintiff suggests that these cases are inapposite because they involved voluntary reimbursements by the defendants that negated alleged injuries in fact. This is immaterial because neither case turns on whether the reimbursement was voluntary or involuntary; in either event, the out-of-pocket loss is eliminated and standing disappears. The same is true here—regardless of how the charge reversal on Plaintiff's credit card was initiated, it eliminated the charge, negated any out-of-pocket-loss, and deprived Plaintiff of standing.

in Counts II and III under the MMPA—which does not provide a similar statutory penalty. In fact, Plaintiff does not even pray for double recovery of the $450 charge in the requests for relief on the MMPA claims. (*Compare* Am. Compl., Doc. #31 at 7 (prayer for relief on Count I), *with id.* at 9, 12 (prayers for relief on Counts II and III).) It is well settled that "standing is not dispensed in gross" and that "a plaintiff must demonstrate standing for each claim [she] seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). Because Plaintiff has not independently shown her standing on Counts II and III for MMPA violations based on the $450 charge that was reversed, those claims should be dismissed for lack of subject matter under Rule 12(b)(1).

Even on Count I, potential availability of a statutory penalty does not establish a concrete injury in fact for purposes of standing when Plaintiff cannot otherwise demonstrate she has been harmed. Stripped of real financial injury following reversal of the $450 charge, Plaintiff's claim is just "a bare procedural violation" that is insufficient for standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *see also Martin v. Consumer Adjustment Co.*, No. 16-01180-cv-ODS, 2017 WL 6570210, at *3 (W.D. Mo. Dec. 22, 2017) ("Following *Spokeo*, the Eighth Circuit requires a plaintiff to identify a risk of real harm that is neither speculative not hypothetical in cases alleging violations of procedural rights." (citing *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016))).[2]

---

[2] Citing *Cuellar-Aguilar v. Deggeller Attractions, Inc*, 812 F.3d 614 (8th Cir. 2015), Plaintiff argues she satisfies the standing requirement without actual damages if she sues for statutory damages. (Doc. #35 at 7.) *Cuellar-Aguilar* was decided before the United States Supreme Court decision in *Spokeo* and does not reflect current Eighth Circuit decisions holding, in light of *Spokeo*, that a mere statutory violation is not sufficient to confer standing. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 957-58 (8th Cir. 2019) ("Our prior statement that 'injury in fact may thus be shown solely by the invasion of a legal right that Congress created' is no longer good law in light of the Supreme Court's subsequent holding in *Spokeo* . . . ." (internal brackets and quotations omitted)).

More fundamentally, Plaintiff is wrong that she is entitled to a statutory penalty of double damages from the "moment" a security deposit is withheld. Even if Plaintiff was correct that the $450 charge constituted a "security deposit" under the Missouri security deposit statute and that Landmark wrongfully withheld that deposit for a brief period of time, the statute allows a 30-day window for return of a security deposit. Mo. Rev. Stat. § 535.300.3(1) ("Within thirty days after the date of termination of the tenancy, the landlord shall: (1) Return the full amount of the security deposit . . . ."). As a matter of Missouri law, no violation of the statute occurs unless a security deposit is withheld *beyond* that 30-day window. *Battis v. Hofmann*, 832 S.W.2d 937, 940 (Mo. Ct. App. 1992) (holding that to recover under Section 535.300, the tenant must "show the deposit was not refunded within thirty days"). Because the record proves the $450 charge was credited back to Plaintiff's account less than 30 days after the charge was made, she cannot claim a violation of the Missouri security deposit statute and is precluded from recovering a statutory penalty on her claim in Count I of the Petition.

To sidestep this, Plaintiff asserts she was only given a "temporary" account credit of the $450 charge, which was not "released" until more than 30 days after the charge was made. (Doc. #35 at 8.) This argument is wrong. Under the billing error regulations of the Truth in Lending Act, Plaintiff was immediately relieved of any obligation to pay the $450 charge when she disputed the charge with her credit card company. *See* 12 C.F.R. § 1026.13(d) ("Until a billing error is resolved . . . [t]he consumer need not pay (and the creditor may not try to collect) any portion of any required payment that the consumer believes is related to the disputed amount (including related finance or other charges).").[3] This means she was not injured by the $450 charge because the dispute eliminated any payment obligation or out of pocket loss.

---

[3] The same is true if the $450 charge is treated as "unauthorized charge" rather than a "billing error." *See* 12 C.F.R. § 1026.12(c)(1) ("When a person who honors a credit card fails to resolve satisfactorily a

The letter from Plaintiff's credit card company attached to her response (*see* Doc. #35-1) confirms she was given a full credit of the $450 payment shortly after the charge was first made to her account on November 20, 2019. This is also reflected on her credit card account statement. (*See* Doc. #34-2.) The fact that this credit was "temporary" is immaterial because the undisputed chargeback was resolved in Plaintiff's favor and the $450 charge was not reinstated. There was no "release" of the temporary credit at a later time, as Plaintiff asserts. By law, the "temporary" credit was immediately applied for the full amount and never undone. Thus, as indicated in the Truth in Lending Act regulations, Plaintiff was never obligated to pay the $450 charge and was never at a loss of money that might constitute an injury in fact.

This also debunks Plaintiff's argument that she lost the time value of money on the credit card charge. (Doc. #35 at 8.) This is not a theory of injury alleged in the Amended Complaint, but even if it were it would not constitute a sufficient injury in fact for standing because this was a *credit* transaction and the $450 charge was made *and* reversed in a single billing cycle before any payment became due. Simply put, Plaintiff has no injury in lost time value of money because she never paid any money out of pocket to Landmark, her credit card company or otherwise. *Cf. Ensminger v. Credit Law Ctr., LLC*, No. 19-2147-JWL, 2019 WL 4341215, at *2 (D. Kan. Sept. 12, 2019) ("[T]he loss of the time value of *money that was paid before it should have been* does constitute a concrete injury for purposes of standing." (emphasis added)).

Plaintiff's lack of standing deprives the Court of subject matter jurisdiction on Counts I, II and III, which all depend entirely on alleged (but non-existent) injury from the $450 "security deposit" charge. This is also true for Count IV to the extent it is based on the same charge. The claims should be dismissed accordingly.

---

dispute as to property or services purchased with the credit card in a consumer credit transaction, . . . [t]he cardholder may withhold payment up to the amount of credit outstanding for the property or services that gave rise to the dispute and any finance or other charges imposed on that amount.").

## II. The Amended Complaint Should be Dismissed for Failure to State a Claim Because All of Plaintiff's Claims Fail as a Matter of Law on the Facts Alleged

### A. Count I Fails to State a Claim Under the Security Deposit Statute Because the $450 Charge was Not a "Security Deposit" as Defined in that Statute

The Missouri security deposit statute applies to a "deposit of money or property, however denominated, which is furnished by a tenant to a landlord to secure the performance of any part of **the rental agreement**." Mo. Rev. Stat. § 535.300.8 (emphasis added). Plaintiff admits she did not have a rental agreement, and this simple fact causes her claim under Section 535.300 to fail as a matter of law because without a rental agreement, no payment of money can be considered a "security deposit" for purposes of the statute.

Plaintiff argues the $450 charge was a "security deposit" under the statute because that term was used in Plaintiff's application form. Plaintiff cites no authority for this proposition, and Missouri law holds that Section 535.300 (and its definitional provisions) must be interpreted and applied according to the statute's express language, which cannot be enlarged by the parties' contract or judicial decision. *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. 2017); *Mansfield v. Horner*, 443 S.W.3d 627, 660 (Mo. Ct. App. 2014); *State ex rel. Nixon v. Estes*, 108 S.W.3d 795, 798 (Mo. Ct. App. 2003). Plaintiff also fails to meaningfully address the language in the application form explaining to prospective tenants (like Plaintiff) that the $450 charge is not treated as a "security deposit" for purposes of Section 535.300 until a separate lease agreement is made. (Doc. #34-1, Ex. 1-B at n.1.) This puts to rest any suggestion that the charge was intended to be a "security deposit" under Section 535.300.

Plaintiff argues the $450 charge was a security deposit because the statute covers deposits "however denominated." This is backwards—the "however denominated" language does not expand the statute to cover whatever the parties happen to describe as a "security deposit"; rather, it prevents a landlord from avoiding the statute by using a different name for a fee that otherwise

meets the statutory definition of "security deposit." *Younker v. Inv. Realty, Inc.*, 461 S.W.3d 1, 8 (Mo. Ct. App. 2015) (noting the "however denominated" language "indicates that the legislature intended to control security deposits regardless of the contractual language used in the lease"). The "however denominated" language has no bearing here because the $450 charge was not part of a "rental agreement" and therefore does not meet the statutory definition of "security deposit" regardless of what it was called in the application form.

Plaintiff also argues the $450 charge is covered by the security deposit statute because the application is "part" of a rental agreement. This misconstrues the statute's reference to "any part of the rental agreement," which describes the obligations secured by the payment, including obligations to pay rent and repair damage to the property. Without a rental agreement, the parties have no obligations and nothing to secure, which is why a fee outside of a rental agreement (like Plaintiff's $450 charge) is not considered a "security deposit" for purposes of Section 535.300. Other provisions of the security deposit statute make equally clear that a formal rental agreement is necessary for a "security deposit" to exist. *See, e.g.*, Mo. Rev. Stat. § 535.300.2 (noting that a security deposit is held for "the tenant, who is a party to the rental agreement"); *id.* § 535.300.5 (explaining procedure for disposing of security deposit "following the termination of the rental agreement").

Plaintiff's remaining arguments are difficult to follow and do not undermine Landmark's position based on the clear language of the security deposit statute. The parade of abuses Plaintiff imagines and the supposed unfairness of calling a fee a "security deposit" when it does not meet the statutory definition are irrelevant to whether Plaintiff states a viable claim under the security deposit statute. Because Plaintiff has no valid argument that the $450 charge is a "security deposit" as defined in Section 535.300.8, the claim in Count I fails as a matter of law and is subject to dismissal on this basis.

**B.** **Counts II and III Fail to State Claims for Violation of the MMPA Based on the $450 Charge**

Plaintiff does not dispute that Counts II and III for violation of the MMPA are based on the underlying violation of the Missouri security deposit statute alleged in Count I. If the Court finds that Count I fails because the $450 charge was not a "security deposit" for purposes of Section 535.300, it necessarily follows that Counts II and III should be dismissed as well.

**Exclusive Remedy**

And even if the $450 fee could be considered a "security deposit" for purposes of stating a viable claim in Count I under Section 535.300, Counts II and III under the MMPA still fail as a matter of law because Section 535.300 is Plaintiff's exclusive remedy for alleged wrongful withholding of that security deposit. (Doc. #34 at 10-11.) Missouri courts clearly recognize that Section 535.300 "provides the tenant [her] exclusive remedy for the wrongful withholding of a security deposit." *Battis*, 832 S.W.2d at 940. This is because the statute creates a "confined" remedy that "limit[s] the allowance of damages to not more than twice the amount of the deposit." *Lastra v. Intercontinental Invs. Co.*, 745 S.W.2d 703, 705-06 (Mo. Ct. App. 1987). Importantly, this rule has been applied specifically against MMPA claims alleging wrongful withholding of a security deposit. *Prop. Exch. & Sales, Inc. v. King*, 863 S.W.2d 12, 15 (Mo. Ct. App. 1993).

Plaintiff nitpicks *King*, but that decision is still cited with favor and supported by a large body of case law confirming the exclusivity of Section 535.300 against a variety of claims related to withheld security deposits. *PDQ Tower Servs., Inc. v. Adams*, 213 S.W.3d 697, 700 (Mo. Ct. App. 2007) (citing *King* for proposition that "section 535.300 is the exclusive remedy for tenants to recover security deposits"); *Younker*, 461 S.W.3d at 7 (holding that Section 535.300 is the "exclusive remedy for the wrongful with-holding of a security deposit"). Plaintiff points out that other statutes have more explicit exclusivity provisions, but this does not preclude Section 535.300 from also

providing an exclusive remedy as indicated in *King*, *Lastra*, *Battis*, *Younker* and *PDQ Tower Services*. Plaintiff suggests MMPA-related regulations promulgated by the Missouri Attorney General negate the holding in *King*, but Plaintiff cites no supporting authority and ignores the fact that Missouri statutes are controlling over administrative regulations. *Brown v. Mo. Bd. of Probation & Parole*, 517 S.W.3d 24, 26-27 (Mo. Ct. App. 2016). Plaintiff also cites no authority indicating that MMPA claims should be carved out of Section 535.300's otherwise exclusive remedy, particularly in light of the controlling holding to the contrary in *King*.

Plaintiff notes that Section 535.300 was amended in 2016 from stating that "the tenant shall recover as damages not more than twice the amount wrongfully withheld" to stating more conclusively that "the tenant shall recover as damages twice the amount wrongfully withheld." Removing the words "not more than" simply eliminated the court's discretion to award damages less than twice the amount of the wrongfully withheld security deposit. *See Battis*, 832 S.W.2d at 940-41 (discussing legal effect of pre-amendment language). Plaintiff does not explain how this undermines the exclusivity of the statute; if anything, it reinforces the statute's exclusivity by reflecting the intent of the Missouri legislature to establish certain recovery of a specific amount for a violation of the statute no matter what the circumstance of the wrongful withholding. *See Lastra*, 745 S.W.3d at 705-06 (noting that other claims for relief regarding a security deposit are "preempted by the legislative enactment" of Section 535.300 that capped available damages for such claims).

### Chochorowski

Plaintiff also fails to meaningfully distinguish the Missouri Supreme Court decision in *Chochorowksi v. Home Depot U.S.A.*, 404 S.W.3d 220 (Mo. 2013), which provides a separate basis for dismissing Plaintiff's MMPA claims challenging clear terms of the application form she knowingly and voluntarily signed. As noted in Landmark's opening brief (Doc. #34 at 11-13), *Chochorowski* holds that a plaintiff who voluntarily enters into an agreement with full appreciation and acceptance of the terms cannot later claim to have been deceived under the MMPA about those terms. 404

S.W.3d at 228-29. The facts in that case are virtually identical to the facts here—the terms of the lease application were outlined clearly in writing, with Plaintiff's review and acceptance of the terms indicated by her initialing of the relevant paragraphs and her signature at the end of the one-page form confirming "*agreement to be bound by the policies stated above regarding fees and deposits*." (Doc. #34-1, Ex. 1-B at 1.) Plaintiff does not argue—let alone allege—she was somehow prevented from understanding the amount of fees she would be paying or the circumstances in which those fees would become non-refundable.[4] Plaintiff also does not dispute she submitted false information on her application form, which rendered the fee non-refundable as agreed.

Plaintiff was not forced to sign the application form and agreed to the $450 charge knowing the terms of the deal. She cannot complain of her decision. She attempts to distinguish *Chochorowski* by arguing the terms of her deal with Landmark were unlawful under Section 535.300, but this only reinforces the fact that her claim fails as a matter of law if it is determined that the Missouri security deposit statute does not apply and/or has not been violated.

Citing *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721 (Mo. 2009), Plaintiff further asserts that "this type of defense is not available to Defendant in MMPA actions." (Doc. #35 at 16-17.) This is a specious argument given the subsequent controlling holding of the Missouri Supreme Court in *Chochorowksi* establishing the viability of that very defense. *See also Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 897 (8th Cir. 2014) ("Neither the denomination of the fee as a 'shop supplies fee' nor the clear and conspicuous disclosures regarding the fee have the tendency to mislead consumers. In the absence of an unlawful practice, plaintiff cannot prevail on her MMPA claim."). Because the $450 fee was conspicuously disclosed and Plaintiff does not allege any facts indicating anything other than her knowing and voluntarily agreement to that fee, her MMPA claims based on that fee should be dismissed for failure to state a claim.

---

[4] Plaintiff cites Paragraph 59 of her Amended Complaint, but this refers just to an after-the-fact call about her request for refund of the $450 charge. *Chochorowksi* and other Missouri cases foreclose this theory of liability. (*See* Doc. #34 at 13.) Plaintiff has no response to this argument.

### C. Counts III and IV Fail to State Claims for Excessive and Unreasonable Fees

As with the $450 "security deposit" fee, Plaintiff's claims in Counts III and IV regarding the $150 administration fee and $40 application fee fail as a matter of law under *Chochorowski* because Plaintiff knowingly and voluntarily agreed to pay those fees that were conspicuously disclosed in the application form.

Plaintiff also fails to sufficiently plead unconscionability. She insists the parties' unequal bargaining power is unconscionable, but this is not sufficient. *See Driver v. BPV Market Place Investors, LLC*, No. 4:17–CV–1607 CAS, 2018 WL 3363795, at *8 (E.D. Mo. July 10, 2018) ("[U]nequal bargaining power of the parties is not, in and of itself, a sufficient basis to find unconscionability."). Plaintiff fails to grasp that she must plausibly allege both procedural and substantive unconscionability to state a viable claim. (Doc. #35 at 14-15.) She has not alleged either and the claims should be dismissed. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 513 (8th Cir. 2018); *Wright v. Oasis Legal Fin., LLC*, No. 4:19CV926 RWS, 2020 WL 1433645, at *4 (E.D. Mo. Mar. 24, 2020).

Plaintiff suggests more generally that Landmark failed to act in good faith, but this theory of liability is <u>not</u> alleged in the Amended Complaint. In any event, a claim on this basis under the circumstances alleged is not actionable. *Toben*, 751 F.3d at 897 ("The practice of charging the fee or calling the fee a 'shop supplies fee,' is not deceptive, misrepresentative, or unfair as a matter of law. Defendant's disclosures regarding the method by which the fee is calculated and the reasons for the fee are clear, simple, and straightforward.").

### Conclusion

For these reasons, the court should dismiss the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and/or failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

**THE PORTO LAW FIRM**

By: _/s/ Nicholas J. Porto_
      Nicholas J. Porto     MO #56938
      1600 Baltimore, Suite 200A
      Kansas City, Missouri 64108
      Telephone:  816.463.2311
      Facsimile:  816.463.9567
      nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By: _/s/ Stephen J. Moore_
      Stephen J. Moore     MO #59080
      1968 Shawnee Mission Pkwy, Suite 100
      Mission Woods, Kansas 66205
      Telephone:  816.471.0909
      Facsimile:  816.471.3888
      sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 4th day of November, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

      _/s/ Stephen J. Moore_
      Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| RHONDA CHEATEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 20-00381-CV-W-BP |
| | ) | |
| LANDMARK REALTY OF MISSOURI, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER REMANDING CASE TO STATE COURT

Plaintiff filed this suit in state court in April 2020, asserting various claims arising from Defendant's alleged failure to return a $450 security deposit that Defendant believed she was owed. (Doc. 1-1.) Defendant removed the case to federal court in May 2020, asserting that federal jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and more than $75,000 is in controversy. (Doc. 1, ¶¶ 4-7.)[1] In July, however, Defendant changed its position with respect to the Court's jurisdiction and asked that the case be dismissed because Plaintiff does not have standing. (Doc. 14, pp. 4-6.) The motion alternatively asked the Court to dismiss the case because Plaintiff failed to state a claim. Plaintiff filed an Amended Complaint, (Doc. 31), and the Court denied Defendant's motion as moot. (Doc. 32.) Defendant then filed another motion directed to the Amended Complaint, again contending that Plaintiff lacks standing. (Doc. 34, pp. 4-6.)

The party bringing a case to federal court bears the burden of establishing jurisdiction. *E.g., Moore v. Kansas City Public School*, 828 F.3d 687, 691 (8th Cir. 2016). Defendant sought this Court's jurisdiction, so Defendant must demonstrate that it exists. *E.g., id.*; *see also* 28 U.S.C. §

---

[1] The Court has doubts as to whether it is legally possible for attorney fees and punitive damages to be awarded in a sufficient amount to make the amount in controversy exceed $75,000. The Court's holding makes it unnecessary to

1446(a) (requiring removing defendant or defendants to state "the grounds for removal" in the Notice of Removal). If the Court lacks jurisdiction the case must be remanded. 28 U.S.C. § 1447(c). This includes circumstances where jurisdiction is lacking due to an absence of standing. *E.g., Hughes v. City of Cedar Rapids*, 840 F.3d 987, 993 (8th Cir. 2016).[2]

Thus, Defendant removed this case to federal court and thereby took the responsibility of establishing that jurisdiction exists. After removing the case, Defendant has reversed its position and now contends that jurisdiction is lacking. Given Defendant's change in position, the Court believes the appropriate course is to remand the case to state court.

IT IS SO ORDERED.

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATE: November 12, 2020

_____

consider this issue.
[2] Remand when standing is absent is the appropriate course because the standing doctrine is derived from Article III's "case or controversy" requirement, *e.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), but Article III does not apply to the states. Moreover, it is not the federal courts' role to dictate whether state courts have jurisdiction.

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| RHONDA CHEATEM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 20-00381-CV-W-BP |
| | ) | |
| LANDMARK REALTY OF MISSOURI, | ) | |
| LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## JUDGMENT IN A CIVIL CASE

_____  **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

_____  **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

___X____  **Decision by  Court.**  This action has come before the Court as a briefed matter and a decision has been rendered.

ORDER REMANDING CASE TO STATE COURT

Dated  :  11/12/2020

/s/Paige Wymore-Wynn
 Clerk of Court

/s/ Kelly McIlvain
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

**RHONDA CHEATEM,**

                    **Plaintiff,**

**v.**                                          **Case No. 4:20-cv-00381-BP**

**LANDMARK REALTY OF MISSOURI,**
**LLC**

                    **Defendant.**

---

## MOTION FOR RECONSIDERATION OR MODIFICATION OF THE COURT'S
## ORDER REMANDING CASE TO STATE COURT
## <u>WITH SUGGESTIONS IN SUPPORT</u>

Defendant Landmark Realty of Missouri, LLC ("Landmark") hereby moves the Court for reconsideration or modification of its Order Remanding Case to State Court (Doc. #37). In support of this motion, Landmark states as follows:

This Court has authority to reconsider and/or modify its remand order until the remand order is certified to the state court. *Seedman v. U.S. Dist. Ct. for Central Dist. of Cal.*, 837 F.2d 413, 414 (9th Cir. 1988) ("We now so hold: after certification to the state court a federal court cannot vacate a remand order issued under section 1447(c)."). That has not yet occurred in this case. 28 U.S.C. § 1447(c) ("A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.").

The Court has ordered remand of this action to state court because Landmark moved to dismiss certain claims based on Plaintiff's lack of standing, which implicates the Court's subject matter jurisdiction. As the Court notes, Eighth Circuit case law indicates remand to state court is required when subject matter jurisdiction is lacking due to an absence of standing. But this rule

applies only if a determinative finding is made that a plaintiff lacks Article III standing. *See, e.g.*, *St. Louis Heart Ctr, Inc. v. Nomax, Inc.*, 899 F.3d 500, 505 (8th Cir. 2018) ("[A]lthough we agree with the district court's conclusion that St. Louis Heart Center lacks Article III standing, we vacate the judgment dismissing the action with prejudice and remand with directions to return the case to state court."); *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 993 (8th Cir. 2016) ("The district court never had jurisdiction of [the plaintiffs'] claims. Their claims should be remanded to state court."); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) ("[W]e have reached the same conclusion as the district court: the federal courts lack jurisdiction over this case. . . . [T]he federal court *must* remand the case to the state court from whence it came."); *City of Kansas City v. Yarco Co.*, 625 F.3d 1038, 1041 (8th Cir. 2010) ("Given the absence of standing on the FHA claim, the state and local claims cannot proceed in federal court. . . . The entire case must return to state court, including the FHA claim.").

Unlike the situations in *Nomax*, *Hughes*, *Wallace* and *Yarco*, the Court's order remanding this case does not make a definitive ruling that Plaintiff lacks standing because she has no injury in fact. A definitive ruling on Article III standing is essential to properly resolve the Court's jurisdiction, though, because subject matter jurisdiction is lacking only if Landmark is correct that Plaintiff has no injury in fact. On the other hand, if the Court rejects Landmark's standing argument and finds Plaintiff has sustained an injury in fact, then there would be no jurisdictional failure and remand would not be necessary.[1] Landmark therefore respectfully requests that the Court reconsider this matter and modify its order to make a definitive ruling whether Plaintiff has suffered an injury in fact that gives her standing under Article III.

---

[1] If the Court rejected Landmark' standing argument and retained jurisdiction of the matter, Landmark is prepared to address the Court's stated concerns regarding the amount in controversy for purposes of diversity jurisdiction. (Doc. #37 at 1 n.1.)

This is not a mere technicality because "[f]ederal Courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Genesis Health Clubs of Midwest LLC v. 24 LLC*, No. 19-CV-00785-DGK, 2020 WL 411040, at *1 (W.D. Mo. Jan. 24, 2020) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Unless the Court finds that Plaintiff lacks Article III standing, this obligation to exercise given jurisdiction would remain.

Moreover, a clear resolution of this issue is important to the future course of this action, even in state court. Although Article III does not apply to states, Missouri models federal case law in applying an injury in fact requirement for standing. *Corozzo v. Wal-Mart Stores, Inc.*, 531 S.W.3d 566, 574-76 (Mo. Ct. App. 2017). This is illustrated in *Yarco*, where the Eighth Circuit directed remand of the case to the Circuit Court of Jackson County, Missouri because plaintiff had no injury in fact and lacked standing. 625 F.3d at 1040-41. On remand, the state court followed the Eighth Circuit's ruling and dismissed the case, holding:

> This case was removed to federal court and then was dismissed by the district court upon a finding that the City failed to state a claim because it did not plead sufficient facts to demonstrate Defendants' discriminatory intent. That ruling was appealed to the Eighth Circuit Court of Appeals and the Court of Appeals reversed the decision of the district court, finding that the City did not have standing to bring a claim under the Fair Housing Act because the City did not allege an injury to itself. The case was remanded to the district court with directions to remand it back to state court. *See City of Kansas City, Missouri v. Yarco Company, Inc. et al.*, 625 F.3d 1038 (8th Cir. 2010).
>
> Defendants have now filed their motion to dismiss contending that the City does not have standing under Missouri law as well. . . .
>
> Defendants argue that the City's petition is based upon the filing of the administrative complaint with HUD and the finding of reasonable cause based upon that complaint. Since the standing requirements under Missouri law are essentially the

same as the federal injury-in-fact standard, the Eighth Circuit finding that there is no allegation of injury in fact is controlling. . . .

As the Eighth Circuit Court of Appeals found, the FHA authorizes suit by the U.S. Attorney General only. Therefore, the Defendants' Motion to Dismiss because the City lacks standing is well taken.

Judgment/Order of Dismissal, attached as **Exhibit 1**, at 2-3.

If the Court lacks subject matter jurisdiction here, it is because Plaintiff has no injury in fact and no standing to bring her claims. As in *Yarco*, Landmark requests a clear determination of the matter to promote judicial economy and facilitate ultimate resolution of the standing issue in state court following remand.

Landmark respectfully submits that it has not changed its position from the jurisdictional allegations of the Notice of Removal, which go specifically to the requirements for diversity jurisdiction under 28 U.S.C. § 1332(a). Landmark met its burden to demonstrate removal jurisdiction by plausibly alleging all necessary elements of complete diversity and the requisite amount in controversy (which Plaintiff did not dispute). Landmark was not required to concede Plaintiff's injury to remove the case, and it raised the standing argument after determining Plaintiff's alleged credit card charge had been reversed. The cases cited above show that it is not uncommon for issues of standing to be raised after removal, and nothing in those cases suggests that the mere act of making a post-removal standing argument is enough to divest a federal district court of jurisdiction without a determination from the court of an actual lack of standing.

WHEREFORE, Landmark respectfully requests that the Court reconsider and modify its Order Remanding Case to State Court (Doc. #37) to make a definitive ruling for jurisdictional purposes on the issue of whether Plaintiff has suffered an injury in fact that gives her standing under Article III.

Respectfully submitted,

**THE PORTO LAW FIRM**

By:   */s/ Nicholas J. Porto*
        Nicholas J. Porto      MO #56938
        1600 Baltimore, Suite 200A
        Kansas City, Missouri 64108
        Telephone:  816.463.2311
        Facsimile:  816.463.9567
        nporto@portloaw.com

-and-

**SHANK & MOORE, LLC**

By:   */s/ Stephen J. Moore*
        Stephen J. Moore     MO #59080
        1968 Shawnee Mission Pkwy, Suite 100
        Mission Woods, Kansas 66205
        Telephone:  816.471.0909
        Facsimile:  816.471.3888
        sjm@shankmoore.com

*Attorneys for Landmark Realty of Missouri, LLC*

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed this 13th day of November, 2020, via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff**
A.J. Stecklein
Stecklein & Rapp, Chartered
748 Ann Avenue
Kansas City, Kansas 66101
aj@kcconsumerlawyer.com

Gina Chiala
Heartland Center for Jobs and Freedom
4047 Central Street
Kansas City, Missouri 64111
ginachiala@jobsandfreedom.org

              */s/ Stephen J. Moore*
              Attorney for Defendant

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

AT KANSAS CITY

| | | |
|---|---|---|
| CITY OF KANSAS CITY, MISSOURI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No 0916-CV16499 |
| | ) | |
| YARCO COMPANY, INC. | ) | |
| And | ) | |
| CHURCHILL PROPERTIES, L.P., | ) | |
| Defendants. | ) | |

### JUDGMENT/ORDER OF DISMISSAL

NOW ON THIS DAY the Court considers Defendants' Motion to Dismiss, suggestions in support, the City's response, Defendant's reply suggestions and the arguments of counsel and being fully advised in the premises, the Court finds as follows:

The City filed a complaint with the U.S. Department of Housing and Urban Development (HUD) alleging discriminatory practices by Respondents towards families with children under the age of eighteen because Respondents' lease agreements with tenants contained the following language: "CURFEW time for everyone under the age of 18 will be 8:30 p.m. nightly". The City contends that this language violates Section 38.131-38.137 of the Kansas City municipal ordinance, Section 213.040 (2) RSMo and the Fair Housing Act, 42 U.S.C. §3604.

The HUD complaint was referred to the City's Human Relations Department (KCHRD) for investigation in accordance with a contract between HUD and KCHRD. KCHRD investigated the charge and issued a determination of "reasonable cause".

The KCHRD attempted to conciliate the matter between the City and the Defendants but the conciliation failed. The petition in the action before this Court does

not allege and it does not appear that the Director of KCHRD filed a separate complaint with the City's Human Rights Commission (HRC) as contemplated by the municipal ordinance. However, the HRC issued a "Notice of Hearing" on the matter. Pursuant to Sec. 38-33 of the City ordinance, Defendants elected to have the claims decided in a civil action. The City then filed this action in state court.

This case was removed to federal court and then was dismissed by the district court upon a finding that the City failed to state a claim because it did not plead sufficient facts to demonstrate Defendants' discriminatory intent. That ruling was appealed to the Eighth Circuit Court of Appeals and the Court of Appeals reversed the decision of the district court, finding that the City did not have standing to bring a claim under the Fair Housing Act because the City did not allege an injury to itself. The case was remanded to the district court with directions to remand it back to state court. See *City of Kansas City, Missouri v. Yarco Company, Inc. et al., 625 F.3d 1038 (8th Cir. 2010).*

Defendants have now filed their motion to dismiss contending that the City does not have standing under Missouri law as well. Alternatively, Defendants contend that the City did not have statutory authorization to file the HUD complaint upon which the petition is based and/or the City did not have statutory authorization to file a lawsuit based upon a reasonable cause determination of a HUD complaint. Finally, Defendants contend that the petition fails to state a claim upon which relief can be granted.

Defendants argue that the City's petition is based upon the filing of the administrative complaint with HUD and the finding of reasonable cause based upon that complaint. Since the standing requirements under Missouri law are essentially the same as the federal injury-in-fact standard, the Eighth Circuit finding that there is no allegation of injury in fact is controlling.

The City argues that the City had standing under Sec 38-31(5) of the Kansas City Municipal Code and under Sec. 213.135 RSMo because the Missouri statute delegates and assigns the powers of the Missouri Human Rights Commission to the Kansas City Human Rights Commission and the city code provides that the Director of Human Relations may initiate a complaint alleging violations of the Missouri statute.

However, the petition does not allege and there is no evidence that the Kansas City Director of Human Relations initiated a complaint with the HRC. The complaint

was filed with HUD and it is that complaint which serves as the basis for this action. As
the Eighth Circuit Court of Appeals found, the FHA authorizes suit by the U.S. Attorney
General only. Therefore, the Defendants' Motion to Dismiss because the City lacks
standing is well taken.

Furthermore, even if the City had standing under the Missouri statutes and the
City ordinances and a complaint had been initiated with the HRC, the petition does not
allege facts that demonstrate Defendants' discriminatory intent. Although the City
believes this is not necessary and has offered in their suggestions that it will amend its
petition to cure any perceived defect, no motion to amend has been filed nor has the City
submitted a proposed amended petition that would correct this defect. This Court does
not believe that the discriminatory intent can be inferred merely by the language in the
lease.

For these reasons, Defendants' Motion to Dismiss is GRANTED.

IT IS THEREFORE ORDERED that the City's petition is dismissed because the
City lacks standing, it is not authorized to bring this action and further for failure to state
a claim upon which relief can be granted.

4-06-11
DATE

Peggy Stevens McGraw
Judge, Division 8

Copies were mailed/faxed on the ____ day of April, 2011 to the following:

Holly Dodge, Atty for City of Kansas City
Fax No. 816-513-2743

David L. Heinemann Atty for Defendants
Fax No. 816-741-3888

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| **RHONDA K. CHEATEM**, *individually and on behalf of all others similarly situated*, | |
| Plaintiff, | |
| vs. | Case No. **4:20-cv-00381-BP** |
| **LANDMARK REALTY OF MISSOURI, LLC,** | |
| Defendant. | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR RECONSIDERATION**

Plaintiff Rhonda Cheatem ("Ms. Cheatem" or "Plaintiff"), by undersigned counsel, respectfully submits these suggestions in opposition to Defendant Landmark Realty of Missouri LLC's ("Landmark" or "Defendant") motion for reconsideration.

**INTRODUCTION**

The issue before the Court is whether it should amend its November 12, 2020 Order remanding this case to state court to include a determination over whether Ms. Cheatem has Article III standing. Defendant's request is improper. This Court ordered remand because Defendant failed to carry its burden of demonstrating Article III standing. Now, Defendant seeks to bolster its position in state court by obtaining a finding outside the scope of this Court's decision. ECF No. 37. "[W]here no party shoulders the burden of proving jurisdiction in a case removed from state court, ***remand is the appropriate remedy without further analysis***." *Zanotti v. Invention Submission Corporation*, No. 18-cv-5893, 2020 WL 2857304, at *7 (S.D.N.Y. June 2, 2020) (emphasis added).

1

By removing this case to federal court, Defendant asserted that this Court has jurisdiction over Plaintiff's claims. "Defendants, as the party asserting federal jurisdiction, bear the burden of establishing Plaintiffs' Article III standing." *Mendoza v. Pacific Theatres Entertainment Corporation*, slip op., 2019 WL 6726088 (C.D. Cal. Dec. 10, 2019) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). After invoking this Court's jurisdiction over the case, Defendant then argued that no jurisdiction existed due to a lack of Article III standing. Defendant essentially admitted that it did not carry its burden as the Court ruled.

Landmark bore the burden of establishing this Court's jurisdiction because Landmark is the party who chose the federal forum. Plaintiff originally filed this case in state court, which is where it should return, because Defendant disclaims the very jurisdiction it proclaimed when it removed the case. Now prior to its return to state court litigation, Defendant hopes to obtain an additional finding as to whether Plaintiff has suffered an injury in fact. ECF No. 39 at 2. Because this finding would not be binding on a state court judge, this begs the question why the Defendant would take up the Court's time for such a modified remand order. Defendant should not be allowed to waste the time and resources of this Court in a round-about attempt to obtain an order to dismiss.[1] This Court should therefore decline to issue any advisory opinion on whether Plaintiff actually has Article III standing and instead remand this case to state court on the grounds that Defendant has failed to meet its burden on removal.

## ARGUMENT

### I. Defendant had the burden of establishing this Court's jurisdiction, not Plaintiff.

To justify depriving Plaintiffs of their choice of forum and expose them to the risk of

---

1 In *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018), the Court found that Defendant's plan to remove Plaintiff's claims under federal question jurisdiction and then move for dismissal for lack of Article III standing was "a dubious strategy [that] has resulted in a significant waste of federal judicial resources, much of which was avoidable."

dismissal for lack of jurisdiction (and having to start her case over), Defendant—as the removing party—must prove Article III jurisdiction by preponderance of evidence. *Keller v. Bank of Am., N.A.*, 228 F. Supp. 3d 1247, 1252 (D. Kan. 2017) (citing *Karnes v. Boeing Co.*, 335 F.3d 1189, 1193 (10th Cir. 2003)). Importantly, the issue now is *not* whether Plaintiffs have Article III standing; but whether Defendants met their burden as the removing party to demonstrate there is Article III standing.

"Federal removal jurisdiction is statutory in nature and is to be strictly construed." *Jet AirParts, LLC v. Reg'l One, Inc.*, No. 18-CV-1189-EFM-KGG, 2018 WL 5617827, at *4 (D. Kan. Oct. 30, 2018). *Gardner Grp., LLC v. Commonwealth Land Title Ins. Co.*, No. 15-9934, 2017 WL 193165, at *2 (D. Kan. Jan. 18, 2017) ("Federal removal jurisdiction is statutory in nature, and the governing statutes are to be strictly construed.") (citing *Shamrock Oil & Gas v. Sheets*, 313 U.S. 100, 108–09 (1941); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 814 (1986)).

It is well-settled that the presumption is against removal jurisdiction. *Coca-Cola Bottling of Emporia, Inc. v. S. Beach Beverage Co.*, 198 F. Supp. 2d 1280, 1285 (D. Kan. 2002); *Keller*, 228 F. Supp. 3d at 1252 ("There is a presumption against finding federal jurisdiction, until the party invoking it makes an adequate showing."); *Rainbow Commc'ns, LLC*, 2019 WL 3239348, at *2 ("Courts must follow the inflexible and without exception presumption against federal jurisdiction by denying jurisdiction in all cases where federal jurisdiction does not affirmatively appear in the record. Moreover, courts must resolve doubtful cases in favor of remand"); *Colbert v. Union Pac. R. R. Co.*, 485 F.Supp.2d 1236, 1239 (D. Kan. 2007) ("Doubtful cases must be resolved in favor of remand."). Because federal courts are courts of limited jurisdiction, this Court should refrain from exercising jurisdiction unless it is certain that such jurisdiction has been granted by Congress. *Gardner Grp., LLC*, 2017 WL 193165, at *2 (citing *Adams v. Reliance*

*Standard Life Ins. Co.*, 225 F.3d 1179, 1182 (10th Cir. 2000)).

> The burden of demonstrating standing rests on the party that invokes federal jurisdiction . . . Although perhaps counterintuitive, since it was Defendant, not Plaintiff, who sought the jurisdiction of the federal courts by removing the action from state court, it is Defendant who must establish Article III standing.

*ACR Systems, Inc. v. Woori Bank*, No. 14-cv-2817, 2015 WL 1332337, at *2 (S.D.N.Y. Mar. 25, 2015). Because Defendants do not even attempt to establish jurisdiction, and themselves deny that this Court has Article III jurisdiction, the case must be remanded and this Court should decline to unnecessarily comment on the irrelevant issue of whether Article III standing actually exists in this case. Defendant argues that "[u]nless the Court finds that Plaintiff lacks Article III standing, this obligation to exercise given jurisdiction would remain," but cites no authority for this bald assertion. <u>ECF No. 39 at 3</u>. Nor can they.[2] "[W]here no party shoulders the burden of proving jurisdiction in a case removed from state court, ***remand is the appropriate remedy without further analysis***." *Zanotti v. Invention Submission Corporation*, No. 18-cv-5893, 2020 WL 2857304, at *7 (S.D.N.Y. June 2, 2020) (emphasis added).

    The cases relied on by Defendant do not support their desired result. Neither *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) nor *City of Kansas City, Mo. v. Yarco Co., Inc.*, 625 F.3d 1038 (8th Cir. 2010) dealt with the question of whether this Court <u>must</u> make a finding of Article III standing. Both *Wallace* and *Yarco* were about answering the question of whether a federal district court errs by dismissing, rather than remanding, a matter back to state

---

2 The citation immediately prior to this statement is to *Genesis Health Clubs of Midwest LLC v. 24 LLC*, No. 19-cv-00785- 2020 WL 411040 (W.D. Mo. Jan. 24, 2020) and this case does not support Defendant's argument either. The issue before Judge Kays in *Genesis Health Clubs* was whether to apply a doctrine of abstention to a federal declaratory judgment case when a potentially parallel state court case was also pending. Judge Kays ultimately decided that abstention was not warranted and denied a motion to dismiss, but he also stayed the federal case pending resolution of the state court case. In the abstention context a federal court should absolutely "exercise the jurisdiction given to them" (<u>ECF No. 39 at 3</u>; *Genesis Health Clubs*, 2020 WL 411040 at *1); but that principle is not helpful here where there is a **presumption against** exercising removal jurisdiction. *Mocek v. Allsaints USA Limited*, 220 F. Supp. 3d 910, 914 (N.D. Ill. 2016).

4

court. *Wallace*, 747 F.3d at 1033 ("By a different route, we have reached the same conclusion as the district court: the federal courts lack jurisdiction over this case. But this does not mean the district court was correct in dismissing the case with prejudice."); *Yarco*, 625 F.3d at 1041 ("The judgment is vacated, and the case remanded to the district court for <u>further</u> remand to state court.") (emphasis added). These opinions cannot be read as establishing a *requirement* that this Court make an independent determination of whether or not the Plaintiff has Article III when the removing party disclaims it.

Similarly, *St. Louis Heart Center, Inc. v. Nomax, Inc*., 899 F.3d 500 (8th Cir. 2018) was about clarifying the requirement (post-*Hargis v. Access Capital Funding, LLC*, 674 F.3d 783 (8th Cir. 2012)) that a federal court <u>must</u> remand a case to the state court if jurisdiction is lacking, rather than dismiss with prejudice. *Id*. at 505 ("While the district court understandably identified *Hargis* as a decision with an analogous procedural posture, *Wallace* and *Yarco Co*. squarely address the remand issue, and they establish the law of the circuit.").

Finally, *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016), as relevant to this analysis, stands for the proposition that a federal court cannot exercise supplemental jurisdiction over a claim "if the claimant lacks Article III standing." *Id*. at 993. *Hughes* also again affirms the rule that where the court lacks jurisdiction, it must remand a matter back to state court, rather than dismiss it. *Id*. at 993 ("The district court never had jurisdiction of Hughes and Mazgaj's claims. Their claims should be remanded to state court.") (internal citation removed).

*None* of the cases cited by Defendant require this Court to make a determination about Article III standing where neither party is arguing that this Court has jurisdiction. *Cf*., *Zanotti*, 2020 WL 2857304, at *7. This Court need only issue the order to remand.

**II. Nothing requires this Court to make an affirmative determination of whether or not the Plaintiff has Article III standing, the Defendant's failed to meet their burden for removing the case and the proper result is to remand.**

Defendant failed to argue that Plaintiffs' allegations stated in the Petition give rise to Article III injury, and instead argued the contrary in their Motion to Dismiss. This change in position is all the Court needs to remand this matter to state court. And it is worth noting that this matter can proceed in state court after remand. The Supreme Court has recognized that

> the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute.

*ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) (citations omitted).

Defendant relies on *Yarco* to support its argument that a finding on Article III standing from this Court, will assist the resolution of the Jackson County Circuit Court after remand. *See* ECF 39 at 4. Defendant is wrong.

First, Article III does not apply to the states and a finding that Plaintiff does not have Article III standing is not relevant to any issue that will be before the Missouri state court. Defendant cites to the case of *Corozzo v. Wal-Mart Stores, Inc.*, 531 S.W.3d 566 (Mo. App. W.D. 2017) as demonstrating that Missouri "models federal case law in applying an injury in fact requirement for standing." ECF No. 39 at 3. But Defendant misreads this case and misapplies it here. *Corozzo* applied a standing requirement to a federal claim brought in state court under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. And indeed, Missouri courts look to federal case law as persuasive authority "particularly where the law at issue is a federal statute." *Id*. at 574 (quoting *Wilson v. Union Pac. R.R. Co.*, 509 S.W.3d 862, 871 (Mo. App. E.D. 2017)).

But here, nothing in the instant case would involve the application of *federal* standing analysis to a *state law* claim in *state* court. *Corozzo* therefore offers no support for Landmark, and

both *Corozzo* and *Yarco* (a case brought under the federal Fair Housing Act) are inapposite. *Cf.*, *Yarco*, 625 F.3d at 1040.

Second, a finding that Plaintiff does not have Article III standing is not binding on the Jackson County Circuit Court. That court will have the opportunity to hear argument and make its own determination of whether Plaintiff has suffered an injury sufficient to invoke the general jurisdiction of Missouri's state courts. Again, the relevant inquiry is not whether Ms. Cheatem has Article III standing, but whether Defendant has met its burden of establishing this Court's jurisdiction. As succinctly put by the Northern District of Illinois:

> In short, it should have been obvious to defendant, based on well-settled law, that with no party asking for the merits of plaintiff's claim to be decided in federal court, and both sides arguing against federal jurisdiction, the only possible outcome was for the case to end up right back where it started: in state court.

*Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914–15 (N.D. Ill. 2016). In fact, the *Allsaints* court squarely rejected the request that Landmark is making here—which is to ask a federal court to issue an advisory opinion to a state court about an issue that is irrelevant on remand. Specifically:

> Lastly, to the extent counsel's in-court statement suggests that defendant's real objective in pressing the [Article III standing] issue is to 'shorten the proceedings in state court,' I am not inclined to resolve an issue that is not actually in dispute, solely for the purpose of advancing, in some advisory fashion, an argument defendant may wish to make in state court.

*Allsaints*, 220 F. Supp. 3d at 914 ("with no party ***willing*** to overcome the presumption against federal jurisdiction, remand is appropriate on any analysis") (emphasis added). There is no dispute that Defendant has not carried its burden of establishing this Court's jurisdiction. Consequently, this Court should decline to modify its Remand Order to include an advisory opinion to a state court over whether or not Plaintiff actually has Article III standing. Such a ruling would only be a non-binding opinion on an issue that is not relevant to the state court's own jurisdictional analysis. To rule otherwise would place this Court in an advocate's position, for Defendant, on remand. *See*

*Allsaints*, 220 F. Supp. 3d at 914.

## CONCLUSION

Because neither Party is currently advocating for jurisdiction, this Court issued the appropriate order in this case and need not additionally and unnecessarily decide whether Plaintiff has standing to pursue her claims in this Court. Defendant had the burden of establishing this Court's subject matter jurisdiction at the time of removal, a burden that Defendant failed to carry when it disclaimed jurisdiction in its motion to dismiss. That is the end of the inquiry. *Zanotti*, 2020 WL 2857304, at \*7. Defendant's attempt to ask the Court to make any decision other than remand the case for Defendant's failure to carry its burden is wasteful and unnecessary.

WHEREFORE, Plaintiff prays the Court deny Landmark's motion for reconsideration and remand this case back to the Circuit Court of Jackson County, Missouri.

*Respectfully submitted*,

By: /s/ Matthew S. Robertson
A.J. Stecklein        #46663
Michael Rapp         #66688
Matthew Robertson   #70442
STECKLEIN & RAPP CHARTERED
748 Ann Avenue, Suite 101
Kansas City, KS 66101
Telephone:    (913) 371-0727
Facsimile:     (913) 371-0727
Email:  aj@kcconsumerlawyer.com
            mr@kcconsumerlawyer.com
            msr@kcconsumerlawyer.com

-and-

Gina Chiala          #59112
Amy Sweeny Davis   #45760
HEARTLAND CENTER
FOR JOBS AND FREEDOM, INC.
4047 Central Street
Kansas City, MO 64111
Telephone: (816) 278-1092

8

Facsimile: (816) 278-5785
Email:  ginachiala@jobsandfreedom.org
        amysweenydavis@jobsandfreedom.org
Attorneys for Plaintiff




## CERTIFICATE OF SERVICE

   I certify that on November 27, 2020, a true and correct copy of the above and foregoing was filed electronically with the Clerk of the Court, which will automatically notify counsel of record.

                                           /s/ Matthew S. Robertson
                                          Attorney for Plaintiff

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

16th Circuit Court Jackson Co. M4
415 E 12th St, Ann Intersession
Kansas City MD 64106

9590 9402 3902 8060 3467 22

2. Article Number *(Transfer from service label)*

7012 3460 0001 7395 5025

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*        C. Date of Delivery

11/17/20 10:40am  11/17/20

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Case 4:20-cv-00381-BP   Document 42   Filed 11/30/20   Page 1 of 2

